# Exhibit A

E-filed in the Office of the Clerk
for the Business Court of Texas
6/6/2025 10:56 PM
Accepted by: Alexis Jennings
Case Number: 25-BC03B-0009

25-BC03B-0009
No. _____

| | | |
|---|---|---|
| Defense Distributed, | § | IN THE BUSINESS COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | THE STATE OF TEXAS |
| YouTube LLC, | § | |
| Google LLC, and | § | |
| Alphabet, Inc., | § | |
| | § | |
| Defendants. | § | 3RD BUSINESS COURT DIVISION |

---

## PLAINTIFFS' ORIGINAL PETITION

Copy from re:SearchTX

## Table of Contents

I.    Discovery Plan ........................................................................................................... 3

II.   Statement of the Case ............................................................................................. 3

III.  Jurisdiction .............................................................................................................. 6

IV.   Venue ....................................................................................................................... 7

V.    Parties ...................................................................................................................... 7

    A.    Defense Distributed ...................................................................................... 7

    B.    YouTube, Google, and Alphabet .................................................................. 9

VI.   Facts ....................................................................................................................... 11

    A.    YouTube discriminates against pro-gun videos. ...................................... 11

    B.    YouTube illegally censored the "G80 | Next-Gen Receivers" Video. ............... 17

    C.    YouTube illegally censored the Vice documentary about Defense Distributed.... 25

    D.    Google's advertising policies illegally censored Defense Distributed................... 28

    E.    YouTube and Google's illegal censorship causes irreparable harm. .................... 30

VII.  Causes of Action .................................................................................................... 33

    A.    Count One: Message Censorship ................................................................ 33

    B.    Count Two: Messenger Censorship. ........................................................... 34

    C.    Count Three: Audience Censorship. ........................................................... 36

VIII. Prayer for Relief .................................................................................................... 37

    A.    Injunctive Relief .......................................................................................... 37

    B.    Declaratory Relief ....................................................................................... 38

    C.    Costs & Attorney's Fees ............................................................................. 38

Copy from re:SearchTX

I.  **Discovery Plan**

      1.      Plaintiffs intend to conduct discovery under Level 3.  *See* Tex. R. Civ. P. 190.

II.  **Statement of the Case**

      2.      YouTube and Google discriminate against pro-gun content to disadvantage Second Amendment viewpoints.  Their systemic suppression targets all manner of safe and law-abiding pro-gun speech, squarely violating Texas Civil Practice and Remedies Code Chapter 143A.

      3.      YouTube's anti-gun censorship is no accident.  It is YouTube's policy to suppress speech advocating the Second Amendment.  By policy, YouTube censors videos about "how to make firearms" even though videos about how to make things are generally allowed.  By policy, YouTube censors videos "intended to sell" firearms even though videos about selling things are generally allowed. By policy, YouTube censors videos about "how to install" firearm accessories even though videos about installing things are generally allowed.   If that were not enough, YouTube also uses an array of individualized tools to selectively censor pro-gun content.

      4.      Illegality is not the issue.  YouTube has a separate policy (apart from the "Firearms policy") on "illegal or regulated goods or services."  When YouTube censors the pro-gun videos at issue, illegality is not given as justification because it cannot be.  Pro-gun videos about personal gunsmithing, self-defense, and other important Second Amendment topics are totally legal to host online, just as pro-gun books on those topics are totally legal to host in libraries across America.

      5.      Dangerousness is not the issue either.  YouTube has a separate policy (apart from the "Firearms policy") about "dangerous" content.  But when YouTube censors the pro-gun videos at issue, dangerousness it not given as justification because it cannot be.  Pro-gun videos are plenty safe to host online, just as pro-gun books are plenty safe to host on library bookshelves.

Copy from re:SearchTX

6.     Meanwhile, the Google suppresses lawful pro-gun advertisements on Google Ads. By enforcing a "Guns" policy that block ads promoting Second Amendment advocacy and legal firearms technology, Google stifles protected speech just like YouTube, reflecting a pattern of viewpoint-based discrimination across Alphabet Inc.'s ecosystem.

7.     Federal law should put a stop to YouTube and Google's private defeat of these critical free speech norms. Whether it has done so remains to be seen. *Cf.* 47 U.S.C. § 230. Thankfully, federal law is not the citizenry's only source of civil liberties protections. The founders knew that "freedom is enhanced by the creation of two governments, not one." *Alden v. Maine*, 527 U.S. 706, 758 (1999). Hence the freedom of States to do better, as Texas has now done.

8.     The State of Texas enacted in 2021 a law known then as House Bill 20, now codified in part as Chapter 143A of the Texas Civil Practice and Remedies Code. Governor Abbott when signing the bill realized that "there is a dangerous movement by social media companies to silence conservative viewpoints and ideas. That is wrong, and we will not allow it in Texas." Office of the Texas Governor, Press Release: Governor Abbott Signs Law Protecting Texans From Wrongful Social Media Censorship (Sept. 9, 2021), https://bit.ly/38ZEkxQ.

9.     The new law gives a clear free speech mandate: "A social media platform may not censor a user, a user's expression, or a user's ability to receive the expression of another person based on: . . . the viewpoint represented in the user's expression or another person's expression." Tex. Civ. Prac. & Rem. Code § 143A.002(A)(2). While other courts are grappling with "facial challenges" that test the law's constitutionality "in all of its applications," *Moody v. NetChoice*, LLC, 603 U.S. 707, 744 (2024), their facial challenges remain unresolved and do not control. In this as-applied posture with concrete facts, applying Chapter 143A is clearly constitutional.

4

Copy from re:SearchTX

10.     Texas law's safeguard is urgently needed for Defense Distributed.  For over a decade, it has led development of the Second Amendment's individual right to keep and bear Arms by both pioneering key technological developments and—just as critically—shaping pro-gun discourse on key speech platforms like YouTube and Google Ads.  But even though Defense Distributed's pro-gun videos are perfectly law-abiding and safe, YouTube and Google have repeatedly and increasingly censored Defense Distributed's speech because of its pro-gun viewpoint, citing the "Firearms" and "Guns" policies that so blatantly discriminate illegally.

11.     The censorship of Defense Distributed's videos and ads exemplifies YouTube and Google's broader campaign to suppress safe and law-abiding pro-Second Amendment speech. Their actions against Defense Distributed are not isolated but reflect a pervasive pattern of censorship targeting pro-gun publishers and their audiences across the platforms.  This widespread censorship includes the removal, demonetization, or algorithmic suppression of videos that discuss lawful firearms use, self-defense, and other constitutionally protected topics.  Plaintiff anticipates soon uncovering many additional instances of YouTube and Google's viewpoint-based anti-gun censorship, including internal communications, policy documents, and data analytics that confirm the coordinated and intentional targeting of pro-gun videos.  YouTube and Google's censorship of Defense Distributed is not an aberration but a core component of their overall censorship strategy, designed to silence Second Amendment advocacy in direct contravention of Texas law.

12.     Because YouTube and Google are violating the core non-discrimination mandate of Chapter 143A, Defense Distributed is entitled to a judgment declaring the illegality of this viewpoint discrimination and enjoining them from any further illegal censorship.

Copy from re:SearchTX

### III.     Jurisdiction

13.     The Court's subject-matter jurisdiction over this action comes from Texas Government Code Section 25A.004(b)(3)(A) and (c) because (1) this is an action in which a claim under a "state … trade regulation law" is asserted against Chapter 25A "organization," and (2) a party to the action is a publicly traded company, making the amount in controversy irrelevant. *See* Tex. Gov't Code §§ 25A.001, .004(b)(3)(A), 004(c),

14.     The Court's subject-matter jurisdiction over this action comes from Texas Government Code Section 25A.004(b)(3)(A) because (1) this is an action in which a claim under a "state … trade regulation law" is asserted against Chapter 25A "organization," and (2) this is an action in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs, making the presence of a publicly-traded company irrelevant. *See* Tex. Gov't Code §§ 25A.001, .004(b)(3)(A), 004(c).

15.     The Court's power to issue the requested relief, including declaratory judgments and writs of injunction, comes from Texas Government Code Section 25A.004(a).

16.     This action arises solely under the laws of the State of Texas.  This action does not arise under the Constitution, laws, or treaties of the United States.  This is not a civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.

17.     The Court has personal jurisdiction over the Defendants because the action's operative facts arise out of and are substantially related to their contacts with the Texas—contacts that constitute purposeful availment of the privilege of conducting activities in Texas—such that maintenance of this action does not offend traditional notions of fair play and substantial justice. These contacts include Defendants doing business in Texas, contracting by mail or otherwise with

6

Copy from re:SearchTX

a Texas resident where either party is to perform the contract in whole or in part in Texas, committing a tort in whole or in part in Texas, and delivering into Texas communications whose actual content gives rise to the instant causes of action.

## IV.    Venue

18.    Travis County constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the action occurred in Travis County.  See Tex. Civ. Prac. & Rem. Code § 15.002(a)(1).

19.    Alternatively, Texas Civil Practice and Remedies Code Section 15.002(a)(4) deems Travis County a proper venue for Plaintiff Defense Distributed because Texas Civil Practice and Remedies Code Section 15.002(a) Subdivisions (1), (2), and (3) do not apply and Travis County is where Plaintiff Defense Distributed resided when its claims accrued.  See Tex. Civ. Prac. & Rem. Code § 15.002(a)(4).

20.    Travis County lies in the Third Business Court Division of the Business Court of the State of Texas.

## V.    Parties

### A.    Defense Distributed

21.    Plaintiff Defense Distributed is a private business corporation headquartered in Austin, Texas.  Cody Wilson founded Defense Distributed and serves as its Director.

22.    Defense Distributed is the first private defense contractor in service of the general public.  Since 2012's Wiki Weapon project, Defense Distributed has defined the state of the art in small scale, digital, personal gunsmithing technology.  As an integral part of that mission, Defense Distributed regularly publishes videos though YouTube and utilizes the Google Ads platform.

7

Copy from re:SearchTX

23.     Defense Distributed's YouTube publications and Google Ads campaigns address topics of legitimate public concern: technical, scientific, political, and artistic aspects of the American constitutional right to keep and bear arms, both in theory and practice.  They espouse viewpoints that favor continuation of the American constitutional right to keep and bear arms in theory and practice.  They do not violate any applicable federal or state law.

24.     Defense Distributed resides in the State of Texas, does business in the State of Texas, shares expression through YouTube and Google in the State of Texas, and receives expression through YouTube and Google in the State of Texas.  Defense Distributed is therefore a "user" to whom Texas Civil Practice and Remedies Code Chapter 143A applies.  See Tex. Civ. Prac. & Rem. Code § 143A.004 ("This chapter applies only to a user who: (1) resides in this state; (2)  does business in this state; or (3)  shares or receives expression in this state.").

25.     Defense Distributed has posted, uploaded, transmitted, shared, and otherwise published expression in the State of Texas through YouTube and the Google Ads platform from at least 2013 to present.  That expression has been received in the State of Texas.  Defense Distributed's publications therefore constitute "expression" to which Texas Civil Practice and Remedies Code Chapter 143A applies.  See Tex. Civ. Prac. & Rem. Code § 143A.004(b) ("This chapter applies only to expression that is shared or received in this state.").

26.     Defense Distributed has a concrete, particularized, substantial, and imminent desire to post, upload, transmit, share, and otherwise publish pro-gun expressions in the State of Texas through YouTube and the Google Ads platform.

8

Copy from re:SearchTX

### B.    YouTube, Google, and Alphabet

27.    YouTube is a social media platform for creating, sharing, viewing, and discussing videos that has more than 50 million active users in the United States in a calendar month. YouTube is therefore a "social media platform" to which Texas Civil Practice and Remedies Code Chapter 143A applies.  *See* Tex. Civ. Prac. & Rem. Code § 143A.004(c) ("This chapter applies only to a social media platform that functionally has more than 50 million active users in the United States in a calendar month.").

28.    The Google Ads platform is a digital advertising service that enables businesses, organizations, and individuals to create, manage, and distribute advertisements across Google's vast ecosystem, including Google Search, YouTube, Gmail, Google Maps, and millions of partner websites and apps within the Google Display Network.  It is a "social media platform" to which Texas Civil Practice and Remedies Code Chapter 143A applies.  *See id.*

29.    The Defendants are the companies responsible for the YouTube and Google Ads policies and practices in question: YouTube LLC, Google LLC, and Alphabet, Inc.

30.    Defendant YouTube LLC is a Delaware limited liability company headquartered in San Bruno, California.

31.    Defendant Google LLC  is a Delaware limited liability company headquartered in Mountain View, California.

32.    Defendant Alphabet Inc., a Delaware corporation also headquartered in Mountain View, California.

33.    YouTube LLC is a wholly owned subsidiary of Google LLC, which is a wholly owned subsidiary of Alphabet Inc.  This corporate structure establishes a direct chain of ownership

Copy from re:SearchTX

and control, with Alphabet Inc. as the ultimate parent entity overseeing the operations of both Google LLC and YouTube LLC.

    (a)    YouTube LLC, Google LLC, and Alphabet Inc. operate as an integrated enterprise with respect to the YouTube platform's content moderation and censorship activities. YouTube LLC's policies, including those governing content removal, demonetization, and account suspensions, are developed, implemented, and enforced in coordination with Google LLC and under the strategic direction of Alphabet Inc. Google LLC provides critical technological infrastructure, including algorithms, artificial intelligence systems, and data analytics, that enable YouTube LLC's content moderation practices. Alphabet Inc., as the parent entity, exercises ultimate authority over the policies and practices of its subsidiaries, including approving high-level decisions related to YouTube's content moderation framework.

    (b)    The interconnected operations of the Defendants are further evidenced by their shared leadership and governance structures. Key executives and board members of Alphabet Inc. hold oversight roles that influence the strategic and operational decisions of both Google LLC and YouTube LLC. For example, Alphabet Inc.'s chief executive officer and other senior officers provide unified policy guidance that shapes YouTube's approach to content moderation, ensuring alignment with the broader corporate objectives of the Alphabet family of companies.

    (c)    YouTube LLC, Google LLC, and Alphabet Inc. share resources, including legal, compliance, and technical teams, that collectively design and execute YouTube's

Copy from re:SearchTX

censorship policies. These shared resources facilitate the seamless implementation of content moderation decisions across the YouTube platform, including the alleged unlawful censorship activities that violate Texas Civil Practice and Remedies Code Chapter 143A by restricting protected speech based on viewpoint.

(d)     As a result of their integrated operations, shared governance, and unified policy framework, YouTube LLC, Google LLC, and Alphabet Inc. are jointly and severally responsible for the alleged censorship activities on the YouTube platform. Each plays an indispensable role in the development, implementation, and enforcement of the content moderation policies that are the subject of this action, rendering them equally liable for any violations of Texas law, including the prohibitions on censorship under Chapter 143A.

34.     This petition's references to "YouTube" and "Google" mean YouTube LLC, Google LLC, and Alphabet, Inc. , jointly and severally, unless otherwise specified.

## VI.   Facts

### A.   YouTube discriminates against pro-gun videos.

35.     YouTube is a social media platform for creating, sharing, viewing, and discussing videos.[1]  Over 1 billion people use YouTube each month and over 1 billion hours of video are watched daily.[2]  Around 4000 hours of video are uploaded to YouTube every minute; 65 years of

---

[1] *See* Mareike Möhlmann, THE INVISIBLE HAND: ALGORITHMIC CONTROL OF YOUTUBE CONSUMERS AND PROVIDERS at 9 (April 2021) (available at https://bit.ly/3zYszW4) ("Founded in 2005, YouTube is a leading global video streaming platform, ranked by Alexa Internet (2020) as the second most popular website worldwide. The YouTube platform facilitates uploading, viewing, commenting and sharing of video content, ranging from documentaries and educational videos to video blogging.").

[2] *See* Anthony Zappina, et al., Procedia Computer Science 198, *YouTube Monetization and Censorship by Proxy: A Machine Learning Prospective*, at 1 (2022) (available at https://bit.ly/3zYowsU) ("YouTube has over 1 billion users log in monthly and over a billion hours of video are watched daily.")

Copy from re:SearchTX

video a day. [3]  "The reality of monopoly tech platforms acting to censor public availability of information and viewpoints is already with us, in ways that few people seem to acknowledge or understand."[4]

36.    YouTube hosts video content discriminately.  Some of YouTube's hosting discrimination is individualized.  Some of YouTube's hosting discrimination is categorical.  Some of YouTube's hosting discrimination is part categorical and part individualized.

37.    YouTube carries out its hosting discrimination with a variety of methods, processes, and tools.  They include but are not limited to (i) individual content removal, (ii) channel removal through a three-strike system and (iii) demonetization.[5]

38.    One way that YouTube directs its discrimination is by enforcing YouTube's "Community Guidelines" and "Policies,"[6] which are roughly organized into five subject categories: (i.) Spam and Deceptive Practices; (ii.) Sensitive Content, (iii.), Violent or Dangerous Content; (iv.) Regulated Goods (e.g., firearms) and (v) Copyrighted Content.[7]

39.    YouTube's "YouTube policies" are  30+ content-based policies that YouTube uses to discriminate against content.  One of those is YouTube's "Firearms policy."

40.    YouTube's "Firearms policy" consists of a primary policy statement and several secondary paragraphs giving non-exhaustive explanations and examples of the primary policy

---

[3] *Id.* at 1 ("Around 4000 hours of video are uploaded to YouTube every minute; 65 years of video a day.").
[4] *See* Jacob Siegel, Tablet Magazine, *Google Censorship Is a Danger to Public Health* (July 13, 2020) (available at https://bit.ly/3GDxbVl) ("The reality of monopoly tech platforms acting to censor public availability of information and viewpoints is already with us, in ways that few people seem to acknowledge or understand.")
[5] *See id.*
[6] *See* Zappina, *supra*, at 2 ("YouTube moderates content published on its platform through its "Community Guidelines and Policies.")
[7] *See* Zappina, *supra*, at 2 ("The types of content fall into five categories: (i.) Spam and Deceptive Practices; (ii.) Sensitive Content, (iii.), Violent or Dangerous Content; (iv.) Regulated Goods (e.g., firearms) and (v) Copyrighted Content.").

Copy from re:SearchTX

statement.  The primary policy statement of YouTube's "Firearms policy" provides as follows: "Content intended to sell firearms, instruct viewers on how to make firearms, ammunition, and certain accessories, or instruct viewers on how to install those accessories is not allowed on YouTube. YouTube shouldn't be used as a platform to sell firearms or accessories noted below. YouTube also doesn't allow live streams that show someone holding, handling, or transporting a firearm."  The YouTube "Firearms policy" stated the following from at least July 2024 to present:

**Firearms policy**

> Starting June 18, 2024, certain content showing how to remove safety devices will be prohibited. Content showing the use of homemade firearms, automatic firearms, and certain firearm accessories will be age restricted.

Content intended to sell firearms, instruct viewers on how to make firearms, ammunition, and certain accessories, or instruct viewers on how to install those accessories is not allowed on YouTube. YouTube shouldn't be used as a platform to sell firearms or accessories noted below. YouTube also doesn't allow live streams that show someone holding, handling, or transporting a firearm.

Sometimes content doesn't violate our policies, but it may not be appropriate for viewers under 18. YouTube age restricts content showing the use of certain firearms and accessories also noted below (note: this restriction applies to real use of firearms only; details are below).

**What this means for you**

**If you're posting content**

Don't post content on YouTube if the purpose is to do one or more of the following:

- Sell firearms or certain firearms accessories through direct sales (e.g. private sales by individuals) or links to sites that sell these items. These accessories may include:
  - Accessories that enable a firearm to simulate automatic fire,
  - Accessories that convert a firearm to automatic fire, such as: bump stocks, gatling triggers, drop-in auto sears, or conversion kits,
  - High capacity magazines or belts carrying more than 30 rounds.
- Provide instructions on manufacturing any of the following:

13

Copy from re:SearchTX

- Firearms,
- Ammunition,
- High capacity magazines,
- Homemade silencers/suppressors,
- Accessories that enable a firearm to simulate automatic fire,
- Accessories that convert a firearm to automatic fire, such as: bump stocks, gatling triggers, drop-in auto sears, or conversion kits.
- Provide instructions on how to convert a firearm to automatic or simulated automatic firing capabilities.
- Provides instructions on how to install the above-mentioned accessories or modifications.
- Provides instructions on how to remove certain firearm safety devices, such as a device that limits the release of a magazine. This does not include removal of a device used to temporarily disable a weapon like a gun lock.

Please note this is not a complete list.

**Age-restricted content**

Sometimes content doesn't violate our policies, but it may not be appropriate for viewers under 18.

- Content showing use of a homemade firearm (e.g. 3D printed gun), an automatic firearm, or any of the below accessories:
  - Accessories that enable a firearm to simulate automatic fire
  - Accessories that convert a firearm to automatic fire, such as: bump stocks, gatling triggers, drop-in auto sears, or conversion kits
  - High capacity magazines
  - Homemade silencers/suppressors
- Examples (non-exhaustive):
  - Firing a 3D printed firearm
  - Firing a fully automatic rifle
  - Firing a firearm with a high capacity magazine

These guidelines apply to real use of firearms and may not apply, for example, to use of firearms in artistic content such as a film. We may also make exceptions for public interest content such as military or police footage, news footage, or footage from warzones.

**Examples**

Here are some examples of content that isn't allowed on YouTube.

14

- Links in the title or description of your video to sites where firearms or the accessories noted above are sold. You can link to sites that discuss or review the items as long as those sites don't sell or give away those items directly.
- Displaying a firearm with the intention to sell that firearm via private sale. This includes giving the seller's phone number, email address, or other contact information.
- Showing users step-by-step instructions on how to finish a lower receiver in order to complete fabrication of a firearm.
- Showing users how to make a silencer out of a flashlight, oil can, solvent catcher or other parts.
- Showing users how to install a bump stock, or install a comparable accessory built to enable simulated automatic fire.
- Live streams that feature someone holding or handling a firearm, regardless of whether or not they are firing it. Note: this does not include firearms in video games.
- Live streams that feature someone transporting firearms from place to place, such as by carrying them or traveling with them by car, truck, or other vehicle. Note: this does not include firearms in video games.

Please remember these are just some examples, and don't post content if you think it might violate this policy.

**What happens if content violates this policy**

If your content violates this policy, we will remove the content and send you an email to let you know. If we can't verify that a link you post is safe, we may remove the link. Note that violative URLs posted within the video itself or in the video's metadata may result in the video being removed.

If this is your first time violating our Community Guidelines, you'll likely get a warning with no penalty to your channel. You will have the chance to take a policy training to allow the warning to expire after 90 days. The 90 day period starts from when the training is completed, not when the warning is issued. However, if the same policy is violated within that 90 day window, the warning will not expire and your channel will be given a strike. If you violate a different policy after completing the training, you will get another warning.

If you get 3 strikes within 90 days, your channel will be terminated. Learn more about our strikes system.

We may terminate your channel or account for repeated violations of the Community Guidelines or Terms of Service. We may also terminate your channel or account after a single case of severe abuse, or when the channel is dedicated to a

Copy from re:SearchTX

policy violation. We may prevent repeat offenders from taking policy trainings in the future. Learn more about channel or account terminations.

If you find content that violates this policy, report it. Instructions for reporting violations of our Community Guidelines are available here. If you've found a few videos or comments that you would like to report, you can report the channel.

https://support.google.com/youtube/answer/7667605 (July 2, 2024; June 6, 2025).

41.    YouTube does not enforce its "Firearms policy" with concerns of legality.  The YouTube "Firearms policy" does not turn on whether or not the video's content depicts something illegal and does not turn on whether or not the video content is itself illegal.

42.    To identify content it eventually discriminates against, YouTube employs a combination of human effort, algorithmic control, and machine learning.[8]  YouTube's control algorithms are collectively maintained by thousands of people who work for Google (software engineers, researchers, and content moderators) and millions who participate on the platform, create content, and help train the algorithm.[9]  YouTube keeps algorithm details secret to ensure that any patterns indicating unintended biases or distortions are concealed from public view.[10] YouTube publicly admits to reducing the distribution of content that comes close to, but does not quite cross the line into, violating its community guidelines.[11]

---

[8] See Möhlmann, *supra*, at 10, 16 ("YouTube employs machine learning technology, paired with human moderation, to identify content that does not comply with its community guidelines or with government regulations.").
[9] See Zappina, *supra*, at 1 ("The algorithm is collectively maintained by thousands of people who work for Google (software engineers, researchers, and content moderators) and millions who participate on the platform, create content, and help train the algorithm, which has not been public to date").
[10] See Zappina, *supra*, at 1 ("By keeping the algorithm and its results under wraps, YouTube ensures that any patterns that indicate unintended biases or distortions associated with its algorithm are concealed from public view").
[11] See Möhlmann, *supra*, at 16 ("YouTube publicly admits to reducing the distribution of content that comes close to, but does not quite cross the line into, violating its community guidelines….").

Copy from re:SearchTX

**B.    YouTube illegally censored the "G80 | Next-Gen Receivers" Video.**

43.    "G80 | Next-Gen Receivers" is a video that Defense Distributed created in early 2025 and published via YouTube before YouTube took it down in violation of Texas Civil Practice and Remedies Code Chapter 143A.

44.    Defense Distributed's "G80 | Next-Gen Receivers" video constitutes "speech" protected by the First Amendment to the Constitution of the United States and the Second Amendment to the Constitution of the United States.  It delivers an important expression of legal, political, technical, scientific, and artistic matters in the abstract.  It delivers commentary on Second Amendment rights, technological innovation in firearms components, and judicial decisions such as *Bondi v. VanDerStok*, 145 S. Ct. 857 (2025).  Its content, comprising symbolic imagery, music, and spoken words, conveys a pro-gun viewpoint through artistic and political expression, making it core protected speech under both federal and Texas law.

45.    Defense Distributed's "G80 | Next-Gen Receivers" video is law-abiding in every respect.  It does not depict, promote, or instruct on any illegal activity, nor does it violate any federal or state laws, including those regulating firearms or online content.  The video's focus on the "G80 Jig Set," "G80 Unfinished Receiver," and "G80 Grip Module" involves the lawful discussion of firearm components.  The video's references to the *Bondi v. VanDerStok* decision and Defense Distributed's emblem further situate it as a lawful commentary on legal and political developments, akin to written publications or public speeches on Second Amendment issues.

46.    Defense Distributed's "G80 | Next-Gen Receivers" video is indisputably safe for hosting on a platform like YouTube. It contains no violent, dangerous, or harmful content, nor does it encourage such behavior. The slow-motion, abstract presentations of firearm components, accompanied by music and minimal spoken words, are purely informational and artistic, posing no

Copy from re:SearchTX

risk to viewers or the public. The content is analogous to technical diagrams or photographs in books about firearms, which are routinely and safely hosted in libraries and bookstores.

47.    Defense Distributed's "G80 | Next-Gen Receivers" video presents the following thirty-eight seconds of content:

a.    At time ~0:00, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately one second a static view of this work—a critical parody of the seal of the Supreme Court of the United States and an indirect reference to the Court's decision in *Bondi v. VanDerStok*, 145 S. Ct. 857 (2025), which Defense Distributed was party to:



During this part of the video, music plays.

b.    At time ~0:01, Defense Distributed's "G80 | Next-Gen Receivers" presents for approximately a second a static view of this work—the emblem of Defense Distributed:

18

Copy from re:SearchTX



During this part of the video, music plays.

c.      At time ~0:01, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately one second a static view of this work—Dimmit's Goliad Arm:



During this part of the video, music plays.

d.      At time ~0:02, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately one second a static view of this work—an atypographic presentation of "G80":

19

Copy from re:SearchTX



During this part of the video, music plays.

e.      At time ~0:03, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of this work in slow motion against a white field—a version of the "G80 Jig Set" engraved with an atypographic presentation of "G80":



During this part of the video, music plays and the words "do you remember the

times" are spoken.

f.      At time ~0:05, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of this work in slow motion against a white field —a version of the "G80 Grip Module":

20

Copy from re:SearchTX



During this part of the video, music plays.

g.    At time ~0:08, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of this work in slow motion against a white field — a version of "G80 Unfinished Receiver" with an inscribed shape of the State of Texas.



During this part of the video, music plays and the words "when we thought of all those things" are spoken.

h.    At time ~0:10, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of this work in slow motion against a white field—a version of the "G80 Grip Module":



During this part of the video, music plays.

21

Copy from re:SearchTX

i.    At time ~0:12, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately four seconds a dynamic view (panning and scanning) of these works in slow motion against a white field—a version of the "G80 Jig Set" engraved with an atypographic presentation of "G80" and a version of "G80 Unfinished Receiver":



During this part of the video, music plays and the words "when we thought of all those things" are spoken.

j.    At time ~0:16, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of these works in slow motion against a white field —a version of the "G80 Unfinished Receiver" interpolating a version of the "G80 Jig Set" engraved with an atypographic presentation of "G80":



During this part of the video, music plays.

k.    At time ~0:18, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately four seconds a dynamic view (panning and scanning) of this work in slow motion against a white field —a version of the "G80 Unfinished Receiver":

Copy from re:SearchTX



During this part of the video, music plays.

l.   At time ~0:19, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately four seconds a dynamic view (panning and scanning) of these works in slow motion against a white field—a version of the "G80 Unfinished Receiver" engraved with an icon of the State of Texas interpolating a version of the "G80 Grip Module" engraved with the phrase "Umbilicus Limbo":



During this part of the video, music plays.

m.   At time ~0:23, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a dynamic view (panning and scanning) of these works in slow motion against a white field —a version of the "G80 Jig Set" interposing a version of the "G80 Unfinished Receiver" and a version "G80 Grip Module":



During this part of the video, music plays.

23

Copy from re:SearchTX

n.    At time ~0:10, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately five seconds a dynamic view (panning and scanning) of these works in slow motion against a white field—the "G80 Jig Set," "G80 Unfinished Receiver," and "G80 Grip Module":



During this part of the video, music plays.

o.    At time ~0:31, Defense Distributed's "G80 | Next-Gen Receivers" video presents for approximately two seconds a static view of this work against a white field—an atypographic presentation of "G80":



During this part of the video, music plays.  Then the video fades to black.

p.    When hosted at YouTube, links to video sometimes appeared with one of these thumbnails:





24

Copy from re:SearchTX

48.     YouTube began hosting the "G80 | Next-Gen Receivers" video on April 28, 2025. YouTube took down (stopped hosting) the "G80 | Next-Gen Receivers" video on May 2, 2025.

49.     When YouTube took down Defense Distributed's G80 video, YouTube issued the following notice: "This video has been removed for violating YouTube's Community Guidelines."

50.     By censoring Defense Distributed's "G80 | Next-Gen Receivers" video, YouTube targeted protected speech based solely on the pro-gun viewpoint of the video and/or its publisher and/or its viewers, in direct violation of Texas Civil Practice and Remedies Code Chapter 143A. This video's suppression reflects YouTube's systemic bias against Second Amendment advocacy and exemplifies the broader pattern of viewpoint-based discrimination against pro-gun content on YouTube.

**C.     YouTube illegally censored the Vice documentary about Defense Distributed.**

51.     The Vice documentary "Inside The Battle To Arm America" is a video about Defense Distributed and its founder, Cody Wilson, that was published and widely viewed on YouTube before YouTube took it down in violation of Texas Civil Practice and Remedies Code Chapter 143A.

52.     The censored Vice documentary about Cody Wison's direction of Defense Distributed constitutes "speech" protected by the First Amendment to the Constitution of the United States that is fully law-abiding and perfectly safe. It explores the cultural, political, and technological dimensions of the Second Amendment in the United States, focusing on the activities of Defense Distributed, Cody Wilson, and the broader debate over firearms access and regulation. As a journalistic work, it delivers critical expression on legal, political, cultural, and

25

Copy from re:SearchTX

technological matters, including the Second Amendment, firearms innovation, and the societal debate over gun rights. The documentary's interviews, narration, and visuals convey a balanced exploration of pro-gun and anti-gun viewpoints, making it core protected speech under both federal and Texas law. Its focus on Defense Distributed and other pro-gun advocates situates it as a significant contribution to public discourse on a matter of constitutional importance.

53.     The censored Vice documentary about Cody Wison's direction of Defense Distributed is law-abiding in every respect. It does not depict, promote, or incite any illegal activity, nor does it violate any federal or state laws, including those regulating firearms or online content. The video's discussion of 3D-printed firearms components, such as those developed by Defense Distributed, addresses lawful activities, and its portrayal of firearms trade shows further align it with lawful commentary on judicial and cultural developments, comparable to news articles or televised debates on Second Amendment issues.

54.     The censored Vice documentary about Cody Wison's direction of Defense Distributed is also safe for hosting on a platform like YouTube. It contains no violent, dangerous, or harmful content, nor does it encourage such behavior. The visuals of firearms and components are presented in a journalistic context, akin to images in news reports or educational materials, posing no risk to viewers or the public. The inclusion of interviews, archival footage, and balanced narration ensures the content is informational and non-inflammatory.

55.     The censored Vice documentary about Cody Wison's direction of Defense Distributed presents the following content:

(a)     At time ~0:00 to ~2:00, the Vice documentary opens with an introductory segment featuring archival footage of firearms and news clips discussing gun culture in

Copy from re:SearchTX

America, overlaid with narration that frames the Second Amendment as a polarizing issue. The segment introduces the documentary's intent to examine the efforts of pro-gun activists to expand access to firearms through technological innovation and advocacy.

(b)     At time ~2:01 to ~8:00, the Vice documentary profiles Defense Distributed, highlighting its role in developing 3D-printed firearms components and its legal battles.    This segment includes interviews with Defense Distributed representatives, footage of their workshops, and visuals of 3D printers and firearm parts, accompanied by narration discussing the implications of decentralized firearms manufacturing.

(c)     At time ~8:01 to ~14:00, the Vice documentary shifts to broader Second Amendment advocacy, featuring interviews with gun rights activists, scenes from firearms trade shows, and discussions of legislative efforts to protect gun ownership. Visuals include displays of legal firearms and accessories, with narration emphasizing the cultural significance of the right to bear arms.

(d)     At time ~14:01 to ~20:00, the Vice documentary examines counterperspectives, including interviews with gun control advocates and footage of anti-gun protests. This segment provides a balanced journalistic approach, presenting arguments for stricter firearms regulations while maintaining focus on the pro-gun movement's motivations and activities.

(e)     At time ~20:01 to ~26:00, the Vice documentary concludes with a reflective segment, combining narration, interviews, and visuals of American landscapes and

27

Copy from re:SearchTX

firearms to underscore the ongoing tension between individual rights and public safety. The documentary closes with a call for viewers to engage in informed dialogue about the Second Amendment, fading to credits with background music.

56.    YouTube began hosting this video in March of 2013, resulting in over 12 million views. YouTube took down (stopped hosting) this video recently, after the enactment of Chapter 143A's key non-discrimination mandate.

57.    By censoring the Vice documentary about Cody Wison's direction of Defense Distributed, YouTube discriminated against user speech based solely on the pro-gun viewpoint of the video's subject and/or the pro-gun viewpoint of the video's viewers, in direct violation of Texas Civil Practice and Remedies Code Chapter 143A. This aligns with the viewpoint-based discrimination seen in YouTube's treatment of Defense Distributed's content and other pro-gun videos. Animus is further evidenced by YouTube's pattern of censoring pro-gun content while permitting comparable journalistic works on other controversial topics, such as immigration or climate change, to remain hosted without restriction. This video's suppression reflects YouTube's systemic bias against Second Amendment advocacy and exemplifies the broader pattern of viewpoint-based discrimination against pro-gun content on YouTube.

**D.    Google's advertising policies illegally censored Defense Distributed.**

58.    Google operates the Google Ads platform, another critical tool for Defense Distributed to promote its lawful firearms technology and Second Amendment advocacy. Google has systematically censored Defense Distributed's advertisements based on the pro-gun viewpoint of Defense Distributed, its speech, and its audience.

28

Copy from re:SearchTX

59.     Repeatedly during effective period of Chapter 143A, Defense Distributed sought to publish lawful advertisements through the Google Ads platform and was stifled by a "Guns" policy that prohibits content featuring firearm parts.  Just like YouTube's Firearms policy, the Google Ads "Guns" policy expressly discriminates against safe and lawful pro-gun speech, deeming such advertisements ineligible while permitting ads on other analogous non-gun topics:



These actions targeted Defense Distributed's pro-gun viewpoint, not illegal or dangerous content.

29

Copy from re:SearchTX

### E.    YouTube and Google's illegal censorship causes irreparable harm.

60.    YouTube's viewpoint-based censorship of content by and about Defense Distributed causes irreparable harm to Plaintiff's First Amendment liberties and its mission to advance Second Amendment discourse.  So does Google's censorship via discriminatory Ads platform policies.

61.    The "G80 | Next-Gen Receivers" video, a 38-second artistic and political expression of lawful firearms innovation, and the Vice documentary, a 26-minute journalistic exploration of pro-gun advocacy featuring Defense Distributed, both constitute protected speech under the First Amendment and Texas Civil Practice and Remedies Code Chapter 143A.  By removing or suppressing these videos, YouTube has suppressed Defense Distributed's ability to communicate its pro-gun viewpoint to a global audience, inflicting a direct and ongoing injury to its constitutional freedoms.

62.    The censorship of these videos and advertisements exemplifies a broader pattern of Defendants' animus toward Second Amendment advocacy, targeting both content created by Defense Distributed and content about its lawful activities.  This dual censorship demonstrates the Defendants' intent to suppress Defense Distributed's voice and erase its contributions to public discourse on the Second Amendment, causing irreparable harm by stifling protected speech.

63.    The irreparable harm to Defense Distributed is compounded by the loss of its ability to reach its audience on YouTube, the world's largest video-sharing platform, and the Google Ads platform.  The removal of the "G80 | Next-Gen Receivers" video deprives Plaintiff of a critical platform to share its innovative and expressive content, undermining its mission to educate and engage the public on lawful firearms technology. Likewise, the takedown of the Vice documentary eliminates a widely accessible, third-party perspective on Defense Distributed's work, further

30

Copy from re:SearchTX

isolating Defense Distributed from potential supporters, collaborators, and viewers. And the censorship accomplished via Google's Google Ads policies further stifles Defense Distributed's ability to engage viewers, supporters, and customers.

64.     Defense Distributed's ability to shape public discourse on the Second Amendment, a matter of profound constitutional and cultural significance, is uniquely dependent on platforms like YouTube and Google Ads. Content creators like Defense Distributed now face ongoing pressure to self-censor to avoid penalties such as channel strikes or termination, stifling innovation and discourse on lawful firearms technology. This chilling effect undermines the public's access to diverse perspectives on the Second Amendment, a core issue of constitutional significance. By censoring both Plaintiff's own publications and third-party content about its activities, Defendants have severed this vital channel of communication, causing ongoing and irreparable harm to Plaintiff's reputation, outreach, and advocacy efforts.

65.     Defendants' viewpoint-based censorship of Defense Distributed's content inflicts significant economic harm by depriving it of revenue opportunities tied to its YouTube presence and the Google Ads platform. The demonetization and removal of Defense Distributed's speech eliminates potential advertising income, sponsorships, and partnerships critical to sustaining Defense Distributed's operations as a private defense contractor. These financial losses, directly attributable to YouTube and Google's discriminatory practices, exacerbate the irreparable harm caused by the suppression of Plaintiff's protected speech.

66.     Beyond economic losses, YouTube and Google's censorship causes severe reputational harm to Defense Distributed, undermining its standing as a leader in Second Amendment advocacy and firearms technology innovation. By removing content by and about

31

Copy from re:SearchTX

Defense Distributed, YouTube and Google falsely signal to the public that Defense Distributed's lawful activities are inappropriate or harmful, damaging its credibility with supporters, collaborators, and the broader gun rights community. This reputational injury, compounded by the lack of a public platform to counter such misperceptions, constitutes an ongoing and irreparable harm that Chapter 143A redresses.

67.     The joint economic and reputational harms resulting from YouTube and Google's censorship create a compounding effect, threatening Defense Distributed's ability to fulfill its mission of advancing Second Amendment rights through technological and discursive innovation. These injuries, which cannot be fully quantified or remedied through monetary damages alone, underscore the urgent need for injunctive relief to halt YouTube and Google's unlawful practices and restore Defense Distributed's ability to engage with its audience.

*     *     *

68.     Defense Distributed never waived the protections of Texas Civil Practice and Remedies Code Chapter 143A as a matter of fact.

69.     Alternatively, Defense Distributed never waived the protections of Texas Civil Practice and Remedies Code Chapter 143A as a matter of law because any "waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract." Tex. Civ. Prac. & Rem. Code § 143A.003.

32

Copy from re:SearchTX

## VII.    Causes of Action

### A.    Count One: Message Censorship

70.    Defendants are violating Texas Civil Practice and Remedies Code Section 143A.002 by censoring publications on the YouTube and Google Ads platforms by and about Defense Distributed because of the viewpoints expressed in the censored publications, including in particular Defense Distributed's "G80 | Next-Gen Receivers" video, the Vice documentary "Inside The Battle To Arm America" about Cody Wilson's direction of Defense Distributed, and Defense Distributed's February 2025 Google Ad campaign.

71.    This censorship violates Texas Civil Practice and Remedies Code Sections 143A.002(a)(**1**) and 143A.002(a)(**2**).  Defendants have therefore violated and are violating Texas Civil Practice and Remedies Code Chapter 143 both with respect to Defense Distributed.

72.    *Injunctive Relief.*  For this Count, Defense Distributed is entitled to injunctive relief halting this wrongdoing temporarily and permanently.  *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(2) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . injunctive relief.").  If Defendants fail to promptly comply with any such injunction, Defense Distributed will be further entitled to an order holding them in contempt and securing immediate compliance with the order by requiring payment to Defense Distributed of daily penalties sufficient to secure immediate compliance.  *See* Tex. Civ. Prac. & Rem. Code § 143A.007(c) ("If a social media platform fails to promptly comply with a court order in an action brought under this section, the court shall hold the social media platform in contempt and shall use all lawful measures to secure immediate compliance with the order, including daily penalties sufficient to secure immediate compliance.").

Copy from re:SearchTX

73.    *Declaratory Relief.*  For this Count, Defense Distributed is entitled to declaratory relief deeming all of this conduct illegal.  *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

74.    *Attorney's Fees & Costs.*  For this Count, Defense Distributed is entitled to an award of its attorney's fees and costs.  *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

75.    Plaintiff incorporates into this Count all of the allegations in Parts I-VI.

**B.    Count Two: Messenger Censorship.**

76.    Defendants are violating Texas Civil Practice and Remedies Code Section 143A.002 by censoring publications on the YouTube and Google Ads platforms by and about Defense Distributed because of the viewpoints expressed by Defense Distributed at large (outside of the censored publications), including in particular Defense Distributed's "G80 | Next-Gen Receivers" video, the Vice documentary "Inside The Battle To Arm America" about Cody Wilson's direction of Defense Distributed, and Defense Distributed's February 2025 Google Ad campaign.

77.    This violates Texas Civil Practice and Remedies Code Sections 143A.002(a)(1) and 143A.002(a)(2).  Defendants have therefore violated and is violating Texas Civil Practice and Remedies Code Chapter 143 with respect to Defense Distributed.

Copy from re:SearchTX

78.    Injunctive Relief.  For this Count, Defense Distributed is entitled to injunctive relief halting this wrongdoing temporarily and permanently.  See Tex. Civ. Prac. & Rem. Code § 143A.007(b)(2) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . injunctive relief.").  If Defendants fail to promptly comply with any such injunction, Defense Distributed will be further entitled to an order holding them in contempt and securing immediate compliance with the order by requiring payment to Defense Distributed of daily penalties sufficient to secure immediate compliance.  See Tex. Civ. Prac. & Rem. Code § 143A.007(c) ("If a social media platform fails to promptly comply with a court order in an action brought under this section, the court shall hold the social media platform in contempt and shall use all lawful measures to secure immediate compliance with the order, including daily penalties sufficient to secure immediate compliance.").

79.    Declaratory Relief.  For this Count, Defense Distributed is entitled to declaratory relief deeming all of this conduct illegal. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

80.    Attorney's Fees & Costs.  For this Count, Defense Distributed is entitled to an award of its attorney's fees and costs. See Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

81.    Plaintiffs incorporate into this Count all of the allegations in Parts I-VI.

35

Copy from re:SearchTX

C.      **Count Three: Audience Censorship.**

82.      Defendants are violating Texas Civil Practice and Remedies Code Section 143A.002 by censoring publications on the YouTube and the Google Ads platforms by and about Defense Distributed because of the viewpoints expressed by Defense Distributed's audience, including in particular Defense Distributed's "G80 | Next-Gen Receivers" video, the Vice documentary "Inside The Battle To Arm America" about Cody Wilson's direction of Defense Distributed, and Defense Distributed's February 2025 Google Ad campaign.

83.      This violates Texas Civil Practice and Remedies Code Sections 143A.002(a)(**1**) and 143A.002(a)(**2**). Defendants have therefore violated and is violating Texas Civil Practice and Remedies Code Chapter 143 with respect to both Defense Distributed.

84.      *Injunctive Relief.* For this Count, Defense Distributed is therefore entitled to injunctive relief halting this wrongdoing temporarily and permanently. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(2) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . injunctive relief."). If Defendants fails to promptly comply with any such injunction, Defense Distributed will be further entitled to an order holding them in contempt and securing immediate compliance with the order by requiring payment to Defense Distributed of daily penalties sufficient to secure immediate compliance. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(c).

85.      *Declaratory Relief.* For this Count, Defense Distributed is entitled to declaratory relief deeming all of this conduct illegal. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

36

Copy from re:SearchTX

86.    *Attorney's Fees & Costs.*  For this Count, Defense Distributed is entitled to an award of its attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . declaratory relief including costs and reasonable and necessary attorney's fees under Section 37.009. . . .").

87.    Plaintiffs incorporate into this Count all of the allegations in Parts I-VI.

## VIII.    Prayer for Relief.

88.    Defense Distributed requests a judgment in its favor on all counts.

### A.    Injunctive Relief

89.    Defense Distributed requests a judgment awarding it all of the injunctive relief to which it is entitled, *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(2)) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover: . . . (2)  injunctive relief."), including but not limited to the following:

(a)    Defense Distributed requests a temporary injunction stopping Defendants' ongoing violations of Texas Civil Practice and Remedies Code Sections 143A.002(a) and 143A.002(b).

(b)    Defense Distributed requests a permanent injunction stopping Defendants' ongoing violations of Texas Civil Practice and Remedies Code Sections 143A.002(a) and 143A.002(b).

(c)    Injunctive Relief:  Defense Distributed requests an injunction pending appeal, if any, of Defendants' ongoing violations of Texas Civil Practice and Remedies Code Sections 143A.002(a) and 143A.002(b).

Copy from re:SearchTX

**B.    Declaratory Relief**

90.    Defense Distributed requests a judgment awarding it all of the declaratory relief to which it is are entitled. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(1) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover: (1) declaratory relief under [Texas Civil Practice & Remedies Code] Chapter 37 . . . ."), including but not limited to the following:

(a)    Defense Distributed requests a declaration that Defendants violated and are violating Texas Civil Practice and Remedies Code Sections 143A.002(a)(1) ("A social media platform may not censor a user, a user′s expression, or a user′s ability to receive the expression of another person based on . . . the viewpoint of the user or another person . . . .") by engaging in viewpoint-based discrimination of publications by Defense Distributed.

(b)    Defense Distributed requests a declaration that Defendants violated and are violating 143A.002(a)(2) ("A social media platform may not censor a user, a user′s expression, or a user′s ability to receive the expression of another person based on . . . the viewpoint represented in the user′s expression or another person′s expression . . . .") by engaging in viewpoint-based discrimination of publications about Defense Distributed.

**C.    Costs & Attorney's Fees**

91.    Defense Distributed requests a judgment awarding them all of the costs and attorney's fees to which they are entitled, including but not limited to the following:

(a)    Defense Distributed requests a judgment ordering that Defendants pay Plaintiffs' costs for this action pursuant to Texas Civil Practice and Remedies Code Chapter

38

Copy from re:SearchTX

143A and Texas Civil Practice and Remedies Code Chapter 37. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(1) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . costs . . . under [Texas Civil Practice and Remedies Code] Section 37.009 . . . ."); Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs . . . as are equitable and just.").

(b)     Defense Distributed requests a judgment ordering that Defendants pay Plaintiffs' attorney's fees for this action pursuant to Texas Civil Practice and Remedies Code Chapter 143A and Texas Civil Practice and Remedies Code Chapter 37. *See* Tex. Civ. Prac. & Rem. Code § 143A.007(b)(1) ("If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover . . . reasonable and necessary attorney's fees under [Texas Civil Practice and Remedies Code] Section 37.009 . . . ."); Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award … reasonable and necessary attorney's fees. . . as are equitable and just.").

92.     Defense Distributed requests a judgment awarding them all other relief to which they are entitled. *See* Tex. R. Civ. P. 47(d).

Copy from re:SearchTX

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Colleen McKnight
Texas Bar No. 24078976
colleen.mcknight@mcknightlaw.us
McKnight Law PLLC
801 Travis Street Suite 2101
PMB 698
Houston, TX 77002
(713) 487-5645

**COUNSEL FOR PLAINTIFF
DEFENSE DISTRIBUTED**

Copy from re:SearchTX

## CERTIFICATE OF SERVICE

I hereby certify that I served this filing in accordance with Texas Rules of Civil Procedure 21 and 21a on June 6, 2025.


By: */s/ Colleen McKnight*
Colleen McKnight

41

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charles Flores on behalf of Charles Flores
Bar No. 24059759
cf@chadflores.law
Envelope ID: 101746746
Filing Code Description: Petition
Filing Description: PLAINTIFFS ORIGINAL PETITION
Status as of 6/9/2025 8:06 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Colleen McKnight | | colleen.mcknight@mcknightlaw.us | 6/6/2025 10:56:04 PM | SENT |
| Charles Flores | | cf@chadflores.law | 6/6/2025 10:56:04 PM | SENT |

Copy from re:SearchTX