**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| DEFENSE DISTRIBUTED,<br><br>                              Plaintiff,<br><br>v.<br><br>YOUTUBE LLC, GOOGLE LLC, and<br>ALPHABET, INC.<br><br>                              Defendants. | Case No. 1:25-cv-1095-ADA |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

I.    REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION IS NOT
      COLORABLE BECAUSE PLAINTIFF EXPRESSLY AND
      UNAMBIGUOUSLY PLEADED AN AMOUNT IN EXCESS OF THE
      JURISDICTIONAL THRESHOLD ................................................................ 1

      A.    This Court Must Credit Plaintiff's Pleaded Allegations Of An Amount In
            Controversy Exceeding $75,000 ................................................................ 2

      B.    The Court Has Diversity Jurisdiction; Plaintiff's Empty Representations
            About Monetary Relief Change Nothing .................................................... 4

            1.    The Court May Not, As A Matter of Law, Consider Plaintiff's
                  Post-Removal Stipulations Limiting Monetary Recovery To Secure
                  Remand ............................................................................................ 4

            2.    Plaintiff Did Not Disavow Non-Monetary Relief that Plaintiff
                  Admits is Worth More Than $75,000 ........................................... 5

II.   ALTERNATIVELY, THIS COURT HAS FEDERAL QUESTION
      JURISDICTION BECAUSE PLAINTIFF'S CHAPTER 143A CLAIM TURNS
      ON SUBSTANTIAL QUESTIONS OF FEDERAL LAW ............................... 8

      A.    This Litigation Requires Resolution Of A Federal Question (Grable Factor
            1) ................................................................................................................. 9

      B.    The Federal Issues Are Disputed (Grable Factor 2) ............................... 12

      C.    The Federal Issues Are Substantial (Grable Factor 3) ........................... 12

      D.    Federal Jurisdiction Would Not Disturb The Balance Of Federal And State
            Law (Grable Factor 4) ............................................................................. 13

III.  THE COURT EXPRESSLY PERMITTED SUPPLEMENTAL BRIEFING ON
      ALL OF THE ISSUES DISCUSSED ABOVE ............................................. 14

IV.   CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. R & H Oil & Gas Co.*,
    63 F.3d 1326 (5th Cir. 1995) .................................................2

*Bd. of Comm'rs of Se. La. Flood Prot. Auth. East v. Tenn. Gas Pipeline Co.*,
    850 F.3d 714 (5th Cir. 2017) ..................................9, 12, 13, 14

*Davis v. Meta Platforms, Inc.*,
    No. 4:22-CV-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023) .........................6

*De Aguilar v. Boeing Co.*,
    47 F.3d 1404 (5th Cir. 1995) ...............................................2, 5

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ................................................13, 14

*Farkas v. GMAC Mortg., L.L.C.*,
    737 F.3d 338 (5th Cir. 2013) .................................................6

*Foret v. S. Farm Bureau Life Ins. Co.*,
    918 F.2d 534 (5th Cir. 1990) .................................................3

*Garcia v. Koch Oil Co. of Tex., Inc.*,
    351 F.3d 636 (5th Cir. 2003) .................................................2

*Gebbia v. Wal-Mart Stores, Inc.*,
    233 F.3d 880 (5th Cir. 2000) ...............................................4, 5

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005).................................................9, 10, 12, 13

*Hayday Farms, Inc. v. FeeDx Holdings, Inc.*,
    55 F.4th 1232 (9th Cir. 2022) .................................................8

*Hughes v. Chevron Phillips Chem. Co. LP*,
    478 F. App'x 167 (5th Cir. 2012) .................................................9

*Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*,
    579 F.3d 546 (5th Cir. 2009) .................................................3

*Leininger v. Leininger*,
    705 F.2d 727 (5th Cir. 1983) ...............................................2, 6

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
    276 F.3d 720 (5th Cir. 2002) ...............................................7, 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024)............................................................................................10, 12, 13, 14

*NetChoice, L.L.C. v. Paxton,*
    49 F.4th 439 (5th Cir. 2022) ..........................................................................................14

*Procare Auto., LLC v. MidAmerican Energy Servs., LLC,*
    No. SA-21-CV-00896-XR, 2021 WL 5822832 (W.D. Tex. Dec. 7, 2021) ...........................7

*Rhode Island Truck Ctr. LLC v. Daimler Trucks N.A. LLC,*
    92 F.4th 330 (1st Cir. 2024).............................................................................................8

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
    303 U.S. 283 (1938)......................................................................................................2, 5

*Tantaros v. Fox News Network, LLC,*
    12 F.4th 135 (2d. Cir. 2021) ......................................................................................10, 11

*Torres v. JPMorgan Chase Bank,*
    No. 4:11-CV-01981, 2011 WL 13340083 (S.D. Tex. Dec. 2, 2011)...................................6

**Statutes**

47 U.S.C. § 230...................................................................................................................10, 13

Tex. Civ. Prac. & Rem. Code
    § 93.001.........................................................................................................................10
    § 147.084.......................................................................................................................10
    § 143A...................................................................................................................*passim*

N.Y. C.P.L.R. § 7515.................................................................................................................10

Pursuant to the Court's direction at the November 6, 2025 hearing on Plaintiff's motion to remand, Defendants submit this supplemental brief. At the hearing, following Plaintiff's oral stipulation to limit its monetary recovery to less than $75,000, the Court invited Defendants to submit supplemental briefing on whether it had federal question jurisdiction, as well as "any other arguments as to why there might be federal jurisdiction[.]" *See* Declaration of Michael Rome ("Rome Decl."), Ex. A, Nov. 6, 2025 Hr'g Tr. ("Hr'g Tr."), at 26:23-27:11. As explained below, there is still federal jurisdiction and remand must be denied because (1) Plaintiff's post-removal oral stipulation at the hearing cannot deprive this Court of jurisdiction as a matter of law; (2) Plaintiff's admissions in the Petition conclusively establish the amount-in-controversy is met; and (3) federal question jurisdiction exists over Plaintiff's claims.

## I.    REMAND FOR LACK OF SUBJECT-MATTER JURISDICTION IS NOT COLORABLE BECAUSE PLAINTIFF EXPRESSLY AND UNAMBIGUOUSLY PLEADED AN AMOUNT IN EXCESS OF THE JURISDICTIONAL THRESHOLD

Plaintiff *expressly*, *intentionally*, and *unambiguously* alleged in its pleading that the "*amount in controversy exceeds $5 million*, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs[.]" Pet. ¶ 14 (emphasis added). At the hearing, however, in a desperate attempt to destroy this Court's jurisdiction, Plaintiff stipulated that it would not seek more than $74,999 in monetary recovery in this case. Hr'g Tr. at 20:20-21:13. Notwithstanding Plaintiff's extraordinary about-face at the hearing, binding law precludes remand and requires this Court to credit the Petition's express amount-in-controversy allegation. More pointedly, black letter law *precludes* post-removal amount-in-controversy stipulations from undoing facially proper diversity jurisdiction. The law also *requires* that the amount-in-controversy analysis include the value of declaratory and injunctive relief, in addition to damages. And because the law requires looking at the value of such equitable relief from *Plaintiff's* perspective, Plaintiff's unambiguous allegation that the "*amount in controversy exceeds $5*

*million, excluding* interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs" is dispositive. Pet. ¶ 14 (emphasis added).

Accordingly, granting remand here would be error.

### A.    This Court Must Credit Plaintiff's Pleaded Allegations Of An Amount In Controversy Exceeding $75,000

It has long been the rule that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995) ("The face of the plaintiff's pleading will not control if made in bad faith."). If it is "facially apparent" from the plaintiff's state court petition that the claim exceeds the jurisdictional amount, the amount-in-controversy requirement is satisfied. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Plaintiff has not argued that its allegation in the Petition was made in bad faith, as it wishes to remain in the Texas Business Court post-remand, and presumably because doing so would be tantamount to an admission it violated Texas Rule of Civil Procedure 13 (the Texas state-law equivalent of Rule 11).

The Court must therefore credit Plaintiff's good faith allegation regarding the amount in controversy. Crediting Plaintiff's allegation is all the more appropriate because Plaintiff seeks injunctive and declaratory relief. In evaluating the amount in controversy for such claims, the Court must employ the "plaintiff-viewpoint" rule, meaning that the amount in controversy is calculated from the plaintiff's perspective. *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 639-40 & 640 n.4 (5th Cir. 2003). And a plaintiff's pleadings often establish the value of the injunctive relief. *See, e.g.*, *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) (suit seeking to "nullify the $105,000.00 Ohio state court judgment and enjoin its enforcement" was "well in excess of the

required jurisdictional amount."); *infra* at 6 (collecting other cases where courts valued equitable relief for purposes of determining amount in controversy).

Here, it is Plaintiff's perspective that matters and Plaintiff *expressly* pleaded that the value of the non-monetary relief it seeks "*exceeds $5 million.*" Pet. ¶ 14 (emphasis added). Plaintiff's $5+ million allegation in the Petition *excludes* "interest, statutory damages, exemplary damages, penalties, attorneys' fees, and court costs" from the $5+ million. *Id.* Under Section 143A.007, Plaintiff's only available remedies are declaratory relief, injunctive relief, and reasonable attorneys' fees. Tex. Civ. Prac. & Rem. Code § 143A.007(b). Since the $5+ million allegation excludes attorneys' fees, $5+ million is plainly and expressly the value Plaintiff assigns to the non-monetary claims.

Plaintiff's valuation allegation is a binding judicial admission. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009) ("Factual assertions in the complaint are judicial admissions conclusively binding on the plaintiff." (citation and internal quotation marks omitted)). Indeed, Plaintiff judicially admitting its viewpoint of the value of the relief avoids this Court's worry about the reliability of experts who opine on injunction value. *See* Hr'g Tr. at 28:16-23. The value of the injunctive relief sought by Defense Distributed comes *straight* from Defense Distributed. In its pleading. Case closed.

At bottom, the Fifth Circuit has no patience for a plaintiff who *pleads* facts or claims exceeding the amount-in-controversy requirement in state court, then seeks to walk back those allegations to secure remand. *See Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 538 (5th Cir. 1990) (plaintiff's complaint sought attorneys' fees but, seeking remand, plaintiff argued against the recoverability of attorneys' fees: "For counsel to now argue against the facts and claims

3

contained in those pleadings is somewhat disingenuous if not totally spurious."). This Court should follow the Fifth Circuit and hold Plaintiff to its word.

### B. The Court Has Diversity Jurisdiction; Plaintiff's Empty Representations About Monetary Relief Change Nothing

#### 1. The Court May Not, As A Matter of Law, Consider Plaintiff's Post-Removal Stipulations Limiting Monetary Recovery To Secure Remand

At the hearing, the Court invited Plaintiff to "go on the record and say that there's no possibility you are seeking more than $74,999 in this case" to resolve the question of diversity jurisdiction. Hr'g Tr. at 21:2-4. Plaintiff responded with a different statement: "we will not seek a recovery of *damages* more than $75,000," and acknowledged it was "happy to say that that's not part of what we want" because "[t]he argument on the other side is the value of [the] injunction." *Id.* at 21:12-18 (emphasis added). The Court then clarified that it "meant total recovery, damages and attorneys' fees, won't go over $75,000," and Plaintiff never disputed that its stipulation included fees as well. *Id.* at 22:24–25.[1] The Court then indicated it was tentatively inclined to grant remand in light of Plaintiff's oral stipulation, but permitted supplemental briefing. *Id.* at 21:12-13, 26:7-27:1.

Defendants appreciate the opportunity to provide the Court with supplemental briefing on the legal impact of Plaintiff's oral stipulation because the cases are clear: ***Remand in these circumstances does not comport with the law.*** A continuous thread of binding authority for at least the last 85 years precludes what Plaintiff invites this Court to do. The general rule is that post-removal events reducing the amount in controversy to less than $75,000 "do not deprive the district court of jurisdiction." *Gebbia v. Wal-Mart Stores, Inc*., 233 F.3d 880, 883 (5th Cir. 2000) (citing *St. Paul Mercury Indem.*, 303 U.S. at 292). When the "face of the pleadings" show removal was

---

[1] Plaintiff subsequently confirmed in writing that its stipulation to limit its recovery to $75,000 at the hearing applied not only to damages, but also to attorneys' fees. Rome Decl., Ex. B.

proper, "a reduction of the amount claimed after removal" does not take away a defendant's privilege to remove the case to federal court. *St. Paul Mercury Indem.*, 303 U.S. at 296. Thus, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit *with their complaints*; once a defendant has removed the case, *St. Paul* makes later filings *irrelevant.*" *De Aguilar*, 47 F.3d at 1412 (alteration in original) (emphasis added) (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) (per curiam)). Lest there be doubt, where, as here, "it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, *post-removal affidavits, stipulations*, and *amendments reducing the amount do not deprive the district court of jurisdiction.*" *Gebbia*, 233 F.3d at 883 (emphasis added).

It cannot be said too often: Plaintiff's Petition expressly alleges that "this is an action in which the amount in controversy exceeds $5 million[.]" Pet ¶ 14. Given this crystal clear allegation, it is "facially apparent from the petition that the amount in controversy exceeds $75,000," and Plaintiff's post-removal oral stipulation cannot "deprive the district court of jurisdiction" as a matter of law. *Gebbia*, 233 F.3d at 883.

### 2. Plaintiff Did Not Disavow Non-Monetary Relief that Plaintiff Admits is Worth More Than $75,000

Even if this Court could lawfully consider a post-removal stipulation (and it cannot), Plaintiff's proffered stipulation is smoke-and-mirrors because Plaintiff did not stipulate to limit the actual relief it seeks in this case. Its stipulation did not limit its injunctive and declaratory relief, which Plaintiff values at over $5 million. And its post-removal agreement to seek only $74,999 in attorneys' fees—when it *admits* it will need to incur over $1 million in fees to prevail—effectively confirms that the value of the injunction to Plaintiff exceeds $75,000.

Start with injunctive and declaratory relief. Plaintiff is *not waiving* its claim for this relief. It did not do so at the hearing and it confirmed as much post-hearing. *See* Rome Decl., Ex. B. That

ends the inquiry because, again, Plaintiff pleaded that these claims were valued in excess of $5 million. Pet. ¶ 14. As noted above, such claims are valued for purposes of determining the amount-in-controversy from the Plaintiff's perspective. *Supra* at 2-3. Since Plaintiff admitted the value was over $5 million, that ends the inquiry.

Plaintiff's post-removal stipulation regarding monetary relief changes nothing because it is still seeking injunctive and declaratory relief. *See* Pet. ¶¶ 72, 78, 84, 89 (seeking injunction and declaratory relief); Rome Decl., Ex. B (11/18/25 email from Plaintiff's counsel confirming it intends to continue seeking such relief). The law requires the Court to account for the value of injunctive or declaratory relief in the amount-in-controversy analysis. *See Farkas v. GMAC Mortg.*, *L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (valuing equitable relief); *Leininger*, 705 F.2d at 729 (same); *Torres v. JPMorgan Chase Bank*, No. 4:11-CV-01981, 2011 WL 13340083, at *2 (S.D. Tex. Dec. 2, 2011) ("because Plaintiff has also sought an injunction, the court must value that request by the value of the object in litigation." (citation and internal quotation marks omitted)).

When the issue of valuing injunctive relief arose at the hearing, the Court voiced doubt, remarking that it would "*Daubert*" any expert who sought to testify as to the value of an injunction. Hr'g Tr. at 28:21-23. But courts routinely value injunctive relief for purposes of determining the amount in controversy. *See Leininger*, 705 F.2d at 729; *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-01001, 2023 WL 4670491, at *7 (E.D. Tex. July 20, 2023) (valuing a Chapter 143A's declaratory and injunctive relief and finding amount in controversy had been met); *Torres*, 2011 WL 13340083, at *2.

And whatever difficulty may lay in valuing injunctions in the abstract, there is none here for three reasons:

**First**, and easiest, Plaintiff's judicial admission that the non-monetary remedies are worth more than $5 million to Plaintiff conclusively answers the question. Pet. ¶ 14.

**Second**, Plaintiff's stipulated limit on its monetary recovery is $74,999; thus, even if the injunction and declaration it seeks are given *nominal* or *de minimis* value, the amount-in-controversy requirement is satisfied. Plaintiff's own petition says the injunction is necessary to prevent Defendants from inflicting "significant economic harm by depriving it of revenue opportunities tied to its YouTube presence and the Google Ads platform." Pet. ¶¶ 65-67. Common sense dictates the injunction is worth at least $1.01, which is all that is necessary to reach the jurisdictional threshold. *Procare Auto., LLC v. MidAmerican Energy Servs., LLC*, No. SA-21-CV-00896-XR, 2021 WL 5822832, at *3-4 (W.D. Tex. Dec. 7, 2021) (holding amount in controversy met because while the declaratory relief was only valued at $66,530.87, the attorneys' fees plaintiff sought brought the total amount-in-controversy over $75,000 when aggregated with the value of the declaratory relief); *Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 724 (5th Cir. 2002) (holding the plaintiff met its burden to establish the amount in controversy through an affidavit claiming that statutory attorneys' fees that could be recovered throughout the course of the case would likely exceed $75,000).

**Third**, Plaintiff's monetary stipulation demonstrates the value of the non-monetary relief far exceeds any amount-in-controversy requirement. Plaintiff admits that its fees through the life of the case will exceed a million dollars. Reply ISO Pl.'s Mot. to Remand ("Reply") (Dkt. No. 41) at 3, 7. But now, by its post-removal stipulation, Plaintiff admits that it is willing to incur over $925,000 in attorneys' fees (the original $1 million+ estimate being offset, at most, by Plaintiff's stipulation to seek no more than $75,000 in fees if it wins) in pursuit of potential injunctive and declaratory relief. Put another way: Plaintiff is willing to spend $925,000+ to get the injunction it

wants. At the very least, the value of the non-monetary relief is equal to the value of attorneys' fees Plaintiff admits it will incur but has now stipulated it will not seek to recover.

*    *    *

The facts establishing jurisdiction are simple. In its Petition, Plaintiff alleged that the injunctive relief was necessary in order to prevent Defendants from inflicting "significant economic harm by depriving it of revenue opportunities tied to its YouTube presence and the Google Ads platform." Pet. ¶¶ 65-67. Then, in a pleading signed under Rule 13 of the Texas Rules of Civil Procedure, Plaintiff quantified the value of avoiding that harm through injunctive relief, expressly alleging that "the amount in controversy" in this case "exceeds $5 million." Pet. ¶ 14. Since Plaintiff does not and cannot seek damages, and instead only seeks injunctive or declaratory relief, that is a black and white admission of the value of that relief to Plaintiff. And indeed, that admission was both deliberate and specific—it was a pleaded representation that jurisdiction in Texas Business Court was proper due to the amount in controversy for the non-monetary relief. Plaintiff now feigns ignorance in an effort to avoid federal jurisdiction, insisting that "[f]ree speech about the Second Amendment cannot be priced." Reply at 9. But what governs is what Plaintiff's claims said "at the time of removal," *Manguno,* 276 F.3d at 723, not its post-removal arguments or stipulations. Plaintiff's allegations facially establish federal jurisdiction. *See* Pet. ¶ 14.

## II.    ALTERNATIVELY, THIS COURT HAS FEDERAL QUESTION JURISDICTION BECAUSE PLAINTIFF'S CHAPTER 143A CLAIM TURNS ON SUBSTANTIAL QUESTIONS OF FEDERAL LAW

Courts have the power to raise any basis for federal court jurisdiction—even if not identified in the removal notice—and deny remand on that basis. *See, e.g.*, *Rhode Island Truck Ctr. LLC v. Daimler Trucks N.A. LLC*, 92 F.4th 330, 341 & n.3 (1st Cir. 2024); *Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238-39 (9th Cir. 2022) (party that removed based on diversity permitted to assert federal question jurisdiction after the court ordered supplemental

8

briefing on the issue). Having raised it at the hearing and expressly permitted Defendants to address it herein, this Court should find federal question jurisdiction.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court recognized that federal question jurisdiction exists over state law claims that "turn on substantial questions of federal law." 545 U.S. at 312. Under *Grable*, state law claims invoke federal question jurisdiction when: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs of Se. La. Flood Prot. Auth. East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721-22 (5th Cir. 2017) (citation omitted). That test is met here.

### A.      This Litigation Requires Resolution Of A Federal Question (Grable Factor 1)

"[R]esolving a federal issue is necessary to resolution of [Plaintiff's] state-law claim." *Id.*; *Grable*, 545 U.S. at 312. The Fifth Circuit is clear that federal question jurisdiction exists where a court cannot "establish the magnitude of any potential liability" under a state law claim "without construing [federal law]." *Tenn. Gas*, 850 F.3d at 722; *Hughes v. Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 171-72 (5th Cir. 2012) (state tort causes of action implicated question of federal law). Even where a plaintiff "has tried to frame his claims as sounding only in state law," federal question jurisdiction exists where "any judicial consideration of those claims necessarily implicates substantial questions of federal law." *Hughes*, 478 F. App'x at 171. There are two independent reasons that this case requires resolution of a federal question and accordingly confers federal question jurisdiction.

**First**, this Court's consideration of Plaintiff's Chapter 143A claim necessarily implicates substantial questions of federal law because Chapter 143A incorporates federal standards. Section 143A.007 places the burden on Plaintiff to establish a "violat[ion]" of "this chapter." Tex. Civ.

9

Prac. & Rem. Code § 143A.007. And the provisions that define what constitutes a violation expressly hinge on federal law. Section 143A.005 provides that social media platforms are not subject to "damages or other legal remedies *to the extent* the social media platform is *protected from those remedies under federal law*." § 143A.005 (emphasis added). Section 143A.006 provides that a social media platform does not commit a violation where (among other things) "the social media platform is specifically authorized to censor *by federal law*." § 143A.006(1) (emphasis added).[2] In other words, to establish a violation and obtain any remedy, Plaintiff must show that federal law does *not* authorize the alleged "censorship." But it does. *See* U.S. Const. Amend. I; 47 U.S.C. § 230(c)(2)(A); *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024) (explaining that under the First Amendment, "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity of its own."). Because Chapter 143A invalidates a claim for a violation "to the extent" federal law provides otherwise, questions of federal law are embedded in Plaintiff's prima facie case. *See* Tex. Civ. Prac. & Rem Code § 143A.005.

*Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 142-43 (2d. Cir. 2021) is directly on point. The state statute considered there read: "*Except where inconsistent with federal law*, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause[.]" N.Y. C.P.L.R. § 7515 (emphasis added). The court explained that the first *Grable* factor

---

[2] These are not affirmative defenses. The Texas Legislature chose to write Sections 143A.005 and 143A.006 using the headings "Limitation on Effect of Chapter" and "Construction of Chapter" respectively, and not "Affirmative Defenses," which is how affirmative defenses are explicitly characterized in numerous other Texas statutes. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 93.001(a) (describing "affirmative defense" of assumption of the risk in personal injury action underneath the heading "Assumption of the Risk: Affirmative Defense."); § 147.084 (describing "affirmative defense" of reliance in an action regarding false or misleading statements in computer warranties underneath heading "Affirmative Defense: Reliance").

was satisfied because "the clause conveys a necessary condition [i.e., 'federal law'] that the court must consider before further construing the scope of the prohibition." *Tantaros*, 12 F.4th at 143. The court also rejected the argument that the clause was merely a defense, explaining that the clause—especially with its "[e]xcept where inconsistent" language—"reflects the legislature's deliberate choice to require the plaintiff, at the very outset of bringing a claim under the statute, to plead consistency with federal law." *Id.*

This case is stronger than *Tantaros*: Chapter 143A twice expressly invokes federal law as a limitation and it invokes federal law on both liability and remedy. Tex. Civ. Prac. & Rem. Code §§ 143A.005, 143A.006(1). Chapter 143A mandates that a plaintiff "plead consistency with federal law," and thus requires resolution of a federal question. *See Tantaros*, 12 F.4th at 143.

**Second**, Plaintiff has alleged on the face of its Petition that it is entitled to relief to remedy the loss of its "*First Amendment* liberties." Pet. ¶ 60 (emphasis added). While the law Plaintiff sues under is state-created, Plaintiff alleges its harm is anchored in federal law. *See id.* Plaintiff specifically alleges: "YouTube's viewpoint-based censorship of content by and about Defense Distributed causes irreparable harm to Plaintiff's *First Amendment liberties* and its mission to advance Second Amendment discourse. So does Google's censorship via discriminatory Ads platform policies." *Id.* (emphasis added). Not only is any mention of state law noticeably absent from this allegation, Plaintiff's invocation of *federal* law is not an isolated incident or a typo— Plaintiff's Petition is rife with allegations premised on federal law. *Id.* ¶ 44 ("Defense Distributed's 'G80 | Next-Gen Receivers' video constitutes 'speech' protected by the *First Amendment to the Constitution of the United States* and the Second Amendment to the Constitution of the United States.") (emphasis added); ¶ 52 ("The censored Vice documentary about Cody Wilson's direction of Defense Distributed constitutes 'speech' protected by the *First Amendment to the Constitution*

11

*of the United States*.") (emphasis added). Plaintiff has not only implicated federal law on the face of its Petition, it has gone further in alleging that the irreparable harm it has suffered is governed by *federal*, not state, law. *See id*. ¶ 60.

### B. The Federal Issues Are Disputed (Grable Factor 2)

The federal issues raised by Plaintiff's Petition "are legal, not factual, questions, and the parties dispute them." *Tenn. Gas*, 850 F.3d at 723; *Grable*, 545 U.S. at 312. The federal issues described above are not only central to this case, they are *the central disputed issues* in this case. *See, e.g.*, Defs' Opp'n to Pl.'s Mot. to Remand (Dkt. No. 34) at 14 (previewing that the parties will "engage in briefing over the constitutional question of whether Chapter 143A violates the First Amendment"); Pet. ¶ 60; *see also id.* ¶ 3 ("It is YouTube's policy to suppress speech advocating the Second Amendment"); *id.* ¶ 6 ("By enforcing a 'Guns' policy that blocks ads promoting Second Amendment advocacy and legal firearms technology, Google stifles protected speech just like YouTube, reflecting a pattern of viewpoint-based discrimination across Alphabet Inc.'s ecosystem."); *id.* ¶ 7 ("Federal law should put a stop to YouTube and Google's private defeat of these critical free speech norms."). The federal issues related to content moderation by social media platforms, federal regulation of that content moderation, and the related First Amendment concerns will be the core disputed issues in the merits stages of this case, as shown by the ongoing federal *NetChoice* litigation over Chapter 143A itself. *See Moody*, 603 U.S. at 745 (vacating judgments from the Fifth and Eleventh Circuits and remanding for further proceedings).

### C. The Federal Issues Are Substantial (Grable Factor 3)

Under *Grable*, the federal issues implicated by a plaintiff's claims are substantial if they are important "to the federal system as a whole." *Tenn. Gas*, 850 F.3d at 723 (citation omitted); *Grable*, 545 U.S. at 312. An issue can be "substantial" for many reasons, including "because state adjudication would undermine the development of a uniform body of federal law," "the case

presents a nearly pure issue of law that would have applications to other federal cases," "or because resolution of the issue has broad significance for the federal government." *Tenn. Gas*, 850 F.3d at 724 (cleaned up).

This is easily met here. Texas's Chapter 143A is "novel" in its effort to regulate social media platforms—an area dominated for decades by a system of federal regulation. *See Moody*, 603 U.S. at 748 (Jackson, J., concurring in part) (describing Chapter 143A as one of two "novel state laws"). Indeed, in Section 230, the core of federal regulation of online platforms' content moderation, Congress expressly preempted "any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). And as the Fifth Circuit has recognized, there has long been a "consensus among courts regarding the liability provisions in § 230(c)(1)," a key provision of Section 230, the primary part of the federal statutory scheme regulating social media platforms' content moderation. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008).

Therefore, whether Defendants are "protected from [the] remedies [of Chapter 143A] under *federal law*," or whether Defendants are "specifically authorized" to moderate content "by *federal law*" goes directly to the center of the federal regulatory scheme of internet law and in particular the law regulating targeted platforms. Tex. Civ. Prac. & Rem. Code §§ 143A.005, 143A.006 (emphasis added). "The implications for the federal regulatory scheme of the sort of holding that [Plaintiff] seeks would be significant, and thus the issues are substantial." *Tenn. Gas*, 850 F.3d at 724.

### D.    Federal Jurisdiction Would Not Disturb The Balance Of Federal And State Law (Grable Factor 4)

Finally, federal jurisdiction would not "disturb the balance of federal and state judicial responsibilities." *Tenn. Gas*, 850 F.3d at 722; *Grable*, 545 U.S. at 312. In fact, the opposite is true: Chapter 143A is an outlier in the realm of internet regulation, which is a federally-dominated field,

as discussed above. *See* Section II.C, *supra*; *see also Moody*, 603 U.S. at 748; *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 488 (5th Cir. 2022). And there has long been a "consensus among courts" regarding key federal statutes regulating content moderation by social media platforms. *See MySpace*, 528 F.3d at 419. Further, the ongoing *NetChoice* litigation about Chapter 143A's constitutionality in *federal court* underscores the significance of a disruptive state law to the realm of internet regulation. *See generally Moody*, 603 U.S. at 716. Where, as here, "the scope and limitations of a complex federal regulatory framework are at stake," the federal issues implicated by Plaintiff's claims give rise to federal question jurisdiction. *See Tenn. Gas*, 850 F.3d at 725.

## III.    THE COURT EXPRESSLY PERMITTED SUPPLEMENTAL BRIEFING ON ALL OF THE ISSUES DISCUSSED ABOVE

Shortly before Defendants filed this brief, Plaintiff's counsel indicated Plaintiff intended to take the position that the Court had only invited Defendants to submit supplemental briefing on whether the Court had federal question jurisdiction based on *Defendants'* claims or defenses, and that leave of court was required "to submit more briefing on Plaintiff-side issues." Rome Decl., Ex. B. That is incorrect. At the hearing, the Court invited Defendants not only to submit supplemental briefing on whether the First Amendment issues could create federal question jurisdiction (Hr'g Tr. at 26:7-27:5), but also to "add any other arguments as to why there might be federal jurisdiction" (*id.* at 27:6-11). That is what Defendants have done. They have submitted a brief clarifying the remaining "arguments as to why there might be federal jurisdiction" notwithstanding Plaintiff's stipulation at oral argument—exactly what the Court asked for. *Id.*

Nor would there be any equitable basis for limiting Defendants in the way Plaintiff's counsel now suggests. The legal impact of Plaintiff's impromptu, post-removal stipulation was never briefed to the Court. Indeed, Plaintiff's post-briefing stipulation limiting its attorneys' fees recovery directly contradicted its admission in its Reply brief that fees would exceed seven figures.

And as shown above, binding Fifth Circuit case law forecloses remand under these circumstances. No wonder Plaintiff wants to limit Defendants in this way.

The hearing on remand ultimately resulted in a discussion of issues the parties never briefed, including the impact of Plaintiff's post-removal stipulation as well as whether federal question jurisdiction exists. The Court then reasonably asked for supplemental briefing on these issues in recognition of the fact that it had "thrown all of this at [the parties] and you're just having to kind of deal with me and you all have done well." *Id.* at 26:7-10. Defendants' submission is consistent with the Court's request. However, in an abundance of caution, to the extent the Court did not intend to request supplemental briefing on issues other than the federal question jurisdiction issue, Defendants respectfully request leave to submit the briefing on the other issues raised in this brief.

## IV.    CONCLUSION

Diversity jurisdiction is facially apparent from Plaintiff's unambiguous allegations in the Petition, and Plaintiff cannot erase it through a post-removal stipulation. Plaintiff's claim for equitable relief (which Plaintiff valued at over $5,000,000) independently establishes that the jurisdictional threshold of $75,000 is met. In any event, the Court has federal question jurisdiction because Plaintiff's state law Chapter 143A claim turns on substantial questions of federal law. Defendants respectfully request that the Court deny Plaintiff's motion to remand.

Dated: November 20, 2025                    Respectfully submitted,

                                            **SCOTT DOUGLASS & MCCONNICO LLP**

                                            */s/ Steven J. Wingard*
                                            Steven J. Wingard
                                            Texas Bar No. 00788694
                                            Robyn Hargrove
                                            Texas Bar No. 24031859
                                            Eli Barrish
                                            Texas Bar No. 24144433

                                            303 Colorado Street, Suite 2400
                                            Austin, TX 78701
                                            Telephone: (512) 495-6300
                                            Facsimile: (512) 474-0731
                                            swingard@scottdoug.com
                                            rhargrove@scottdoug.com
                                            ebarrish@scottdoug.com

                                            **COOLEY LLP**

                                            */s/ Jonathan Patchen*
                                            Jonathan Patchen (admitted *pro hac vice*)
                                            Michael A. Rome (admitted *pro hac vice*)
                                            Anika Holland (admitted *pro hac vice*)
                                            Madeleine R. Ahlers (admitted *pro hac vice*)

                                            3 Embarcadero Center, 20th Floor
                                            San Francisco, CA 94111
                                            Telephone: (415) 693-2000
                                            Facsimile: (415) 693-2222
                                            jpatchen@cooley.com
                                            mrome@cooley.com
                                            anika.holland@cooley.com
                                            mahlers@cooley.com

                                            *Attorneys for Defendants YouTube LLC, Google
                                            LLC, and Alphabet, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

|  |  |
|---|---|
| DEFENSE DISTRIBUTED,<br><br>       Plaintiff,<br><br>v.<br><br>YOUTUBE LLC, GOOGLE LLC, and<br>ALPHABET, INC.<br><br>       Defendants. | NO. 1:25-cv-01095-ADA |

### DECLARATION OF MICHAEL A. ROME IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF REMAND OPPOSITION

I, Michael A. Rome, declare and state as follows:

**1.**  I am a partner at Cooley LLP and an attorney of record for Defendants YouTube LLC, Google LLC, and Alphabet, Inc. (collectively, "Defendants") in the above-captioned matter. I am licensed to practice law in the state of California and am admitted *pro hac vice* to practice before this Court. I make this declaration based on my personal knowledge and, if called as a witness, I could and would testify competently to the matters stated herein.

**2.**  Attached hereto as **Exhibit A** is a true and correct copy of the transcript of the November 6, 2025 hearing in this case.

**3.**  Attached hereto as **Exhibit B** is a true and correct copy of an email chain reflecting emails between counsel for Plaintiff and Defendants.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 20, 2025 in San Francisco, California.

_/s/ Michael A. Rome_____
Michael A. Rome

# EXHIBIT A

-1-

1                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
2                         AUSTIN DIVISION

3    DEFENSE DISTRIBUTED       *
                               *        November 6, 2025
4    VS.                       *
                               *  CIVIL ACTION NO. 1:25-CV-1095
5    YOUTUBE LLC, ET AL.       *

6            BEFORE THE HONORABLE ALAN D ALBRIGHT
                 MOTIONS HEARING (via Zoom)
7
     APPEARANCES:
8
     For the Plaintiff:   Charles R. Flores, Esq.
9                         Flores Law PLLC
                          917 Franklin Street, Suite 600
10                        Houston, TX 77002

11   For the Defendants:  Jonathan Alan Patchen, Esq.
                          Anika Holland, Esq.
12                        Cooley, LLP
                          3 Embarcadero Center, 20th Floor
13                        San Francisco, CA 94111

14                        Steven J. Wingard, Esq.
                          Scott, Douglass & McConnico, L.L.P.
15                        303 Colorado Street, Suite 2400
                          Austin, TX 78701
16
     Court Reporter:      Kristie M. Davis, CRR, RMR
17                        PO Box 20994
                          Waco, Texas 76702
18                        (254) 666-0904

19     Proceedings recorded by mechanical stenography,

20   transcript produced by computer-aided transcription.

21

22

23

24

25

| | | |
|---|---|---|
| 10:16 | 1 | (Hearing begins.) |
| 10:16 | 2 | DEPUTY CLERK:  A civil action in Case |
| 10:16 | 3 | AU:25-CV-1095, Defense Distributed versus YouTube LLC, |
| 10:16 | 4 | et al.  Case called for a motions hearing. |
| 10:16 | 5 | THE COURT:  Announcements from counsel, |
| 10:16 | 6 | please. |
| 10:16 | 7 | MR. FLORES:  For the plaintiff Defense |
| 10:16 | 8 | Distributed, I'm Chad Flores, Your Honor. |
| 10:16 | 9 | MR. WINGARD:  For the defendants YouTube, |
| 10:16 | 10 | Google, and Alphabet, I'm Steve Wingard from Scott |
| 10:16 | 11 | Douglass & McConnico.  With me today are Jonathan |
| 10:16 | 12 | Patchen, Anika Holland, Michael Rome from Cooley.  And |
| 10:17 | 13 | Denisha Bacchus from Google as well. |
| 10:17 | 14 | THE COURT:  Okey dokey.  Thank you all. |
| 10:17 | 15 | I have a motion to transfer to the |
| 10:17 | 16 | Northern District of California.  I will hear first |
| 10:17 | 17 | from the defendant, please. |
| 10:17 | 18 | MR. PATCHEN:  Thank you, Your Honor. |
| 10:17 | 19 | Jonathan Patchen on behalf of the defendants in this |
| 10:17 | 20 | case. |
| 10:17 | 21 | Your Honor, this is a fairly |
| 10:17 | 22 | straightforward motion under 1404(a) with a forum |
| 10:17 | 23 | selection clause.  What is not in this issue is what is |
| 10:17 | 24 | typically at issue in forum selection clauses, whether |
| 10:17 | 25 | there's a formation, question, questions of fraud, |

3

| | | |
|---|---|---|
| 10:17 | 1 | undue influence, over-weaning bargaining power, those |
| 10:17 | 2 | type of claims that go to standard garden variety |
| 10:17 | 3 | contract formation issues.  None of those are at issue |
| 10:17 | 4 | here.  The plaintiff does not contest any of those. |
| 10:17 | 5 | Nor is there any dispute that the forum |
| 10:17 | 6 | selection clauses -- and I say "clauses" because |
| 10:18 | 7 | obviously there are multiple ones, both with respect to |
| 10:18 | 8 | YouTube and Google Ads -- there's no dispute that the |
| 10:18 | 9 | forum selection clauses are mandatory and that the |
| 10:18 | 10 | dispute brought here is within the scope of the forum |
| 10:18 | 11 | selection clause. |
| 10:18 | 12 | The core issue, Your Honor, is whether |
| 10:18 | 13 | Texas law, specifically Sections 143A.003 and .0035 |
| 10:18 | 14 | somehow operate to invalidate or preclude a forum |
| 10:18 | 15 | selection clause transfer under 1404(a). |
| 10:18 | 16 | Now, the Supreme Court has been very |
| 10:18 | 17 | clear in Stewart and in Atlantic Marine that in a |
| 10:18 | 18 | 1404(a) context in which there is a forum selection |
| 10:18 | 19 | clause that is mandatory and covers the scope in |
| 10:18 | 20 | dispute, that the transfer should occur in all but the |
| 10:18 | 21 | most extraordinary circumstances. |
| 10:18 | 22 | The argument that the plaintiff makes |
| 10:18 | 23 | here is that that -- somehow that Texas statute |
| 10:18 | 24 | overrides Congress' command in 1404(a) and precludes |
| 10:19 | 25 | the transfer. |

4

```
10:19   1                 Now, obviously the plaintiff doesn't make
10:19   2     the strong form of the argument, the one that was
10:19   3     specifically rejected in Stewart that says that Texas
10:19   4     law controls and that Texas law precludes this Court
10:19   5     from transferring.  That can't be the case.  We know
10:19   6     from Stewart that 1404(a) is the framework, is the
10:19   7     controlling framework.
10:19   8                 So what plaintiff argues is that the same
10:19   9     Texas law effectively undoes Stewart because it gets
10:19  10     smuggled in in the fourth factor under the Bremen
10:19  11     analysis as to the enforceability of the forum
10:19  12     selection clause, i.e., that there is a strong public
10:19  13     policy of the forum that precludes enforcement of the
10:19  14     forum selection clause.
10:19  15                 I think Shakespeare probably said it
10:19  16     best, right, a rose by any other name still smells as
10:19  17     sweet.  If you can't do it directly under Stewart, then
10:19  18     it can't be the case that you can smuggle the exact
10:20  19     same statute, exact same argument and undo what the
10:20  20     Supreme Court said can't be done in Stewart and what
10:20  21     shouldn't be done under Atlantic Marine.
10:20  22                 And that is precisely what the Fourth
10:20  23     Circuit said in the Albemarle case, that permitting
10:20  24     this argument would be, quote, an end run around the
10:20  25     rule of MS Bremen and Stewart and Atlantic Marine.
```

5

| 10:20 | 1 |                     In other words, while it is true that MS |
| 10:20 | 2 | Bremen says that a strong public policy of the forum |
| 10:20 | 3 | state might be a ground by which you could avoid |
| 10:20 | 4 | enforcement of a forum selection clause, our |
| 10:20 | 5 | submission, Your Honor, is that strong public policy |
| 10:20 | 6 | cannot be an antiforum selection clause public policy. |
| 10:20 | 7 |                     Not only would that be an end run around |
| 10:20 | 8 | Bremen, not only would that be a end run around |
| 10:20 | 9 | Stewart, but in fact it completely undercuts the whole |
| 10:20 | 10 | point of Bremen.  Right? |
| 10:21 | 11 |                     If Bremen sets up the exception of strong |
| 10:21 | 12 | public policy as anti -- as an exception to an |
| 10:21 | 13 | enforcement of a forum selection clause, it makes no |
| 10:21 | 14 | sense that Bremen would say, well, in an entire opinion |
| 10:21 | 15 | that is devoted to rejecting antipathy to forum |
| 10:21 | 16 | selection clauses, calling them provincial and in fact |
| 10:21 | 17 | articulating a strong federal policy in favor of forum |
| 10:21 | 18 | selection clauses, that Bremen would have added an |
| 10:21 | 19 | exception that swallows the rule that any state at any |
| 10:21 | 20 | time could declare its antiforum selection clause a |
| 10:21 | 21 | strong public policy and completely undo what Bremen |
| 10:21 | 22 | said, that makes no sense, Your Honor.  And the Fourth |
| 10:21 | 23 | Circuit made that very clear in the Albemarle decision. |
| 10:21 | 24 |                     At best for the plaintiff, at best for |
| 10:21 | 25 | plaintiff, Texas' state law becomes a factor to |

6

10:21  1    consider in the 1404(a) transfer motion.  And that's

10:22  2    the Matthews decision.

10:22  3           The Matthews decision from the Fifth

10:22  4    Circuit in 2024 said we don't need to decide under the

10:22  5    Bremen analysis whether the forum public policy that is

10:22  6    referenced in Bremen is the federal forum or the state

10:22  7    forum, right?  Matthews was an antiforum selection

10:22  8    clause arising out of Louisiana as opposed to Texas.

10:22  9           And the Fifth Circuit said we don't need

10:22  10   to do that.  We'll look at both states' public

10:22  11   policies.  And in that case, which was an admiralty

10:22  12   case, not even a 1404 transfer case, but in an

10:22  13   admiralty case, Matthews said that the federal public

10:22  14   policy -- strong federal public policy in favor of

10:22  15   forum selection clauses did not allow Louisiana's

10:22  16   contrary public policy to preclude enforcement of the

10:22  17   forum selection clause in that case.

10:22  18          We submit, Your Honor, that if that's the

10:22  19   case in Matthews where the only public policy is the

10:22  20   articulated Bremen public policy, that this case is

10:23  21   stronger because not only do we have the Bremen strong

10:23  22   public policy just like in Matthews, but we also have

10:23  23   1404(a), which is Congress' command to consider the

10:23  24   forum selection clauses precisely as Stewart and as

10:23  25   Atlantic Marine said.

7

10:23  1          So in our position, Your Honor, is that

10:23  2   even if you were to consider the Texas law, which we

10:23  3   submit in the first place, our frontline argument, is

10:23  4   that it's an impermissible consideration under 1404(a)

10:23  5   and the Bremen fourth factor, even if you were to

10:23  6   consider it, federal law is the more important public

10:23  7   policy.

10:23  8          And because that compels enforcement of

10:23  9   the forum selection clause and because there is no

10:23  10  other reason to deny enforcement of the forum selection

10:23  11  clause, transfer should follow.

10:23  12          And I'm happy, if Your Honor has

10:23  13  questions, to talk about the public interest factor,

10:23  14  sort of the residual argument that's been made, or the

10:23  15  waiver argument that we have in our brief.  But I think

10:24  16  our frontline position, subject to Your Honor's

10:24  17  questions, is that the enforceability question cannot

10:24  18  be answered by Texas' anti public -- antiforum

10:24  19  selection public policy.

10:24  20          THE COURT:  Do you want to address

10:24  21  anything about the Fifth Circuit holding in Weber,

10:24  22  W-e-b-e-r, case?

10:24  23          MR. PATCHEN:  I don't think that the

10:24  24  Weber decision, Your Honor, has particular bearing in

10:24  25  this matter.  Apart from the fact that it's --

8

| | | |
|---|---|---|
| 10:24 | 1 | identifies that strong public policy is an exception to |
| 10:24 | 2 | the enforceability -- or one of the grounds for |
| 10:24 | 3 | nonenforceability in Bremen. |
| 10:24 | 4 | I don't think it (audio distortion) the |
| 10:24 | 5 | question in the way -- what forum gets to decide the |
| 10:24 | 6 | public policy and whether or not an antiforum selection |
| 10:24 | 7 | clause provision in a state law is a recognizable |
| 10:24 | 8 | public policy exception. |
| 10:25 | 9 | THE COURT:  And also, what do we do if |
| 10:25 | 10 | the Court finds the forum selection clauses are |
| 10:25 | 11 | unenforceable?  How do I move forward? |
| 10:25 | 12 | MR. PATCHEN:  Well, I think that |
| 10:25 | 13 | obviously we would -- it's a question of law, we |
| 10:25 | 14 | would -- one that needs to be resolved for -- it's a |
| 10:25 | 15 | question of law, we'd have, you know, that that it |
| 10:25 | 16 | should come out differently.  But at the very least, |
| | 17 | that's obviously repeatedly appealed to the Fifth |
| 10:25 | 18 | Circuit.  We would probably deal with it in that way, |
| 10:25 | 19 | Your Honor.  I have not -- |
| 10:25 | 20 | THE COURT:  I'm sorry.  What I meant was |
| 10:25 | 21 | what do I do -- how do I balance the private and public |
| 10:25 | 22 | interest factors if I determine that the -- it's |
| 10:25 | 23 | unenforceable?  I'm sorry I wasn't clear. |
| 10:25 | 24 | MR. PATCHEN:  Oh, I see what you're |
| | 25 | saying, Your Honor.  I think if you just go to the |

9

| | | |
|---|---|---|
| 10:25 | 1 | 1404(a) and you see the forum selection clause, I think |
| 10:25 | 2 | all of the factors point in favor of transferring in |
| 10:25 | 3 | that context.  Obviously the parties haven't briefed to |
| 10:25 | 4 | a large extent the private interest factors. |
| 10:26 | 5 | But thinking about those, the convenience |
| 10:26 | 6 | of the witnesses, those are almost all exclusively in |
| 10:26 | 7 | California.  That's where policy is made at YouTube. |
| 10:26 | 8 | The -- it's where the Google Ads policy is made. |
| 10:26 | 9 | That's where YouTube and Google are headquartered.  So |
| 10:26 | 10 | the witnesses are going to be in California.  The vast |
| 10:26 | 11 | majority of the documents are going to be in |
| 10:26 | 12 | California.  This is an area of extensive experience. |
| 10:26 | 13 | That is where all the forum selection clauses point to. |
| 10:26 | 14 | So the convenience for Google is substantial. |
| 10:26 | 15 | It's not clear to me at all what the |
| 10:26 | 16 | documents or information that would be relevant on the |
| 10:26 | 17 | plaintiff's side of the private interest factors would |
| 10:26 | 18 | have anything to do with Texas.  The issue is they |
| 10:26 | 19 | wanted to post a video.  YouTube did not allow that |
| 10:26 | 20 | video, did not allow ads to generate revenue from that |
| 10:26 | 21 | video, and they want to sue under Texas law. |
| 10:26 | 22 | It's also untethered particularly to |
| 10:27 | 23 | Texas.  There's no particular Texas locale or -- at |
| 10:27 | 24 | issue here.  This is a First Amendment defense at the |
| 10:27 | 25 | end of the day, a question of national import.  And |

—10—

10:27   1   even if Defense Distributed is located in Texas, the

10:27   2   question is whether or not their video can be shown

10:27   3   worldwide.

10:27   4               There's no Texas-specific showing of the

10:27   5   video, if it's -- there's a holding or an injunction

10:27   6   that says it has to be posted.  It's a nationwide,

10:27   7   worldwide effect.  So both the public and the private

10:27   8   interest factors in our mind, Your Honor, even apart

10:27   9   from the forum selection clause, would certainly point

10:27   10  in favor of California.

10:27   11              And even if Your Honor found that the

10:27   12  forum selection clause was technically unenforceable,

10:27   13  we would argue that under Stewart and under Atlantic

10:27   14  Marine, that this Court should still weigh those

10:27   15  private interest factors in favor of a transfer.

10:27   16              Even if it's not dispositive in the way

10:28   17  that it would normally be in Atlantic Marine, the fact

10:28   18  that the parties agreed and agreed repeatedly that they

10:28   19  would be in California suggests that there is no real

10:28   20  credible private interest factors that cut the other

10:28   21  way in favor of staying in Texas.

10:28   22              THE COURT:  Anything else you wanted to

10:28   23  add before I bounce to the other side?

10:28   24              MR. PATCHEN:  No, Your Honor.

10:28   25              THE COURT:  Okay.  Thank you.

```
10:28   1              A response?

10:28   2              MR. FLORES:  Yes, Your Honor.

10:28   3              We have two independent reasons to deny

10:28   4    the motion to transfer.  One set of reasons has to do

10:28   5    with the enforceability argument you've heard.  There

10:28   6    is the second independent argument about the public

10:28   7    interest factors, and so those deserve independent

10:28   8    analysis.

10:28   9              Our view is that if the Court agrees with

10:28   10   us on Argument 1 and you deem this forum selection

10:28   11   clause unenforceable, it's game over.  You don't have

10:28   12   to reach Argument 2, but you could as an additional

10:28   13   reason.  So I'll take the points in that order.

10:28   14             First is the question of

10:28   15   unenforceability.  My friend on the other side says

10:29   16   that state public policy does not operate directly on

10:29   17   the analysis.  That's wrong, and more importantly the

10:29   18   bridge has been crossed.

10:29   19             The Court has already identified the

10:29   20   correct decision, that's Weber.  Weber is the Fifth

10:29   21   Circuit case that aligns exactly with what you see in

10:29   22   Davis and Wise Guys.  They all say that fourth piece,

10:29   23   the state public policy comes after an or.  There are

10:29   24   four ways that are independently sufficient to defeat

10:29   25   an invocation and the or means that state public policy
```

—12—

10:29  1    alone can defeat this, and it does so here.

10:29  2                    If ever there is a state law that can

3    marshal enough power to defeat this kind of forum

10:29  4    selection clause, this is that statute.

10:29  5                    My friend on the other side misframes it.

10:29  6    It is not a state public policy that is for or against

10:29  7    forum selection clauses.  The state public policy here

10:29  8    is the speech policy.  It is because if you look at the

10:29  9    exact statute we're talking about, this is 143A.003,

10:29  10   this is the protective provision that we invoke.  This

10:29  11   provision is not specific to forum selection clauses.

10:30  12   It does cover them, but the provision protects this

10:30  13   chapter.  It says the protection is provided by this

10:30  14   chapter.

10:30  15                   So this is not an instance in which a

10:30  16   state is singling out forum selection clauses.  In

10:30  17   other context, for example, some states really don't

10:30  18   like arbitration.  They have arbitration-specific

10:30  19   statutes.  This is not that.  The protection here, the

10:30  20   public policy here is the speech policy codified by the

10:30  21   entire chapter.

10:30  22                   Weber sets that as the rule and the Davis

10:30  23   and Wise Guys decisions are perfectly on point.  They

10:30  24   are this exact scenario, this exact analysis.  And they

10:30  25   go nine-tenths of the way and they don't get across the

—13—

| | | |
|---|---|---|
| 10:30 | 1 | threshold.  They say, no.  You don't remand in this |
| 10:30 | 2 | case because the statute lacks one little piece. |
| 10:30 | 3 | And the statute has since been fixed. |
| 10:30 | 4 | The Texas legislature read those decisions, knew |
| 10:30 | 5 | exactly what they meant, and changed the statute to |
| 10:30 | 6 | solve for this exact case. |
| 10:30 | 7 | So if ever there is a case where state |
| 10:30 | 8 | powers exercised enough and with enough specificity and |
| 10:30 | 9 | with enough power, this is that case. |
| 10:31 | 10 | If the Court agrees so far, you don't |
| 10:31 | 11 | have to do any more analysis.  My friend on the other |
| 10:31 | 12 | side made some arguments about the private factors. |
| 10:31 | 13 | Those are not properly in the case. |
| 10:31 | 14 | The motion to transfer made only the |
| 10:31 | 15 | invocation of their forum selection clause alone and |
| 10:31 | 16 | then we talked about public interest factors.  But |
| 10:31 | 17 | there's been no briefing about how the other private |
| 10:31 | 18 | interest factors might weigh in their favor and they |
| 10:31 | 19 | don't. |
| 10:31 | 20 | The real analysis here would be a public |
| 10:31 | 21 | interest mandate.  They're the four public interest |
| 10:31 | 22 | factors.  They all overwhelmingly favor keeping this |
| 10:31 | 23 | case in Texas.  It doesn't take long to go through them |
| 10:31 | 24 | because they're all dunks on our side. |
| 10:31 | 25 | One is the speed of disposition.  We've |

—14—

10:31  1    shown you and they have not controverted that if this

10:31  2    case stays in Texas, it's going to go three times as

10:31  3    fast as if it goes to California.

10:31  4                    I'm going to go a little bit out of

10:31  5    order.

10:31  6                    We have the local familiarity with the

10:31  7    local law here.  The law to be applied is Texas law.

10:31  8    This Court knows that the NetChoice litigation

10:31  9    exemplifies that much of this litigation is going to be

10:32  10   about what the statute means, how it operates, what its

10:32  11   exact scope is.  That is a core question of Texas state

10:32  12   law that the courts of Texas are obviously most

10:32  13   qualified to address, not just because they're in Texas

10:32  14   but because this circuit is already home to the

10:32  15   NetChoice litigation.

10:32  16                    So we have speed overwhelmingly in our

10:32  17   favor.  We have the forum familiarity with the law.

10:32  18                    There's a potential choice of law factor.

10:32  19   And so if you keep this case in Texas, choice of law is

10:32  20   easy because we apply Texas law by default.  If you go

10:32  21   to California, that's going to at least be a

10:32  22   complicated question.

10:32  23                    But, Your Honor, I want to call your

10:32  24   attention very specifically to the factor about the

10:32  25   local interest in deciding local interests at home.

| | | |
|---|---|---|
| 10:32 | 1 | Because this drives overwhelmingly in our favor for two |
| 10:32 | 2 | critical reasons. |
| 10:32 | 3 | One is first principles.  This is a case |
| 10:32 | 4 | about a speaker in Texas invoking a Texas state law |
| 10:32 | 5 | designed to protect speech in Texas.  These are all |
| 10:32 | 6 | inherently local interests.  Don't believe me, believe |
| 10:32 | 7 | the Fifth Circuit's decision in Bruck.  Which is styled |
| 10:32 | 8 | Defense Distributed versus Bruck.  It is the same |
| 10:32 | 9 | client, virtually the same case. |
| 10:33 | 10 | Our client sues to vindicate speech |
| 10:33 | 11 | rights that are being violated by an out-of-state |
| 10:33 | 12 | censoring regime.  And the Fifth Circuit holds that in |
| 10:33 | 13 | that scenario, when someone out of state is censoring |
| 10:33 | 14 | Texans, that kind of controversy is inherently local, |
| 10:33 | 15 | and under a transfer analysis, has to stay in Texas. |
| 10:33 | 16 | They have zero answer to Bruck. |
| 10:33 | 17 | So we have both the first principles of |
| 10:33 | 18 | all four factors and the most important Fifth Circuit |
| 10:33 | 19 | case is going right on point with this exact client in |
| 10:33 | 20 | a parallel scenario.  Those are the two independent |
| 10:33 | 21 | reasons to reject the motion to transfer.  Either is |
| 10:33 | 22 | sufficient, and I think we have the clear precedent on |
| 10:33 | 23 | both sides. |
| 10:33 | 24 | THE COURT:  Your brethren discussed |
| 10:33 | 25 | Weber -- I'm sorry, Stewart.  Did you want to say |

10:33  1    anything about Stewart?

10:33  2                    MR. FLORES:  Yes, Your Honor.

10:33  3                    We understand Stewart to acknowledge

10:33  4    that -- I think every case that we cite is after

10:34  5    Stewart.  And every case we cite says that the state

10:34  6    public policy is still a part of the analysis.

10:34  7                    I think their theory of Stewart might

10:34  8    apply if the argument were a state policy specific to

10:34  9    forum selection clauses and you had statute that

10:34  10   existed only to go after forum selection clauses, maybe

10:34  11   their argument would be better.  But it doesn't apply

10:34  12   here because the state public policy being invoked is

10:34  13   the speech policy, the chapter-wide policy there.

10:34  14                   So the precedent point I have is that

10:34  15   we've already crossed the bridge.  That's the Fifth

10:34  16   Circuit's decision in Weber and Wise Guys and Davis.

10:34  17   And then the practical argument I have is that this

10:34  18   statute is more -- is sort of distinguishable from the

10:34  19   ones they're trying to paint it as.

10:34  20                   THE COURT:  Anything else?

10:34  21                   MR. FLORES:  Your Honor, they have made

10:34  22   in their briefs some arguments about waiver and timing,

10:34  23   but if they're not going to argue them here, then we

10:34  24   don't need to respond to them.

10:34  25                   THE COURT:  Okay.  Rebuttal?

—17—

| | | |
|---|---|---|
| 10:34 | 1 | MR. PATCHEN:  Thank you, Your Honor. |
| 10:34 | 2 | With respect to the argument -- three |
| 10:35 | 3 | points.  One, Weber says nothing about whether or not |
| 10:35 | 4 | and in what circumstances a state law policy that says |
| 10:35 | 5 | forum selection clauses are unenforceable is or can |
| 10:35 | 6 | trump in the unenforceability analysis of Bremen. |
| 10:35 | 7 | If you look at what the arguments were, |
| 10:35 | 8 | those -- the arguments in Weber were -- deprive the |
| 10:35 | 9 | plaintiff of a remedy, that German law was unfavorable. |
| 10:35 | 10 | It's simply inapplicable except for the general |
| 10:35 | 11 | proposition that is discussed in Weber that in certain |
| 10:35 | 12 | circumstances, state public policy, if it's strong, may |
| 10:35 | 13 | preclude enforcement of a forum selection clause. |
| 10:35 | 14 | Now, my colleague on the other side says, |
| 10:35 | 15 | well, the public policy that's at issue here is a |
| 10:35 | 16 | speech protective public policy and not an antiforum |
| 10:35 | 17 | selection clause policy. |
| 10:35 | 18 | If that is their position, if their |
| 10:35 | 19 | position is that the state public policy is just we |
| 10:35 | 20 | want to protect speech of Texans, that has bearing. |
| 10:36 | 21 | There's no reason that that has any impact on a forum |
| 10:36 | 22 | selection clause. |
| 10:36 | 23 | Federal law is very clear that a |
| 10:36 | 24 | California court is to be trusted just as much as a |
| 10:36 | 25 | Texas court in terms of enforcing a Texas law that |

—18—

10:36  1    provides that.  There's no argument that suggests that

10:36  2    California's going to be unable to make that or be able

10:36  3    to rule in that way.

10:36  4          So the only argument, the only basis that

10:36  5    distinguishes -- that plaintiff says distinguishes the

10:36  6    case from Davis or Wise Guys is that in 2023, Texas

10:36  7    added in a provision that says the antiwaiver provision

10:36  8    in 143.003, which says that the protections of the

10:36  9    statute can be waived, they add in 0035, the Texas

10:36  10   legislature does in 2023, that says this -- there's no

10:36  11   forum selection clause, no choice of law, anything of

10:36  12   that sort with respect to the provisions of this

10:36  13   chapter.

10:36  14         It is that provision that is at issue

10:37  15   here.  That is the only possible provision that could

10:37  16   stand as a public policy that would preclude

10:37  17   enforcement of a freely entered into forum selection

10:37  18   clause.

10:37  19         And there's no argument that crediting

10:37  20   that public policy would be an end run around Bremen,

10:37  21   that the Fourth Circuit rejected that argument for four

10:37  22   independent reasons in Albemarle, and that the Court --

10:37  23   the Fifth Circuit in Matthews, which -- if we want to

10:37  24   talk about what is the most applicable Fifth Circuit

10:37  25   decision, it would be the Matthews decision from last

| | | |
|---|---|---|
| 10:37 | 1 | year, 2024, which specifically asked this question: |
| 10:37 | 2 | When you say state public policy, do you look at state, |
| 10:37 | 3 | i.e., Louisiana, or do you look at federal?  And it |
| 10:37 | 4 | held that it didn't have to decide that question |
| 10:37 | 5 | because even if you did look at both, federal public |
| 10:37 | 6 | policy in favor of forum selection clauses trump. |
| 10:37 | 7 | If we're looking at -- and I disagree |
| 10:38 | 8 | with my colleague on the other side that the public |
| 10:38 | 9 | interest factors are a dunk in Defense Distributed's |
| 10:38 | 10 | favor.  I'm happy to talk about court congestion. |
| 10:38 | 11 | Frankly, Your Honor, court congestion is |
| 10:38 | 12 | a question of whether or not the Court is going to be |
| 10:38 | 13 | bothered.  Speed to disposition is in fact a private |
| 10:38 | 14 | factor and we cite the cases in our reply brief that |
| 10:38 | 15 | that's not even a consideration.  The speed of |
| 10:38 | 16 | disposition as a benefit to the parties is a private |
| 10:38 | 17 | interest, not a public interest factor. |
| 10:38 | 18 | But more importantly, the argument that |
| 10:38 | 19 | this is a speech protective and this is protecting a |
| 10:38 | 20 | Texan's speech is actually incorrect.  The speech that |
| 10:38 | 21 | is at issue is not Defense Distributed.  YouTube is not |
| 10:38 | 22 | the government.  Google is not the government.  Google |
| 10:38 | 23 | has the right to tell Defense Distributed we do not |
| 10:38 | 24 | want to put your video up.  It has the First Amendment |
| 10:38 | 25 | right to that. |

10:38  1          The speech that is being protected is not

10:38  2   Defense Distributed's.  This is not a Texas speaker

10:39  3   whose speech is being protected.  The speech that is

10:39  4   being protected is a California company who has a forum

10:39  5   selection clause calling for litigation in California

10:39  6   and it is its speech that is being protected.

10:39  7          So to the extent that the argument is

10:39  8   there's censorship, that there's imposition of -- on a

10:39  9   party's speech, the Supreme Court's decision in Moody

10:39  10  makes very clear whose speech is being affected and

10:39  11  those public interest factors point to California, not

10:39  12  Texas.

10:39  13          THE COURT:  I'll be back in a second.

10:42  14          (Pause in proceedings.)

10:42  15          THE COURT:  Now -- thank you for the

10:42  16  break.

10:42  17          The Court is going to deny the motion to

10:42  18  transfer.

10:42  19          I'll hear the motion to remand.

10:42  20          MR. FLORES:  Thank you, Your Honor.

10:42  21          The motion to remand is a question of how

10:42  22  to perform the calculation of the amount in

10:42  23  controversy.  The rules that apply are necessarily

10:42  24  typical.

10:42  25          THE COURT:  So let me -- I'm sorry to

—21—

10:42  1    interrupt.  But here's the way I see it.  If you want

10:42  2    to go on the record and say that there's no possibility

10:42  3    you are seeking more than $74,999 in this case, I'm

10:42  4    happy to hear that.

10:43  5              MR. FLORES:  I mean, if that's

10:43  6    dispositive, then I think we would make that as an

10:43  7    alternative argument under the sort of indeterminant

10:43  8    amount.  But our frontline argument is the amount in

10:43  9    controversy is indeterminant here.

10:43  10             THE COURT:  I don't need to hear it.

10:43  11             MR. FLORES:  Yes, Your Honor.  We'll make

10:43  12   that representation.  So we will not seek recovery of

10:43  13   damages more than $75,000.

10:43  14             THE COURT:  Okay.

       15             MR. FLORES:  The argument on the other

10:43  16   side is the value of their injunction, and so that's

10:43  17   why I'm happy to say that that's not part of what we

10:43  18   want.

10:43  19             THE COURT:  Got it.

10:43  20             Let me hear a response from the other

10:43  21   side.

10:43  22             MS. HOLLAND:  Thanks, Your Honor.  Anika

10:43  23   Holland with Cooley for defendants.

10:43  24             I believe there's some case law in this

10:43  25   district that post removal representations, that the

—22—

| | | |
|---|---|---|
| 10:43 | 1 | amount in controversy wouldn't exceed the $75,000 |
| 10:43 | 2 | threshold are not operative, that plaintiff -- |
| 10:43 | 3 | THE COURT:  You just got him to cap his |
| 10:43 | 4 | damages.  Why don't you call your client and have them |
| 10:43 | 5 | like, you know, praise, you know, take you out to a big |
| 10:44 | 6 | dinner?  I've never had anyone accept that offer.  I |
| 10:44 | 7 | mean, you know, he's put on the record the damages |
| 10:44 | 8 | they're seeking will not -- and that I'm assuming |
| 10:44 | 9 | includes attorneys' fees and everything -- it's not |
| 10:44 | 10 | going to exceed $75,000.  Then why does it belong here? |
| 10:44 | 11 | MS. HOLLAND:  Well, Your Honor, I think |
| 10:44 | 12 | there are two things.  So first of all, we have the |
| 10:44 | 13 | allegation in the petition that the amount in |
| 10:44 | 14 | controversy exceeds $5 million, and that speaks to |
| 10:44 | 15 | equitable -- |
| 10:44 | 16 | THE COURT:  Okay.  He's -- I have him on |
| 10:44 | 17 | the record -- |
| 10:44 | 18 | MS. HOLLAND:  And then we have the second |
| 10:44 | 19 | point about attorneys' fees here.  So now -- |
| 10:44 | 20 | THE COURT:  I'm including attorneys' |
| 10:44 | 21 | fees.  He's making a representation that including |
| 10:44 | 22 | attorneys' fees, it's not going to go above $75,000.  I |
| 10:44 | 23 | don't think that's included regardless, but I'm -- when |
| 10:44 | 24 | I asked him the question, I meant total recovery, |
| 10:45 | 25 | damages and attorneys' fees, won't go over $75,000, |

—23—

| | | |
|---|---|---|
| 10:45 | 1 | which is the jurisdictional minimum -- yeah, minimum |
| 10:45 | 2 | for me.  So what else do you need? |
| 10:45 | 3 | MS. HOLLAND:  Well, Your Honor, I did not |
| 10:45 | 4 | hear my friend on the other side say that that amount |
| 10:45 | 5 | included attorneys' fees -- |
| 10:45 | 6 | THE COURT:  I just -- he's not correcting |
| 10:45 | 7 | me.  I've said it now four times.  I mean, I would not |
| 10:45 | 8 | want to be him and come in and say, Judge, you said it |
| 10:45 | 9 | four times.  Now I want attorneys' fees to exceed -- he |
| 10:45 | 10 | is telling me that he is removing your jurisdictional |
| 10:45 | 11 | minimum to remain in my court.  And he's agreeing to |
| 10:45 | 12 | it. |
| 10:45 | 13 | So what do you want me to do?  I mean, |
| 10:45 | 14 | he's -- I don't have jurisdiction if he's not seeking |
| 10:45 | 15 | $75,000 or more. |
| 10:45 | 16 | MS. HOLLAND:  Your Honor, I think the |
| 10:45 | 17 | issue is that they've made a judicial admission that |
| 10:46 | 18 | the value of their injunction -- |
| 10:46 | 19 | THE COURT:  He -- no.  They put in the |
| 10:46 | 20 | complaint that it might be.  I have him on the record |
| 10:46 | 21 | saying that he's divested me of my jurisdiction. |
| 10:46 | 22 | MS. HOLLAND:  And this returns to the |
| 10:46 | 23 | first point, Your Honor, which I think the case law in |
| 10:46 | 24 | the Western District of Texas is that such stipulations |
| 10:46 | 25 | made post removal are not binding. |

—24—

10:46    1              THE COURT:  Well, I don't think we'll

10:46    2    ever know because, as I remember, you don't get to

10:46    3    appeal a remand.  So.

10:46    4              MR. PATCHEN:  Your Honor, if I may assist

10:46    5    my colleague.

10:46    6              Is the plaintiff also walking away and

10:46    7    not going to be seeking injunctive or other equitable

10:46    8    relief?  Because certainly even if they limit their

10:46    9    damage claim to less than $75,000, the question of

10:46   10    injunctive relief and the value of that injunctive

10:46   11    relief certainly is -- unless that's going away as well

10:46   12    and this is only a question of $75,000 --

10:46   13              THE COURT:  How would you value the value

10:46   14    of the injunction relief?

10:46   15              MR. PATCHEN:  We know how much they did,

10:47   16    which they pled at 5,000 -- I'm sorry, 5 million.

10:47   17              THE COURT:  No.  How would you -- I asked

10:47   18    you, how would you put a value on the injunction?

10:47   19              MR. PATCHEN:  The fact that Google has to

10:47   20    change its policy and essentially allow any video --

10:47   21              THE COURT:  What person would come in and

10:47   22    testify as to the value of that injunction?

10:47   23              MR. PATCHEN:  I would have, Your Honor,

10:47   24    if you needed to have somebody, I would certainly be

10:47   25    able to put up a number of witnesses to talk about the

—25—

| | |
|---|---|
| 10:47 | 1 |

value and importance of Google and YouTube's content

moderation policy, its importance of being able to

decide which videos.

        Frankly, Your Honor, it's free speech

rights that are at issue.  That's irreparable injury.

But that's --

        THE COURT:  Do you have a counterclaim

under the First Amendment?

        MR. PATCHEN:  We've not moved to (audio

distortion) the time to respond to the pleadings by

stipulation was extended.  We don't have a counterclaim

yet, but we --

        THE COURT:  Do you intend to make a

counterclaim under the First Amendment?

        MR. PATCHEN:  I expect that we'll just

defend and argue that the --

        THE COURT:  Well, if you had a

counterclaim under the First Amendment, I would

understand that.  But if your defense is going to be --

or might not be, I don't know what you're going to do

when you go to trial, you know, if you want to tell

me -- if you want -- if you want to tell me that you

are going to make a counterclaim that your client's

rights are protected under the First Amendment, well,

then there'll be federal jurisdiction and I wouldn't be

26

| | | |
|---|---|---|
| 10:48 | 1 | able to remand it. |
| 10:48 | 2 | MR. PATCHEN:  I will make that |
| 10:48 | 3 | representation, Your Honor.  When we plead, I will |
| 10:48 | 4 | represent that we will plead a First Amendment defense |
| 10:48 | 5 | that the Texas statute is precluded and preempted by |
| 10:48 | 6 | the First Amendment. |
| 10:48 | 7 | THE COURT:  And so here's what I'm going |
| 10:48 | 8 | to do because I've thrown all of this at you and you're |
| 10:48 | 9 | just having to kind of deal with me and you all have |
| 10:48 | 10 | done well. |
| 10:48 | 11 | I'm going to give -- before I rule, I'm |
| 10:48 | 12 | going to give the plaintiff an opportunity to research |
| 10:49 | 13 | and let me -- and obviously defendant can find stuff to |
| 10:49 | 14 | support it.  I'm not entirely certain a -- the fact |
| 10:49 | 15 | that they are asserting a defense in the First |
| 10:49 | 16 | Amendment is sufficient to have jurisdiction in this |
| 10:49 | 17 | case.  And it may not.  There may be cases that say |
| 10:49 | 18 | pleading a constitutional response doesn't get you |
| 10:49 | 19 | there. |
| 10:49 | 20 | But I'll give the plaintiff an |
| 10:49 | 21 | opportunity to research this and let me know one way or |
| 10:49 | 22 | the other. |
| 10:49 | 23 | And I'll also give the defendant, if |
| 10:49 | 24 | there's any other -- let me put it this way.  As of |
| 10:49 | 25 | right now, with the state of the pleadings, my |

| 10:49 | 1 | inclination would be to remand it.  Defendant has made |
| 10:49 | 2 | the representation without the opportunity to speak to |
| 10:49 | 3 | his client, and you ought to get to have that, that you |
| 10:49 | 4 | would make at least a First Amendment counterclaim or |
| 10:49 | 5 | make that part of it. |
| 10:49 | 6 | If you -- knowing what you know, if the |
| 10:50 | 7 | defendant wants to add any other arguments as to why |
| 10:50 | 8 | there might be federal jurisdiction that would prevent |
| 10:50 | 9 | me from removing it, in other words, other claims that |
| 10:50 | 10 | might be made by the defendant, you can do that and get |
| 10:50 | 11 | that to the plaintiff. |
| 10:50 | 12 | And then I'll hear -- the plaintiff can |
| 10:50 | 13 | file whatever it wants to -- I'm sorry, he wants to as |
| 10:50 | 14 | to why a defendant can't create jurisdiction by having |
| 10:50 | 15 | an affirmative defense, and then we all get back |
| 10:50 | 16 | together.  So I'm going to postpone ruling on the |
| 10:50 | 17 | motion to remand at this point. |
| 10:50 | 18 | I think that was the last motion we had, |
| 10:50 | 19 | though.  So is there anything else we needed to take |
| 10:50 | 20 | up? |
| 10:50 | 21 | MR. PATCHEN:  Your Honor, if -- I heard |
| 10:50 | 22 | the Court deny the motion to transfer.  Will there be a |
| 10:50 | 23 | written order as to the reasons? |
| 10:50 | 24 | THE COURT:  Yes.  Yes. |
| 10:50 | 25 | MR. PATCHEN:  Okay.  I just wanted to |

28

| | | |
|---|---|---|
| 10:50 | 1 | make sure. |
| 10:50 | 2 | THE COURT: You may not have heard, but |
| 10:50 | 3 | we get a lot of motions to transfer. We have a |
| 10:51 | 4 | template. |
| 10:51 | 5 | MR. PATCHEN: Yep. |
| 10:51 | 6 | THE COURT: And counsel for plaintiff? |
| 10:51 | 7 | MR. FLORES: Judge, could you confirm the |
| 10:51 | 8 | order of those supplemental submissions that you |
| 10:51 | 9 | wanted? You wanted the defendants to go first and then |
| 10:51 | 10 | the plaintiff to respond; is that right? |
| 10:51 | 11 | THE COURT: I'd like for the defendant -- |
| 10:51 | 12 | knowing that my -- as it stands now with your |
| 10:51 | 13 | representation about taking away my jurisdictional |
| 10:51 | 14 | power under -- because of the amount, any other reason |
| 10:51 | 15 | that they might -- and I will tell -- I'll tell defense |
| 10:51 | 16 | in advance, I'm not going to buy the there's some value |
| 10:51 | 17 | to an injunction because I don't believe that that |
| 10:51 | 18 | could ever be proven. |
| 10:51 | 19 | Even if Yahoo comes in or the defendant |
| 10:51 | 20 | comes in and says, oh, you know, having the ability to |
| 10:51 | 21 | do this is important to us, I get that. But that -- I |
| 10:51 | 22 | would never -- I can't imagine a Daubert where I'd let |
| 10:51 | 23 | someone quantify that. So. |
| 10:51 | 24 | But if the defendant wants to articulate |
| 10:51 | 25 | a First Amendment counterclaim defense, affirmative |

—29—

10:52  1    defense, whichever it is, and anything else, everything

10:52  2    they want to do, they need to get to you within the

10:52  3    next two weeks.  Once you have that, once you see what

10:52  4    they are saying they would like to -- and I would allow

10:52  5    them to amend to do that.  Once you have -- you see

10:52  6    that -- there's got to be case law one way or the other

10:52  7    about whether or not that's sufficient in this

10:52  8    situation.  And then once you respond, we'll get back

10:52  9    together and I'll let you guys argue it to me.

10:52  10             Is there anything else we need to take up

10:52  11   this morning?

10:52  12             MR. PATCHEN:  Not that I'm aware of, Your

10:52  13   Honor.

10:52  14             THE COURT:  Well, I'll tell you, I

10:52  15   routinely, at the end of hearings involving patent

10:52  16   cases, compliment the lawyers and say that's why I

10:52  17   enjoy patent cases so much is the quality of the

10:52  18   lawyers.  But I will tell you you've given me hope in

10:52  19   that I thought the arguments from counsel on both sides

10:52  20   were really excellent this morning and I enjoyed the

10:53  21   hearing very much.  So I look forward to getting

10:53  22   together again in the future.  And have a good day.

10:53  23   Take care.

10:53  24             (Hearing adjourned.)

10:53  25

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS      )

3

4

5                I, Kristie M. Davis, Official Court

6  Reporter for the United States District Court, Western

7  District of Texas, do certify that the foregoing is a

8  correct transcript from the record of proceedings in

9  the above-entitled matter.

10                I certify that the transcript fees and

11  format comply with those prescribed by the Court and

12  Judicial Conference of the United States.

13                Certified to by me this 6th day of

14  November 2025.

15

16                          */s/ Kristie M. Davis*
                            KRISTIE M. DAVIS
17                          Official Court Reporter
                            PO Box 20994
18                          Waco, Texas 76702
                            (254) 666-0904
19                          kmdaviscsr@yahoo.com

20

21

22

23

24

25

10:53

# EXHIBIT B

**Zughayer, Tammy**

| | |
|---|---|
| **From:** | Chad Flores <cf@chadflores.law> |
| **Sent:** | Tuesday, November 18, 2025 10:16 PM |
| **To:** | Rome, Michael |
| **Cc:** | Patchen, Jonathan; Colleen McKnight; Ahlers, Maddie R; Hur, Ben; Steve Wingard; Robyn Hargrove; Eli Barrish |
| **Subject:** | Re: Activity in Case 1:25-cv-01095-ADA Defense Distributed v. YouTube LLC et al Motion Hearing |

> **CAUTION: This Message Is From an External Sender**
> This message came from outside your organization.

Michael,

Thanks for staying in touch.  Here's Plaintiff's position about the inquiries you posed.  If followup would be useful, I'm happy to field more emails or chat via phone - whatever is easier.

1. Did Plaintiff at the hearing "[a]gree[] it will not seek monetary recovery of an amount over $74,999 in this case, including any attorneys' fees, costs, penalties, fees, and interest, that could be recoverable under HB 20?"  Yes, Plaintiff at the hearing agreed to that.

2. Did Plaintiff "[a]gree[] that it would not seek any non-monetary relief, including equitable or declaratory relief?"  No, Plaintiff at the hearing didn't agree to that.

Also in case it matters to your plans: Plaintiff's position is that the Court requested and gave the parties leave to submit additional briefs only about the jurisdictional impact of the Defendants' defenses and/or counterclaims (if any).  In other words, Plaintiff's position is that the Court has *not* requested or granted anyone leave to submit additional briefing on issues about the jurisdictional impact of Plaintiff's side of the case.  *See Hearing Transcript* at 26:14-27:17, 28:11-29:9.  So in order to file a brief on the former Defendant-side issues, nothing else need be done.  But for anyone to submit more briefing on the latter Plaintiff-side issues, leave would need to be sought and obtained. See Local Rule CV-7(e) ("Absent leave of court, no further submissions on the motion are allowed.").

p.s. - We'll just let the transcript-correction issues go as not worth the hassle.  But in case it matters later, the court reporter indicated that she will correct anything with mutual consent.

_____
Chad Flores
cf@chadflores.law
(512) 589-7620


On Thu, Nov 13, 2025 at 6:09 PM Rome, Michael <mrome@cooley.com> wrote:

> Hi Chad,

In light of last week's hearing and the upcoming supplemental briefing, we wanted to confirm the scope of what Plaintiff indicated it would agree to at the hearing.  Can you please let us know whether Plaintiff:

- Agreed it will not seek monetary recovery of an amount over $74,999 in this case, including any attorneys' fees, costs, penalties, fees, and interest, that could be recoverable under HB 20?  The Court appeared to understand your oral statement to be an agreement to limit Plaintiff's entire and complete monetary recovery for the entire case to $74,999, including all attorneys' fees and costs, so we just wanted to confirm if that is correct and that you have the same understanding.

- Agreed that it would not seek any non-monetary relief, including equitable or declaratory relief?  We specifically flagged this issue to the Court and do not see in the transcript Plaintiff's position on this question.

We want to make sure the Court and the parties have a clear understanding of what Plaintiffs agreed to so that the supplemental briefing can be focused and helpful to the Court.

Thanks,

Michael

---

**From:** Patchen, Jonathan <jpatchen@cooley.com>
**Sent:** Monday, November 10, 2025 10:32 AM
**To:** Chad Flores <cf@chadflores.law>
**Cc:** Colleen McKnight <colleen.mcknight@mcknightlaw.us>; Rome, Michael <mrome@cooley.com>; Ahlers, Maddie R <MAhlers@cooley.com>; Song, Sharon <ssong@cooley.com>; Steve Wingard <swingard@scottdoug.com>; Robyn Hargrove <rhargrove@scottdoug.com>; Eli Barrish <ebarrish@scottdoug.com>
**Subject:** RE: Activity in Case 1:25-cv-01095-ADA Defense Distributed v. YouTube LLC et al Motion Hearing

Chad,

We've never seen a party seek to correct an in-court transcript.  If you've some authority as to the propriety of correcting the Court's transcript, please send it along for us to consider as to your request generally.  As to the specific items you seek correction, we note that there are at least two specific problems with your second

request ("accept" to "except"): (1) Unlike the first request, those were the words spoken by the Court (not by you) and so it is improper to change those absent the Court's approval and (2) from context, the word "accept" is clearly the correct word.  There was no error there.


Thanks,


Jonathan


**From:** Chad Flores <cf@chadflores.law>
**Sent:** Monday, November 10, 2025 6:43 AM
**To:** Rome, Michael <mrome@cooley.com>; Ahlers, Maddie R <MAhlers@cooley.com>; Patchen, Jonathan <jpatchen@cooley.com>; Song, Sharon <ssong@cooley.com>; Steve Wingard <swingard@scottdoug.com>; Robyn Hargrove <rhargrove@scottdoug.com>; Eli Barrish <ebarrish@scottdoug.com>
**Cc:** Colleen McKnight <colleen.mcknight@mcknightlaw.us>
**Subject:** Fwd: Activity in Case 1:25-cv-01095-ADA Defense Distributed v. YouTube LLC et al Motion Hearing


Counsel,


I'd like to request these little transcript edits for the last hearing.  Can I tell the court reporter that they're agreed to by both sides?


On page 20 where it says "typical" it should say "technical"


| 10:42 | 21 | The motion to remand is a question of how |
|---|---|---|
| 10:42 | 22 | to perform the calculation of the amount in |
| 10:42 | 23 | controversy.  The rules that apply are necessarily |
| 10:42 | 24 | typical. |
| 10:42 | 25 | THE COURT:  So let me -- I'm sorry to |

On page 22 where it says "anyone accept that offer" it may need to say "anyone except that offer"

```
10:43   3              THE COURT:  You just got him to cap his
10:43   4   damages.  Why don't you call your client and have them
10:43   5   like, you know, praise, you know, take you out to a big
10:44   6   dinner?  I've never had anyone accept that offer.  I
10:44   7   mean, you know, he's put on the record the damages
10:44   8   they're seeking will not -- and that I'm assuming
10:44   9   includes attorneys' fees and everything -- it's not
```

_____
Chad Flores
cf@chadflores.law
(512) 589-7620


---------- Forwarded message ---------
From: <TXW_USDC_Notice@txwd.uscourts.gov>
Date: Fri, Nov 7, 2025 at 1:47 PM
Subject: Activity in Case 1:25-cv-01095-ADA Defense Distributed v. YouTube LLC et al Motion Hearing
To: <cmecf_notices@txwd.uscourts.gov>


**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court [LIVE]**

**Western District of Texas**

**Notice of Electronic Filing**


The following transaction was entered on 11/7/2025 at 1:46 PM CST and filed on 11/6/2025

**Case Name:**          Defense Distributed v. YouTube LLC et al
**Case Number:**       1:25-cv-01095-ADA
**Filer:**
**Document Number:** 46

**Docket Text:**
**Minute Entry for proceedings held before Judge Alan D Albright: Motion Hearing held on 11/6/2025 re [26] MOTION to Transfer Case *to the Northern District of California* filed by Google LLC, YouTube LLC, Alphabet, Inc., [25] MOTION to Remand to State Court filed by Defense Distributed (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(dm)**

**1:25-cv-01095-ADA Notice has been electronically mailed to:**

Charles R. Flores &nbsp &nbsp cf@chadflores.law, chad-flores-7646@ecf.pacerpro.com, service@chadfloreslaw.com

Colleen Elizabeth McKnight &nbsp &nbsp colleen.mcknight@mcknightlaw.us

Elijah Barton Barrish &nbsp &nbsp ebarrish@scottdoug.com, cmatheson@scottdoug.com

Jonathan Alan Patchen &nbsp &nbsp jpatchen@cooley.com

Madeleine Ahlers &nbsp &nbsp mahlers@cooley.com

Michael Rome &nbsp &nbsp mrome@cooley.com

Robyn Lynn Bigelow Hargrove &nbsp &nbsp rhargrove@scottdoug.com, aespinoza@scottdoug.com, agoldberg@scottdoug.com, arivera@scottdoug.com

Sharon Song &nbsp &nbsp song@cooley.com, efilingnotice@cooley.com

Steven J. Wingard &nbsp &nbsp swingard@scottdoug.com, jkadjar@scottdoug.com, pphan@scottdoug.com, sfrazier@scottdoug.com

**1:25-cv-01095-ADA Notice has been delivered by other means to:**

Anika Holland
Cooley, LLP
3 Embarcadero Ctr. 20th Floor
San Francisco, CA 94111

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1080075687 [Date=11/7/2025] [FileNumber=33286921-0] [8375e793d6de1a5ec64f16cfa11c720e5d7e5e5fa3f245ce1662f05827920a3ff6 315d61ca964c76e0de9c24f24856af2542d8ba0d65c018135bb4885792f773]]

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.