# EXHIBIT A

-1-

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3   DEFENSE DISTRIBUTED      *
                             *       November 6, 2025
 4   VS.                      *
                             * CIVIL ACTION NO. 1:25-CV-1095
 5   YOUTUBE LLC, ET AL.      *

 6           BEFORE THE HONORABLE ALAN D ALBRIGHT
                 MOTIONS HEARING (via Zoom)
 7
     APPEARANCES:
 8
     For the Plaintiff:   Charles R. Flores, Esq.
 9                        Flores Law PLLC
                          917 Franklin Street, Suite 600
10                        Houston, TX 77002

11   For the Defendants:  Jonathan Alan Patchen, Esq.
                          Anika Holland, Esq.
12                        Cooley, LLP
                          3 Embarcadero Center, 20th Floor
13                        San Francisco, CA 94111

14                        Steven J. Wingard, Esq.
                          Scott, Douglass & McConnico, L.L.P.
15                        303 Colorado Street, Suite 2400
                          Austin, TX 78701
16
     Court Reporter:      Kristie M. Davis, CRR, RMR
17                        PO Box 20994
                          Waco, Texas 76702
18                        (254) 666-0904

19      Proceedings recorded by mechanical stenography,

20   transcript produced by computer-aided transcription.

21

22

23

24

25
```

2

```
10:16   1                    (Hearing begins.)
10:16   2               DEPUTY CLERK:  A civil action in Case
10:16   3   AU:25-CV-1095, Defense Distributed versus YouTube LLC,
10:16   4   et al.  Case called for a motions hearing.
10:16   5               THE COURT:  Announcements from counsel,
10:16   6   please.
10:16   7               MR. FLORES:  For the plaintiff Defense
10:16   8   Distributed, I'm Chad Flores, Your Honor.
10:16   9               MR. WINGARD:  For the defendants YouTube,
10:16   10  Google, and Alphabet, I'm Steve Wingard from Scott
10:16   11  Douglass & McConnico.  With me today are Jonathan
10:16   12  Patchen, Anika Holland, Michael Rome from Cooley.  And
10:16   13  Denisha Bacchus from Google as well.
10:17   14              THE COURT:  Okey dokey.  Thank you all.
10:17   15              I have a motion to transfer to the
10:17   16  Northern District of California.  I will hear first
10:17   17  from the defendant, please.
10:17   18              MR. PATCHEN:  Thank you, Your Honor.
10:17   19  Jonathan Patchen on behalf of the defendants in this
10:17   20  case.
10:17   21              Your Honor, this is a fairly
10:17   22  straightforward motion under 1404(a) with a forum
10:17   23  selection clause.  What is not in this issue is what is
10:17   24  typically at issue in forum selection clauses, whether
10:17   25  there's a formation, question, questions of fraud,
```

| | | |
|---|---|---|
| 10:17 | 1 | undue influence, over-weaning bargaining power, those |
| 10:17 | 2 | type of claims that go to standard garden variety |
| 10:17 | 3 | contract formation issues.  None of those are at issue |
| 10:17 | 4 | here.  The plaintiff does not contest any of those. |
| 10:17 | 5 | Nor is there any dispute that the forum |
| 10:17 | 6 | selection clauses -- and I say "clauses" because |
| 10:18 | 7 | obviously there are multiple ones, both with respect to |
| 10:18 | 8 | YouTube and Google Ads -- there's no dispute that the |
| 10:18 | 9 | forum selection clauses are mandatory and that the |
| 10:18 | 10 | dispute brought here is within the scope of the forum |
| 10:18 | 11 | selection clause. |
| 10:18 | 12 | The core issue, Your Honor, is whether |
| 10:18 | 13 | Texas law, specifically Sections 143A.003 and .0035 |
| 10:18 | 14 | somehow operate to invalidate or preclude a forum |
| 10:18 | 15 | selection clause transfer under 1404(a). |
| 10:18 | 16 | Now, the Supreme Court has been very |
| 10:18 | 17 | clear in Stewart and in Atlantic Marine that in a |
| 10:18 | 18 | 1404(a) context in which there is a forum selection |
| 10:18 | 19 | clause that is mandatory and covers the scope in |
| 10:18 | 20 | dispute, that the transfer should occur in all but the |
| 10:18 | 21 | most extraordinary circumstances. |
| 10:18 | 22 | The argument that the plaintiff makes |
| 10:18 | 23 | here is that that -- somehow that Texas statute |
| 10:18 | 24 | overrides Congress' command in 1404(a) and precludes |
| 10:19 | 25 | the transfer. |

4

| 10:19 | 1 | Now, obviously the plaintiff doesn't make |
| 10:19 | 2 | the strong form of the argument, the one that was |
| 10:19 | 3 | specifically rejected in Stewart that says that Texas |
| 10:19 | 4 | law controls and that Texas law precludes this Court |
| 10:19 | 5 | from transferring.  That can't be the case.  We know |
| 10:19 | 6 | from Stewart that 1404(a) is the framework, is the |
| 10:19 | 7 | controlling framework. |
| 10:19 | 8 | So what plaintiff argues is that the same |
| 10:19 | 9 | Texas law effectively undoes Stewart because it gets |
| 10:19 | 10 | smuggled in in the fourth factor under the Bremen |
| 10:19 | 11 | analysis as to the enforceability of the forum |
| 10:19 | 12 | selection clause, i.e., that there is a strong public |
| 10:19 | 13 | policy of the forum that precludes enforcement of the |
| 10:19 | 14 | forum selection clause. |
| 10:19 | 15 | I think Shakespeare probably said it |
| 10:19 | 16 | best, right, a rose by any other name still smells as |
| 10:19 | 17 | sweet.  If you can't do it directly under Stewart, then |
| 10:19 | 18 | it can't be the case that you can smuggle the exact |
| 10:20 | 19 | same statute, exact same argument and undo what the |
| 10:20 | 20 | Supreme Court said can't be done in Stewart and what |
| 10:20 | 21 | shouldn't be done under Atlantic Marine. |
| 10:20 | 22 | And that is precisely what the Fourth |
| 10:20 | 23 | Circuit said in the Albemarle case, that permitting |
| 10:20 | 24 | this argument would be, quote, an end run around the |
| 10:20 | 25 | rule of MS Bremen and Stewart and Atlantic Marine. |

5

| | | |
|---|---|---|
| 10:20 | 1 | In other words, while it is true that MS |
| 10:20 | 2 | Bremen says that a strong public policy of the forum |
| 10:20 | 3 | state might be a ground by which you could avoid |
| 10:20 | 4 | enforcement of a forum selection clause, our |
| 10:20 | 5 | submission, Your Honor, is that strong public policy |
| 10:20 | 6 | cannot be an antiforum selection clause public policy. |
| 10:20 | 7 | Not only would that be an end run around |
| 10:20 | 8 | Bremen, not only would that be a end run around |
| 10:20 | 9 | Stewart, but in fact it completely undercuts the whole |
| 10:20 | 10 | point of Bremen.  Right? |
| 10:21 | 11 | If Bremen sets up the exception of strong |
| 10:21 | 12 | public policy as anti -- as an exception to an |
| 10:21 | 13 | enforcement of a forum selection clause, it makes no |
| 10:21 | 14 | sense that Bremen would say, well, in an entire opinion |
| 10:21 | 15 | that is devoted to rejecting antipathy to forum |
| 10:21 | 16 | selection clauses, calling them provincial and in fact |
| 10:21 | 17 | articulating a strong federal policy in favor of forum |
| 10:21 | 18 | selection clauses, that Bremen would have added an |
| 10:21 | 19 | exception that swallows the rule that any state at any |
| 10:21 | 20 | time could declare its antiforum selection clause a |
| 10:21 | 21 | strong public policy and completely undo what Bremen |
| 10:21 | 22 | said, that makes no sense, Your Honor.  And the Fourth |
| 10:21 | 23 | Circuit made that very clear in the Albemarle decision. |
| 10:21 | 24 | At best for the plaintiff, at best for |
| 10:21 | 25 | plaintiff, Texas' state law becomes a factor to |

6

| | | |
|---|---|---|
| 10:21 | 1 | consider in the 1404(a) transfer motion.  And that's |
| 10:22 | 2 | the Matthews decision. |
| 10:22 | 3 | The Matthews decision from the Fifth |
| 10:22 | 4 | Circuit in 2024 said we don't need to decide under the |
| 10:22 | 5 | Bremen analysis whether the forum public policy that is |
| 10:22 | 6 | referenced in Bremen is the federal forum or the state |
| 10:22 | 7 | forum, right?  Matthews was an antiforum selection |
| 10:22 | 8 | clause arising out of Louisiana as opposed to Texas. |
| 10:22 | 9 | And the Fifth Circuit said we don't need |
| 10:22 | 10 | to do that.  We'll look at both states' public |
| 10:22 | 11 | policies.  And in that case, which was an admiralty |
| 10:22 | 12 | case, not even a 1404 transfer case, but in an |
| 10:22 | 13 | admiralty case, Matthews said that the federal public |
| 10:22 | 14 | policy -- strong federal public policy in favor of |
| 10:22 | 15 | forum selection clauses did not allow Louisiana's |
| 10:22 | 16 | contrary public policy to preclude enforcement of the |
| 10:22 | 17 | forum selection clause in that case. |
| 10:22 | 18 | We submit, Your Honor, that if that's the |
| 10:22 | 19 | case in Matthews where the only public policy is the |
| 10:22 | 20 | articulated Bremen public policy, that this case is |
| 10:23 | 21 | stronger because not only do we have the Bremen strong |
| 10:23 | 22 | public policy just like in Matthews, but we also have |
| 10:23 | 23 | 1404(a), which is Congress' command to consider the |
| 10:23 | 24 | forum selection clauses precisely as Stewart and as |
| 10:23 | 25 | Atlantic Marine said. |

7

| | | |
|---|---|---|
| 10:23 | 1 | So in our position, Your Honor, is that |
| 10:23 | 2 | even if you were to consider the Texas law, which we |
| 10:23 | 3 | submit in the first place, our frontline argument, is |
| 10:23 | 4 | that it's an impermissible consideration under 1404(a) |
| 10:23 | 5 | and the Bremen fourth factor, even if you were to |
| 10:23 | 6 | consider it, federal law is the more important public |
| 10:23 | 7 | policy. |
| 10:23 | 8 | And because that compels enforcement of |
| 10:23 | 9 | the forum selection clause and because there is no |
| 10:23 | 10 | other reason to deny enforcement of the forum selection |
| 10:23 | 11 | clause, transfer should follow. |
| 10:23 | 12 | And I'm happy, if Your Honor has |
| 10:23 | 13 | questions, to talk about the public interest factor, |
| 10:23 | 14 | sort of the residual argument that's been made, or the |
| 10:23 | 15 | waiver argument that we have in our brief. But I think |
| 10:24 | 16 | our frontline position, subject to Your Honor's |
| 10:24 | 17 | questions, is that the enforceability question cannot |
| 10:24 | 18 | be answered by Texas' anti public -- antiforum |
| 10:24 | 19 | selection public policy. |
| 10:24 | 20 | THE COURT: Do you want to address |
| 10:24 | 21 | anything about the Fifth Circuit holding in Weber, |
| 10:24 | 22 | W-e-b-e-r, case? |
| 10:24 | 23 | MR. PATCHEN: I don't think that the |
| 10:24 | 24 | Weber decision, Your Honor, has particular bearing in |
| 10:24 | 25 | this matter. Apart from the fact that it's -- |

8

10:24    1    identifies that strong public policy is an exception to

10:24    2    the enforceability -- or one of the grounds for

10:24    3    nonenforceability in Bremen.

10:24    4              I don't think it (audio distortion) the

10:24    5    question in the way -- what forum gets to decide the

10:24    6    public policy and whether or not an antiforum selection

10:24    7    clause provision in a state law is a recognizable

10:24    8    public policy exception.

10:25    9              THE COURT:  And also, what do we do if

10:25    10   the Court finds the forum selection clauses are

10:25    11   unenforceable?  How do I move forward?

10:25    12             MR. PATCHEN:  Well, I think that

10:25    13   obviously we would -- it's a question of law, we

10:25    14   would -- one that needs to be resolved for -- it's a

10:25    15   question of law, we'd have, you know, that that it

10:25    16   should come out differently.  But at the very least,

10:25    17   that's obviously repeatedly appealed to the Fifth

10:25    18   Circuit.  We would probably deal with it in that way,

10:25    19   Your Honor.  I have not --

10:25    20             THE COURT:  I'm sorry.  What I meant was

10:25    21   what do I do -- how do I balance the private and public

10:25    22   interest factors if I determine that the -- it's

10:25    23   unenforceable?  I'm sorry I wasn't clear.

10:25    24             MR. PATCHEN:  Oh, I see what you're

10:25    25   saying, Your Honor.  I think if you just go to the

9

| | | |
|---|---|---|
| 10:25 | 1 | 1404(a) and you see the forum selection clause, I think |
| 10:25 | 2 | all of the factors point in favor of transferring in |
| 10:25 | 3 | that context.  Obviously the parties haven't briefed to |
| 10:25 | 4 | a large extent the private interest factors. |
| 10:26 | 5 | But thinking about those, the convenience |
| 10:26 | 6 | of the witnesses, those are almost all exclusively in |
| 10:26 | 7 | California.  That's where policy is made at YouTube. |
| 10:26 | 8 | The -- it's where the Google Ads policy is made. |
| 10:26 | 9 | That's where YouTube and Google are headquartered.  So |
| 10:26 | 10 | the witnesses are going to be in California.  The vast |
| 10:26 | 11 | majority of the documents are going to be in |
| 10:26 | 12 | California.  This is an area of extensive experience. |
| 10:26 | 13 | That is where all the forum selection clauses point to. |
| 10:26 | 14 | So the convenience for Google is substantial. |
| 10:26 | 15 | It's not clear to me at all what the |
| 10:26 | 16 | documents or information that would be relevant on the |
| 10:26 | 17 | plaintiff's side of the private interest factors would |
| 10:26 | 18 | have anything to do with Texas.  The issue is they |
| 10:26 | 19 | wanted to post a video.  YouTube did not allow that |
| 10:26 | 20 | video, did not allow ads to generate revenue from that |
| 10:26 | 21 | video, and they want to sue under Texas law. |
| 10:26 | 22 | It's also untethered particularly to |
| 10:27 | 23 | Texas.  There's no particular Texas locale or -- at |
| 10:27 | 24 | issue here.  This is a First Amendment defense at the |
| 10:27 | 25 | end of the day, a question of national import.  And |

—10—

10:27  1   even if Defense Distributed is located in Texas, the

10:27  2   question is whether or not their video can be shown

10:27  3   worldwide.

10:27  4              There's no Texas-specific showing of the

10:27  5   video, if it's -- there's a holding or an injunction

10:27  6   that says it has to be posted.  It's a nationwide,

10:27  7   worldwide effect.  So both the public and the private

10:27  8   interest factors in our mind, Your Honor, even apart

10:27  9   from the forum selection clause, would certainly point

10:27  10  in favor of California.

10:27  11             And even if Your Honor found that the

10:27  12  forum selection clause was technically unenforceable,

10:27  13  we would argue that under Stewart and under Atlantic

10:27  14  Marine, that this Court should still weigh those

10:27  15  private interest factors in favor of a transfer.

10:27  16             Even if it's not dispositive in the way

10:28  17  that it would normally be in Atlantic Marine, the fact

10:28  18  that the parties agreed and agreed repeatedly that they

10:28  19  would be in California suggests that there is no real

10:28  20  credible private interest factors that cut the other

10:28  21  way in favor of staying in Texas.

10:28  22             THE COURT:  Anything else you wanted to

10:28  23  add before I bounce to the other side?

10:28  24             MR. PATCHEN:  No, Your Honor.

10:28  25             THE COURT:  Okay.  Thank you.

—11—

| | | |
|---|---|---|
| 10:28 | 1 | A response? |
| 10:28 | 2 | MR. FLORES:  Yes, Your Honor. |
| 10:28 | 3 | We have two independent reasons to deny |
| 10:28 | 4 | the motion to transfer.  One set of reasons has to do |
| 10:28 | 5 | with the enforceability argument you've heard.  There |
| 10:28 | 6 | is the second independent argument about the public |
| 10:28 | 7 | interest factors, and so those deserve independent |
| 10:28 | 8 | analysis. |
| 10:28 | 9 | Our view is that if the Court agrees with |
| 10:28 | 10 | us on Argument 1 and you deem this forum selection |
| 10:28 | 11 | clause unenforceable, it's game over.  You don't have |
| 10:28 | 12 | to reach Argument 2, but you could as an additional |
| 10:28 | 13 | reason.  So I'll take the points in that order. |
| 10:28 | 14 | First is the question of |
| 10:28 | 15 | unenforceability.  My friend on the other side says |
| 10:29 | 16 | that state public policy does not operate directly on |
| 10:29 | 17 | the analysis.  That's wrong, and more importantly the |
| 10:29 | 18 | bridge has been crossed. |
| 10:29 | 19 | The Court has already identified the |
| 10:29 | 20 | correct decision, that's Weber.  Weber is the Fifth |
| 10:29 | 21 | Circuit case that aligns exactly with what you see in |
| 10:29 | 22 | Davis and Wise Guys.  They all say that fourth piece, |
| 10:29 | 23 | the state public policy comes after an or.  There are |
| 10:29 | 24 | four ways that are independently sufficient to defeat |
| 10:29 | 25 | an invocation and the or means that state public policy |

—12—

10:29  1    alone can defeat this, and it does so here.

10:29  2                    If ever there is a state law that can

10:29  3    marshal enough power to defeat this kind of forum

10:29  4    selection clause, this is that statute.

10:29  5                    My friend on the other side misframes it.

10:29  6    It is not a state public policy that is for or against

10:29  7    forum selection clauses.  The state public policy here

10:29  8    is the speech policy.  It is because if you look at the

10:29  9    exact statute we're talking about, this is 143A.003,

10:29  10   this is the protective provision that we invoke.  This

10:29  11   provision is not specific to forum selection clauses.

10:30  12   It does cover them, but the provision protects this

10:30  13   chapter.  It says the protection is provided by this

10:30  14   chapter.

10:30  15                    So this is not an instance in which a

10:30  16   state is singling out forum selection clauses.  In

10:30  17   other context, for example, some states really don't

10:30  18   like arbitration.  They have arbitration-specific

10:30  19   statutes.  This is not that.  The protection here, the

10:30  20   public policy here is the speech policy codified by the

10:30  21   entire chapter.

10:30  22                    Weber sets that as the rule and the Davis

10:30  23   and Wise Guys decisions are perfectly on point.  They

10:30  24   are this exact scenario, this exact analysis.  And they

10:30  25   go nine-tenths of the way and they don't get across the

—13—

| | | |
|---|---|---|
| 10:30 | 1 | threshold.  They say, no.  You don't remand in this |
| 10:30 | 2 | case because the statute lacks one little piece. |
| 10:30 | 3 | And the statute has since been fixed. |
| 10:30 | 4 | The Texas legislature read those decisions, knew |
| 10:30 | 5 | exactly what they meant, and changed the statute to |
| 10:30 | 6 | solve for this exact case. |
| 10:30 | 7 | So if ever there is a case where state |
| 10:30 | 8 | powers exercised enough and with enough specificity and |
| 10:30 | 9 | with enough power, this is that case. |
| 10:31 | 10 | If the Court agrees so far, you don't |
| 10:31 | 11 | have to do any more analysis.  My friend on the other |
| 10:31 | 12 | side made some arguments about the private factors. |
| 10:31 | 13 | Those are not properly in the case. |
| 10:31 | 14 | The motion to transfer made only the |
| 10:31 | 15 | invocation of their forum selection clause alone and |
| 10:31 | 16 | then we talked about public interest factors.  But |
| 10:31 | 17 | there's been no briefing about how the other private |
| 10:31 | 18 | interest factors might weigh in their favor and they |
| 10:31 | 19 | don't. |
| 10:31 | 20 | The real analysis here would be a public |
| 10:31 | 21 | interest mandate.  They're the four public interest |
| 10:31 | 22 | factors.  They all overwhelmingly favor keeping this |
| 10:31 | 23 | case in Texas.  It doesn't take long to go through them |
| 10:31 | 24 | because they're all dunks on our side. |
| 10:31 | 25 | One is the speed of disposition.  We've |

—14—

10:31  1  shown you and they have not controverted that if this
10:31  2  case stays in Texas, it's going to go three times as
10:31  3  fast as if it goes to California.
10:31  4          I'm going to go a little bit out of
10:31  5  order.
10:31  6          We have the local familiarity with the
10:31  7  local law here.  The law to be applied is Texas law.
10:31  8  This Court knows that the NetChoice litigation
10:31  9  exemplifies that much of this litigation is going to be
10:32  10  about what the statute means, how it operates, what its
10:32  11  exact scope is.  That is a core question of Texas state
10:32  12  law that the courts of Texas are obviously most
10:32  13  qualified to address, not just because they're in Texas
10:32  14  but because this circuit is already home to the
10:32  15  NetChoice litigation.
10:32  16          So we have speed overwhelmingly in our
10:32  17  favor.  We have the forum familiarity with the law.
10:32  18          There's a potential choice of law factor.
10:32  19  And so if you keep this case in Texas, choice of law is
10:32  20  easy because we apply Texas law by default.  If you go
10:32  21  to California, that's going to at least be a
10:32  22  complicated question.
10:32  23          But, Your Honor, I want to call your
10:32  24  attention very specifically to the factor about the
10:32  25  local interest in deciding local interests at home.

—15—

| | | |
|---|---|---|
| 10:32 | 1 | Because this drives overwhelmingly in our favor for two |
| 10:32 | 2 | critical reasons. |
| 10:32 | 3 | One is first principles.  This is a case |
| 10:32 | 4 | about a speaker in Texas invoking a Texas state law |
| 10:32 | 5 | designed to protect speech in Texas.  These are all |
| 10:32 | 6 | inherently local interests.  Don't believe me, believe |
| 10:32 | 7 | the Fifth Circuit's decision in Bruck.  Which is styled |
| 10:32 | 8 | Defense Distributed versus Bruck.  It is the same |
| 10:32 | 9 | client, virtually the same case. |
| 10:33 | 10 | Our client sues to vindicate speech |
| 10:33 | 11 | rights that are being violated by an out-of-state |
| 10:33 | 12 | censoring regime.  And the Fifth Circuit holds that in |
| 10:33 | 13 | that scenario, when someone out of state is censoring |
| 10:33 | 14 | Texans, that kind of controversy is inherently local, |
| 10:33 | 15 | and under a transfer analysis, has to stay in Texas. |
| 10:33 | 16 | They have zero answer to Bruck. |
| 10:33 | 17 | So we have both the first principles of |
| 10:33 | 18 | all four factors and the most important Fifth Circuit |
| 10:33 | 19 | case is going right on point with this exact client in |
| 10:33 | 20 | a parallel scenario.  Those are the two independent |
| 10:33 | 21 | reasons to reject the motion to transfer.  Either is |
| 10:33 | 22 | sufficient, and I think we have the clear precedent on |
| 10:33 | 23 | both sides. |
| 10:33 | 24 | THE COURT:  Your brethren discussed |
| 10:33 | 25 | Weber -- I'm sorry, Stewart.  Did you want to say |

10:33    1    anything about Stewart?

10:33    2              MR. FLORES:  Yes, Your Honor.

10:33    3              We understand Stewart to acknowledge

10:33    4    that -- I think every case that we cite is after

10:34    5    Stewart.  And every case we cite says that the state

10:34    6    public policy is still a part of the analysis.

10:34    7              I think their theory of Stewart might

10:34    8    apply if the argument were a state policy specific to

10:34    9    forum selection clauses and you had statute that

10:34   10    existed only to go after forum selection clauses, maybe

10:34   11    their argument would be better.  But it doesn't apply

10:34   12    here because the state public policy being invoked is

10:34   13    the speech policy, the chapter-wide policy there.

10:34   14              So the precedent point I have is that

10:34   15    we've already crossed the bridge.  That's the Fifth

10:34   16    Circuit's decision in Weber and Wise Guys and Davis.

10:34   17    And then the practical argument I have is that this

10:34   18    statute is more -- is sort of distinguishable from the

10:34   19    ones they're trying to paint it as.

10:34   20              THE COURT:  Anything else?

10:34   21              MR. FLORES:  Your Honor, they have made

10:34   22    in their briefs some arguments about waiver and timing,

10:34   23    but if they're not going to argue them here, then we

10:34   24    don't need to respond to them.

10:34   25              THE COURT:  Okay.  Rebuttal?

| | | |
|---|---|---|
| 10:34 | 1 | MR. PATCHEN:  Thank you, Your Honor. |
| 10:34 | 2 | With respect to the argument -- three |
| 10:35 | 3 | points.  One, Weber says nothing about whether or not |
| 10:35 | 4 | and in what circumstances a state law policy that says |
| 10:35 | 5 | forum selection clauses are unenforceable is or can |
| 10:35 | 6 | trump in the unenforceability analysis of Bremen. |
| 10:35 | 7 | If you look at what the arguments were, |
| 10:35 | 8 | those -- the arguments in Weber were -- deprive the |
| 10:35 | 9 | plaintiff of a remedy, that German law was unfavorable. |
| 10:35 | 10 | It's simply inapplicable except for the general |
| 10:35 | 11 | proposition that is discussed in Weber that in certain |
| 10:35 | 12 | circumstances, state public policy, if it's strong, may |
| 10:35 | 13 | preclude enforcement of a forum selection clause. |
| 10:35 | 14 | Now, my colleague on the other side says, |
| 10:35 | 15 | well, the public policy that's at issue here is a |
| 10:35 | 16 | speech protective public policy and not an antiforum |
| 10:35 | 17 | selection clause policy. |
| 10:35 | 18 | If that is their position, if their |
| 10:35 | 19 | position is that the state public policy is just we |
| 10:35 | 20 | want to protect speech of Texans, that has bearing. |
| 10:36 | 21 | There's no reason that that has any impact on a forum |
| 10:36 | 22 | selection clause. |
| 10:36 | 23 | Federal law is very clear that a |
| 10:36 | 24 | California court is to be trusted just as much as a |
| 10:36 | 25 | Texas court in terms of enforcing a Texas law that |

| | |
|---|---|
| 10:36 | 1 |

10:36  1   provides that.  There's no argument that suggests that

10:36  2   California's going to be unable to make that or be able

10:36  3   to rule in that way.

10:36  4            So the only argument, the only basis that

10:36  5   distinguishes -- that plaintiff says distinguishes the

10:36  6   case from Davis or Wise Guys is that in 2023, Texas

10:36  7   added in a provision that says the antiwaiver provision

10:36  8   in 143.003, which says that the protections of the

10:36  9   statute can be waived, they add in 0035, the Texas

10:36  10  legislature does in 2023, that says this -- there's no

10:36  11  forum selection clause, no choice of law, anything of

10:36  12  that sort with respect to the provisions of this

10:36  13  chapter.

10:36  14           It is that provision that is at issue

10:37  15  here.  That is the only possible provision that could

10:37  16  stand as a public policy that would preclude

10:37  17  enforcement of a freely entered into forum selection

10:37  18  clause.

10:37  19           And there's no argument that crediting

10:37  20  that public policy would be an end run around Bremen,

10:37  21  that the Fourth Circuit rejected that argument for four

10:37  22  independent reasons in Albemarle, and that the Court --

10:37  23  the Fifth Circuit in Matthews, which -- if we want to

10:37  24  talk about what is the most applicable Fifth Circuit

10:37  25  decision, it would be the Matthews decision from last

| | | |
|---|---|---|
| 10:37 | 1 | year, 2024, which specifically asked this question: |
| 10:37 | 2 | When you say state public policy, do you look at state, |
| 10:37 | 3 | i.e., Louisiana, or do you look at federal?  And it |
| 10:37 | 4 | held that it didn't have to decide that question |
| 10:37 | 5 | because even if you did look at both, federal public |
| 10:37 | 6 | policy in favor of forum selection clauses trump. |
| 10:37 | 7 | If we're looking at -- and I disagree |
| 10:38 | 8 | with my colleague on the other side that the public |
| 10:38 | 9 | interest factors are a dunk in Defense Distributed's |
| 10:38 | 10 | favor.  I'm happy to talk about court congestion. |
| 10:38 | 11 | Frankly, Your Honor, court congestion is |
| 10:38 | 12 | a question of whether or not the Court is going to be |
| 10:38 | 13 | bothered.  Speed to disposition is in fact a private |
| 10:38 | 14 | factor and we cite the cases in our reply brief that |
| 10:38 | 15 | that's not even a consideration.  The speed of |
| 10:38 | 16 | disposition as a benefit to the parties is a private |
| 10:38 | 17 | interest, not a public interest factor. |
| 10:38 | 18 | But more importantly, the argument that |
| 10:38 | 19 | this is a speech protective and this is protecting a |
| 10:38 | 20 | Texan's speech is actually incorrect.  The speech that |
| 10:38 | 21 | is at issue is not Defense Distributed.  YouTube is not |
| 10:38 | 22 | the government.  Google is not the government.  Google |
| 10:38 | 23 | has the right to tell Defense Distributed we do not |
| 10:38 | 24 | want to put your video up.  It has the First Amendment |
| 10:38 | 25 | right to that. |

20

| | |
|---|---|
| 10:38 | 1 |
| 10:38 | 2 |
| 10:39 | 3 |
| 10:39 | 4 |
| 10:39 | 5 |
| 10:39 | 6 |
| 10:39 | 7 |
| 10:39 | 8 |
| 10:39 | 9 |
| 10:39 | 10 |
| 10:39 | 11 |
| 10:39 | 12 |
| 10:39 | 13 |
| 10:42 | 14 |
| 10:42 | 15 |
| 10:42 | 16 |
| 10:42 | 17 |
| 10:42 | 18 |
| 10:42 | 19 |
| 10:42 | 20 |
| 10:42 | 21 |
| 10:42 | 22 |
| 10:42 | 23 |
| 10:42 | 24 |
| 10:42 | 25 |

The speech that is being protected is not Defense Distributed's.  This is not a Texas speaker whose speech is being protected.  The speech that is being protected is a California company who has a forum selection clause calling for litigation in California and it is its speech that is being protected.

So to the extent that the argument is there's censorship, that there's imposition of -- on a party's speech, the Supreme Court's decision in Moody makes very clear whose speech is being affected and those public interest factors point to California, not Texas.

THE COURT:  I'll be back in a second.

(Pause in proceedings.)

THE COURT:  Now -- thank you for the break.

The Court is going to deny the motion to transfer.

I'll hear the motion to remand.

MR. FLORES:  Thank you, Your Honor.

The motion to remand is a question of how to perform the calculation of the amount in controversy.  The rules that apply are necessarily typical.

THE COURT:  So let me -- I'm sorry to

—21—

10:42   1   interrupt.  But here's the way I see it.  If you want

10:42   2   to go on the record and say that there's no possibility

10:42   3   you are seeking more than $74,999 in this case, I'm

10:42   4   happy to hear that.

10:43   5                MR. FLORES:  I mean, if that's

10:43   6   dispositive, then I think we would make that as an

10:43   7   alternative argument under the sort of indeterminant

10:43   8   amount.  But our frontline argument is the amount in

10:43   9   controversy is indeterminant here.

10:43   10                THE COURT:  I don't need to hear it.

10:43   11                MR. FLORES:  Yes, Your Honor.  We'll make

10:43   12   that representation.  So we will not seek recovery of

10:43   13   damages more than $75,000.

10:43   14                THE COURT:  Okay.

        15                MR. FLORES:  The argument on the other

10:43   16   side is the value of their injunction, and so that's

10:43   17   why I'm happy to say that that's not part of what we

10:43   18   want.

10:43   19                THE COURT:  Got it.

10:43   20                Let me hear a response from the other

10:43   21   side.

10:43   22                MS. HOLLAND:  Thanks, Your Honor.  Anika

10:43   23   Holland with Cooley for defendants.

10:43   24                I believe there's some case law in this

10:43   25   district that post removal representations, that the

—22—

| | |
|---|---|
| 10:43 | 1 |

10:43  1  amount in controversy wouldn't exceed the $75,000

10:43  2  threshold are not operative, that plaintiff --

10:43  3  THE COURT:  You just got him to cap his

10:43  4  damages.  Why don't you call your client and have them

10:43  5  like, you know, praise, you know, take you out to a big

10:44  6  dinner?  I've never had anyone accept that offer.  I

10:44  7  mean, you know, he's put on the record the damages

10:44  8  they're seeking will not -- and that I'm assuming

10:44  9  includes attorneys' fees and everything -- it's not

10:44  10  going to exceed $75,000.  Then why does it belong here?

10:44  11  MS. HOLLAND:  Well, Your Honor, I think

10:44  12  there are two things.  So first of all, we have the

10:44  13  allegation in the petition that the amount in

10:44  14  controversy exceeds $5 million, and that speaks to

10:44  15  equitable --

10:44  16  THE COURT:  Okay.  He's -- I have him on

10:44  17  the record --

10:44  18  MS. HOLLAND:  And then we have the second

10:44  19  point about attorneys' fees here.  So now --

10:44  20  THE COURT:  I'm including attorneys'

10:44  21  fees.  He's making a representation that including

10:44  22  attorneys' fees, it's not going to go above $75,000.  I

10:44  23  don't think that's included regardless, but I'm -- when

10:44  24  I asked him the question, I meant total recovery,

10:45  25  damages and attorneys' fees, won't go over $75,000,

—23—

| | | |
|---|---|---|
| 10:45 | 1 | which is the jurisdictional minimum -- yeah, minimum |
| 10:45 | 2 | for me.  So what else do you need? |
| 10:45 | 3 | MS. HOLLAND:  Well, Your Honor, I did not |
| 10:45 | 4 | hear my friend on the other side say that that amount |
| 10:45 | 5 | included attorneys' fees -- |
| 10:45 | 6 | THE COURT:  I just -- he's not correcting |
| 10:45 | 7 | me.  I've said it now four times.  I mean, I would not |
| 10:45 | 8 | want to be him and come in and say, Judge, you said it |
| 10:45 | 9 | four times.  Now I want attorneys' fees to exceed -- he |
| 10:45 | 10 | is telling me that he is removing your jurisdictional |
| 10:45 | 11 | minimum to remain in my court.  And he's agreeing to |
| 10:45 | 12 | it. |
| 10:45 | 13 | So what do you want me to do?  I mean, |
| 10:45 | 14 | he's -- I don't have jurisdiction if he's not seeking |
| 10:45 | 15 | $75,000 or more. |
| 10:45 | 16 | MS. HOLLAND:  Your Honor, I think the |
| 10:45 | 17 | issue is that they've made a judicial admission that |
| 10:46 | 18 | the value of their injunction -- |
| 10:46 | 19 | THE COURT:  He -- no.  They put in the |
| 10:46 | 20 | complaint that it might be.  I have him on the record |
| 10:46 | 21 | saying that he's divested me of my jurisdiction. |
| 10:46 | 22 | MS. HOLLAND:  And this returns to the |
| 10:46 | 23 | first point, Your Honor, which I think the case law in |
| 10:46 | 24 | the Western District of Texas is that such stipulations |
| 10:46 | 25 | made post removal are not binding. |

—24—

| | | |
|---|---|---|
| 10:46 | 1 | THE COURT: Well, I don't think we'll |
| 10:46 | 2 | ever know because, as I remember, you don't get to |
| 10:46 | 3 | appeal a remand. So. |
| 10:46 | 4 | MR. PATCHEN: Your Honor, if I may assist |
| 10:46 | 5 | my colleague. |
| 10:46 | 6 | Is the plaintiff also walking away and |
| 10:46 | 7 | not going to be seeking injunctive or other equitable |
| 10:46 | 8 | relief? Because certainly even if they limit their |
| 10:46 | 9 | damage claim to less than $75,000, the question of |
| 10:46 | 10 | injunctive relief and the value of that injunctive |
| 10:46 | 11 | relief certainly is -- unless that's going away as well |
| 10:46 | 12 | and this is only a question of $75,000 -- |
| 10:46 | 13 | THE COURT: How would you value the value |
| 10:46 | 14 | of the injunction relief? |
| 10:46 | 15 | MR. PATCHEN: We know how much they did, |
| 10:47 | 16 | which they pled at 5,000 -- I'm sorry, 5 million. |
| 10:47 | 17 | THE COURT: No. How would you -- I asked |
| 10:47 | 18 | you, how would you put a value on the injunction? |
| 10:47 | 19 | MR. PATCHEN: The fact that Google has to |
| 10:47 | 20 | change its policy and essentially allow any video -- |
| 10:47 | 21 | THE COURT: What person would come in and |
| 10:47 | 22 | testify as to the value of that injunction? |
| 10:47 | 23 | MR. PATCHEN: I would have, Your Honor, |
| 10:47 | 24 | if you needed to have somebody, I would certainly be |
| 10:47 | 25 | able to put up a number of witnesses to talk about the |

—25—

10:47  1   value and importance of Google and YouTube's content

10:47  2   moderation policy, its importance of being able to

10:47  3   decide which videos.

10:47  4              Frankly, Your Honor, it's free speech

10:47  5   rights that are at issue.  That's irreparable injury.

10:47  6   But that's --

10:47  7              THE COURT:  Do you have a counterclaim

10:47  8   under the First Amendment?

10:47  9              MR. PATCHEN:  We've not moved to (audio

10:47  10  distortion) the time to respond to the pleadings by

10:47  11  stipulation was extended.  We don't have a counterclaim

10:47  12  yet, but we --

10:47  13             THE COURT:  Do you intend to make a

10:47  14  counterclaim under the First Amendment?

10:48  15             MR. PATCHEN:  I expect that we'll just

10:48  16  defend and argue that the --

10:48  17             THE COURT:  Well, if you had a

10:48  18  counterclaim under the First Amendment, I would

10:48  19  understand that.  But if your defense is going to be --

10:48  20  or might not be, I don't know what you're going to do

10:48  21  when you go to trial, you know, if you want to tell

10:48  22  me -- if you want -- if you want to tell me that you

10:48  23  are going to make a counterclaim that your client's

10:48  24  rights are protected under the First Amendment, well,

10:48  25  then there'll be federal jurisdiction and I wouldn't be

26

| | | |
|---|---|---|
| 10:48 | 1 | able to remand it. |
| 10:48 | 2 | MR. PATCHEN:  I will make that |
| 10:48 | 3 | representation, Your Honor.  When we plead, I will |
| 10:48 | 4 | represent that we will plead a First Amendment defense |
| 10:48 | 5 | that the Texas statute is precluded and preempted by |
| 10:48 | 6 | the First Amendment. |
| 10:48 | 7 | THE COURT:  And so here's what I'm going |
| 10:48 | 8 | to do because I've thrown all of this at you and you're |
| 10:48 | 9 | just having to kind of deal with me and you all have |
| 10:48 | 10 | done well. |
| 10:48 | 11 | I'm going to give -- before I rule, I'm |
| 10:48 | 12 | going to give the plaintiff an opportunity to research |
| 10:49 | 13 | and let me -- and obviously defendant can find stuff to |
| 10:49 | 14 | support it.  I'm not entirely certain a -- the fact |
| 10:49 | 15 | that they are asserting a defense in the First |
| 10:49 | 16 | Amendment is sufficient to have jurisdiction in this |
| 10:49 | 17 | case.  And it may not.  There may be cases that say |
| 10:49 | 18 | pleading a constitutional response doesn't get you |
| 10:49 | 19 | there. |
| 10:49 | 20 | But I'll give the plaintiff an |
| 10:49 | 21 | opportunity to research this and let me know one way or |
| 10:49 | 22 | the other. |
| 10:49 | 23 | And I'll also give the defendant, if |
| 10:49 | 24 | there's any other -- let me put it this way.  As of |
| 10:49 | 25 | right now, with the state of the pleadings, my |

—27—

| | | |
|---|---|---|
| 10:49 | 1 | inclination would be to remand it.  Defendant has made |
| 10:49 | 2 | the representation without the opportunity to speak to |
| 10:49 | 3 | his client, and you ought to get to have that, that you |
| 10:49 | 4 | would make at least a First Amendment counterclaim or |
| 10:49 | 5 | make that part of it. |
| 10:49 | 6 | If you -- knowing what you know, if the |
| 10:50 | 7 | defendant wants to add any other arguments as to why |
| 10:50 | 8 | there might be federal jurisdiction that would prevent |
| 10:50 | 9 | me from removing it, in other words, other claims that |
| 10:50 | 10 | might be made by the defendant, you can do that and get |
| 10:50 | 11 | that to the plaintiff. |
| 10:50 | 12 | And then I'll hear -- the plaintiff can |
| 10:50 | 13 | file whatever it wants to -- I'm sorry, he wants to as |
| 10:50 | 14 | to why a defendant can't create jurisdiction by having |
| 10:50 | 15 | an affirmative defense, and then we all get back |
| 10:50 | 16 | together.  So I'm going to postpone ruling on the |
| 10:50 | 17 | motion to remand at this point. |
| 10:50 | 18 | I think that was the last motion we had, |
| 10:50 | 19 | though.  So is there anything else we needed to take |
| 10:50 | 20 | up? |
| 10:50 | 21 | MR. PATCHEN:  Your Honor, if -- I heard |
| 10:50 | 22 | the Court deny the motion to transfer.  Will there be a |
| 10:50 | 23 | written order as to the reasons? |
| 10:50 | 24 | THE COURT:  Yes.  Yes. |
| 10:50 | 25 | MR. PATCHEN:  Okay.  I just wanted to |

28

| | |
|---|---|
| 10:50 | 1 | make sure. |
| 10:50 | 2 | THE COURT: You may not have heard, but |
| 10:50 | 3 | we get a lot of motions to transfer. We have a |
| 10:51 | 4 | template. |
| 10:51 | 5 | MR. PATCHEN: Yep. |
| 10:51 | 6 | THE COURT: And counsel for plaintiff? |
| 10:51 | 7 | MR. FLORES: Judge, could you confirm the |
| 10:51 | 8 | order of those supplemental submissions that you |
| 10:51 | 9 | wanted? You wanted the defendants to go first and then |
| 10:51 | 10 | the plaintiff to respond; is that right? |
| 10:51 | 11 | THE COURT: I'd like for the defendant -- |
| 10:51 | 12 | knowing that my -- as it stands now with your |
| 10:51 | 13 | representation about taking away my jurisdictional |
| 10:51 | 14 | power under -- because of the amount, any other reason |
| 10:51 | 15 | that they might -- and I will tell -- I'll tell defense |
| 10:51 | 16 | in advance, I'm not going to buy the there's some value |
| 10:51 | 17 | to an injunction because I don't believe that that |
| 10:51 | 18 | could ever be proven. |
| 10:51 | 19 | Even if Yahoo comes in or the defendant |
| 10:51 | 20 | comes in and says, oh, you know, having the ability to |
| 10:51 | 21 | do this is important to us, I get that. But that -- I |
| 10:51 | 22 | would never -- I can't imagine a Daubert where I'd let |
| 10:51 | 23 | someone quantify that. So. |
| 10:51 | 24 | But if the defendant wants to articulate |
| 10:51 | 25 | a First Amendment counterclaim defense, affirmative |

| | | |
|---|---|---|
| 10:52 | 1 | defense, whichever it is, and anything else, everything |
| 10:52 | 2 | they want to do, they need to get to you within the |
| 10:52 | 3 | next two weeks. Once you have that, once you see what |
| 10:52 | 4 | they are saying they would like to -- and I would allow |
| 10:52 | 5 | them to amend to do that. Once you have -- you see |
| 10:52 | 6 | that -- there's got to be case law one way or the other |
| 10:52 | 7 | about whether or not that's sufficient in this |
| 10:52 | 8 | situation. And then once you respond, we'll get back |
| 10:52 | 9 | together and I'll let you guys argue it to me. |
| 10:52 | 10 | Is there anything else we need to take up |
| 10:52 | 11 | this morning? |
| 10:52 | 12 | MR. PATCHEN: Not that I'm aware of, Your |
| 10:52 | 13 | Honor. |
| 10:52 | 14 | THE COURT: Well, I'll tell you, I |
| 10:52 | 15 | routinely, at the end of hearings involving patent |
| 10:52 | 16 | cases, compliment the lawyers and say that's why I |
| 10:52 | 17 | enjoy patent cases so much is the quality of the |
| 10:52 | 18 | lawyers. But I will tell you you've given me hope in |
| 10:52 | 19 | that I thought the arguments from counsel on both sides |
| 10:52 | 20 | were really excellent this morning and I enjoyed the |
| 10:53 | 21 | hearing very much. So I look forward to getting |
| 10:53 | 22 | together again in the future. And have a good day. |
| 10:53 | 23 | Take care. |
| 10:53 | 24 | (Hearing adjourned.) |
| | 25 | |

1 | UNITED STATES DISTRICT COURT )

2 | WESTERN DISTRICT OF TEXAS      )

3

4

5 |            I, Kristie M. Davis, Official Court

6 | Reporter for the United States District Court, Western

7 | District of Texas, do certify that the foregoing is a

8 | correct transcript from the record of proceedings in

9 | the above-entitled matter.

10 |            I certify that the transcript fees and

11 | format comply with those prescribed by the Court and

12 | Judicial Conference of the United States.

13 |            Certified to by me this 6th day of

14 | November 2025.

15

16 |                    /s/ Kristie M. Davis
                    KRISTIE M. DAVIS

17 |                    Official Court Reporter
                    PO Box 20994

18 |                    Waco, Texas 76702
                    (254) 666-0904

19 |                    kmdaviscsr@yahoo.com

20

21

22

23

24

25

10:53