In the United States District Court
for the Western District of Texas
Austin Division

| | | |
|---|---|---|
| Defense Distributed, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:25-cv-01095-ADA-ML |
| | § | |
| YouTube LLC, | § | |
| Google LLC, | § | |
| Alphabet, Inc., | § | |
| Defendants. | § | |

**Plaintiff's Supplemental Brief in Support of
Plaintiff's Motion to Remand**

**Table of Contents**

Argument ......................................................................................................................... 3

I.       The motion should be decided immediately. ..................................................... 4

II.      The motion should be granted. ........................................................................... 8

         A.       Diversity jurisdiction does not exist. .................................................... 8

                  1.       Plaintiff's side of the equation does not entail $75,000+ ............................ 8

                  2.       Defenses and counterclaims don't count. ................................10

         B.       Federal question jurisdiction does not exist. ................................... 11

                  1.       Defendants failed to timely assert their new *Grable* ground. ..................... 11

                  2.       *Grable* does not apply. ...............................................................14

                           i.       The claims do not necessarily raise a stated federal issue.............15

                           ii.      Any federal issue is not "substantial." ..........................................19

                           iii.     Federalizing these claims upsets state/federal judicial balance.....21

Conclusion...................................................................................................................... 23

Certificate of Service ..................................................................................................... 23

**Argument**

The Court lacks diversity jurisdiction because Defendants have not carried their burden of establishing a $75,000+ amount in controversy. Defense Distributed's claims do not put $75,000+ in controversy for reasons already covered in detail. Hence the request for supplemental briefing focused mainly (if not exclusively) on whether the Defendants' putative First Amendment defenses or counterclaims change the analysis. The answer is easy, which is why the Defendants don't seriously go for this ground any more. Ever since *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), the amount in controversy has turned only on the value of Plaintiff's requested relief—not a Defendants' defenses, counterclaims, or injunction-compliance costs. Across the board, all that matters to removal calculus is the monetizable value of what plaintiff seeks to recover. Defensive issues don't count and neither does the defendant's cost of losing.

Realizing that diversity jurisdiction is a lost cause, the Defendants now try to claim federal question jurisdiction under 28 U.S.C. § 1331 via *Grable* (U.S. 2005). The Court should reject that theory as untimely because Defendants never pleaded it in the notice of removal and 28 U.S.C. § 1446 bars their late assertion of this wholly-new ground here. This new effort also fails on the merits. *Grable* is a narrow exception, reserved for the rare state-law case where a federal issue is an essential element and federal adjudication will not disrupt the federal–state division of labor. This case arises under Texas law between private parties and implicates the First Amendment, at most, as a defense. Treating that as "embedded" federal jurisdiction would wrongly federalize ordinary state disputes whenever defendants raise constitutional defenses. The cases to follow are *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), and *Gunn v. Minton*, 568 U.S. 251 (2013), both of which reject *Grable* with directly analogous holdings.  Remand is required.

Now about that "Notice of Notice of Appeal," Doc. 51, which is really just another argument about how to resolve the motion to remand. Doc. 51. Defendants have started an appeal of the Court's transfer denial, Doc. 50, and use their "Notice of Notice" to invoke *Griggs* (U.S. 1982) and say that their transfer appeal deprives this Court of jurisdiction to order remand, Doc. 51. But the transfer denial is clearly unappealable, the Fifth Circuit lacks jurisdiction, and a notice of appeal *from a clearly nonappealable order* never divests district courts of any authority. This Court retains full power to decide remand now, without waiting for the Fifth Circuit to formally dismiss an appeal that is dead on arrival. This gives the Court every reason to act decisively and order remand as soon as is practicable without any more delay.

## I.    The motion should be decided immediately.

After the Court decided to deny the Defendants' motion to transfer, Doc. 48, Defendants filed a notice of appeal from that decision, Doc. 50. Then they filed a "Notice of Notice" about a supposed stay of remand proceedings. Doc. 51. Invoking *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56 (1982), Defendants' "Notice of Notice" argues that the transfer appeal's pendency automatically stops the Court from proceeding to resolve the motion to remand. Doc. 51. Not so. The Court retains its full authority to decide the motion to remand and should do so immediately.

*Griggs* divestiture does not occur where the appeal is from an unappealable order. *Griggs* itself recognizes that a "notice of appeal from [an] unappealable order does not divest district court of jurisdiction." *Griggs*, 459 U.S. at 58 (explaining *Ruby v. Sec. of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc)). The Fifth Circuit upholds that rule. *See Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 526 (5th Cir. 1986). And treatises see that "an appeal from a clearly non-appealable order fails to oust district court authority." 16A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3949.1 & nn.72-73 (3d ed. West 2025) (hereinafter "Wright & Miller").

That the Fifth Circuit lacks appellate jurisdiction over Defendants' transfer appeal is clear. The accepted rule is that a plain order denying a motion to transfer under 28 U.S.C. § 1404(a) is not appealable as a "final" decision: "An order granting or denying a motion to transfer venue under 28 U.S.C.A. § 1404(a) is interlocutory and thus is not immediately appealable as a 'final decision' under 28 U.S.C.A. § 1291." Wright & Miller § 3855 & n.1. And though "the party contesting the order may attempt to invoke the 'collateral order' doctrine, which allows immediate review of orders that are effectively unreviewable from final judgment," the accepted rule "rejects it on the ground that other avenues—such as a motion to retransfer, certification under Section 1292(b), and extraordinary writ—remain available to review the issue." *Id.* § 3855 & n.22.

The Fifth Circuit follows these accepted rules about the appealability of plain Section 1404 transfer orders. *See generally In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc); *Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022). Here and everywhere else, an order just denying a motion to transfer under 28 U.S.C. § 1404(a) is certainly not appealable as a "final" decision. *See* Wright & Miller § 3914.12 ("Grant or denial of transfer is not final."). And neither does this Court's collateral order doctrine cover a standard Section 1404(a) transfer order. *Id.*

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), correctly announces the Fifth Circuit position: "While the Supreme Court has crafted a narrow exception to the final order doctrine, termed the 'collateral order doctrine' or '*Cohen* exception,' we have previously held that transfer orders do not fall within the scope of this doctrine." *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014) (applying *Brinar v. Williamson*, 245 F.3d 515, 517 (5th Cir. 2001)). Indeed, the Supreme Court itself held in the key case about forum selection clauses, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989), that a transfer order does not qualify for a collateral order appeal. *Id.* at 501

("Petitioner's claim that it may be sued only in Naples, while not perfectly secured by appeal after final judgment, is adequately vindicable at that stage—surely as effectively vindicable as a claim that the trial court lacked personal jurisdiction over the defendant—and hence does not fall within the third prong of the collateral order doctrine.").

Because this notice of appeal concerns an unappealable order, the *Griggs* divestiture principle does not apply. So this Court remains free and indeed obligated to proceed forthwith.

*In re Fort Worth Chamber of Commerce*, 100 F.4th 528 (5th Cir. 2024) (cited by the Defendants), does not hold otherwise. It concerned a clearly *appealable* order—an injunction denial. *Id.* ("Because the district court effectively denied the preliminary injunction, there is an appealable order before us."). It said nothing about *Griggs* vis-à-vis clearly unappealable decisions.

It is true that original mandamus proceedings can review certain extraordinary transfer rulings—the key case being one of a combined transfer-*and-sever* order with extraordinary circumstances, *Defense Distributed v. Bruck*, 30 F.4th at 421. But no such extraordinary transfer+ order is at issue here. And more importantly, mandamus jurisdiction is not at issue here. A party seeking mandamus "must file a petition," Fed. R. App. P. 21, and then meet the doctrine's unique demands. There has been no mention of mandamus at the Fifth Circuit, let alone a colorable showing of the mandamus prerequisites.

Critically as well, even if Defendants had opted to pursue that route, mandamus petitions have no automatic stay right. A party seeking both mandamus relief and an interim stay must do the work of both filing a viable mandamus petition and seeking that stay species with arguments good enough to justify both orders of extraordinary relief. But Defendants here did none of that.

They instead claim an automatic *Griggs* stay from an appeal without jurisdictional footing. An obviously invalid appeal stops only that appeal—not the underlying case that deserves to proceed.

The appeal's jurisdictional defect has been called to the Fifth Circuit's attention via a motion to dismiss the appeal for lack of jurisdiction. No doubt the Fifth Circuit can and likely will dismiss this appeal promptly. But this Court need not wait and should not wait.

The Court should act immediately to disregard the stay "notice" and proceed. "Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby*, 365 F.2d at 389. No doubt exists here. The result is clear: Defendants' transfer appeal is jurisdictionally dead on arrival. This Court should therefore "disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Id.*

Letting Defendants stun this proceeding with a *Griggs* stay—based on an appeal everyone acknowledges is unappealable—gives them exactly what they seek: a pretext to delay this Court's remand ruling and derail the progress of the case. That manufactured uncertainty burdens the Court and frustrates Congress's command that jurisdiction be resolved promptly and at the outset. District courts have both the authority and the obligation to decide remand as soon as the absence of federal jurisdiction becomes clear, and Defendants' reliance on an invalid appeal does nothing to alter that duty. The Court should dispel any uncertainty by exercising its unquestioned authority to decide the remand motion without waiting for anything else.

## II.    The motion should be granted.

The Court has said that it is inclined to grant the motion to remand. Doc. 49-2 at 27-28 ("As of right now, with the state of the pleadings, my inclination would be to remand it."). That inclination is correct both as to the diversity jurisdiction that Defendants asserted initially and as to the federal question jurisdiction invented in their latest filing. Remand was and is required.

### A.    Diversity jurisdiction does not exist.

First, the Court should reject the only jurisdictional ground Defendants presented in the notice of removal and original briefing: diversity jurisdiction under 28 U.S.C. § 1332.

#### 1.    Plaintiff's side of the equation does not entail $75,000+.

Based on filings alone, the Court's inclination is correct for the reasons Defense Distributed has already detailed in prior filings and at the main hearing. Under the rules about what does and does not count toward an amount in controversy, the burden of showing $75,000+ on Plaintiff's account has not been met. Chapter 143A provides no damages remedy. Only the injunction's value to Plaintiff matters, and its expressive rights are unmonetizable; Defendants' compliance costs are legally irrelevant and, in any case, not provable. Attorney's fees matter only if incurred *at the time of removal*, which Defendants have not even tried to value.

Any claim that Defense Distributed's state-court pleading is inconsistent with its present position misunderstands the materially different "amount in controversy" rules that apply in these separate courts.  Texas courts do a lot of things differently than their federal counterparts, and jurisdiction is one of them.  As the Texas Business Court has recently explained, "Texas and federal courts approach challenges to jurisdictional pleadings differently," including in how they define and measure an "amount in controversy." *C Ten 31 LLC on behalf of SummerMoon Holdings LLC v. Tarbox*, 708 S.W.3d 223, 240 (Tex. Bus. Ct. 2025).  The disparities are very material here.

The Business Court of Texas applies a system-specific *and far more expansive* "amount in controversy" formula. It measures the "amount in controversy" by looking to the full scope of the dispute over its expected life. It can include the plaintiff's claims and the defendant's counterclaims; attorneys' fees projected through final judgment rather than only those incurred at a snapshot in time; and the value of injunctive relief to both sides, not merely the plaintiff. *See C Ten*, 708 S.W.3d at 234 (Tex. Bus. Ct. 2025); *Chaudhry v. Stillwater Capital Investments, LLC*, 721 S.W.3d 230, 246 (Tex. Bus. Ct. 2025); *Cadence McShane Constr. Co. LLC v. Ryan BB-Blockhouse Creek, LLC*, No. 25-BC03B-0002, 2025 WL 3080589, at *3 (Tex. Bus. Ct. Nov. 3, 2025); *Kassam v. Dosani*, No. 24-BC11A-0021, 2025 WL 1826637, at *4 (Tex. Bus. Ct. June 30, 2025).

Federal removal jurisdiction, by contrast, employs a much narrower inquiry. It counts only the plaintiff's claims, excludes counterclaims and compliance costs, values injunctive relief solely from the plaintiff's perspective, and considers only those attorneys' fees recoverable and incurred as of removal—not those that may accrue over the life of the case. *See* Doc. 41 at 3, 7–10.

Major calculation disparities across these very different formulas should surprise no one. A federal formula that deliberately excludes large categories of case value—most notably Defendants' potentially massive injunction-compliance costs and attorneys' fees projected over the life of complex constitutional litigation—will naturally yield a far lower bottom line than a state formula designed to capture the entire controversy. In a case like this one, where those excluded categories drive most of the real-world stakes, a wide gap between state and federal valuations is not anomalous but expected. That gap reflects distinct and deliberate jurisdictional choices by different sovereigns, each serving its own institutional goals.

Beyond all of that, the Court's inclination to remand is even more correct because Defense Distributed expressly represented that Defense Distributed will not seek recovery of $75,000+ for damages and/or attorney's fees. Consideration of such post-removal events is proper where, as here, the plaintiff's initial pleadings may be deemed ambiguous (as opposed to clearly defeating federal jurisdiction). *See* Wright & Miller § 3706 & nn.7-12.[1]

Taken together, the pleadings, governing valuation rules, and Plaintiff's binding limitation leave no genuine dispute about the amount in controversy. Defendants have offered no competent evidence—at removal or since—that places $75,000+ on Plaintiff's side of the ledger. Because the jurisdictional threshold is not met, diversity jurisdiction fails as a matter of law.

### 2.    Defenses and counterclaims don't count.

Hence the Court's request for extra briefing focused mainly (if not exclusively) on the Defendants' side of the equation. But nothing Defendants have now argued alters the bottom line. Hornbook law dictates that a defendant's defenses and counterclaims never count toward an amount in controversy. *St. Paul Mercury*, 303 U.S. at 289–90; Wright & Miller § 3708. The jurisdictional inquiry values only what the plaintiff seeks—not what the defendant hopes to assert or avoid. *Id.* So defensive theories cannot create or inflate federal jurisdiction, even if totally grounded in important principles of federal law like the First Amendment.

---

[1] In such cases, courts can quite rightly "exercise discretion to take a more receptive view of post-removal events such as legal or factual determinations on pleading or summary judgment motions, damage claim reductions, disclaimers, and binding stipulations limiting recovery and allow them and evidentiary matter in their consideration of the amount requirement." Wright & Miller § 3706 & nn.7-12. "Thus, in cases in which it was not facially apparent that the plaintiff's claims will exceed the requisite amount in controversy, a substantial number of courts have examined attorney affidavits, stipulations as to damages, and what has been termed summary-judgment-type evidence to help them ascertain the actual amount in controversy at the relevant time." *Id.*

This was a key question the Court posed at the hearing, and Defendants' response essentially ignores it. Their silence concedes the controlling rule. And that concession matters: once one strips away the legally irrelevant defensive material, no path remains for Defendants to carry their amount-in-controversy burden for diversity jurisdiction.

### B.    Federal question jurisdiction does not exist.

Next, the Court should reject the jurisdictional ground Defendants invented for the first time in their post-hearing supplemental brief: federal question jurisdiction under 28 U.S.C. § 1331 via *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Defendants' post-hearing reliance on *Grable* is both untimely and wrong. It is untimely because they never asserted federal-question jurisdiction in their notice of removal and § 1446 forecloses new grounds after the deadline. It is wrong because *Grable*'s narrow exception does not reach this case, which arises under state law and implicates the First Amendment only as a defense.

### 1.    Defendants failed to timely assert their new *Grable* ground.

Defendants' *Grable* position fails at the outset because removal procedure does not allow the invention of wholly new jurisdictional grounds at this stage. Section 1446 requires defendants to state all asserted grounds for federal jurisdiction within the 30-day deadline. But Defendants' notice of removal never mentioned § 1331, *Grable*, embedded federal issues, or any other federal-question theory. Defendants therefore cannot assert their *Grable*-based federal question ground for the first time now, long after the removal window has closed.

The applicable timing rule is well-established. *See generally* Wright & Miller § 3733. Congress in 28 U.S.C. § 1446 requires all "grounds for removal" be stated in the notice of removal that must be filed within the 30-day deadline. 28 U.S.C. § 1446. Later clarifications are allowed if

they pertain *to an already-presented ground* that is "defective." 28 U.S.C § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). But where as here the notice-of-removal deadline has passed, the removing party cannot "add completely new grounds for removal or furnish missing allegations." Wright & Miller § 3733.

The Fifth Circuit adheres to the Section 1446 timing rule, realizing that its statutory foundation requires enforcement despite any felt equities. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991); *Russell v. Basila Mfg. Co.*, 246 F.2d 432, 433 (5th Cir. 1957). So have the Texas district courts. *See Iwag v. Geisel Compania Maritima, S.A.*, 882 F. Supp. 597, 601 (S.D. Tex. 1995) ("Section 1653 does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading. . . . The court will disallow amendments to notices of removal that present grounds for removal not included in the original notice.").

The Section 1446 timing rule applies here. Diversity jurisdiction was timely asserted within the 30-day deadline of 28 U.S.C § 1446; so the Defendants have the leeway of 28 U.S.C § 1653 to clarify defective allegations about that. But since the Defendants failed to timely assert federal question jurisdiction in the first instance, they cannot do so for the first time now, even if labeled as a "clarification." *See* 28 U.S.C § 1446; 28 U.S.C § 1653; Wright & Miller § 3733.

Nothing in the notice of removal raised the federal question ground for jurisdiction. See Doc. 1 at 1. That filing expressly indicated Defendants' sole ground as diversity jurisdiction under 28 U.S.C. § 1332:

## NOTICE OF REMOVAL

Defendants YouTube LLC, Google LLC, and Alphabet, Inc. (collectively, "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and remove the above-captioned action, originally filed in the Third Business Court Division of the Business Court of the State of Texas, to the United States District Court for the Western District of Texas, Austin Division.  In support of this Notice of Removal, Defendants state as follows:

*Id.*; *accord id.* at 2-3. Federal question jurisdiction and Section 1331 are never mentioned.

Defendants raised federal question jurisdiction for the first time in their most recent supplemental brief, Doc. 49, clearly well outside of the 30-day removal period. The Court had invited extra briefing solely on the jurisdictional grounds already in dispute. Doc. 49-2 at 27-29. It did not invite Defendants to create an entirely new removal ground. Yet Defendants used that invitation's guise to *shift* their grounds rather than *clarify* them, which removal law's statutory timing rule does not allow even with intended or unintended permission.

*D. J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145 (5th Cir. 1979), confirms the limit on post-deadline amendments. That defendant timely invoked diversity jurisdiction but misstated citizenship facts, which the court allowed it to correct. *Id. at* 147. Here, by contrast, Defendants never asserted federal-question jurisdiction at all. They have nothing to "clarify," only a new theory to add. The case therefore belongs with the main rule: Removal grounds not asserted by the notice of removal within the deadline are a nullity. *See Stafford* 945 F.2d at 806; *Russell*, 246 F.2d at 433; Wright & Miller § 3733.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002), confirms the limit on post-deadline amendments as well. The court excused an omission because the plaintiff's petition itself pleaded the jurisdictional ground. *Id.* at 310 n.2. But Defense

Distributed's petition does the opposite. It expressly disclaims any federal question, Doc. 102 ¶ 16, which is being discussed only because of what the Defendants' hearing argument and supplemental filings say. Again, the case therefore belongs with the main rule barring untimely removal grounds. *See Stafford* 945 F.2d at 806; *Russell*, 246 F.2d at 433; Wright & Miller § 3733.[2]

Once more in *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001), the court held that late correction is allowed only for "technical defects" regarding the subsidiary elements of overall *grounds that were timely pleaded in the first instance. Id.* at 919. Late injection of wholly new removal grounds is not allowed. *Id.* The reason for the initial omission does not matter, be it "tactical reasons or out of mere inadvertence." *Id.* at 921. Because jurisdiction requires this strictness, other Fifth Circuit precedent employs this same rule and should be followed here. To wit, *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000) ("While a district court can 'remedy inadequate jurisdictional allegations,' it cannot remedy 'defective jurisdictional facts.'").

Thus, because Defendants never timely asserted federal-question jurisdiction, their *Grable* position cannot be considered. The removal rules do not permit a late pivot to a brand-new ground.

### 2.    *Grable* does not apply.

Alternatively, even if the Defendants can assert federal–question jurisdiction at this time, the case should still be remanded because no such jurisdiction exists. The main avenue of federal-question jurisdiction exists "when federal law creates the cause of action asserted." *Gunn*

---

[2] The analysis of *D. J. McDuffie, Inc.* and *Great Plains* applies equally to *Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*, 92 F.4th 330 (1st Cir. 2024) (cited by Doc. 49 at 8). There too, late correction was allowed because the removal ground at issue been asserted in both the petition notice of removal all along. *Id.* at n.3 ("here, the allegations in the complaint and the notice of removal support there being federal-question jurisdiction.").

*v. Minton*, 568 U.S. 251, 257 (2013). That main avenue is obviously inapplicable here because Defense Distributed's causes of action are creatures of Texas state law.

So Google invokes the theory of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), a "small," "slim," and "special" rule holding that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id. Grable* does not apply unless all four requirements are met, *e.g.*, *Cantu v. Beck Redden L.L.P.*, No. 24-40275, 2024 WL 5199328, at *2 (5th Cir. Dec. 23, 2024), and multiple *Grable* requirements are unmet here.

### i.    The claims do not necessarily raise a stated federal issue.

*Grable* first requires that the state-law claim "necessarily raise a stated federal issue." *Gunn*, 568 U.S. at 258; *Grable*, 545 U.S. at 314. To do this, a claim has to be "premised" on federal law such that federal law is an "an essential element." *Grable*, 545 U.S. at 314; *see Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 384 (2016). "Like most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022). "Thus, the court looks to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*." *Id.* Under this test, Plaintiff's claims do not necessarily raise any federal issue within the meaning of *Grable*.

Defense Distributed's Chapter 143A claims do not "necessarily raise" any federal issue because federal law plays no role in establishing liability under the statute. Chapter 143A creates state-law causes of action governed by state-law elements and state-law remedies. A court can resolve liability entirely by answering Texas-law questions—what Defendants did, whether those

actions fall within Chapter 143A's prohibitions, and whether Chapter 143A's state-law exceptions apply—without deciding any federal constitutional question or construing the First Amendment.

Defendants' First Amendment arguments do not alter that conclusion. Those arguments function exclusively as defenses, not as elements of Plaintiff's claims. And under the well-pleaded complaint rule—applied explicitly in *Grable* cases—a federal defense does not supply § 1331 jurisdiction, no matter how important the defense may be. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (*Grable* "does not open the door to federal jurisdiction merely because a federal question lurks in the background"); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588–89 (5th Cir. 2022) ("When a federal issue is raised '[a]s a defense, it does not appear on the face of a well-pleaded complaint.'"). CDA Section 230 is an affirmative defense too. *See United States v. EZ Lynk*, SEZC, 149 F.4th 190, 198 (2d Cir. 2025); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019).

"Thus, these federal issues are neither raised nor disputed on the face of the complaint, and *Grable* does not apply." *Mitchell*, 28 F.4th at 589. Defendants remain free to press their First Amendment defenses in Texas court, which is the congressionally approved forum for adjudicating state-law claims subject to federal constitutional limits. *See id.*

The pleading here further defeats Grable's "necessarily raised" requirement. Defense Distributed expressly disclaimed any federal cause of action and alleged that its claims arise solely under Texas law: "This action arises solely under the laws of the State of Texas. This action does not arise under the Constitution, laws, or treaties of the United States." Doc. 102 at 8, ¶ 16. Courts give such disclaimers effect when determining whether a claim arises under federal law. *See Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 375 n.1 (5th Cir. 2021). Whatever federal questions

Defendants wish to litigate arise, if at all, only as defenses. Because federal law is not a necessary element of any Chapter 143A claim, *Grable*'s first requirement is not met, and federal-question jurisdiction fails at the threshold.[3]

Nothing in Chapter 143A alters that analysis. The statute's references to federal law do not make federal law an operative part of any claim. They merely acknowledge an unavoidable background rule: state law operates subject to superior federal law. The Supremacy Clause already imposes that limitation. Provisions clarifying that Chapter 143A will be applied only to the extent permitted by federal law therefore do not "raise" a federal issue; they confirm that Texas courts will respect constitutional boundaries when applying Texas law. Accordingly, the Fifth Circuit has already held that a state-law claim does not necessarily raise a stated federal issue simply because adjudication may require reference to federal standards. *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 543 (5th Cir. 2012) ("[n]o reasonable argument can be made that the mere fact that a federal standard is to be referenced by a state court in determining whether there has been a state-law violation causes a state-law claim to 'necessarily raise a stated federal issue.'").

Google's position here clashes with what it told the Supreme Court in *NetChoice*. There, Google and its platform privies did *not* argue that Chapter 143A contains any internal protection for its asserted federal rights. They argued the opposite—that HB20 is unconstitutional, full stop: "HB20 is a flagrant violation of the First Amendment." Brief for Pet. at 1, *Moody v. NetChoice,*

---

[3] At most, Defendants can point to an isolated or ambiguous reference in Defense Distributed's pleading. But when a complaint plausibly supports both a state-law construction and a federal one, courts must resolve the ambiguity in favor of remand. *See Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). A federal issue that appears only by inference or implication depending on how a pleading is construed is, by definition, not a necessary element of the claim. *Id.* Defendants therefore cannot satisfy *Grable* via supposed ambiguities.

*LLC*, 603 U.S. 707, 743 (2024) (No. 22-555). That framing correctly treats the First Amendment as an external limit on state law—not a statutory element of any kind (let alone an "affirmative defense").[4] Google cannot switch characterizations solely to manufacture federal jurisdiction.

On a larger scale, Defendants' contrary theory would collapse *Grable*'s first requirement altogether. If accepted, any state statute constrained by federal constitutional limits would automatically support federal-question jurisdiction whenever a defendant asserts a constitutional defense. Consumer-protection laws, tort claims, employment statutes, and defamation actions would all become removable. *Grable* and *Merrell Dow* foreclose that result. *Grable* does not permit defendants to repackage what really amount to federal defenses as "embedded" federal issues.

---

[4] Defendants' footnote 2 is wrong. Doc. 49 at 10 n.2. Even if federal law plays any operative role in a Chapter 143A claim—which it does not—it functions only as an affirmative defense, not as an element of the case.

Texas law resolves this question by statutory structure and function, not labels. If a limitation appears in the statute's enacting clause defining liability, it is an element the plaintiff must plead and prove. If it appears as a separate proviso or carveout, it operates as a matter of avoidance and must be pleaded and proved by the defendant under Texas Rule of Civil Procedure 94. Smith v. Baldwin, 611 S.W.2d 611, 616–17 (Tex. 1980).

Chapter 143A's references to federal law—if operative at all—fall squarely on the defensive side of that line. They assume the claim's validity under state law and invoke independent legal constraints to avoid liability. That is classic confession-and-avoidance. *See id.*; *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991). Unlike Defendants' cited out-of-circuit authority (*Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 143 (2d Cir. 2021)), federal law does *not* appear in Chapter 143A's operative provisions. The statute defines prohibited conduct in Section 143A.002 and remedies in Section 143A.007. Neither mentions federal law. Federal law appears only in subsidiary sections—§§ 143A.005 and 143A.006—outside the liability-defining core.

Thus, even on Defendants' own premises, federal law operates only as a defense that may limit relief—not as an element required to establish liability. Grable does not permit federal jurisdiction to be manufactured from a defensive "unless federal law forbids it" proviso.

ii.    Any federal issue is not "substantial."

Federal-question jurisdiction under Grable next requires that the claim's necessarily-raised federal issue be "substantial in the relevant sense." *Gunn*, 568 U.S. at 258; *accord Grable*, 545 U.S. at 314; *Empire*, 547 U.S. at 699-701. This too is a standalone jurisdictional prerequisite. *See id.*

To show that a federal issue is "substantial in the relevant sense," "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 258-60. Even if the issue is "vitally important" to the instant parties, the need for a "substantial" federal issue is not met unless "the question is significant to the federal system as a whole." *Id.* at 260-64. The federal issue supposedly raised by Defense Distributed's Chapter 143A claims is *not* "substantial in the relevant sense" for two distinct reasons.

*First*, there is no "substantial" federal interest here because the purported federal interests are not the right kind. What suffices are federal interests like collecting taxes (*Grable*) and the constitutional validity of an act of Congress (*Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)). *Id.* But here just as in *Gunn*, "the federal issue carries no such significance." *Id.*

The federal issue Defendants posit does not matter to the federal system as a whole. This case asks whether Texas law authorizes injunctive relief against private platforms and, if so, whether the First Amendment limits that relief. That question may matter a great deal to these parties. But it does not implicate any federal agency, any federal program, any federal revenue stream, or any federal statutory scheme. *Grable* found substantiality because the case turned on the meaning of a federal tax-notice provision that the federal government must apply uniformly to collect revenue. 545 U.S. at 315. This case looks nothing like that. It presents an ordinary state-law

enforcement dispute between private parties with anticipated constitutional defenses. *Gunn* treats that sort of dispute as non-substantial for *Grable* purposes. 568 U.S. at 260–64.

Defendants also do not identify any "pure" federal question whose resolution will control many other cases in a way that demands a federal forum. They seek, at most, a ruling on how the First Amendment applies to the specific platforms, specific content decisions, and specific facts alleged here. That kind of case-specific application does not create the "systemic" federal interest that Grable demands. *Gunn*, 568 U.S. at 263–64. The decision rule to apply here is that "federal question jurisdiction under *Grable* is only appropriate when a case presents a 'nearly pure issue of law'—and not, as here, where the case is 'fact-bound and situation-specific.'" *Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362, 375 (5th Cir. 2021).

Defendants' own reliance on *NetChoice* confirms this decisive point. They cite *NetChoice* as the model for how this case would proceed. Doc. 49 at 16. Yet *NetChoice* is the opposite of a "pure" legal dispute. It is intensely fact-bound. The Supreme Court's opinion turns on granular descriptions of specific platform features, content-moderation practices, algorithms, user interfaces, and asserted state interests. *Moody v. NetChoice, LLC*, 603 U.S. 707, 743 (2024). And on remand, the litigation is proceeding through fact-heavy, application-specific inquiries into how the statute operates across different platforms and functions. *See NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 497 (5th Cir. 2024) ("Who is covered by [HB20]? For these actors, which activities are covered by [HB20]? For these covered activities, how do the covered actors moderate content . . . ? [T]hese are fact-intensive questions that must be answered by the district court in the first instance after thorough discovery . . . "). A case that rises or falls on such contextual, record-dependent analysis cannot supply the kind of systemic, law-declaring issue *Grable* demands. It

exemplifies, rather than escapes, the "fact-bound and situation-specific" category that forecloses federal-question jurisdiction.

*Second*, there is no "substantial" federal interest here because Defendants cannot show a serious risk of non-uniform federal law. Even when the right kind of federal interest is at stake, the interest is still not "substantial in the relevant sense" if state-court adjudication of the issue poses no major uniformity concerns. *Gunn*, 568 U.S. at 261-63. *Gunn*'s rejection of *Grable* applies here: "Nor will allowing state courts to resolve these cases undermine 'the development of a uniform body of [federal] law.'" *Id.* Just as in *Gunn*, "state courts can be expected to hew closely to the pertinent federal precedents." *Id.* at 262. "If the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests." *Id.*

There is no doubt that resolution of Google's federal defenses is "vitally important" to all of this case's parties. "But something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Gunn*, 568 U.S. at 263-64. "That is missing here." *Id.*

### iii.    Federalizing these claims upsets state/federal judicial balance.

Federal-question jurisdiction under *Grable* next requires that the claim be one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 258; *Grable*, 545 U.S. at 314. This too is a standalone jurisdictional prerequisite, operating as a "veto" even if every other requirement is satisfied. *Grable*, 545 U.S. at 314; *accord Gunn*, 568 U.S. at 264. Here, federal courts cannot entertain Defense Distributed's claims "without disturbing any congressionally approved balance of federal and state judicial responsibilities" within the meaning of *Grable*.

*Gunn* controls again. It rejected *Grable* jurisdiction precisely because allowing state courts to resolve federal defenses in state-law actions reflects—not disrupts—the ordinary federal–state balance. 568 U.S. at 264. The same reasoning applies here. Chapter 143A regulates matters of traditional state concern. Congress has given no indication that it intended to displace state courts simply because defendants may assert federal constitutional defenses.

Defendants' position would invert that balance. If accepted, it would federalize a broad class of state regulatory and remedial statutes whenever defendants invoke the First Amendment. That result would shift large swaths of state-law litigation into federal court without any congressional authorization. *Grable* and *Gunn* forbid that.

History cuts the same way. In *Grable*, federal courts had exercised jurisdiction over similar claims for nearly a century. *Grable*, 545 U.S. at 315-16. No such history exists here. State courts have long adjudicated state-law claims subject to federal constitutional limits, including First Amendment defenses. Nothing about Chapter 143A alters that settled practice.

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), squarely applies again. There are here alike, it is "hardly apparent" why a proper federal-state balance would put free speech jurisprudence "under the complete governance of federal law, to be declared in a federal forum." *Id.* There and here alike, the state courts at issue are perfectly "competent to apply federal law, to the extent it is relevant," and are "best positioned" to determine the Texas-law questions that predominate.

Allowing this case to proceed in state court respects Congress's chosen allocation of judicial responsibilities. Federalizing it would upset that balance. *Grable*'s fourth requirement therefore bars federal jurisdiction, even if Defendants could satisfy the others—which they cannot.

**Conclusion**

The Court should decide the motion immediately by granting it.

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Colleen McKnight
Texas Bar No. 24078976
colleen.mcknight@mcknightlaw.us
McKnight Law PLLC
801 Travis Street Suite 2101, PMB 698
Houston, TX 77002
(713) 487-5645

Counsel for Plaintiff

**Certificate of Service**

A true and correct copy of this submission was served on the day of its filing via the Court's CM/ECF system on all counsel registered therewith and on those attorneys not registered for electronic filing (Elijah Barrish) via email.

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640