# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| DEFENSE DISTRIBUTED,<br><br>                  Plaintiff,<br><br>v.<br><br><br>YOUTUBE LLC, GOOGLE LLC, and<br>ALPHABET, INC.<br><br>                  Defendants. | No.1:25-cv-01095-ADA |

**DEFENDANTS' FURTHER SUPPLEMENTAL BRIEF IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO REMAND**

Plaintiff's Supplemental Brief in Support of its Motion to Remand (Dkt. No. 53) raises two arguments it never previously advanced, neither of which the Court invited supplemental briefing upon, and neither of which withstands even minimal scrutiny.  *First*, Plaintiff asks this Court to disregard a binding stay and to declare—on its own—that the Fifth Circuit lacks jurisdiction over an appeal pending before it.  That request is procedurally improper and squarely contradicts several of Plaintiff's previous positions.  *Second*, Plaintiff newly attempts to draw a substantive distinction between Texas and federal amount-in-controversy rules, disregarding both controlling precedent and Plaintiff's own unambiguous jurisdictional allegations.  Neither argument supplies a basis for remand, but further briefing is warranted to address them.

### A. Whether The Fifth Circuit Has Jurisdiction Is For The Fifth Circuit To Decide, And Plaintiff's Argument Contradicts Its Own Previous Position.

Plaintiff urges this Court (Dkt. No. 53 at 4) to disregard the *Griggs* stay and remand this case out from under the Fifth Circuit's ongoing appellate review on the theory that the Fifth Circuit lacks jurisdiction.  Plaintiff's request is inappropriate for at least two reasons.  *First*, whether the Fifth Circuit has appellate jurisdiction is a matter for that Court, not this one, to decide.  *Second*, even if the existence of appellate jurisdiction were for this Court to decide, transfer orders are appealable under the collateral-order doctrine—as Plaintiff itself argued in previous litigation and *earlier in this very case*.  Defendants are appealing merely to ensure, in accordance with this Court's decision to resolve transfer before remand, that the federal court in which this case belongs is the one to decide the remand motion.

To start, Plaintiff's demand (Dkt. No. 53 at 4, 7) that this Court "not wait" for the Fifth Circuit to act and grant its motion to remand "immediately" is an invitation for this Court to usurp the Fifth Circuit's prerogative to decide its own jurisdiction.  It is well-settled that, under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), a pending appeal "divest[s]" the district

court "of jurisdiction to take any action with regard to the matter except in aid of the appeal." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 536 (5th Cir. 2024); *see* Dkt. No. 51. Plaintiff tries to get around that rule by claiming that this Court's transfer order is unappealable, and therefore the Fifth Circuit lacks jurisdiction. But whether Plaintiff is correct about the Fifth Circuit's jurisdiction (it is not) is for the Fifth Circuit, not this Court, to decide. *Cf. Mississippi v. JXN Water*, 134 F.4th 312, 318 (5th Cir. 2025) ("We always have jurisdiction to determine *our own* jurisdiction." (emphasis added) (confirming applicability of the collateral-order doctrine)).

Plaintiff knows this, which is why it filed a motion to dismiss for lack of appellate jurisdiction in the Fifth Circuit. *See* Ex. 1 (Plaintiff's Motion to Dismiss Appeal for Lack of Jurisdiction). Defendants have submitted an opposition explaining to the Fifth Circuit why Plaintiff's motion is meritless and contradicts its own previous position. *See* Ex. 2 (Defendants' Opposition to Plaintiff's Motion to Dismiss Appeal for Lack of Jurisdiction). Tellingly, Plaintiff's arguments to this Court about why the transfer order is supposedly unappealable are copied nearly verbatim from its Fifth Circuit motion. *Compare* Dkt. No. 53 at 5-6, *with* Ex. 1 at 5-7. This Court should leave it to the Fifth Circuit to consider those arguments and Defendants' response, rather than inappropriately supplant the Court of Appeals and potentially come to a different conclusion about the Fifth Circuit's jurisdiction than the Fifth Circuit would on its own.

Even if it were within this Court's power to decide whether the Fifth Circuit has jurisdiction, the answer is clear: As Plaintiff has previously argued, under binding Fifth Circuit precedent, transfer orders are appealable under the collateral-order doctrine. Plaintiff speciously claims (Dkt. No. 53 at 7) that "everyone acknowledge[s]" that the transfer order "is unappealable." The exact opposite is true: Plaintiff itself acknowledged both in previous litigation and earlier *in this very case* that transfer orders are appealable.

*First*, a handful of years ago, Plaintiff was itself on the wrong side of a transfer order. *See Defense Distributed v. Bruck*, 30 F.4th 414, 422-23 (5th Cir. 2022). Plaintiff immediately appealed the district court's adverse transfer order to the Fifth Circuit. *Id.* at 423. It argued that transfer orders are appealable under the collateral-order doctrine, invoking Fifth Circuit precedent. *See* Ex. 5 at 9-10 (*Bruck* Reply Brief of Appellants). In the alternative, Plaintiff asked the Fifth Circuit to construe its opening brief as a petition for mandamus relief. Ex. 3 at 18 (*Bruck* Opening Brief of Appellants). Plaintiff, while represented by the same counsel, vociferously argued the Fifth Circuit had jurisdiction, asserting: "*The question is not whether jurisdiction exists, but which— appellate jurisdiction via the collateral order doctrine or original mandamus jurisdiction. Either way, the Court has all the power it needs*." Ex. 5 at 9 (emphasis added). In deciding Plaintiff's appeal, the Fifth Circuit expressly acknowledged its earlier decisions applying the collateral-order doctrine to transfer orders. 30 F.4th at 423 n.8. But it ultimately had no occasion to decide whether appeal was available because it accepted Plaintiff's alternative request for mandamus relief. *Id.* Plaintiff now directly contradicts the position it took in *Bruck* without advancing any argument that the state of the law has changed.

*Second*, earlier in *this litigation*, Plaintiff acknowledged that appeal remains an open avenue for seeking review of a transfer order. In its opposition to Defendants' motion to transfer, Plaintiff asked this Court to issue a 30-day stay in the event that it granted the motion to transfer "to afford . . . Plaintiff an adequate opportunity to pursue . . . its right to appellate review" in the Fifth Circuit. Dkt. No. 35 at 17. But now that this Court has denied the motion to transfer and Defendants, rather than Plaintiff, are the ones seeking review, Plaintiff insists that, actually, appellate review is not available. Plaintiff's blatant about-face before the very same Court in the very same case is striking.

3

Defendants will not burden this Court with full refutations of Plaintiff's arguments against appellate jurisdiction, given that this entire dispute is for the Fifth Circuit, not this Court, to adjudicate. But Defendants' opposition to Plaintiff's motion to dismiss the appeal sets out in detail why the cases Plaintiff cites are inapposite and/or affirmatively contradict Plaintiff's position. *See* Ex. 2 at 17-22.

It would also be inappropriate for this Court to remand the case and thereby divest the Fifth Circuit of jurisdiction because, regardless of how the Fifth Circuit decides the collateral-order issue, the Fifth Circuit unquestionably has mandamus jurisdiction to review the transfer order. *See Bruck*, 30 F.4th at 423 and n.8 (granting Plaintiff's request to construe its brief on appeal from a transfer order as a mandamus petition and granting mandamus relief); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) (holding that "mandamus is an appropriate means of testing a district court's section 1404(a) ruling"). Plaintiff protests (Dkt. No. 53 at 6) that "mandamus jurisdiction is not at issue here" because Defendants have not requested mandamus relief. But Defendants have completed and are prepared to file an opening brief that requests mandamus relief in the alternative—just as Plaintiff did in *Bruck*—within two business days of the Record on Appeal becoming available. *See* Ex. 2 at 9 n.1, 22-23.[1]

Finally, Plaintiff incorrectly claims (Dkt. No. 53 at 7) that Defendants are appealing the transfer order as "a pretext to delay this Court's remand ruling and derail the progress of the case." To the contrary, *this Court itself* "exercise[d] its discretion to resolve the motion to transfer before

---

[1] Plaintiff asserts (at 6-7) that Defendants are obligated to file a stay motion in addition to petitioning for mandamus. But given Defendants' appeal, there is already a stay in place under *Griggs*. And in the event that the Fifth Circuit grants Plaintiff's motion to dismiss for lack of appellate jurisdiction, thereby dissolving the *Griggs* stay, then Defendants intend to promptly move for a stay in this Court. Notably, Plaintiff did not file a stay motion in *Bruck* when it filed an appeal while asking for mandamus relief in the alternative. See Ex. 6 (*Bruck* Administrative Stay Order) at 4 ("No party has requested a stay of the district court's transfer order.").

the motion to remand." Dkt. No. 48 at n.2. Accordingly, there is every reason to conclusively

settle the transfer issue—including Fifth Circuit review of the transfer order—before turning to the

remand motion. After all, regardless of how the Fifth Circuit rules on transfer, Plaintiff will remain

free afterward to argue for remand to state court. The same is not true of Defendants' options if

the order of operations is reversed. Plaintiff has previewed that it will argue that remand orders

cannot be appealed. *See* Ex. 1 at 8 (asserting that "a remand decision is not appealable"). So if

this Court were to remand before the Fifth Circuit considers Defendants' appeal (in clear violation

of *Griggs*), then Defendants may very well be precluded from seeking review of that remand

decision, and the Fifth Circuit would lose any opportunity to determine whether the case belonged

in this Court or the Northern District of California to begin with. In sum, Defendants are appealing

not to obstruct this Court's work, but to ensure that "the court who would ultimately try the case"

upon resolution of the transfer dispute is the one "to rule on the remand motion," consistent with

this Court's decision to address transfer before remand. *Davis v. Meta Platforms, Inc.*, 2023 WL

4670491, at *5 (E.D. Tex. July 20, 2023).

### B. The Amount-In-Controversy Calculation Is The Same Under State And Federal Law In All The Ways That Matter And Supports The Court's Diversity Jurisdiction Here.

Contrary to Plaintiff's new claim (Dkt No. 53 at 8-10), there is no meaningful distinction

between federal and state law on any issues that affect the Court's diversity jurisdiction over this

case. Plaintiff is bound by its allegation that the "amount in controversy exceeds $5 million,

excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court

costs." Dkt. No. 1-2 at 16. Unambiguous, good-faith, expressly-pleaded allegations in a state

court petition about the amount in controversy control, whether it is a Texas court or a federal

district court evaluating its jurisdiction. *Tune v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358, 362

(Tex. 2000); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *De Aguilar*

*v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995). Plaintiff tries to sidestep the legal effect of its own pleadings by newly claiming that Texas law regarding the calculation of the amount in controversy is different from federal law with respect to the valuation of attorneys' fees, injunctive relief, and counterclaims by citing new state-law authority Defendants have never had the chance to respond to. But these claimed legal differences are either irrelevant or imaginary, as explained below.

*First*, Plaintiff's reliance on and cherry-picked quotations from *C Ten 31 LLC on behalf of SummerMoon Holdings LLC v. Tarbox*, 708 S.W.3d 223, 240 (Tex. Bus. Ct. 2025) are misplaced. It is true that the court in that case stated that "Texas and federal courts approach challenges to jurisdictional pleadings differently." *Id.* But in the next breath, the court held that "[u]nder both Texas and federal law, when a party pleads in good faith that the amount in controversy is within the court's jurisdictional limits, those allegations control unless they are properly challenged." *Id.* The differences discussed in the opinion—including those in Plaintiff's quotations (Dkt. No. 53 at 8)—relate to *the procedures for challenging removal*. In that context, the court distinguished between federal and state court procedural mechanisms for challenging jurisdiction and the burdens of proof associated with those challenges. In federal court, when jurisdiction is challenged, "the party asserting jurisdiction bears the burden of proving it by a preponderance of the evidence—regardless of whether that is the plaintiff in a suit initiated in federal court or the removing party." *C Ten*, 708 S.W.3d at 240. But parties in Texas state courts can "challenge the existence of jurisdictional facts through multiple different procedural vehicles, including pleas to the jurisdiction and motions for summary judgment," which in turn affects who bears the burden of proving disputed jurisdictional facts. *Id.* at 241.

Thus, while "Texas and federal courts approach challenges to jurisdictional pleadings

differently," the different approach discussed by *C Ten is procedural, not substantive*. *See* Dkt No. 53 at 8 (quoting *C Ten*, 708 S.W.3d at 240). And as *C Ten* also notes, a procedural commonality between federal and state court is that the pleadings alleged in good faith control. Like Texas courts, federal courts strongly disfavor plaintiffs' attempts "to argue against the facts contained in [their] state court petition[s]." *Davis*, 2023 WL 4670491, at *8; *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 538 (5th Cir. 1990) ("For counsel to now argue against the facts and claims contained in those pleadings is somewhat disingenuous if not totally spurious."). Nothing in *C Ten* suggests that, in the ordinary removal case, the party opposing jurisdiction is permitted to disregard its own good-faith jurisdictional allegations. To the contrary, removal disputes typically arise where the complaint is silent as to a specific amount in controversy or pleads that the amount falls below the jurisdictional threshold, and the defendant contends otherwise—not where a plaintiff affirmatively alleges that the threshold is far exceeded and then reverses course to secure remand.

*Second*, contrary to Plaintiff's assertions, Texas law does not supply a "more expansive" or materially different method for calculating the amount in controversy than federal law. *See* Dkt. No. 53 at 8-10. Both systems determine jurisdiction at the time the relevant pleading is filed—the petition in state court, the notice of removal in federal court. *See, e.g.*, *OWL AssetCo 1, LLC v. EOG Res., Inc.*, 2025 WL 2306527, at *3 (Tex. Bus. Ct. Aug. 11, 2025) ("For purposes of determining whether jurisdiction exists . . . the amount in controversy is the amount recoverable under the pleadings when the action is filed."); *see also Our Fair Lady Health Resort v. Miller*, 564 S.W.2d 410, 412 (Tex. Civ. App.—Austin 1978, no writ) ("Jurisdiction is determined by the amount in controversy at the time of the filing of the pleadings."); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d

880, 883 (5th Cir. 2000) ("The jurisdictional facts that support removal must be judged at the time of the removal.").

*Third*, both systems use essentially the same methodology to value injunctive relief. The Texas Supreme Court defines the "amount in controversy" as "the sum of money or *the value of the thing originally sued for*." *In re City of Dallas*, 501 S.W.3d 71, 74 (Tex. 2016) (citations omitted) (emphasis added). Where, like here, the plaintiff seeks non-monetary relief such as an injunction, the amount in controversy is the "subjective value of [the] privilege, if asserted in good faith" in the petition. *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 362 (Tex. 2000). The Fifth Circuit employs a virtually identical standard: "[I]n cases seeking equitable relief 'it is well established that the amount in controversy is measured by the *value of the object of the litigation*.'" *Garcia v. Koch Oil Co.*, 351 F.3d 636, 640 (5th Cir. 2003) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (emphasis added). Thus, just as in federal courts in this Circuit, Texas state courts define and value the amount in controversy in reference to the value of the requested relief *to the plaintiff*. *See Conway v. Thompson*, No. 07-06-0284-CV, 2008 WL 553232, at *1 (Tex. App.—Amarillo Feb. 28, 2008, no pet.) ("Conway originally sued for damages and alternatively requested the return of his cowboy boots, which he valued at $125, and the repair or replacement of his word processor, which he valued at $270. Whether we consider Conway's suit as one seeking damages or for other relief, we agree with appellees that the amount in controversy, for our purpose here, is $395."); *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex. 2007) (indicating that "the 'matter in controversy' includes all of the damages the plaintiff seeks to recover at the time suit is filed.").

Plaintiff suggests that Texas courts evaluate the value of injunctive relief "to both sides" (Dkt. No. 53 at 9), but its cited caselaw does not support this proposition. *C Ten* comes the closest,

8

but that case did not even reach a decision on the amount in controversy, so its reference to defendants' potential fiduciary-duty liability is unbinding dicta—and can just as easily be read as referencing a potential fiduciary-duty damages recovery by the plaintiff.  708 S.W.3d at 240.  In any event, Plaintiff has never claimed that its amount-in-controversy allegation in the Petition was asserting the cost of the requested injunction to Defendants.

Finally, Plaintiff's remaining arguments regarding attorneys' fees and counterclaims fail for an even simpler reason:  They are irrelevant.  Specifically, Plaintiff contends that in state court, but not federal court, the amount in controversy includes "attorneys' fees projected through final judgment rather than only those incurred at a snapshot in time."  Dkt. No. 53 at 9.  That is wrong as a legal matter; the Fifth Circuit considers attorneys' fees likely to be incurred through the life of the litigation.[2]  But it is also beside the point.  Plaintiff's petition expressly excludes attorney's fees when it alleges that the amount in controversy exceeds $5 million.  *See* Dkt. No. 1-2 at ¶ 14 ("[T]his is an action in which the amount in controversy exceeds $5 million, excluding . . . attorney's fees.").  So even if there was a difference between state and federal law on this issue, it would not matter.  This argument is a red herring.  Same for Plaintiff's points about counterclaims: There are no counterclaims at issue here.  The *only* claim is Plaintiff's claim for injunctive and declaratory relief, which it has explicitly valued as exceeding $5 million.  All of this is just ink spilled in an effort to distract the Court from Plaintiff's black-and-white admission that the amount in controversy exceeds the jurisdictional threshold of $75,000 by *millions* of dollars.

Plaintiff's attempt to manufacture a state-federal divide to justify arguments that are

---

[2] As Defendants have previously argued, Dkt. No. 34 at 12-13, in this Circuit, courts count future fees likely to be incurred at later stages of the litigation toward the amount in controversy (not just fees incurred through time of removal).  *Manguno*, 276 F.3d at 724; *see also Procare Auto., LLC v. MidAmerican Energy Servs., LLC*, 2021 WL 5822832, at *3 (W.D. Tex. Dec. 7, 2021).

divorced from its pleadings collapses under scrutiny.  Texas and federal law apply the same substantive rules that matter here.  Jurisdiction is assessed at the time of filing, good-faith amount-in-controversy allegations control, and injunctive relief is valued by the object of the litigation as pleaded.  Plaintiff's own petition expressly alleges that the amount in controversy exceeds $5 million, excluding attorneys' fees and other categories it now invokes to cloud the analysis.  The authorities Plaintiff cites identify, at most, procedural differences in how jurisdiction may be challenged—not substantive differences in how amount in controversy is calculated—and those procedural distinctions have no bearing on this case.  Because Plaintiff is bound by its own jurisdictional allegations and because those allegations satisfy the requirements of diversity jurisdiction, this Court has subject-matter jurisdiction and Plaintiff's contrary arguments provide no basis for remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's procedurally improper request that this Court disregard a binding stay pending appeal and its attempt to evade its own jurisdictional allegations both fail as a matter of law.  The Court should deny Plaintiff's request for immediate remand.

Dated: December 23, 2025

Respectfully submitted

**SCOTT DOUGLASS & MCCONNICO LLP**

*/s/ Steven J. Wingard*
Steven J. Wingard
Texas Bar No. 00788694
Robyn Hargrove
Texas Bar No. 24031859
Eli Barrish
Texas Bar No. 24144433

303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 474-0731
swingard@scottdoug.com
rhargrove@scottdoug.com
ebarrish@scottdoug.com

**COOLEY LLP**
Jonathan Patchen (admitted *pro hac vice*)
Michael A. Rome (admitted *pro hac vice*)
Anika Holland (*pro hac vice* pending)
Madeleine R. Ahlers (admitted *pro hac vice*)

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
jpatchen@cooley.com
mrome@cooley.com
anika.holland@cooley.com
mahlers@cooley.com

*Attorneys for Defendants YouTube LLC, Google LLC,
and Alphabet, Inc.*

11

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 23, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steven J. Wingard*
Steven J. Wingard
