# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

DEFENSE DISTRIBUTED,

                    Plaintiff,

v.                                              No.1:25-cv-01095-ADA

YOUTUBE LLC, GOOGLE LLC, and
ALPHABET, INC.

                    Defendants.

## DEFENDANTS' FURTHER SUPPLEMENTAL BRIEF IN OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Plaintiff's Supplemental Brief in Support of its Motion to Remand (Dkt. No. 53) raises two arguments it never previously advanced, neither of which the Court invited supplemental briefing upon, and neither of which withstands even minimal scrutiny. *First*, Plaintiff asks this Court to disregard a binding stay and to declare—on its own—that the Fifth Circuit lacks jurisdiction over an appeal pending before it. That request is procedurally improper and squarely contradicts several of Plaintiff's previous positions. *Second*, Plaintiff newly attempts to draw a substantive distinction between Texas and federal amount-in-controversy rules, disregarding both controlling precedent and Plaintiff's own unambiguous jurisdictional allegations. Neither argument supplies a basis for remand, but further briefing is warranted to address them.

A. **Whether The Fifth Circuit Has Jurisdiction Is For The Fifth Circuit To Decide, And Plaintiff's Argument Contradicts Its Own Previous Position.**

Plaintiff urges this Court (Dkt. No. 53 at 4) to disregard the *Griggs* stay and remand this case out from under the Fifth Circuit's ongoing appellate review on the theory that the Fifth Circuit lacks jurisdiction. Plaintiff's request is inappropriate for at least two reasons. *First*, whether the Fifth Circuit has appellate jurisdiction is a matter for that Court, not this one, to decide. *Second*, even if the existence of appellate jurisdiction were for this Court to decide, transfer orders are appealable under the collateral-order doctrine—as Plaintiff itself argued in previous litigation and *earlier in this very case*. Defendants are appealing merely to ensure, in accordance with this Court's decision to resolve transfer before remand, that the federal court in which this case belongs is the one to decide the remand motion.

To start, Plaintiff's demand (Dkt. No. 53 at 4, 7) that this Court "not wait" for the Fifth Circuit to act and grant its motion to remand "immediately" is an invitation for this Court to usurp the Fifth Circuit's prerogative to decide its own jurisdiction. It is well-settled that, under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), a pending appeal "divest[s]" the district

court "of jurisdiction to take any action with regard to the matter except in aid of the appeal." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 536 (5th Cir. 2024); *see* Dkt. No. 51. Plaintiff tries to get around that rule by claiming that this Court's transfer order is unappealable, and therefore the Fifth Circuit lacks jurisdiction. But whether Plaintiff is correct about the Fifth Circuit's jurisdiction (it is not) is for the Fifth Circuit, not this Court, to decide. *Cf. Mississippi v. JXN Water*, 134 F.4th 312, 318 (5th Cir. 2025) ("We always have jurisdiction to determine *our own* jurisdiction." (emphasis added) (confirming applicability of the collateral-order doctrine)).

Plaintiff knows this, which is why it filed a motion to dismiss for lack of appellate jurisdiction in the Fifth Circuit. *See* Ex. 1 (Plaintiff's Motion to Dismiss Appeal for Lack of Jurisdiction). Defendants have submitted an opposition explaining to the Fifth Circuit why Plaintiff's motion is meritless and contradicts its own previous position. *See* Ex. 2 (Defendants' Opposition to Plaintiff's Motion to Dismiss Appeal for Lack of Jurisdiction). Tellingly, Plaintiff's arguments to this Court about why the transfer order is supposedly unappealable are copied nearly verbatim from its Fifth Circuit motion. *Compare* Dkt. No. 53 at 5-6, *with* Ex. 1 at 5-7. This Court should leave it to the Fifth Circuit to consider those arguments and Defendants' response, rather than inappropriately supplant the Court of Appeals and potentially come to a different conclusion about the Fifth Circuit's jurisdiction than the Fifth Circuit would on its own.

Even if it were within this Court's power to decide whether the Fifth Circuit has jurisdiction, the answer is clear: As Plaintiff has previously argued, under binding Fifth Circuit precedent, transfer orders are appealable under the collateral-order doctrine. Plaintiff speciously claims (Dkt. No. 53 at 7) that "everyone acknowledge[s]" that the transfer order "is unappealable." The exact opposite is true: Plaintiff itself acknowledged both in previous litigation and earlier *in this very case* that transfer orders are appealable.

*First*, a handful of years ago, Plaintiff was itself on the wrong side of a transfer order. *See Defense Distributed v. Bruck*, 30 F.4th 414, 422-23 (5th Cir. 2022). Plaintiff immediately appealed the district court's adverse transfer order to the Fifth Circuit. *Id.* at 423. It argued that transfer orders are appealable under the collateral-order doctrine, invoking Fifth Circuit precedent. *See* Ex. 5 at 9-10 (*Bruck* Reply Brief of Appellants). In the alternative, Plaintiff asked the Fifth Circuit to construe its opening brief as a petition for mandamus relief. Ex. 3 at 18 (*Bruck* Opening Brief of Appellants). Plaintiff, while represented by the same counsel, vociferously argued the Fifth Circuit had jurisdiction, asserting: "*The question is not whether jurisdiction exists, but which— appellate jurisdiction via the collateral order doctrine or original mandamus jurisdiction. Either way, the Court has all the power it needs.*" Ex. 5 at 9 (emphasis added). In deciding Plaintiff's appeal, the Fifth Circuit expressly acknowledged its earlier decisions applying the collateral-order doctrine to transfer orders. 30 F.4th at 423 n.8. But it ultimately had no occasion to decide whether appeal was available because it accepted Plaintiff's alternative request for mandamus relief. *Id.* Plaintiff now directly contradicts the position it took in *Bruck* without advancing any argument that the state of the law has changed.

*Second*, earlier in *this litigation*, Plaintiff acknowledged that appeal remains an open avenue for seeking review of a transfer order. In its opposition to Defendants' motion to transfer, Plaintiff asked this Court to issue a 30-day stay in the event that it granted the motion to transfer "to afford . . . Plaintiff an adequate opportunity to pursue . . . its right to appellate review" in the Fifth Circuit. Dkt. No. 35 at 17. But now that this Court has denied the motion to transfer and Defendants, rather than Plaintiff, are the ones seeking review, Plaintiff insists that, actually, appellate review is not available. Plaintiff's blatant about-face before the very same Court in the very same case is striking.

Defendants will not burden this Court with full refutations of Plaintiff's arguments against appellate jurisdiction, given that this entire dispute is for the Fifth Circuit, not this Court, to adjudicate. But Defendants' opposition to Plaintiff's motion to dismiss the appeal sets out in detail why the cases Plaintiff cites are inapposite and/or affirmatively contradict Plaintiff's position. *See* Ex. 2 at 17-22.

It would also be inappropriate for this Court to remand the case and thereby divest the Fifth Circuit of jurisdiction because, regardless of how the Fifth Circuit decides the collateral-order issue, the Fifth Circuit unquestionably has mandamus jurisdiction to review the transfer order. *See Bruck*, 30 F.4th at 423 and n.8 (granting Plaintiff's request to construe its brief on appeal from a transfer order as a mandamus petition and granting mandamus relief); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) (holding that "mandamus is an appropriate means of testing a district court's section 1404(a) ruling"). Plaintiff protests (Dkt. No. 53 at 6) that "mandamus jurisdiction is not at issue here" because Defendants have not requested mandamus relief. But Defendants have completed and are prepared to file an opening brief that requests mandamus relief in the alternative—just as Plaintiff did in *Bruck*—within two business days of the Record on Appeal becoming available. *See* Ex. 2 at 9 n.1, 22-23.[1]

Finally, Plaintiff incorrectly claims (Dkt. No. 53 at 7) that Defendants are appealing the transfer order as "a pretext to delay this Court's remand ruling and derail the progress of the case." To the contrary, *this Court itself* "exercise[d] its discretion to resolve the motion to transfer before

---

[1] Plaintiff asserts (at 6-7) that Defendants are obligated to file a stay motion in addition to petitioning for mandamus. But given Defendants' appeal, there is already a stay in place under *Griggs*. And in the event that the Fifth Circuit grants Plaintiff's motion to dismiss for lack of appellate jurisdiction, thereby dissolving the *Griggs* stay, then Defendants intend to promptly move for a stay in this Court. Notably, Plaintiff did not file a stay motion in *Bruck* when it filed an appeal while asking for mandamus relief in the alternative. See Ex. 6 (*Bruck* Administrative Stay Order) at 4 ("No party has requested a stay of the district court's transfer order.").

the motion to remand." Dkt. No. 48 at n.2.  Accordingly, there is every reason to conclusively

settle the transfer issue—including Fifth Circuit review of the transfer order—before turning to the

remand motion.  After all, regardless of how the Fifth Circuit rules on transfer, Plaintiff will remain

free afterward to argue for remand to state court.  The same is not true of Defendants' options if

the order of operations is reversed.  Plaintiff has previewed that it will argue that remand orders

cannot be appealed.  *See* Ex. 1 at 8 (asserting that "a remand decision is not appealable").  So if

this Court were to remand before the Fifth Circuit considers Defendants' appeal (in clear violation

of *Griggs*), then Defendants may very well be precluded from seeking review of that remand

decision, and the Fifth Circuit would lose any opportunity to determine whether the case belonged

in this Court or the Northern District of California to begin with.  In sum, Defendants are appealing

not to obstruct this Court's work, but to ensure that "the court who would ultimately try the case"

upon resolution of the transfer dispute is the one "to rule on the remand motion," consistent with

this Court's decision to address transfer before remand.  *Davis v. Meta Platforms, Inc.*, 2023 WL

4670491, at *5 (E.D. Tex. July 20, 2023).

## B. The Amount-In-Controversy Calculation Is The Same Under State And Federal Law In All The Ways That Matter And Supports The Court's Diversity Jurisdiction Here.

Contrary to Plaintiff's new claim (Dkt No. 53 at 8-10), there is no meaningful distinction

between federal and state law on any issues that affect the Court's diversity jurisdiction over this

case.  Plaintiff is bound by its allegation that the "amount in controversy exceeds $5 million,

excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court

costs." Dkt. No. 1-2 at 16.  Unambiguous, good-faith, expressly-pleaded allegations in a state

court petition about the amount in controversy control, whether it is a Texas court or a federal

district court evaluating its jurisdiction.  *Tune v. Texas Dep't of Pub. Safety,* 23 S.W.3d 358, 362

(Tex. 2000); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *De Aguilar*

*v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995). Plaintiff tries to sidestep the legal effect of its own pleadings by newly claiming that Texas law regarding the calculation of the amount in controversy is different from federal law with respect to the valuation of attorneys' fees, injunctive relief, and counterclaims by citing new state-law authority Defendants have never had the chance to respond to. But these claimed legal differences are either irrelevant or imaginary, as explained below.

*First*, Plaintiff's reliance on and cherry-picked quotations from *C Ten 31 LLC on behalf of SummerMoon Holdings LLC v. Tarbox*, 708 S.W.3d 223, 240 (Tex. Bus. Ct. 2025) are misplaced. It is true that the court in that case stated that "Texas and federal courts approach challenges to jurisdictional pleadings differently." *Id.* But in the next breath, the court held that "[u]nder both Texas and federal law, when a party pleads in good faith that the amount in controversy is within the court's jurisdictional limits, those allegations control unless they are properly challenged." *Id.* The differences discussed in the opinion—including those in Plaintiff's quotations (Dkt. No. 53 at 8)—relate to *the procedures for challenging removal*. In that context, the court distinguished between federal and state court procedural mechanisms for challenging jurisdiction and the burdens of proof associated with those challenges. In federal court, when jurisdiction is challenged, "the party asserting jurisdiction bears the burden of proving it by a preponderance of the evidence—regardless of whether that is the plaintiff in a suit initiated in federal court or the removing party." *C Ten*, 708 S.W.3d at 240. But parties in Texas state courts can "challenge the existence of jurisdictional facts through multiple different procedural vehicles, including pleas to the jurisdiction and motions for summary judgment," which in turn affects who bears the burden of proving disputed jurisdictional facts. *Id.* at 241.

Thus, while "Texas and federal courts approach challenges to jurisdictional pleadings

differently," the different approach discussed by *C Ten is procedural, not substantive*. *See* Dkt No. 53 at 8 (quoting *C Ten*, 708 S.W.3d at 240). And as *C Ten* also notes, a procedural commonality between federal and state court is that the pleadings alleged in good faith control. Like Texas courts, federal courts strongly disfavor plaintiffs' attempts "to argue against the facts contained in [their] state court petition[s]." *Davis*, 2023 WL 4670491, at *8; *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 538 (5th Cir. 1990) ("For counsel to now argue against the facts and claims contained in those pleadings is somewhat disingenuous if not totally spurious."). Nothing in *C Ten* suggests that, in the ordinary removal case, the party opposing jurisdiction is permitted to disregard its own good-faith jurisdictional allegations. To the contrary, removal disputes typically arise where the complaint is silent as to a specific amount in controversy or pleads that the amount falls below the jurisdictional threshold, and the defendant contends otherwise—not where a plaintiff affirmatively alleges that the threshold is far exceeded and then reverses course to secure remand.

*Second*, contrary to Plaintiff's assertions, Texas law does not supply a "more expansive" or materially different method for calculating the amount in controversy than federal law. *See* Dkt. No. 53 at 8-10. Both systems determine jurisdiction at the time the relevant pleading is filed—the petition in state court, the notice of removal in federal court. *See, e.g.*, *OWL AssetCo 1, LLC v. EOG Res., Inc.*, 2025 WL 2306527, at *3 (Tex. Bus. Ct. Aug. 11, 2025) ("For purposes of determining whether jurisdiction exists . . . the amount in controversy is the amount recoverable under the pleadings when the action is filed."); *see also Our Fair Lady Health Resort v. Miller*, 564 S.W.2d 410, 412 (Tex. Civ. App.—Austin 1978, no writ) ("Jurisdiction is determined by the amount in controversy at the time of the filing of the pleadings."); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d

880, 883 (5th Cir. 2000) ("The jurisdictional facts that support removal must be judged at the time of the removal.").

*Third*, both systems use essentially the same methodology to value injunctive relief. The Texas Supreme Court defines the "amount in controversy" as "the sum of money or *the value of the thing originally sued for*." *In re City of Dallas*, 501 S.W.3d 71, 74 (Tex. 2016) (citations omitted) (emphasis added). Where, like here, the plaintiff seeks non-monetary relief such as an injunction, the amount in controversy is the "subjective value of [the] privilege, if asserted in good faith" in the petition. *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 362 (Tex. 2000). The Fifth Circuit employs a virtually identical standard: "[I]n cases seeking equitable relief 'it is well established that the amount in controversy is measured by the *value of the object of the litigation*.'" *Garcia v. Koch Oil Co.*, 351 F.3d 636, 640 (5th Cir. 2003) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (emphasis added). Thus, just as in federal courts in this Circuit, Texas state courts define and value the amount in controversy in reference to the value of the requested relief *to the plaintiff*. *See Conway v. Thompson*, No. 07-06-0284-CV, 2008 WL 553232, at *1 (Tex. App.—Amarillo Feb. 28, 2008, no pet.) ("Conway originally sued for damages and alternatively requested the return of his cowboy boots, which he valued at $125, and the repair or replacement of his word processor, which he valued at $270. Whether we consider Conway's suit as one seeking damages or for other relief, we agree with appellees that the amount in controversy, for our purpose here, is $395."); *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex. 2007) (indicating that "the 'matter in controversy' includes all of the damages the plaintiff seeks to recover at the time suit is filed.").

Plaintiff suggests that Texas courts evaluate the value of injunctive relief "to both sides" (Dkt. No. 53 at 9), but its cited caselaw does not support this proposition. *C Ten* comes the closest,

but that case did not even reach a decision on the amount in controversy, so its reference to defendants' potential fiduciary-duty liability is unbinding dicta—and can just as easily be read as referencing a potential fiduciary-duty damages recovery by the plaintiff. 708 S.W.3d at 240. In any event, Plaintiff has never claimed that its amount-in-controversy allegation in the Petition was asserting the cost of the requested injunction to Defendants.

Finally, Plaintiff's remaining arguments regarding attorneys' fees and counterclaims fail for an even simpler reason: They are irrelevant. Specifically, Plaintiff contends that in state court, but not federal court, the amount in controversy includes "attorneys' fees projected through final judgment rather than only those incurred at a snapshot in time." Dkt. No. 53 at 9. That is wrong as a legal matter; the Fifth Circuit considers attorneys' fees likely to be incurred through the life of the litigation.[2] But it is also beside the point. Plaintiff's petition expressly excludes attorney's fees when it alleges that the amount in controversy exceeds $5 million. *See* Dkt. No. 1-2 at ¶ 14 ("[T]his is an action in which the amount in controversy exceeds $5 million, excluding . . . attorney's fees."). So even if there was a difference between state and federal law on this issue, it would not matter. This argument is a red herring. Same for Plaintiff's points about counterclaims: There are no counterclaims at issue here. The *only* claim is Plaintiff's claim for injunctive and declaratory relief, which it has explicitly valued as exceeding $5 million. All of this is just ink spilled in an effort to distract the Court from Plaintiff's black-and-white admission that the amount in controversy exceeds the jurisdictional threshold of $75,000 by *millions* of dollars.

Plaintiff's attempt to manufacture a state-federal divide to justify arguments that are

---

[2] As Defendants have previously argued, Dkt. No. 34 at 12-13, in this Circuit, courts count future fees likely to be incurred at later stages of the litigation toward the amount in controversy (not just fees incurred through time of removal). *Manguno*, 276 F.3d at 724; *see also Procare Auto., LLC v. MidAmerican Energy Servs., LLC*, 2021 WL 5822832, at *3 (W.D. Tex. Dec. 7, 2021).

divorced from its pleadings collapses under scrutiny. Texas and federal law apply the same substantive rules that matter here. Jurisdiction is assessed at the time of filing, good-faith amount-in-controversy allegations control, and injunctive relief is valued by the object of the litigation as pleaded. Plaintiff's own petition expressly alleges that the amount in controversy exceeds $5 million, excluding attorneys' fees and other categories it now invokes to cloud the analysis. The authorities Plaintiff cites identify, at most, procedural differences in how jurisdiction may be challenged—not substantive differences in how amount in controversy is calculated—and those procedural distinctions have no bearing on this case. Because Plaintiff is bound by its own jurisdictional allegations and because those allegations satisfy the requirements of diversity jurisdiction, this Court has subject-matter jurisdiction and Plaintiff's contrary arguments provide no basis for remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's procedurally improper request that this Court disregard a binding stay pending appeal and its attempt to evade its own jurisdictional allegations both fail as a matter of law. The Court should deny Plaintiff's request for immediate remand.

Dated: December 23, 2025

Respectfully submitted

**SCOTT DOUGLASS & MCCONNICO LLP**

*/s/ Steven J. Wingard*
Steven J. Wingard
Texas Bar No. 00788694
Robyn Hargrove
Texas Bar No. 24031859
Eli Barrish
Texas Bar No. 24144433

303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 474-0731
swingard@scottdoug.com
rhargrove@scottdoug.com
ebarrish@scottdoug.com

**COOLEY LLP**
Jonathan Patchen (admitted *pro hac vice*)
Michael A. Rome (admitted *pro hac vice*)
Anika Holland (*pro hac vice* pending)
Madeleine R. Ahlers (admitted *pro hac vice*)

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
jpatchen@cooley.com
mrome@cooley.com
anika.holland@cooley.com
mahlers@cooley.com

*Attorneys for Defendants YouTube LLC, Google LLC, and Alphabet, Inc.*

11

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 23, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ Steven J. Wingard
Steven J. Wingard

# EXHIBIT 1

No. 25-51004

---

In the United States Court of Appeals for the Fifth Circuit

---

Defense Distributed,

Plaintiff—Appellee.

v.

YouTube LLC, Google LLC, and Alphabet, Inc.,

Defendants-Appellants,

---

Appeal from the United States District Court for the
Western District of Texas; No. 1:25-cv-01095-ADA-ML

---

**Defense Distributed's
Motion to Dismiss the Appeal for Lack of Jurisdiction**

---

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

# Table of Contents

Page

Table of Contents .................................................................................ii

Certificate of Interested Persons.........................................................iii

Argument .............................................................................................1

I.      The Court lacks appellate jurisdiction. ...........................................1

II.     Dismissal should occur *immediately* to stop lower court interference. ............4

Conclusion ...........................................................................................7

Certificate of Conference .....................................................................8

Certificate of Compliance.....................................................................8

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellants | Youtube LLC |
| | Google LLC |
| | Alphabet Inc. |
| | |
| Appellants' Counsel | Scott Douglass & McConnico LLP |
| | |
| Appellee | Defense Distributed |
| | |
| Appellee's Counsel | Flores Law PLLC |
| | Chad Flores |

/s/ Chad Flores
Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

## Argument

Appellee Defense Distributed moves to dismiss this appeal for lack of appellate jurisdiction. Plain Section 1404 transfer orders are not appealable. Dismissal is required. Appellants nevertheless invoke this invalid appeal to claim a *Griggs* stay below, hoping to block a fully briefed remand ruling the district court is inclined to grant. But *Griggs* warrants no stay when the attempted appeal will not lie. So it is not just critical that the Court dismiss this appeal for the usual reasons (enforcement of Congress's immutable jurisdictional limits). It is critical that the Court dismiss this appeal *immediately* so that proceedings below are wrongly detained no longer.

## I.   The Court lacks appellate jurisdiction.

This Court has only the jurisdiction that Congress gives and a party invokes. Appellants seek an exercise of appellate jurisdiction over a plain interlocutory order denying a motion to transfer under 28 U.S.C. § 1404(a). *See* Ex. A (Doc. 50 notice of appeal); Ex. B (Doc. 48 decision). But this Court has no such appellate jurisdiction.

The accepted national rule is that an interlocutory order denying a motion to transfer under 28 U.S.C. § 1404(a) is not appealable as a "final" decision: "An order granting or denying a motion to transfer venue under 28 U.S.C.A. § 1404(a) is interlocutory and thus is not immediately appealable as a 'final decision' under 28 U.S.C.A. § 1291." 15 Charles A. Wright & Arthur R. Miller, Federal Practice &

Procedure § 3855 & n.1 (3d ed. West 2025) (hereinafter "Wright & Miller"). And though "the party contesting the order may attempt to invoke the 'collateral order' doctrine, which allows immediate review of orders that are effectively unreviewable from final judgment," the accepted national rule "rejects it on the ground that other avenues—such as a motion to retransfer, certification under Section 1292(b), and extraordinary writ—remain available to review the issue." *Id.* § 3855 & n.22.

The Fifth Circuit follows these accepted rules about the appealability of plain Section 1404 transfer orders. *See generally In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc); *Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022). Here and everywhere else, an order denying a motion to transfer under 28 U.S.C. § 1404(a) is certainly not appealable as a "final" decision. *See* Wright & Miller § 3914.12 ("Grant or denial of transfer is not final."). And neither does this Court's collateral order doctrine cover a standard Section 1404(a) transfer order. *Id.*

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), correctly announces the Fifth Circuit position: "While the Supreme Court has crafted a narrow exception to the final order doctrine, termed the 'collateral order doctrine' or '*Cohen* exception,' we have previously held that transfer orders do not fall within the scope of this doctrine." *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014) (applying *Brinar v. Williamson*, 245 F.3d 515, 517 (5th Cir. 2001)). Indeed, the Supreme Court itself

held in the key case about forum selection clauses, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989), that a transfer order does not qualify for a collateral order appeal. *Id.* at 501 ("Petitioner's claim that it may be sued only in Naples, while not perfectly secured by appeal after final judgment, is adequately vindicable at that stage—surely as effectively vindicable as a claim that the trial court lacked personal jurisdiction over the defendant—and hence does not fall within the third prong of the collateral order doctrine."). Since this appeal challenges nothing but a plain Section 1404 transfer order, the Court has no appellate jurisdiction.

It is true that original mandamus proceedings can review certain extraordinary transfer rulings—the key case being one of a combined transfer-*and-sever* order with extraordinary circumstances, *Defense Distributed v. Bruck*, 30 F.4th at 421. But no such extraordinary transfer+ order is at issue here. And more importantly, mandamus jurisdiction is not at issue here. A party seeking mandamus "must file a petition," Fed. R. App. P. 21, and then meet the doctrine's unique demands. No filing here has mentioned mandamus, let alone made a colorable showing of its high requirements.

This is an attempted appeal from a Section 1404(a) transfer decision and nothing more. Appellate jurisdiction is plainly absent. Enforcement of Congress's jurisdictional boundaries via dismissal is mandatory. And for the key reasons shown below, this dismissal for lack of appellate jurisdiction should occur i*mmediately.*

## II.    Dismissal should occur *immediately* to stop lower court interference.

The process of carrying a motion to dismiss with the appeal is not appropriate here. Instead, *immediate* adjudication of this motion to dismiss is warranted because Appellants are using this baseless appeal as a procedural weapon to interfere with ongoing district court proceedings. Below, Appellants are invoking this appeal's existence to claim a *Griggs* stay and freeze the district court just as an adverse remand ruling became imminent. But *Griggs* stays nothing if the appeal lacks jurisdiction. This Court should therefore dismiss the appeal for lack of jurisdiction *immediately* to remove any *Griggs*-based pretext for halting the district court's work.

This litigation's trajectory is clear. The case is going back to Texas state court where it belongs. Appellants rightly lost their motion to transfer to this case from a Texas federal court to a California federal court. Remand is next. A motion to remand the action back to its original state court is almost fully briefed, Exs. C-H, and the district court has said that it is inclined to grant remand soon, Ex. F at 26-27 ("As of right now, with the state of the pleadings, my inclination would be to remand it."). Knowing that a remand decision is not appealable, *see, e.g.*, *Harrow v. Dep't of Def.*, 601 U.S. 480, 487 (2024), Appellants engineered this detour in hopes of further delaying the inevitable.

Below, Appellants say that the mere existence of this appeal from the transfer decision divests the district court of its power to decide the pending motion to remand. Right after filing their notice of appeal, Appellants filed in the district court a "Notice of Notice of Appeal." Ex. H (Doc. 51 below). The "Notice" invokes *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982), to say that this appeal's pendency automatically halts the district court's resolution of the motion to remand. Not so. Because this Court lacks appellate jurisdiction, the court below must proceed.

In truth, *Griggs* does not apply and the district court retains full authority to decide the motion to remand and every other part of this case. The *Griggs* divestiture principle does *not* apply when the appellate court lacks jurisdiction—i.e., when the appeal is from an unappealable order. Trying to appeal an unappealable order yields no stay. *Griggs* says so. *Griggs*, 459 U.S. at 58 ("notice of appeal from unappealable order does not divest district court of jurisdiction" (explaining *Ruby v. Secretary of United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc)). This Court agrees. *See Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 526 (5th Cir. 1986). Nationwide, "an appeal from a clearly non-appealable order fails to oust district court authority." Wright & Miller § 3949.1 & nn.72-73. Because this transfer decision's appeal is jurisdictionally dead on arrival, the *Griggs* divestiture principle does not apply and the district court remains free and indeed obligated to proceed forthwith.

The district court may very well realize all of this and proceed as it should. Yet prompt action from this Court remains essential to prevent abuse. A key case *Griggs* approved supports the approach of having the court of appeals promptly confirm to the district court that proceeding is proper. *See Ruby*, 365 F.2d at 389 ("Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction. If the district court is in doubt as to whether the notice of appeal is inoperative by reason of some such defect, it may decline to act further until the purported appellee obtains dismissal of the appeal in the court of appeals."). A faithful application of *Griggs* makes it this Court's prerogative to extinguish defective appeals swiftly, ensuring they cannot be weaponized for delay.

Letting this appeal remain on the docket—even briefly—gives Appellants exactly what they seek: leverage to obstruct an imminent remand ruling. That delay burdens the trial court and undermines its need to police original jurisdiction at the earliest possible moment. But the district court here cannot do so cleanly while Appellants wave notions of a doomed appeal's mandatory stay. Allowing this appeal to remain open therefore frustrates the statutory duty to remand with expediency and undermines efficient docket management in both courts.

To get the stay they want, Appellants would have to do things the right way: file a mandamus petition, file a stay motion in that proceeding, and make a serious showing that they are likely to obtain that extraordinary relief. They have done none of that. They instead try to hijack *Griggs* by appealing a nonappealable order and claiming an automatic stay they have not earned. As inequitable as that jurisdictional end run may be, the equities don't matter. A lack of appellate jurisdiction must always be fully enforced no matter what. The Court should end the confusion and prevent further gamesmanship by enforcing its jurisdictional boundaries not just eventually (as by carrying the motion with the case), but immediately.

## Conclusion

The Court should resolve the motion as soon as is practicable, either without waiting for a response or by setting an expedited schedule. The Court should grant the motion and issue an order dismissing the appeal for lack of appellate jurisdiction.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
cf@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

## Certificate of Conference

The Appellants oppose this motion. Movant's counsel determined that by conferring with counsel for the Appellants and obtaining their position via e-mail

/s/ Chad Flores
Chad Flores

## Certificate of Compliance

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains 1,640 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.103.3

/s/ Chad Flores
Chad Flores

# EXHIBIT 2

No. 25-51004

# United States Court of Appeals for the Fifth Circuit

———————

DEFENSE DISTRIBUTED,

*Plaintiff-Appellee*

*v.*

YOUTUBE LLC, GOOGLE LLC, AND ALPHABET, INC.,

*Defendants-Appellants*.

———————

On Appeal from the United States District Court
for the Western District of Texas (No. 1:25-cv-01095-ADA)

---

## OPPOSITION OF DEFENDANTS-APPELLANTS TO MOTION TO DISMISS FOR LACK OF JURISDICTION

---

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Defendants-Appellants*
*YouTube LLC, Google LLC, and Alphabet, Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Plaintiff-Appellee is Defense Distributed.  To Defendants-Appellants' knowledge, Defense Distributed has no parent company and is not a publicly traded company.

2.      Plaintiff-Appellee is represented in the Fifth Circuit by Chad Flores of Flores Law PLLC.

3.      Defendants-Appellants are YouTube LLC, Google LLC, and Alphabet, Inc.  YouTube LLC is a subsidiary of Google LLC.  Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet, Inc.  Alphabet, Inc. is a publicly traded company, but no publicly traded company owns 10% or more of its stock.

4.      Defendants-Appellants are represented in the Fifth Circuit by Jonathan Patchen, Michael A. Rome, Anika Holland, Madeleine R. Ahlers, and Connie L. Wang of Cooley LLP and Steven J. Wingard, Robyn Hargrove, and Eli Barrish of Scott Douglass & McConnico LLP.

/s/ Jonathan Patchen
_____

Jonathan Patchen
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

*Counsel for Defendants-Appellants*
*YouTube LLC, Google LLC, and*
*Alphabet, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................4

    A.    Plaintiff Appeals an Adverse Transfer Order........................4

    B.    Plaintiff Agrees to YouTube's and Google Ads's Terms of Service, Including Their Forum-Selection Clauses ...........................5

    C.    Plaintiff Sues Defendants in Texas in Contravention of the Forum-Selection Clauses.......................................................6

    D.    The District Court Denies Defendants' Motion to Transfer ...............6

ARGUMENT ......................................................................................7

    I.    This Court Has Appellate Jurisdiction to Review the District Court's Transfer Order Under the Collateral-Order Doctrine ............8

    II.    Alternatively, This Court May Review the District Court's Transfer Order As an Exercise of Its Mandamus Jurisdiction...........14

    III.    If the Motions Panel Does Not Deny Plaintiff's Motion, It Should Be Carried With the Case ....................................................16

CONCLUSION ..................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Bradford*,
    660 F.3d 226 (5th Cir. 2011) ....................................................................*passim*

*Brinar v. Williamson*,
    245 F.3d 515 (5th Cir. 2001) .................................................................. 11-12

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004)........................................................................................19

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949)..........................................................................................8

*Davis v. Meta Platforms, Inc.*,
    2023 WL 4670491 (N.D. Cal. July 20, 2023) ...............................................3, 13

*Defense Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) .......................................................................*passim*

*In re Delta Servs. Indus., Etc.*,
    782 F.2d 1267 (5th Cir. 1986) .........................................................................15

*In re Foster*,
    644 F. App'x 328 (5th Cir. 2016) (per curiam)..................................................15

*Gebbia v. Wal-Mart Stores, Inc.*,
    233 F.3d 880 (5th Cir. 2000) ...........................................................................18

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982)...........................................................................................18

*Lauro Lines s.r.l. v. Chasser*,
    490 U.S. 495 (1989)..................................................................................... 13-14

*In re Media Matters for Am.*,
    143 F.4th 631 (5th Cir. 2025) ..........................................................................16

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*,
    68 F.4th 206 (5th Cir. 2023) ............................................................................17

# TABLE OF AUTHORITIES
(continued)

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993).................................................................8

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996).............................................. 13-14

*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014) ..................................... 9-11

*In re Sepulvado*,
  707 F.3d 550 (5th Cir. 2013) ............................... 4, 9-11

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938)...............................................18

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ................................... 15-16

*United Nat. Foods, Inc. v. NLRB*,
  66 F.4th 536 (5th Cir. 2023) .......................................17

*United States v. Williams*,
  400 F.3d 277 (5th Cir. 2005) .......................................15

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ...........................*passim*

**Statutes**

28 U.S.C.
  § 1292(b)..............................................................10
  § 1404(a) ....................................................... 6, 14-16
  § 1631..................................................................11

Tex. Civ. Prac. & Rem. Code
  §143A.................................................................6, 7
  §143A.003...............................................................7
  §143A.0035..............................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

Fed. R. App. P. 21 ................................................................................ 15

## INTRODUCTION

Plaintiff Defense Distributed unambiguously agreed to forum-selection clauses requiring disputes just like this one to be litigated exclusively in California. Plaintiff did not contest that those clauses are mandatory and presumptively enforceable, or that its lawsuit falls squarely within their scope. Nonetheless, the district court denied Defendants' motion to transfer, holding that the forum-selection clauses are unenforceable on the basis of Texas's "strong public policy." The district court's decision was legally erroneous. As explained in Defendants' forthcoming opening brief, under Supreme Court and Fifth Circuit precedent, the district court was not permitted to consider Texas's public policy of hostility toward forum-selection clauses in the enforceability analysis, and even if it could, the district court failed to give proper weight to the strong federal public policy in favor of enforcing such clauses.[1]

Plaintiff now seeks to insulate the district court's unsound decision from this Court's review by moving this Court to dismiss Defendants' appeal for lack of jurisdiction. This Court should deny Plaintiff's motion because, whether through appeal or mandamus—which Defendants seek in the alternative—this Court has

---

[1] Defendants are prepared to file their opening brief—which requests mandamus relief in the alternative—within two business days of the Record on Appeal becoming available. The brief is complete save for Record on Appeal cites. The record was requested from the district court on December 18, 2025, so should be filed in this Court shortly. Dkt. No. 32.

jurisdiction to review the district court's transfer order.  Plaintiff claims (at 4) that the "accepted national rule" is that a transfer order cannot be appealed.  But just a handful of years ago, Plaintiff *itself* appealed an adverse transfer order and argued that such orders are appealable under the collateral-order doctrine.  And far from rejecting Plaintiff's argument, this Court noted that some panels had "appl[ied] the [collateral-order] doctrine to transfer orders," although the Court ultimately had no occasion to decide whether appeal was available because it granted mandamus instead.  *Defense Distributed v. Bruck*, 30 F.4th 414, 423 & n.8 (5th Cir. 2022).  Plaintiff's about-face from its own position is remarkable.

In any event, this Court unquestionably has mandamus jurisdiction.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc).  Plaintiff protests that Defendants have not filed a mandamus petition.  But Defendants stand ready to file, as soon as the Record on Appeal becomes available, an opening brief that requests mandamus relief in the alternative.  That is precisely what Plaintiff did—and what this Court permitted—in *Bruck*.

Therefore, this Court should deny Plaintiff's motion to dismiss Defendants' appeal.  At the very least, the motions panel should defer judgment to the merits panel.  Plaintiff insists (at 7) that the Court must instead grant its motion to dismiss "*immediately*" based on unfounded accusations of gamesmanship.  Plaintiff would have this Court believe that remand to state court is preordained, and that Defendants

are appealing solely to forestall that inevitable result.  To the contrary, the district court remains undecided as to whether remand is warranted, which is why it requested supplemental briefing.[2]  As shown in Defendants' supplemental brief, remand would be inappropriate because the district court plainly has diversity jurisdiction.  Ex. I.

More to the point, the district court itself determined that resolution of the transfer dispute should precede any decision on remand.  Mot. Ex. B at n.2. Defendants seek appellate review to ensure that "the court who would ultimately try the case" had the forum-selection clauses been properly enforced is the one "to rule on the remand motion." *Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *5 (N.D. Cal. July 20, 2023).  In addition, Defendants had no choice but to appeal in order to protect their right to this Court's review of the transfer order.  In previous litigation and earlier *in this very case*, Plaintiff took the position that transfer orders are appealable.  Because mandamus is only available if there is no other adequate means of obtaining relief, if Defendants had not appealed and this Court then denied mandamus on the basis that transfer orders are appealable (as Plaintiff previously argued), then Defendants would likely have lost any opportunity for this Court's review.

---

[2] Mot. Ex. F at 26 (district court stating that it is not "entirely certain" about the remand arguments); *id.* at 26-29 (stating that after supplemental briefs are filed, "we'll get back together and I'll let you guys argue it to me").

The real reason why Plaintiff urges this Court to hastily dismiss the appeal—without even affording Defendants a chance to respond—is not difficult to deduce. An order granting remand to state court is generally unappealable even if such remand is contrary to binding Circuit and Supreme Court authority. So if the district court were to grant remand—accepting Plaintiff's argument that diversity jurisdiction is lacking even though it *expressly pleaded* that the amount in controversy exceeds $5 million—then Defendants would likely be forced to litigate in Texas state court despite Plaintiff having agreed to a California forum. And this Court would be deprived of any opportunity to review the district court's erroneous transfer order. This Court should not entertain Plaintiff's gambit.

## BACKGROUND

### A.  Plaintiff Appeals an Adverse Transfer Order

In 2021, Plaintiff sued the New Jersey Attorney General in Texas federal district court. *Bruck*, 30 F.4th at 422. Over Plaintiff's objection, the district court transferred the case to New Jersey. *Id.* at 423. Plaintiff immediately appealed. *Id.* New Jersey urged this Court to dismiss for lack of appellate jurisdiction. Ex. B at 20-22. In response, Plaintiff argued that, under Fifth Circuit precedent, transfer orders are appealable under the collateral-order doctrine. Ex. C at 9-10 (citing *In re Bradford*, 660 F.3d 226 (5th Cir. 2011), and *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013)). In the alternative, it asked this Court to construe its appeal as a

mandamus petition.  Ex. A at 18.  After receiving full briefing and holding oral argument, the Fifth Circuit concluded that it had jurisdiction and ordered the district court to request re-transfer.  *Bruck*, 30 F.4th at 421.  The Court flagged a "potential intra-circuit split" on whether transfer orders "fall within the scope of the collateral order doctrine" but declined to reach that issue, instead accepting Plaintiff's alternative request for mandamus treatment.  *Id.* at 423 & n.8.

## B. Plaintiff Agrees to YouTube's and Google Ads's Terms of Service, Including Their Forum-Selection Clauses

Defendant YouTube LLC makes YouTube—an online service for sharing and viewing videos—available to the public.  Ex. D at 20.  Defendant Google LLC provides the YouTube service as well as Google Ads, a digital service that allows businesses and individuals to display ads on YouTube and other Google websites.  *Id.*; Ex. F at 10.  Defendant Alphabet, Inc. is the parent company of both YouTube LLC and Google LLC.  Ex. D at 20-21.

YouTube and Google Ads users must agree to the platforms' Terms of Service, each of which contains a mandatory, exclusive forum-selection clause requiring litigation in Santa Clara County, California.  Ex. F ¶ 5; Ex. G ¶ 5.  There was no dispute below that Plaintiff agreed to those Terms, including the forum-selection clauses.  Mot. Ex. B at 3-4.

## C. Plaintiff Sues Defendants in Texas in Contravention of the Forum-Selection Clauses

Despite agreeing that any disputes arising from its use of YouTube or Google Ads would be litigated exclusively in California, Plaintiff sued Defendants in Texas state court. It alleged that Defendants "censored" its videos and ads in violation of Texas House Bill 20, codified as Texas Civil Practice and Remedies Code Chapter 143A. Ex. D at 16. Defendants removed the case to federal court. Shortly thereafter, Plaintiff filed a motion to remand and Defendants filed a motion to transfer under 28 U.S.C. § 1404(a), premised on the Terms's forum-selection clauses.

## D. The District Court Denies Defendants' Motion to Transfer

The district court exercised its discretion to address the transfer motion first. Mot. Ex. B at n.2. The district court acknowledged that Plaintiff did "not dispute that its claims fall within the scope of the forum-selection clauses or that the clauses are mandatory." *Id.* at 3-4. It further recognized that "[f]ederal law applies to determine the enforceability of forum selection clauses in diversity cases," and that "[u]nder federal law, there is a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." *Id.* at 4 (citations omitted).

Nevertheless, the district court declined to enforce the forum-selection clauses. The court concluded that Plaintiff had overcome the strong presumption in favor of enforceability by showing that enforcing the clauses "would contravene a strong public policy of Texas." Mot. Ex. B at 4. The Court relied on two provisions

6

of Chapter 143A that declare any forum-selection clause in a Chapter 143A case to be void and announce that non-enforcement of such clauses reflects a "public-policy limitation . . . of the highest importance and interest" to Texas.  Tex. Civ. Prac. & Rem. Code §§143A.003, 143A.0035.

Defendants timely appealed the district court's order denying their motion to transfer.  Defendants' opening brief, which will be filed as soon as the Record on Appeal becomes available, explains that the district court's order was legally erroneous under Supreme Court and Fifth Circuit precedent.  Plaintiff now moves to dismiss Defendants' appeal for lack of jurisdiction.

## ARGUMENT

As Plaintiff argued to this Court just a few years ago, while represented by the same counsel, "[t]he question is not whether jurisdiction exists, but which— appellate jurisdiction via the collateral order doctrine or original mandamus jurisdiction.  Either way, the Court has all the power it needs."  Ex. C at 9.  That is just as true now as it was when Plaintiff appealed an adverse transfer order in *Bruck*.  Plaintiff's about-face now that it is on the other end of a transfer order is striking.  It goes so far as to urge (at 7) that this Court grant its motion "*immediately*," without even affording Defendants an opportunity to respond, supposedly to put a stop to gamesmanship—but the only gamesmanship is Plaintiff's own.  Plaintiff seeks to thwart this Court's ability to review the district court's transfer decision by ushering

the case into the confines of Texas state court. Rather than facilitate such circumvention, this Court should deny Plaintiff's motion. And if the motions panel does not deny the motion outright, it should at least defer judgment to the merits panel. That would allow the Court to make a considered, rather than rushed, decision about the proper jurisdictional basis for reviewing the district court's transfer order and whether that order was correct—just as it did in *Bruck*.

## I. This Court Has Appellate Jurisdiction to Review the District Court's Transfer Order Under the Collateral-Order Doctrine

This Court has appellate jurisdiction to review the district court's order erroneously denying Defendants' motion to transfer under the collateral-order doctrine, as Plaintiff correctly observed when it appealed an adverse transfer order a handful of years ago. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); Ex. A at 17; Ex. C at 9.

A district court's order is reviewable under the collateral-order doctrine if it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This Court has already established that those three requirements are satisfied with respect to transfer orders. In *Bradford*, this Court held that it had jurisdiction to consider an appeal from a district court's transfer order under the collateral-order doctrine. 660 F.3d at 229.

This Court reaffirmed that holding in *Sepulvado*. 707 F.3d at 552.

Plaintiff repeatedly invokes (at 4, 5) the purported "accepted national rule" to claim that a transfer order "is not appealable as a 'final' decision." But it makes no difference whether a transfer order is "final" as traditionally understood because such orders fall within the collateral-order doctrine, an *exception* to the final-judgment rule. Mot. 5 (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014) (describing the collateral-order doctrine as an "exception to the final order doctrine")). And as Plaintiff itself previously explained, this Court's rule as established in *Bradford* and *Sepulvado* is that transfer orders are immediately appealable under the collateral-order doctrine. Ex. C at 9-11. This Court's on-point, precedential decisions carry more weight than the treatise Plaintiff invokes.

Plaintiff relies (at 5) on *Volkswagen* and *Bruck* to argue that this Court follows the supposed "national rule" against collateral-order review of transfer orders. Neither case supports Plaintiff's contention, and indeed, *Bruck* affirmatively contradicts it.

*First*, in *Volkswagen*, the Court did not even address the collateral-order doctrine. It merely stated that "mandamus is *an* appropriate means"—not the exclusive means—of seeking review of a district court's transfer order. 545 F.3d at 308 (emphasis added). Therefore, the Court did not rule out *other* appropriate means of seeking review, such as an appeal under the collateral-order doctrine. Moreover,

*Volkswagen* explicitly states that (1) appeal from a final judgment is not an "adequate remedy" for obtaining relief from an "improper failure to transfer" (one of the requirements for collateral-order review), and (2) that "interlocutory review of transfer orders under 28 U.S.C. § 1292(b) is unavailable." *Id.* at 318-19. But tellingly, the Court made no mention of collateral-order review being off limits.

*Second*, in *Bruck*, far from rejecting the applicability of the collateral-order doctrine to transfer orders, the Court explicitly acknowledged that prior Fifth Circuit decisions have held that the doctrine does apply to transfer orders. As explained above, in that case, Plaintiff itself appealed from an adverse transfer order and, in the alternative, asked this Court to construe its opening brief as a mandamus petition. In resolving Plaintiff's appeal, the Court noted that while some of its previous decisions had suggested that transfer orders do not fall within the scope of the collateral-order doctrine, others had applied the doctrine to transfer orders. *Bruck*, 30 F.4th at 423 n.8 (citing *Rolls Royce*, 776 F.3d at 676, for the former, and *Bradford*, 660 F.3d at 229, and *Sepulvado*, 707 F.3d at 552, for the latter). Rather than wade into that "potential intra-circuit split," this Court "pretermit[ted] [Plaintiff's] resort to the collateral order doctrine" and treated its appeal as a mandamus petition, which the Court granted. 30 F.4th at 423 & n.8. By definition, if *Bruck* "pretermit[ted]" the "intra-circuit split" on whether transfer orders can be appealed as collateral orders, then *Bruck* did not settle that issue. In any event, the three-judge panel in

*Bruck* could not have conclusively resolved the issue even had it wanted to because one panel of this Court has no power to nullify the earlier decisions of other panels like *Bradford* and *Sepulvado*.

Plaintiff then invokes *Rolls Royce* (at 5) to argue that "the Fifth Circuit's position" is that the collateral-order doctrine does not cover transfer orders. But as Plaintiff itself previously observed, "*Rolls Royce* is not controlling because the rule of orderliness gives precedence to other decisions," like the Court's earlier decisions in *Bradford* and *Sepulvado*, "that uphold the collateral order doctrine's application here." Ex. C at 9. Moreover, as Plaintiff noted in *Bruck*, *Rolls Royce*'s conclusion that "the unavailability of meaningful review from final judgment gives rise to mandamus jurisdiction *but not a collateral order appeal* . . . is likely errant and would warrant reconsideration if it were controlling." *Id.* (emphasis in original).

*Brinar v. Williamson*, 245 F.3d 515 (5th Cir. 2001), upon which *Rolls Royce* relied, "is inapposite." *Bradford*, 660 F.3d at 229. In *Brinar*, the district court transferred a successive petition for post-conviction relief to the Ninth Circuit under 28 U.S.C. § 1631. 245 F.3d at 516. The *Brinar* Court held that the transfer order was not appealable under the collateral-order doctrine, reasoning that the order was *not* "effectively unreviewable" because it could be reviewed by the Ninth Circuit as the transferee court. *Id.* at 517-18. By contrast, the transfer order at issue here *is* effectively unreviewable on appeal from final judgment. *Volkswagen*, 545 F.3d at

318-19.  It was precisely on that basis that this Court in *Bradford*, in holding that the district court's transfer order fell within the collateral-order doctrine, distinguished *Brinar*.  Unlike in *Brinar*, where the case had been transferred to and was subject to review in the Ninth Circuit, in *Bradford*, the case remained in the Fifth Circuit.  660 F.3d at 229.  So if the Fifth Circuit dismissed the appeal, the transfer order *would* be "effectively unreviewable."  *Id.*  The same is true here.  The district court denied Defendants' motion to transfer, so just as in *Bradford*, there is no transferee court from which Defendants can seek review.

Even if this Court had not already held that the collateral-order doctrine applies to transfer orders generally, that doctrine would at least apply to transfer orders in circumstances like these, where a pending remand motion threatens to eviscerate any possibility of further review.  The real reason why Plaintiff wants this Court to grant its motion "*immediately*," without even affording Defendants time to respond, is because Plaintiff hopes to quickly usher this case into Texas state court—even though such a remand would plainly be inappropriate, *see infra* Part III—and eliminate this Court's ability to review the district court's flawed transfer order.  Plaintiff shows its cards when it asserts (at 7) that "a remand decision is not appealable."  Its plan of action is clear:  Convince the district court to incorrectly remand, argue that the remand decision cannot be appealed, and thereby lock Defendants into Texas state court without recourse—all before this Court has an

opportunity to scrutinize the district court's transfer decision and send the case to California where it belongs.

It is for that reason that Plaintiff's reliance (at 5-6) on *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989), is misguided. In *Lauro Lines*, the Court reasoned that an order denying a motion to dismiss on forum non conveniens grounds did not fall within the collateral-order exception because the petitioner could seek review of the order after final judgment—consequently, the "legal and practical value" of the "asserted right" would not "be destroyed if it were not vindicated before trial." 490 U.S. at 499, 501. Here, by contrast, if the district court grants Plaintiff's remand motion, then the case will likely be stuck in Texas state court, and Defendants will have no opportunity to appeal the district court's transfer order to this Court even after final judgment. Therefore, unlike in *Lauro Lines*, the "legal and practical value" of Defendants' right to proper application of the federal presumption in favor of enforcing forum-selection clauses *would* likely "be destroyed" if "not vindicated" at this juncture. *Id.* at 501; *cf. Davis*, 2023 WL 4670491, at *5. And as Plaintiff makes clear, it is not seeking to "ensure[] that litigation will continue in the District Court." *Lauro Lines*, 490 U.S. at 498. It seeks an (erroneous) remand to state court and to prevent both the remand order and transfer order from ever being reviewed in federal court. *Cf. Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996) (holding that collateral-order doctrine applied to abstention-based remand order

because it "surrender[ed] jurisdiction of a federal suit to a state court").[3]

Finally, Plaintiff's insistence that this court lacks appellate jurisdiction is particularly hollow given that Plaintiff acknowledged earlier *in this very case* that appeal remains an open avenue for seeking review of a transfer order. Below, Plaintiff asked the district court to issue a 30-day stay in the event that it granted the motion to transfer, explaining that if the court did so, it would "pursue appellate review." Ex. H at 18. But now that the district court has denied the motion to transfer and Defendants, rather than Plaintiff, are the ones seeking review, Plaintiff insists that, actually, appellate review is not available. This Court should not reward Plaintiff's blatant about-face.

## II. Alternatively, This Court May Review the District Court's Transfer Order As an Exercise of Its Mandamus Jurisdiction

Even if this Court concludes that it lacks appellate jurisdiction, there is no good reason to dismiss this appeal because the Court unquestionably has jurisdiction to treat the appeal as a request for mandamus relief and to grant such relief. Plaintiff asserts (at 6) that "mandamus jurisdiction is not at issue here" because Defendants have not filed a mandamus petition. Defendants, however, will within two business

---

[3] The fact that *Lauro Lines* involved a motion to dismiss for forum non conveniens rather than a transfer order under section 1404(a) also renders it inapposite. While the Court in *Lauro Lines* stated that a motion to dismiss for forum non conveniens would not be effectively unreviewable on appeal from final judgment, this Court sitting en banc in *Volkswagen*—which was decided well after *Lauro Lines*—expressly held that "appeal from an adverse final judgment" would "*not* [be] an adequate remedy for an improper failure to transfer the case" under section 1404(a). 545 F.3d at 318-19 (emphasis added).

days of the Record on Appeal becoming available file their opening brief, which properly requests mandamus relief in the alternative. This Court has explained that appellants seeking mandamus relief in the alternative can either "appl[y] for a writ of mandamus under Fed. R. App. P. 21" *or* "request[] that [the Court] treat their appeal as a petition for a writ." *In re Delta Servs. Indus., Etc.*, 782 F.2d 1267, 1272 (5th Cir. 1986). And this Court regularly entertains such alternative requests for mandamus treatment, as it did in *Bruck*. *See, e.g.*, 30 F.4th at 423 & n.8; *United States v. Williams*, 400 F.3d 277, 280 (5th Cir. 2005); *In re Foster*, 644 F. App'x 328, 330 n.1 (5th Cir. 2016) (per curiam).[4]

It is well-established that this Court has mandamus jurisdiction to review transfer orders, and specifically orders on motions to transfer under section 1404(a). In *Volkswagen*, this Court made clear that "mandamus is an appropriate means of testing a district court's section 1404(a) ruling." 545 F.3d at 309. And this Court has repeatedly granted requests seeking mandamus relief from erroneous section 1404(a) decisions. *See, e.g.*, *In re TikTok, Inc.*, 85 F.4th 352, 356 (5th Cir.

---

[4] Any suggestion that Defendants' alternative request for mandamus relief is improper because Defendants' opening brief does not comply with the technical requirements of Federal Rule of Appellate Procedure 21 would be baseless. In *Bruck*, New Jersey argued that Plaintiff was not entitled to mandamus relief because Plaintiff failed to file a separate mandamus petition that met the requirements of Rule 21. Ex. B at 34-35 & n.5. In granting Plaintiff's request for mandamus relief, this Court stated that New Jersey's "contention that [Plaintiff] [could] not seek mandamus due to technical noncompliance with FRAP Rule 21 [was] *frivolous*." 30 F.4th at 425 n.10 (emphasis added). Just as in *Bruck*, Defendants' forthcoming opening brief is a proper request for mandamus relief, both "procedurally and substantively," because it "state[s] clearly the relief requested and grounds for seeking mandamus relief." *Id.*

2023); *In re Media Matters for Am.*, 143 F.4th 631, 640 (5th Cir. 2025).

Most notably, in *Bruck*, this Court granted Plaintiff's request to have its opening brief on appeal of the district court's section 1404(a) transfer order construed as a mandamus petition and granted mandamus relief. 30 F.4th at 423 & n.8, 436. Plaintiff halfheartedly suggests (at 6) that mandamus treatment was warranted in *Bruck* only because that case involved a combined transfer-and-sever order. But this Court in *Bruck* plainly stated that "mandamus is the prescribed vehicle for reviewing rulings on *transfers* of cases," citing this Court's en banc decision in *Volkswagen*, which concerned only transfer and not severance. 30 F.4th at 423 (emphasis added). And the other cases cited above in which this Court granted mandamus relief likewise involved transfer-only orders. *TikTok*, 85 F.4th at 356; *Media Matters*, 143 F.4th at 634-35.

In the end, by asking this Court to dismiss Defendants' appeal (with forthcoming alternative request for mandamus relief) even though it is on all fours with Plaintiff's own earlier appeal of an adverse transfer order, Plaintiff seeks to deny other litigants the benefit of a previous ruling in its favor. This Court should not countenance such a transparent request for preferential treatment.

## III. If the Motions Panel Does Not Deny Plaintiff's Motion, It Should Be Carried With the Case

For the reasons explained above, the motions panel should deny Plaintiff's motion to dismiss for lack of jurisdiction outright. But at the very least, the panel

16

should defer judgment to the merits panel, as it does regularly. *See, e.g.*, *United Nat. Foods, Inc. v. NLRB*, 66 F.4th 536, 540 (5th Cir. 2023); *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 212 (5th Cir. 2023). Plaintiff's insistence that this Court grant its motion "*immediately*"—without even affording Defendants an opportunity to respond—rests on its baseless accusation that Defendants are using appeal as "a procedural weapon" to delay an "imminent" remand to state court. Mot. 6-7. To the contrary, a state-court remand is in no way "imminent," and Defendants *had to* appeal to fully protect their right to this Court's review of the district court's transfer order. As explained above, Plaintiff's plea for a rushed dismissal is instead a poorly disguised attempt to obtain an inappropriate state-court remand that would thwart this Court's ability to review the district court's erroneous transfer order (confirming why collateral-order jurisdiction is appropriate). This Court should not permit such an end-run around its own jurisdiction, especially when the district court itself determined that transfer should be resolved before remand.

Plaintiff's assertion that this Court must dismiss Defendants' appeal immediately is premised on its claim that remand to state court is inevitable. That badly mischaracterizes the state of play in the district court. It is undisputed that the citizenship of the parties is diverse, and Plaintiff expressly and unambiguously admitted in its Petition that the amount in controversy exceeds $5 million. Ex. D at 17 ¶ 14. The only reason there is even a live question over remand is that Plaintiff

attempted to stipulate at a motions hearing that it would limit its monetary recovery to $74,999, after which the district court sought supplemental briefing on the impact of that stipulation and other bases for jurisdiction. *See* Mot. Ex. F at 20-29.

Since then, Defendants have submitted a supplemental brief establishing that the district court must disregard Plaintiff's post-removal stipulation because where, as here, "it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)). Binding law thus forecloses Plaintiff's eleventh-hour ploy to defeat diversity jurisdiction.

For that reason, Plaintiff's motion to remand should be denied. But under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the district court lacks jurisdiction to rule on the remand motion while this appeal is pending. Mot. Ex. H. Plaintiff asserts (at 7-8) that *Griggs* does not apply because this Court lacks appellate jurisdiction. That is wrong for the reasons set out above. *See supra* Part I.

Plaintiff then (at 7-9) incorrectly suggests that the only reason Defendants filed an appeal was to divest the district court of jurisdiction to rule on the remand motion. Not so. It is true that the unique circumstances of a pending remand motion strengthen the case for collateral-order jurisdiction. As explained above, Defendants

were *compelled* to appeal or else potentially lose any opportunity to obtain this Court's review of the transfer order if the district court were to wrongly remand. But it is the district court, not Defendants, who made the judgment that transfer should be settled *before* remand. In its transfer order, the district court explicitly stated that it was "exercis[ing] its discretion to resolve the motion to transfer before the motion to remand." Mot. Ex. B at n.2. Therefore, there is every reason to fully resolve the transfer dispute first, including this Court's review of the district court's transfer order, rather than skip ahead to the motion to remand and potentially eliminate any avenue for higher-court review of the transfer order. After all, regardless of how this Court rules on transfer, Plaintiff will remain free afterward to argue for remand to state court. And if Plaintiff is correct that remand is "inevitable," then the Northern District of California can remand just as well as the Western District of Texas.

Defendants also had no choice but to appeal due to the interaction between the unsettled state of the law in this Circuit and the requirements for mandamus relief. As Plaintiff well knows, this Court in *Bruck* left open the possibility that transfer orders may be appealed under the collateral-order doctrine. 30 F.4th at 423 & n.8. And one of the fundamental prerequisites to mandamus relief is that "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004).

If this Court were to hold that its prior decisions applying the collateral-order doctrine to transfer orders are binding, or that the doctrine applies in a case like this one where there is also a pending remand motion, then Defendants would have "other adequate means" to obtain relief—namely, an appeal—and mandamus relief may very well be foreclosed.

Therefore, unless and until this Court conclusively resolves the acknowledged intra-circuit split on the proper vehicle(s) for seeking review of a transfer order generally and in circumstances like these, litigants seeking to fully protect their rights will have no choice but to do precisely what Defendants have done here: file an appeal while seeking mandamus relief in the alternative—which Plaintiff previously described as "a perfectly orthodox way of advancing the Court's interest in judicial efficiency and simplified submissions." Ex. C at 17.

Plaintiff concludes its motion (at 10) by asserting that in order for Defendants to secure this Court's review, they must "do things the right way" by "fil[ing] a mandamus petition" and "mak[ing] a serious showing that they are likely to obtain that extraordinary relief," and claiming that Defendants "have done none of that." Quite the opposite. Defendants have prepared—and stand ready to file as soon as the Record on Appeal is available—a brief that functions as either an opening brief on appeal or a mandamus petition and that demonstrates that Defendants are entitled to relief whether under ordinary appellate or mandamus standards.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiff's motion to dismiss for lack of jurisdiction. Alternatively, the motions panel should defer judgment on Plaintiff's motion to the merits panel.[5]

---

[5] If the Court grants Plaintiff's motion, Defendants respectfully request a brief administrative stay from this Court pending the filing and disposition of a motion to stay in the district court. Defendants would also promptly file a mandamus petition in this Court.

Dated:   December 22, 2025                    Respectfully submitted,

                                             */s/ Jonathan Patchen*
                                             Jonathan Patchen
                                             Michael A. Rome
                                             Anika Holland
                                             Madeleine R. Ahlers
                                             COOLEY LLP
                                             3 Embarcadero Center, 20th Floor
                                             San Francisco, CA 94111
                                             (415) 693-2000
                                             jpatchen@cooley.com

                                             Connie L. Wang
                                             COOLEY LLP
                                             3175 Hanover Street
                                             Palo Alto, CA 94304
                                             (650) 843-5000

                                             Steven J. Wingard
                                             Robyn Hargrove
                                             Eli Barrish
                                             SCOTT DOUGLASS & MCCONNICO LLP
                                             303 Colorado Street, Suite 2400
                                             Austin, TX 78701
                                             (512) 495-6300

                                             *Counsel for Defendants-Appellants*
                                             *YouTube LLC, Google LLC, and*
                                             *Alphabet, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>*/s/ Jonathan Patchen*</u>
Jonathan Patchen

# CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it consists of 5,184 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jonathan Patchen*
Jonathan Patchen

# EXHIBIT 3

**No. 21-50327**

_____

In the United States Court of Appeals
For the Fifth Circuit

_____

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official and
individual capacities,

Defendant - Appellee

_____

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

_____

**Brief of Appellants**

_____

Clark Hill PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Beck Redden LLP
Chad Flores
Daniel Nightingale
Hannah Roblyer
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

No. 21-50327

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

GURBIR S. GREWAL, Attorney General of New Jersey, in his official and
individual capacities,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an
interest in the outcome of this case.  These representations are made in order that the
judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiffs – Appellants: | Defense Distributed<br>Second Amended Foundation, Inc. |
| Counsel: | Beck Redden LLP<br>Chad Flores<br>Daniel Nightingale<br>Hannah Roblyer<br><br>Clark Hill PLC<br>Matthew A. Goldstein<br><br>Josh Blackman LLC<br>Josh Blackman |
| Defendant – Appellee: | Gurbir S. Grewal |
| Counsel: | Office of the Attorney General for the State<br>of New Jersey<br>Jeremy M. Feigenbaum<br>Angela Cai<br><br>Pillsbury Winthrop Shaw Pittman, LLP<br>Alexander Hardiman<br>Benjamin D. Tievsky<br>Kenneth W. Taber<br>Ronald Casey Low<br>Shelbi Flood |
| Defendants: | Michael Pompeo<br>Directorate of Defense Trade Controls<br>Mike Miller<br>Sarah Heidema |
| Counsel: | United States Department of Justice<br>Brian Boynton<br>Anthony J. Coppolino<br>Liane Noble<br>Gregg N. Sofer<br>Lisa Newman<br>Michael Knapp |

Zachary A. Avallone

*/s/ Chad Flores*
Chad Flores
Counsel for Appellants

**Notice of Panel Assignment**

By order of the Court in this case's prior appeal, this appeal and any other "future requests for appellate relief shall be directed to the panel consisting of Judges JONES, ELROD, and HIGGINSON."  Order, *Defense Distributed v. Grewal*, No. 19-50723 (Sept. 11, 2020) (per curiam) (attached as Exhibit A).

## Statement Regarding Oral Argument

The Court should decide this case with the benefit of oral argument for the same reasons that it did so in *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1736 (2021).  The questions presented are of exceptional importance both in this particular case and for the jurisprudence going forward.  State officials that ought to be governing only their home state are increasingly taking on the role of national law enforcers.  More than ever before, these state officials are enforcing their home laws not just within their state's borders but beyond them—both in word and deed.  Litigation about this dangerous new procedural phenomenon is exploding for a reason.  *See, e.g.*, *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, No. 20-40020, 2021 WL 2374295, at *1 (5th Cir. June 10, 2021) ("In this case, a Texas company has twice sued a California state agency, arguing that the agency cannot enforce California regulations in Texas.").  No matter the result, each step in the process of developing the Court's jurisprudence about how to handle such efforts should utilize the utmost care.

# Table of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

Notice of Panel Assignment ............................................................................. iv

Statement Regarding Oral Argument ................................................................ v

Table of Contents ............................................................................................. vi

Table of Authorities ......................................................................................... ix

Jurisdictional Statement .................................................................................... 1

    I.     District court jurisdiction. ...................................................................... 1

    II.    Appellate jurisdiction ........................................................................... 1

    III.   Alternative petition for a writ of mandamus. ...................................... 2

Issues Presented ................................................................................................ 3

Statement of the Case ....................................................................................... 4

    I.     Plaintiffs published digital firearms information. ................................ 4

          A.    In Texas, Defense Distributed freely published digital firearms information online. ................................................... 4

          B.    In Texas, Defense Distributed freely published digital firearms information by mail. .................................................. 5

          C.    In Texas, Defense Distributed freely published digital firearms information at a public library. ................................ 5

    II.    Grewal is censoring Defense Distributed's speech in Texas. .............. 6

          A.    Civil censorship is occurring. ..................................................... 6

          B.    Criminal censorship is occurring. ............................................... 7

III.  The State Department violated Defense Distributed and SAF's rights alongside Grewal.................................................. 10

    A.  *Defense Distributed I* ............................................. 10

    B.  The Settlement Agreement Resolved *Defense Distributed I* ... 13

    C.  Settlement Agreement Fulfillment Begins............................ 14

    D.  The State Department Stopped Fulfilling the Settlement Agreement Because of a Litigation Grewal brought. ............. 15

    E.  The State Department disavowed the license and Temporary Modification refused to supply new ones. ........... 19

    F.  The State Department failed to supply the required regulatory changes. ................................................. 20

    G.  The 2020 regulatory changes are enjoined and then revived.................................................................. 21

IV.  The district court granted Grewal's motion to dismiss for lack of personal jurisdiction; this Court reversed. ......................................... 22

V.  The district court severed the case against Grewal and transferred it to New Jersey. ................................................................. 22

    A.  The amended complaint sues Grewal and the State Department together for good reason. ..................................... 22

SUMMARY OF THE ARGUMENT ..................................................... 24

ARGUMENT................................................................................. 25

I.  The case against Grewal should not have been severed from the case against the State Department.................................................. 26

    A.  The district court abused its discretion by severing a necessary party to the case against the State Department........ 26

    B.  The district court abused its discretion under the Rule 21 factors.................................................................. 31

        1.  Judicial economy disfavors severance........................... 32

2.     The remaining Rule 21 factors disfavor a severance.
       ....................................................................................... 38

II.    The district court abused its discretion in transferring the case
       against Grewal to New Jersey. .......................................... 42

       A.     The private interest factors favor Texas................................... 43

              1.     The key sources of proof are more easily accessible
                     in Texas........................................................................ 43

              2.     Compulsory process to secure the attendance of
                     non-party witnesses is largely unnecessary. ................. 46

              3.     Litigation in New Jersey would create significant
                     practical problems that do not exist in Texas. .............. 48

       B.     The public interest factors favor Texas.................................... 50

              1.     The local interest in having this litigation decided in
                     Texas strongly weighs against transfer......................... 50

              2.     Texas courts' familiarity with the case weighs
                     strongly against transfer................................................ 53

              3.     The avoidance of conflict of laws weighs against
                     transfer.......................................................................... 55

Certificate of Service ........................................................................ 58

CERTIFICATE OF COMPLIANCE...................................................... 59

# Table of Authorities

| Cases | Page(s) |
|---|---|

*Acton Co., Inc. v. Bachman Foods, Inc.*,
668 F.2d 76 (1st Cir. 1982) ............................................................. 37

*Advanced Display Techs. of Tex., LLC v. AU Optronics Corp.*,
2012 WL 12839376 (E.D. Tex. Mar. 27, 2012) ............................. 52

*Aetna Cas. & Sur. Co. v. Hillman*,
796 F.2d 770 (5th Cir. 1986) ......................................................... 34

*Balboa v. Metso Minerals Indus., Inc.*,
2019 WL 8888170 (E.D. La. Jan. 2, 2019) .................................... 34

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ..................................................... 59

*Baker v. Washington Nat'l Ins. Co.*,
A-12-CA-260-SS, 2012 WL 12850254 (W.D. Tex. Sept. 7, 2012) ................. 56

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ......................................................................... 8

*Barton v. C. R. Bard, Inc.*,
2:19-CV-181-Z, 2020 WL 1809702 (N.D. Tex. Apr. 9, 2020) ....................... 52

*Bernstein v. U.S. Dep't of State*,
922 F. Supp. 1426 (N.D. Cal. 1996) ................................................ 8

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) ..................................................... 32

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ......................................................................... 1

*Cooktek Induction Sys. v. I/O Controls Corp.*,
2016 WL 4095547 (E.D. Tex. Aug. 2, 2016) ................................. 52

*Def. Distributed et al. v. Grewal*,
3:19-cv-4753-AET-TBJ, Doc. 20 (D. N.J.) ...................................... 62

*Def. Distributed v. Att'y Gen. of New Jersey*,
  972 F.3d 193 (3d Cir. 2020) ................................................................. 4, 42, 62

*Def. Distributed v. Grewal*
  364 F. Supp. 3d 681 (W.D. Tex. 2019) (Pitman, J.),
  *rev'd and remanded*, 971 F.3d 485 (5th Cir. 2020),
  *cert. denied*, 141 S. Ct. 1736 (2021)............................................................ 42, 43

*Def. Distributed v. Grewal*
  971 F.3d 485 (5th Cir. 2020) ....................................................................... *passim*

*Def. Distributed v. U.S. Dep't of State*
  121 F. Supp. 3d 680 (W.D. Tex. 2015) ........................................... 8, 19, 42, 63

*Def. Distributed v. U.S. Dep't of State*
  2015 WL 9267338, 838 F.3d 451 (5th Cir. 2016) ............................ 8, 17, 19, 42

*Def. Distributed v. U.S. Dep't of State*
  No. 1:15-CV-372-RP, 2018 WL 9866515 (W.D. Tex.
  Oct. 22, 2018) ....................................................................................................... 17

*Def. Distributed v. United States Dep't of State*,
  865 F.3d 211 (5th Cir. 2017) ................................................................. 17, 19, 42

*EEOC v. Faurecia Auto. Seating, LLC*,
  2017 WL 4158624 (N.D. Miss. Sept. 19, 2017)........................................ 55, 56

*Escamilla v. M2 Tech., Inc.*,
  536 Fed. Appx. 417 (5th Cir. 2013) ................................................................. 33

*Garber v. Randell*,
  477 F.2d 711 (2d Cir. 1973) ................................................................................. 1

*Garrett v. Hanson*,
  429 F. Supp. 3d 311 (E.D. Tex. 2019)............................................................... 55

*Gorgeous Gals, LLC v. Hey Gorgeous! Spay & Wellness LLC*,
  2016 WL 6775445 (W.D. Tex. Nov. 15, 2016)................................................. 57

*Guedry v. Marino*,
  164 F.R.D. 181 (E.D. La. 1995) ................................................................. 46, 48

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ................................................... 50

*Hammers v. Mayea-Chang*,
2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) .................................. 51, 52, 53

*Healthpoint v. Derma Scis.*,
939 F. Supp. 2d 680 (W.D. Tex. 2013) ...................................... 60, 63

*J2 Glob. Communications, Inc. v. Protus IP Sols.*,
2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ................................. 56

*Junger v. Daley*,
209 F.3d 481 (6th Cir. 2000) ........................................... 8

*Kuster v. W. Digital Techs., Inc.*,
6-20-CV-00563-ADA, 2021 WL 466147 (W.D. Tex. Feb. 9, 2021)............... 56

*Levy v. City of Rio Grande City*,
2004 WL 2847273 (N.D. Tex. Dec. 9, 2004).................................. 56

*Liaw Su Teng v. Skaarup Shipping Corporation*,
743 F.2d 1140 (5th Cir. 1984),
*overruled on other grounds by*
*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
821 F.2d 1147 (5th Cir. 1987) ...................................... 40, 49

*Mann v. Mohr*,
802 Fed. Appx. 871 (6th Cir. 2020) ................................. 39

*McBee v. Campbell County Det. Ctr.*,
2018 WL 2046303 (6th Cir. Mar. 15, 2018) ......................... 39, 46, 49

*Moore v. Unit Tex. Drilling, LLC*,
3:08-CV-2080-N, 2009 WL 10704741 (N.D. Tex. Nov. 17, 2009)................. 55

*N.Y. Life Ins. Co. v. Deshotel*,
142 F.3d 873 (5th Cir. 1998) ...................................... 47

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ............................................... 34

*PrevMED, Inc. v. MNM-1997, Inc.*,
    2015 WL 5771822 (N.D. Tex. Sept. 30, 2015) ................................................ 56

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*,
    2011 WL 13224919 (E.D. Tex. Jan. 12, 2011) ................................................ 55

*Pulitzer-Polster v. Pulitzer*,
    784 F.2d 1305 (5th Cir. 1986) ................................................................ 37

*QR Spex, Inc. v. Motorola, Inc.*,
    507 F. Supp. 2d 650 (E.D. Tex. 2007) ..................................................... 50

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ................................................................ 50

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ..................................................... *passim*

*In re Sepulvado*,
    707 F.3d 550 (5th Cir. 2013) .................................................................. 1

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................. 8

*Spiegelberg v. Collegiate Licensing Co.*,
    402 F. Supp. 2d 786 (S.D. Tex. 2005) ..................................................... 60

*State of Washington et al. v. United States Department of State et al.*,
    No. 2:18-cv-1115-RSL (W.D. Wash.) ............................................... 17, 22

*Transdata, Inc. v. Tri-County Elec. Coop., Inc.*,
    2011 WL 13134895 (E.D. Tex. Aug. 18, 2011) .................................. 55, 57, 58

*Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*,
    CIV.A. 10-1682, 2011 WL 197897 (E.D. La. Jan. 20, 2011) .......................... 52

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ................................................................... 8

*In re Vistaprint Ltd*,
    628 F.3d 1342 (Fed. Cir. 2010) ............................................................ 57

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................. *passim*

*In re Volkswagen of America, Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ......................................... 57

*Washington v. U.S. Dep't of State*
    318 F. Supp. 3d 1247 (W.D. Wash. 2018) ................................ 11, 36
    420 F. Supp. 3d 1130 (W.D. Wash. 2019) ................................ 36

*Watson v. Fieldwood Energy Offshore, LLC*,
    181 F. Supp. 3d 402 (S.D. Tex. 2016) .................................... 59

*Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*,
    762 F. Supp. 2d 1023 (S.D. Tex. 2011) .................................. 55

*Wsou Investments v. Microsoft*,
    2021 WL 1298935 (W.D. Tex. Apr. 7, 2021) ........................... 52, 53

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013) ................................... 59

**Statutes**

28 U.S.C.
    § 1331 ............................................................................... 1
    § 1343 ............................................................................... 1
    § 1404(a) ........................................................................ 50

N.J. Stat. 2C:39-9(*l*)2 ...................................................... 13, 14

N.J. Stat 2C:43-6 .............................................................. 13

**Rules**

Fed. R. Civ. P. 19(a) .......................................................... 33

Fed. R. Civ. P. 19(a)(1)(B)(i) ................................... 34, 35, 36, 38

Fed. R. Civ. P. 19(a)(1)(B)(ii) ............................................ 38

## Other Authorities

15 Charles A. Wright & Arthur R. Miller et. al., Federal Practice & Procedure: Jurisdiction and Related Matters § 3855 (4th ed. West 2021) ...................................................................................................... 1

7 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1653 (1986) ................................................... 46

Felicia R. Lee, *3-D Printed Gun Goes on Display at London Museum*, N.Y. Times, Sept. 16, 2013 ................................................................ 6

## Jurisdictional Statement

### I. District court jurisdiction.

The district court had original jurisdiction because the complaint, <u>ROA.1853</u>, establishes that the action arises under the Constitution and laws of the United States, *see* <u>28 U.S.C. § 1331</u>, and that the action is to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States, *see* <u>28 U.S.C. § 1343</u>.

### II. Appellate jurisdiction

Appellate jurisdiction exists because the appellants timely filed a notice of appeal on April 20, 2021, <u>ROA.2478</u>, from the district court's decision of April 19, 2021, to sever the case against Grewal and transfer it to New Jersey, <u>ROA.2461</u>. That decision is appealable by virtue of the collateral order doctrine, *see generally Cohen v. Beneficial Indus. Loan Corp.*, <u>337 U.S. 541</u> (1949), because (1) this appeal will conclusively determine the correctness of the severance and transfer decision, (2) the severance and transfer decision is separate from the action's merits, and (3) the severance and transfer decision is effectively unreviewable otherwise. *See In re Sepulvado*, <u>707 F.3d 550, 552</u> (5th Cir. 2013) (doctrine covers transfer orders); *Garber v. Randell*, <u>477 F.2d 711, 716</u> (2d Cir. 1973) (same for severance). As between this Court and the Third Circuit, jurisdiction lies only here in the Fifth Circuit. *See* 15 Charles A. Wright & Arthur R. Miller et. al., Federal Practice &

Procedure: Jurisdiction and Related Matters § 3855 (4th ed. West 2021) ("If the transfer was made from a district in one circuit to a district in another, only the court of appeals in the circuit of the transferor can review the decision.").

## III. Alternative petition for a writ of mandamus.

If and to the extent that appellate jurisdiction is lacking, Appellants request that the Court treat this filing as a petition for a writ of mandamus. Jurisdictionally, this Court's authority to review the district court's severance and transfer decision via mandamus is well-established. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (en banc); *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014). Substantively, the arguments presented below show that the district court's decision to sever the case against Grewal and transfer it to New Jersey constitutes both reversible error for appellate purposes and an exceptional clear abuse of discretion for mandamus purposes. The Court therefore has both the jurisdictional authority and substantive reason to either (a) reverse the district court's decision as an exercise of the Court's appellate jurisdiction, or (b) issue a writ of mandamus against the district court's decision as an exercise of the Court's original jurisdiction.

## Issues Presented

The overall question presented is whether Defense Distributed and SAF's case against Grewal should have been both severed from the case against the State Department and transferred to New Jersey. It entails two linked subsidiary issues:

1.  Whether, as a prerequisite to the transfer decision, Defense Distributed and SAF's case against Grewal should have been severed from the case against the State Department.

2.  Whether, assuming that severance was correct, Defense Distributed and SAF's case against Grewal should have been transferred to New Jersey.

## Statement of the Case

### I.  Plaintiffs published digital firearms information.

Plaintiff Defense Distributed is a Texas company that exists to promote the Second Amendment's individual right to keep and bear Arms.  *See* ROA.1857 (complaint).  To that end, Defense Distributed authors and publishes a wide variety of digital firearms information.  ROA.1857.  Its publications address a variety of individual firearm components, as well as a complete single-shot firearm known as the "Liberator."  ROA.1867.  Defense Distributed also collects, revises, and republishes digital firearms information authored by others.  ROA.1867.  Cody Wilson founded Defense Distributed.  ROA.1857, 3799.

Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nationwide non-profit membership organization that promotes the right to keep and bear arms by researching, educating, publishing, and litigating about the constitutional right to privately own and possess firearms and gun control's consequences.  ROA.1857.  Across the nation and in New Jersey, certain of SAF's members seek to receive the digital firearms information that Defense Distributed publishes, to publish their own digital firearms information by utilizing Defense Distributed's facilities, and to republish digital firearms information files independently.  ROA.1857.

#### A.  In Texas, Defense Distributed freely published digital firearms information online.

Before Gurbir Grewal came onto the scene, Defense Distributed published digital firearms information to the internet's public domain on multiple occasions. ROA.1864 (complaint). On each occasion, Defense Distributed did so by publishing files to its defcad.org and defcad.com websites (collectively "DEFCAD") and letting visitors freely download them. One such publication period lasted from December 2012 to May. ROA.1866, 3801, 3730. Another such period lasted from July 27 to July 31, 2018. ROA.1866, 3801, 3730. Millions of downloads occurred during these DEFCAD publication periods. ROA.1867.

**B.** **In Texas, Defense Distributed freely published digital firearms information by mail.**

Defense Distributed also published digital firearms information via the mail. ROA.1868, 3805. From late August 2018 through early November 2018, Defense Distributed did so by storing its digital firearms information on USB drives and SD cards, selling them to customers online via DEFCAD, and shipping the USB drives and SD cards to purchasers via the United States Postal Service. ROA.1868, 3805.

**C.** **In Texas, Defense Distributed freely published digital firearms information at a public library.**

Furthermore, Defense Distributed published its digital firearms information by hosting the files at a brick-and-mortar public library in digital formats that patrons can access via computer workstations. ROA.1868. The public library housing Defense Distributed's publications is in Austin, Texas. ROA.1868.

Because of these prior publications, Defense Distributed's files will exist online forever. Without coordination, the recipients of Defense Distributed's digital firearms information are persistently republishing the files at countless websites for free download. ROA.1870. The republished files are not, as one judge errantly concluded, hidden in "dark or remote recesses of the internet."[1] Simple Google searches yield the republished Defense Distributed files with ease, ROA.1870, and always will. This bell cannot be unrung.

## II. Grewal is censoring Defense Distributed's speech in Texas.

### A. Civil censorship is occurring.

Beginning in July 2018, Grewal has acted under the color of state *civil* laws to censor the publication of digital firearms information. He issued a cease-and-desist letter expressly censoring Defense Distributed, sued Defense Distributed in court, and threatened Defense Distributed's third-party service providers—all in an effort to stop the exchange of digital firearms information that Defense Distributed initiates in Texas.

A formal cease-and-desist letter began the civil campaign on July 26, 2018. ROA.1890-92. Issued by Grewal to Defense Distributed, that letter announced that publishing digital firearms information on the internet violated New Jersey's "public nuisance and negligence laws." ROA.1890-92. Grewal threatened Defense

---

[1] *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1262 (W.D. Wash. 2018).

6

Distributed to stop publishing or else: "If you do not halt your efforts to proceed with publication, I will bring legal action against your company. . . ." ROA.1890-92.

Internet service providers were another of Grewal's target. Under the guise of "public nuisance" law, Grewal sent letters to Defense Distributed's internet hosting provider, Dreamhost, and to its internet security provider, Cloudflare. ROA.1890-92. These letters urged—by way of threats, coercion, and intimidation—Dreamhost and Cloudflare to terminate their contracts with Defense Distributed. ROA.1890-92.

Grewal's combination of censorship measures is not happenstance. His own press releases touted this litany of enforcement actions as a coordinated effort to stop the free exchange of digital firearms information. ROA.2638 (Grewal's press release). The cease-and-desist letters, the intimidation of service providers, and the civil lawsuits are all part of the Grewal's unified plan to stop Defense Distributed "from publicly releasing computer files." ROA.2638.

**B. Criminal censorship is occurring.**

In the wake of DEFCAD's most recent online publications, New Jersey armed Attorney General Gurbir Grewal with Senate Bill 2465's Section 3(*l*)2. S.B. 2465, 218th Leg., Reg. Sess. (N.J. Nov. 2018) (codified as N.J. Stat. 2C:39-9(*l*)2)). The law is codified as Section (*l*)(2) of New Jersey Code of Criminal Justice 2C:39-9.

Section (*l*)(2) is a speech crime.  It outlaws the sharing of digital firearms information.  With Grewal as its prime enforcer, Section (*l*)(2) criminalizes constitutionally protected speech that Plaintiffs would engage in but for Grewal's enforcement threats.  Calling Section (*l*)(2) his favorite new "tool," Grewal aims to jail Defense Distributed, SAF, and anyone else that dares to exercise their right to share digital firearms information.

The threat posed by Section (*l*)(2) is not merely facial.  Grewal backed it up at Senate Bill 2465's publicized enactment ceremony.  ROA.1892-1897.  At that event, Grewal expressly aimed the new speech crime at Defense Distributed and its supporters.  He said that Section (*l*)(2) met his demand for "stronger tools to stop them"—those sharing digital firearms information—because "a Texan named Cody Wilson," Defense Distributed, and its supporters were "not relenting" and "still trying to release these codes online."   ROA.1892-1897.  He said that the Section (*l*)(2) speech crime exists "to stop the next Cody Wilson - to fight the ghost gun industry."   ROA.1892-1897.   He promised to prosecute "anyone who is contemplating making a printable gun" and "the next ghost gun company." ROA.610.  To Defense Distributed and anyone else across the political aisle who dares to share digital firearms information, Gurbir Grewal promises this: "***we will come after you***." ROA.610 (emphasis added).

8

To this day, Grewal's unconstitutional enforcement threats remain in force. The cease-and-desist letter Grewal issued to Defense Distributed has never been disclaimed. The coercive actions Grewal took against Defense Distributed's service providers have never been disclaimed. The civil lawsuits Grewal filed against Defense Distributed, its founder Cody Wilson, SAF, and others have never been disclaimed. The unequivocal threats Grewal's issued at the SB 2465 signing ceremony—to "stop" speakers from "releas[ing] these codes online" and to "come after you"—have never been disclaimed. If Defense Distributed or a SAF member were to publish the computer files at issue, Grewal "*will come after*" them with every tool at his disposal. ROA.610 (emphasis added).

The civil legal actions that Grewal wields against Plaintiffs are plainly unconstitutional. So is the speech crime that Grewal threatens to enforce against Plaintiffs. In each of these respects, Grewal has violated and is threatening to violate 42 U.S.C. § 1983 by acting, under color of state law, to deprive the Defense Distributed and SAF of rights, privileges, immunities secured by the Constitution and laws of the United States. And in each of these respects, Grewal has done so by choosing to reach out beyond New Jersey's borders and use his legal authority to censor speech that is occurring in Texas, about Texas activities, and to and from Texas residents.

## III. The State Department violated Defense Distributed and SAF's rights alongside Grewal.

### A. *Defense Distributed I*

"*Defense Distributed I*" refers to a federal civil action docketed in the United States District Court for the Western District of Texas, Austin Division as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.), and in the United States Court of Appeals for the Fifth Circuit first as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.) and later as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 18-50811 (W.D. Tex.). *Defense Distributed I* yielded the following reported opinions:

> *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) (panel opinion)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461–76 (Jones, J., dissenting)
> *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) (Elrod, Jones, Smith and Clement, JJ., dissenting from the denial of rehearing en banc)
> *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

The plaintiffs in *Defense Distributed I* were Defense Distributed, SAF, and an individual SAF member, Conn Williamson. The defendants matched the defendants in this case: the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military

Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division. They are referred to collectively as "the State Department."

*Defense Distributed I* concerned four categories of computer files defined by that action's pleadings: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files." *See* ROA.1874-75. Together, these are referred to as the "*Defense Distributed I* Files."

*Defense Distributed I* began after the State Department used the Arms Export Control Act of 1976, 22 U.S.C. ch. 22 (the "AECA"), and its primary implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), to impose an illegal prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files. *See* ROA.1875. Under this regime, the State Department required that Defense Distributed obtain prior United States government approval before publication of the *Defense Distributed I* Files could occur on the internet and at other public venues. *See* ROA.1875.

The *Defense Distributed I* plaintiffs challenged the legality of the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files. ROA.1875-76. In particular, they challenged the State Department's governance of the *Defense Distributed I* Files as ultra vires action not authorized by the laws at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution. ROA.1875-76.

11

At a preliminary stage, the district court in *Defense Distributed I* denied the *Defense Distributed I* plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015). An interlocutory appeal of the *Defense Distributed I* preliminary injunction denial was taken to the Fifth Circuit. A divided Fifth Circuit panel affirmed the district court's decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). But it declined to reach the merits, ruling solely based on "the balance of harm and the public interest." *Id.* at 461.

The merits of *Defense Distributed I*'s preliminary injunction were, however, reached by two important opinions. Judge Jones emphasized the protected nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463–64. (Jones, J. dissenting). The judges dissenting from the denial of rehearing en banc also reached the merits. *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). Their opinion explained that the lower court's "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint." *Id.* at 212.

## B. The Settlement Agreement Resolved *Defense Distributed I*

After the *Defense Distributed I* interlocutory appeal concluded, the district court in *Defense Distributed I* ordered the parties to engage in settlement negotiations. ROA.1876. The parties did so successfully and settled their dispute by agreement. ROA.1876.

The *Defense Distributed I* settlement amounted to a victory for the plaintiffs. ROA.1877. Press reports correctly understood that the State Department's decision to settle "essentially surrenders" to the constitutional challenge Defense Distributed and SAF had been pressing all along; that the settlement "promises to change the export control rules surrounding any firearm below .50 caliber – with a few exceptions like fully automatic weapons and rare gun designs that use caseless ammunition – and move their regulation to the Commerce Department, which won't try to police technical data about the guns posted on the internet"; and that, in the meantime, the settlement "gives [Defense Distributed] a unique license to publish data about those weapons anywhere [it] chooses." Andy Greenberg, *A Landmark Legal Shift Opens Pandora's Box for DIY Guns*, Wired Magazine (July 18, 2018), available at https://bit.ly/2QK3is6.

The Settlement Agreement binds all of the parties to *Defense Distributed I* and all of this action's parties. ROA.1876-1880. Settlement Agreement paragraph 7 provides that the "Settlement Agreement" shall be binding upon and inure to the

13

benefit of Plaintiffs and Defendants, and the respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interest of obligations of the Parties."

### C. Settlement Agreement Fulfillment Begins

After the Settlement Agreement's execution, the State Department began to fulfill—temporarily—certain of its Settlement Agreement obligations. So on June 29, 2018, the parties to *Defense Distributed I* filed a joint stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *See* ROA.1881. The filing provided as follows: "Pursuant to Federal Rule of Civil Procedure 41 (a)( I )(A)(ii) and 41(a)( I )(B), and a settlement agreement among Plaintiffs (Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson) and Defendants (the United States Department of State, the Secretary of State, the Directorate of Defense Trade Controls, the Deputy Assistant Secretary, Defense Trade Controls. and the Director, Office of Defense Trade Controls Policy), the Plaintiffs and the Defendants hereby stipulate to the dismissal with prejudice of this action." *See* ROA.1881. On July 30, 2018, the *Defense Distributed I* district court entered an order providing that "the case is **DISMISSED WITH PREJUDICE**" and the "action is **CLOSED**." *See* ROA.1881.

14

The State Department's temporary fulfillment of the Settlement Agreement obligations lasted from July 27, 2018 until the afternoon of July 31, 2018. ROA.1882. During that period, Defense Distributed engaged in the publication addressed above ("Defense Distributed's July 2018 Publications"). ROA.1882.

### D. The State Department Stopped Fulfilling the Settlement Agreement Because of a Litigation Grewal brought.

On July 30, 2018—*after* Grewal had issued his cease-and-desist letter's censorship command to Defense Distributed and *after* Defense Distributed and SAF and sued Grewal for it in the instant action—Grewal and a group of state attorneys general (hereinafter "the States") initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson. ROA.1882. The States chose to sue in their forum of choice, the Western District of Washington's Seattle division, before Judge Robert Lasnik. ROA.1882. The suit was docketed in the district court as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.

The States' *Washington* complaint alleged that, by issuing a Temporary Modification and license, the State Department had violated the Administrative Procedure Act (APA). ROA.1882. The suit sought a preliminary nationwide injunction and a final judgment vacating the Temporary Modification and license. ROA.1882. These claims went against the State Department alone. ROA.1882.

15

On August 27, 2018, the States obtained from the United States District Court for the Western District of Washington a preliminary injunction against the State Department: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court." *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Even though the State Department had a right to appeal the *Washington* case's preliminary injunction decision, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal. ROA.1884. It let the deadline for that interlocutory appeal come and go without taking any appellate action. ROA.1884. The State Department refused to appeal this preliminary injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary. ROA.1884.

The rest of the *Washington* case's key decisions occurred on summary judgment. On the merits, the *Washington* district court accepted both of the States'

16

APA claims.  First, the *Washington* district court held that the State Department's issuance of the Temporary Modification was "without observance of procedure required by law," 5 U.S.C. § 706, because a Congressional notice requirement had not been met.  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1141-43 (W.D. Wash. 2019).  Second, the *Washington* district court held that the State Department's issuance of both the Temporary Modification and the license were "arbitrary and capricious," 5 U.S.C. § 706, because of insufficient explanation and evidentiary support in the administrative record.  *Id.* at 1144-47.  Neither of these claims are meritorious.

The *Washington* action's final judgment orders as follows: "The July 27, 2018, 'Temporary Modification of Category I of the United States Munitions List' and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED."  Part of the *Washington* district court's decision addressed the First Amendment implications of vacating the Temporary Modification and license.  It held the Constitution's First Amendment was "not relevant to the merits": "Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation." *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1147 (W.D. Wash. 2019).  It also held that the First Amendment can be

"abridged" so long as it is not "abrogated." *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Defense Distributed and SAF demanded that the State Department appeal. ROA.1885. The demand asserted that a failure to appeal constituted a breach of the Settlement Agreement. ROA.1885. The demand occurred in a January 15, 2020, letter from counsel for Defense Distributed and SAF to the State Department. ROA.1885.

Even though the State Department had a right to appeal the final judgment, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal. ROA.1885-1886. It let the deadline for that appeal come and go without taking any action. . ROA.1885-1886. The State Department refused to appeal this final injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary. ROA.1885-1886.

Defense Distributed and SAF appealed the *Washington* action's final judgment. ROA.1886. Defense Distributed's appellant's brief showed that the district court both lacked subject-matter jurisdiction because of multiple Article III shortcomings and was wrong on the merits because the APA cannot require abridgement of the First Amendment. ROA.1885-1886. So rather than be squarely defeated, Grewal moved to dismiss both appeals as moot. ROA.1885-1886.

Defense Distributed and SAF responded jointly, opposing the dismissal request with several categories of argument. ROA.1885-1886. First, the response defeated Grewal mootness suggestion on its own terms. ROA.1885-1886. Second, it showed that mootness-based dismissals cannot occur unless and until disputes regarding the district court's subject-matter jurisdiction are resolved. ROA.1885-1886. Third, the response showed that, if the case were moot, *Munsingwear* required vacatur of the district court's judgment. ROA.1885-1886.

The *Washington* action's Ninth Circuit panel accepted the mootness suggestion and dismissed the appeal. *See* Compl. at 34, ¶ 109. *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020). Its order gives no meaningful indication of the mootness reasoning. It says nothing about the district court's jurisdiction. And it says nothing about *Munsingwear*, silently leaving the district court's judgment intact.

### E.     The State Department disavowed the license and Temporary Modification refused to supply new ones.

On or before August 2, 2018, the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018 and the Temporary Modification that it had originally issued in July 2018. ROA.1886-1887. And after disavowal, the State Department both refused to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply, ROA.1887, and refused to supply Defense

Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply.  ROA.1889.

### F.    The State Department failed to supply the required regulatory changes.

The State Department refused to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.  ROA.1889-1890.  Instead,  the State Department issued a new final rule that pertains to the Settlement Agreement in January 2020—far after the litigation in *Washington* had done its harm.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020).  It did so in conjunction with a new rule issued by the Commerce Department.  *See* Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

The regulations promulgated in 2020 by the State and Commerce Departments change the treatment of so-called "3D-printed guns and their associated electronic files," shifting them from the State Department's regime of prior restraints, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, to a different regime at the Commerce Department, the Export Administration Regulations ("EAR"), 15 C.F.R. ch. IV, subch. C.  These new rules do *not* fully discharge the State Department's obligations under Settlement

Agreement Paragraph 1(a) because they do not exclude *all* of the technical data that was the subject of *Defense Distributed I* from United States Munitions List ("USML") Category I. ROA.1889-1990. They go part of the way towards satisfying the Settlement Agreement, but not all of the way. So on April 29, 2020, Defense Distributed and SAF demanded that the State Department supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply. ROA.1890.

### G. The 2020 regulatory changes are enjoined and then revived.

The 2020 regulatory changes did *not* take hold at first. Right after promulgation, a federal court in Seattle preliminarily enjoined the 2020 regulatory changes, halting the regime change. *See Washington v. United States Dep't of State*, 443 F. Supp. 3d 1245 (W.D. Wash. 2020). But the State Department appealed, seeking to defend the 2020 regulatory changes and have them take effect to provide (in part) the cover it promised Defense Distributed in the Settlement Agreement.

On April 27, the State Department won the appeal in full. In *State of Washington v. United States Department of State*, No 20-35391, 2021 WL 1621320 (9th Cir. Apr. 27, 2021), the Ninth Circuit held that its lower court lacked jurisdiction to enjoin the 2020 regulatory changes and vacated the injunction. *Id*. at 2. Defense Distributed & SAF sued Grewal in Texas.

## IV. The district court granted Grewal's motion to dismiss for lack of personal jurisdiction; this Court reversed.

The instant action began in the United States District Court for the Western District of Texas on July 29, 2018. ROA.18. Defense Distributed and SAF are the plaintiffs. ROA.126. The original Defendants were Grewal and other states' officials. ROA.127.

In proceedings that the Court is already familiar with, Grewal's first evasive maneuver was to seek dismissal for want of personal jurisdiction. Though the district court granted that relief, this Court reversed and remanded. *Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), cert. denied, 141 S. Ct. 1736 (2021) ("Based on well-established principles of personal jurisdiction, we conclude that Grewal is subject to the jurisdiction of Texas courts.").

## V. The district court severed the case against Grewal and transferred it to New Jersey.

### A. The amended complaint sues Grewal and the State Department together for good reason.

On remand, Defense Distributed and SAF amended the complaint to both (1) account for new facts about Grewal and (2) assert its claims against the State Department. ROA.1853.

Grewal instigated this appeal by filing a motion that asked the district court to both (1) sever the case against Grewal from the case against the State Department, and (2) transfer the severed case against Grewal to New Jersey. ROA.1999. The

22

State Department opposed this relief, ROA.2121, as did Plaintiffs, ROA.2095. Without holding a hearing, the district court granted the motion in full. ROA.2461. The decision simultaneously severed the case against Grewal from the case against the State Department and transferred the severed case against Grewal to New Jersey. ROA.2477. Plaintiffs timely appealed. ROA.2478.

The State Department is in retreat. As of June 9, 2021, the State Department says that it no longer regulates the files at issue in this litigation.[2]

Not Grewal, though. His censorship remains in full force, never relenting, causing more and more irreparable harm with every passing day.

---

[2] But that part of the case is not moot because the State Department still has to account for its past wrongdoing.

## SUMMARY OF THE ARGUMENT

Neither of the district court's holdings are sustainable. The decision to sever the case against Grewal from the case against the State Department constituted an extraordinary and clear abuse of discretion; and even if that were proper, the decision to transfer the case against Grewal constituted an extraordinary and clear abuse of discretion as well.

# ARGUMENT

The district court severed the claims against Grewal and transferred them to New Jersey pursuant to 28 U.S.C. § 1404(a). ROA.2464–65, 2471, 2476–77. Because this provision "only authorizes the transfer of an entire action, not individual claims," "[a] court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991). Instead, "[w]hen transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer." *Id.* at 1519; *see also Rolls Royce*, 775 F.3d at 679–80.

The district court followed this procedure here, severing the claims against Grewal before transferring them to New Jersey. Because Grewal did not seek to transfer the *entire* case, including the claims against the State Department, to New Jersey, the severance order is a necessary prerequisite to the transfer order. Thus, without the severance, the district court could not effect a transfer. *See Chrysler Credit*, 928 F.2d at 1519. Accordingly, we begin with the district court's decision to sever the claims against Grewal and then address its decision to transfer those claims. If either decision constitutes an abuse of discretion, the case must be remanded in its entirety to the Western District of Texas for further proceedings.

25

## I. The case against Grewal should not have been severed from the case against the State Department.

Rule 21 of the Federal Rules of Civil Procedure normally affords courts "wide discretion to sever a claim against a party into separate cases." *Rolls Royce*, <u>775 F.3d at 680</u>. There are limits to that discretion, however, and the district court here exceeded them in at least two ways, each of which independently merits reversal.

### A. The district court abused its discretion by severing a necessary party to the case against the State Department.

The most obvious limit on a district court's discretion to sever a party from a case is Rule 19. Under this rule, certain parties "must be joined" to a lawsuit "if possible." *Escamilla v. M2 Tech., Inc.*, <u>536 Fed. Appx. 417, 420</u> (5th Cir. 2013). As relevant here, Rule 19 provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: . . .
>
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

<u>Fed. R. Civ. P. 19(a)</u>.

Correspondingly, a district court may only sever "a nondiverse party *whose presence is not essential to the suit*" under Rule 19.  *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986) (emphasis added); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a *dispensable* nondiverse party to be dropped at any time.") (emphasis added).  In other words, a district court "may not drop or sever the claim of a Rule 19 required party." *Balboa v. Metso Minerals Indus., Inc.*, 2019 WL 8888170, at *3 n.34 (E.D. La. Jan. 2, 2019).

Grewal is a required party in Plaintiffs' lawsuit against the State Department under both prongs of Rule 19(a)(1)(B).   Accordingly, he cannot be severed.

Subsection (B)(i) requires joinder of a party if his "absence may . . . as a practical matter impair or impede the person's ability to protect [his] interest" in the underlying case.  Fed. R. Civ. P. 19(a)(1)(B)(i).  Grewal fits this description based on two interests he has claimed "relating to the subject of the action." *Id.*

First, throughout the *Washington I* litigation, Grewal staked out a legal interest in the State Department's fulfillment of its obligations under the Settlement Agreement.   Specifically, Grewal argued that the Settlement Agreement would undermine his interest as Attorney General of the State of New Jersey in protecting New Jersians from the alleged dangers of speech on 3D-printed firearms.

27

Grewal claimed that interest most emphatically when he defended his standing to challenge the State Department's compliance with the Settlement Agreement. *See Washington I*, Dkt. No. 68 at 11. In the relevant filing, Grewal cited the state's "sovereign interests" in its "ability to enforce gun-possession laws," the "security of [New Jersey's] borders," and its "sovereign power and duty to protect public health and safety" as the basis for standing. *Id.* (emphasis added) (citations omitted). This claimed interest was consistent with Grewal's complaint, where he claimed that "[t]he security of the Plaintiff States is threatened by the Government's deregulation of CAD files for the automated production of 3-D printed weapons." *Id.*, Dkt. 1 ¶ 15.

Not only did Grewal expressly claim this interest in *Washington I*, he also successfully persuaded the district court there to *recognize it*, and on multiple occasions to boot. First, in issuing a preliminary injunction, the court held that the states "alleged harm to their legally protectable sovereign interests" based on the "domestic repercussions" of compliance with the Settlement Agreement. *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1255 (W.D. Wash. 2018).

The court put it more concisely in its summary judgment ruling, holding that the State Department's compliance with the Settlement Agreement implicated the states' "interests in curbing violence, assassinations, terrorist threats, aviation and

other security breaches, and violations of gun control laws within [its] borders." *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1140 (W.D. Wash. 2019).

Plaintiffs' claims against the State Department here implicate these interests just as much as the State Department's initial compliance efforts, which Grewal challenged in *Washington I*. If successful, Plaintiffs will be able to publish information on 3D-printed firearms free of State Department regulation, to the detriment of the very legal interest Grewal claimed in compelling such regulation in that case. Thus, Grewal's absence from this case would "as a practical matter impair or impede [his] ability to protect [that] interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, Plaintiffs claims against the State Department may also practically "impair or impede" Grewal's *own* claimed interest in regulating speech on 3D-printed firearms directly, an interest Grewal claimed publicly at the press conference announcing the enactment of Section 3(*l*)(2) and privately through the cease-and-desist letter. The impairment to this purported interest would come through "the establishment of negative precedent," which this Court has held "can provide the requisite prejudice to the absentee" to render them a required party under Rule 19. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986).

For example, this Court may (and likely will) conclude that Plaintiffs' publications constitute "speech" under the First Amendment, that the State Department lacks of compelling interest in regulating that speech, and that the State

Department's regulations are not "narrowly tailored" to achieve any interest it claims. Then, "as a practical matter," courts in New Jersey will "undoubtedly consider and possibly respect any such federal ruling"—even though they are not bound by it—in deciding Plaintiffs' claims and the other inevitable challenges Grewal will encounter when he attempts to enforce Section 3(*l*)(2). In this way, too, "to proceed without [Grewal] might 'as a practical matter impair or impede' [his] ability to protect [his] interest in this matter," making him a "required party" under Rule 19. *Acton Co., Inc. v. Bachman Foods, Inc.*, <u>668 F.2d 76, 78</u>–79 (1st Cir. 1982); *see also Pulitzer*, <u>784 F.2d at 1310</u> (reaching same conclusion).

Critically, the district court never addressed whether Grewal was a necessary party under the first prong of Rule 19(a)(1). *See* <u>Fed. R. Civ. P. 19(a)(1)(B)(i)</u>. Instead, it held that Grewal "is not a necessary party to this action" solely because the State Department "offer[ed] no concrete examples" of "inconsistent obligations" that might be imposed on the State Department under the *second* prong of the Rule. <u>ROA.2469</u>; *see also* <u>Fed. R. Civ. P. 19(a)(1)(B)(ii)</u>. But the Court's failure to address the obvious practical consequences that will arise for Grewal if this case proceeds without him is fatal to its holding that he is not a "necessary party." And because Grewal is a necessary party under subsection (B)(i), he cannot be severed as a matter of law, irrespective of whether he meets the test under subsection (B)(ii).

## B.    The district court abused its discretion under the Rule 21 factors.

Even if Grewal were not a necessary party, the district court still abused its discretion in severing him under Rule 21.   Although this Court "has not formally adopted a severance test," the district courts in this Circuit "have settled on a standard which accords with that used in other circuits," looking to five main factors:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Rolls Royce*, 775 F.3d at 680 n.40; *accord, e.g.*, *Mann v. Mohr*, 802 Fed. Appx. 871, 875 (6th Cir. 2020).  In assessing these factors, a district court abuses its discretion if it severs claims that "are all [properly] alleged to arise out of the same common . . . transactions," and the plaintiff is "prejudiced by being required to pay for and litigate these same issues in multiple suits." *McBee v. Campbell County Det. Ctr.*, 2018 WL 2046303, at *5 (6th Cir. Mar. 15, 2018).

When considering a severance-and-transfer motion like the one Grewal filed here, however, this Court has held that the inquiry collapses into a single question of the "relative merits of convenience versus judicial economy." *Rolls Royce*, 775 F.3d at 680.  A court utilizing this approach "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Id.*

(quoting *Liaw Su Teng v. Skaarup Shipping Corporation*, <u>743 F.2d 1140, 1148</u>–49

(5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New*

*Orleans, La. on July 9, 1982*, <u>821 F.2d 1147</u> (5th Cir. 1987)).  The rationale behind

this rule is to prevent prejudice to the plaintiff and the public:

> Manifestly, the plaintiffs will suffer some inconvenience
> if they are forced to litigate their claims in two courts, half
> the world apart from each other, with not only the
> consequent added expense and inconvenience but also the
> possible detriment of inconsistent results. . . . The public
> also has an interest in facilitating a speedy and
> less-expensive determination in one forum of all of the
> issues arising out of one episode.

*Id.* (quoting same).

Here, the district court abused its discretion under either formulation of the

test.  Reversal is therefore warranted.

### 1. Judicial economy disfavors severance.

The factor this Court has identified as dispositive in sever-and-transfer cases

defeats severance in the circumstances of this case.  *See id.*  As noted, the "judicial

economy" factor requires the court to deny a motion to sever "if the defendant over

whom jurisdiction is retained is so involved in the controversy to be transferred that

partial transfer would require the same issues to be litigated in two places."  *Id.*

(quoting *Liaw Su Teng*, <u>743 F.2d at 1148</u>–49).

That is the case here.  The constitutional claims against Grewal and the State

Department are fundamentally the same, both turning on the same core issues like:

1. Do Plaintiffs' publications of information relating to 3D-printed firearms constitute "speech" under the First Amendment?

2. Has New Jersey or the State Department articulated a "compelling government interest" in banning that speech based on the need to prevent unlawful conduct by third parties?

3. Is Section 3(*l*)(2) or the ITAR regime as applied to Plaintiffs' speech narrowly tailored to achieve the alleged government interest?

4. Has New Jersey or the State Department adequately demonstrated that their respective regulations effectively advance that interest?

5. Is Section 3(*l*)(2) or the ITAR regime as applied to Plaintiffs' speech unconstitutionally overbroad?

*Compare* ROA.1912–22 (First Amendment, Second Amendment, and Due Process claims against State Department) *with* ROA.1922–28 (same claims against Grewal).

Thus, if the district court's severance-and-transfer order is allowed to stand, there is no question that the "partial transfer would require the same issues to be litigated in two places." *Rolls Royce*, 775 F.3d at 680. This alone required denial of Grewal's motion to sever, and the court abused its discretion in holding otherwise.

In addition to their substantial legal overlap, Plaintiffs' claims against both defendants stem from the same underlying set of facts: Plaintiffs' publications of information concerning 3D-printed firearms that Defendants' efforts would like to censor. The nature of the speech in question is highly technical, and Plaintiffs' efforts to defend it have been extensive and complex, complete with numerous, interrelated lawsuits across the country.

33

Both this Court and the district court have ample, longstanding experience with these dense factual issues, as reflected in numerous published decisions going back to at least 2015. *Compare, e.g.*, *Def. Distributed v. Grewal*, 971 F.3d 485, 488–89 (5th Cir. 2020) ("*Grewal II*"); *Def. Distributed v. Grewal*, 364 F. Supp. 3d 681, 685–86 (W.D. Tex. 2019) (Pitman, J.) ("*Grewal I*"), *rev'd and remanded*, 971 F.3d 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1736 (2021); *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211, 212–14 (5th Cir. 2017) ("*State Dept. III*") (Elrod, J., dissenting from denial of rehearing *en banc*); *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 454–56 (5th Cir. 2016) ("*State Dept. II*"); *id.* at 461–63 (Jones, J., dissenting); *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 686 (W.D. Tex. 2015) (Pitman, J.) ("*State Dept. I*"). This experience contrasts sharply with the New Jersey federal courts' studious avoidance of the substance of the case, whether legal or factual. *See Def. Distributed v. Att'y Gen. of New Jersey*, 972 F.3d 193, 196–97 (3d Cir. 2020). It would be a huge waste of both the parties' and the courts' resources to bring the New Jersey courts up to speed on these complex issues when Texas courts have already developed a detailed understanding of them.

The district court reached the opposite conclusion largely because it anticipates another personal jurisdiction battle on Plaintiffs' claim that Section 3(*l*)(2) amounts to an unconstitutional speech crime, a battle that would be avoided in New Jersey. ROA.2469–70. But this Court has already settled the issue.

In *Grewal II*, this Court held that Grewal's Rule 12 motion to dismiss for lack of personal jurisdiction should have been denied *in its entirety*. *See* 971 F.3d at 488. The Court rejected Grewal's jurisdictional arguments as to both his invocation of a common law nuisance tort *and* his attempt to enforce New Jersey's new speech crime against Plaintiffs. No claim-by-claim distinction was made.

The district court reads this Court's personal jurisdiction holding more narrowly to cover only the claims stemming from Grewal's cease-and-desist letter. ROA.2469–70. Although Plaintiffs had not formally pleaded their Section 3(*l*)(2) claims at the time the district court erroneously dismissed the case for lack of personal jurisdiction, Plaintiffs *had* by that time raised the speech crime issue in accordance with standard procedural rules. Namely, they did so by way of their motion for a preliminary injunction, which expressly indicated that it contained "facts occurring after the complaint's filing, which should be accounted for even if pleadings need to be amended later." ROA.1332 n.1. This tactic is a perfectly orthodox procedure to invoke, see Wright & Miller § 2949 & nn. 5-6, and when the Plaintiffs' motion for a preliminary injunction announced that they were doing so, no one objected. Indeed, in holding that it lacked personal jurisdiction over Grewal, the district court expressly recognized that "the instant action concern[ed]" Grewal's "criminal enforcement actions," such as "threatening to enforce a criminal law against Defense Distributed." 364 F. Supp. 3d at 686.

More importantly, when it reversed the district court's decision, this Court also expressly recognized that Plaintiffs' claims encompassed the "criminal sanctions" that Grewal threatened "at a live press conference." *Grewal II*, 971 F.3d at 489.[3]  Correspondingly, contrary to the district court's narrow reading of that opinion, this Court's analysis was *not* limited to the cease-and-desist letter.  Quite the opposite, the Court specifically cited Grewal's threat to enforce Section 3(*l*)(2) against Defense Distributed as a minimum contact supporting personal jurisdiction:

> Grewal's conduct *beyond sending the cease-and-desist* letter confirms his intent to crush Defense Distributed's operations and not simply limit the dissemination of digital files in New Jersey. Grewal's enforcement actions are selective. He has not targeted the many similarly-situated persons who publish Defense Distributed's files on the internet. Instead, he has focused solely on Defense Distributed.  Perhaps nowhere is this better illustrated than in Grewal's efforts to enjoin the national distribution of Defense Distributed's files by suing in Washington, far from his or the plaintiffs' home state. *Grewal has also threatened Defense Distributed's founder, Cody Wilson, by name, promising to "come after" "anyone who is contemplating making a printable gun" and "the next ghost gun company."* Together, these actions confirm Grewal's intent to force Defense Distributed to close shop.

*Id.* at 493 (emphasis added).  This Court later emphasized that its holding stemmed from both the cease-and-desist letter and the "other actions [Grewal] took that, together, demonstrate his intent to gut Defense Distributed's operations and restrict Texans' access to Defense Distributed's materials."  *Id.* at 496 n.10.

---

[3] The underlying materials confirm that Section 3(*l*)(2) provides the sole legal basis for these threats.  *See* Br. of Appellants, *Grewal II*, 2019 WL 6457013 (C.A.5), 9–10.

In short, Grewal "projected himself across state lines and asserted a pseudo-national executive authority" through a series of actions, including threats to enforce Section 3(*l*)(2) against Defense Distributed, designed to silence the Plaintiffs. *Id.* at 493. Through these actions, "Grewal has established sufficient minimum contacts with Texas to subject him[self] to the jurisdiction of Texas's courts." *Id.* at 490; *see also id.* at 488 ("Based on well-established principles of personal jurisdiction, we conclude that Grewal is subject to the jurisdiction of Texas courts."); *id.* at 497 ("[J]urisdiction over Grewal is proper."). Thus, even if Grewal attempts to challenge personal jurisdiction a second time, this Court's holding in *Grewal II*—and any clarification of that holding here—will make short work of that challenge.

Apart from the phantom jurisdictional battle it anticipates, the district court also concluded that a severance "would likely promote judicial economy" because the claims against the State Department stemmed from its violation of the Settlement Agreement while the claims against Grewal stemmed from his efforts to enforce New Jersey law. ROA.2468. As explained above, however, the core factual allegations are identical: both Defendants are attempting to use government power to silence the same speech by Plaintiffs. The cases against both Defendants thus contain substantial legal and factual overlap, and it would conserve judicial resources to address them all in one fell swoop.

The fact that Plaintiffs have *additional* claims against the State Department does not suggest otherwise. *See Guedry v. Marino*, <u>164 F.R.D. 181, 184</u> (E.D. La. 1995) (joinder does not "require every question of law or fact in the action be common among the parties," only that there "be at least one common question of law or fact") (citing 7 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 1653, at 387 (1986)). Plaintiffs, the State Department, and the courts will expend the same resources on those additional claims *regardless* of where the claims against Grewal are litigated, and Grewal himself need not expend *any* resources on claims not related to him. Accordingly, waste will only arise if the substantively identical constitutional claims against Grewal are severed from those against the State Department, forcing Plaintiffs and the federal courts to duplicate their efforts across two circuits.

### 2. The remaining Rule 21 factors disfavor a severance.

Beyond the "cardinal" issue of "judicial economy," courts evaluate four other factors in deciding a motion to sever: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; . . . (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Rolls Royce*, <u>775 F.3d at 680</u>–81 & n.40. Together, these factors also show that severance was improper here. *See McBee*, <u>2018 WL 2046303</u>, at *5.

38

*First*, to "arise out of the same transaction or occurrence," two claims need only bear a "logical relationship" to one another.  *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881–82 (5th Cir. 1998).  Claims are "logically related" if they "share an aggregate of operative facts."  *Id.* at 882.

Plaintiffs' claims against the State Department and Grewal plainly satisfy this test.  As outlined above, they all stem from the same "aggregate of operative facts": Defense Distributed's publication of information concerning 3D-printed firearms and Defendants' efforts to restrict those publications.  The only difference is the precise means the two Defendants have employed to accomplish their censorship—state law for Grewal and federal law for the State Department—a difference unlikely to affect the substantive analysis on the constitutional questions.

The contract claims against the State Department are also "logically related" to the claims against Grewal.  The impetus for the State Department's breach was Grewal's initiation of *Washington I*, through which he obtained an injunction nullifying the State Department's first attempt to comply with the Settlement Agreement.  ROA.1882–90, 1910–12.  This same conduct also provides the factual basis for Plaintiffs' tortious interference claim against Grewal.  *See* ROA.1882–83, 1932–33.  As such, both that claim and the breach of contract claim against the State Department require proof of the same breach by the State Department.  This makes them "logically related."  *See Deshotel*, 142 F.3d at 881–82.

Repeating the same error it made in connection with the "judicial economy" factor, the district court concluded that the claims did not arise from the same transaction or occurrence because the "claims against [Grewal] largely stem from the 2018 cease-and-desist letter, and other comments made by [Grewal]" whereas the claims against the State Department stem from the Settlement Agreement. ROA.2467. This is a distinction without a difference.

*Second*, for similar reasons, the claims against both Defendants "present some common questions of law or fact." *Rolls Royce*, 775 F.3d at 680 n.40. Given the extensive overlap between the legal and factual issues between the claims, this factor strongly disfavors severance.

The district court held that this factor favored a transfer only by misreading it, reasoning that the "common issues of fact and law" between the claims did not "council against severance" because, although "many of Plaintiffs' claims involve the legal question of whether Defense Distributed's actions are protected by the First Amendment, this is not the case for *all* of Plaintiffs' claims." ROA.2468 (emphasis in original). But this misstates the test. Only "some" of the claims need to overlap for this factor to disfavor severance. *Rolls Royce*, 775 F.3d at 680 n.40; *see also Guedry*, 164 F.R.D. at 184. That is the case here.

**Third**, "prejudice would [not] be avoided if [the] severance" is upheld.  *Rolls Royce*, 775 F.3d at 680 n.40.  On the contrary, the severance will *cause* prejudice by forcing Plaintiffs "to litigate their claims in two courts, half the world apart from each other, with not only the consequent added expense and inconvenience but also the possible detriment of inconsistent results."  *Id.* at 681 (quoting *Liaw Su Teng*, 743 F.2d at 1148–49).  Indeed, it is an abuse of discretion to compel Plaintiffs to litigate the same constitutional and factual issues in two separate forums where the substance is materially indistinguishable. *McBee*, 2018 WL 2046303, at *5.[4]

**Finally**, the last factor—"whether different witnesses and documentary proof are required for the separate claims," *Rolls Royce*, 775 F.3d at 680 n.40—is neutral.  On the one hand, the evidence regarding the precise form of the censorship will differ between the Defendants.  ROA.2468–69.  But on the other, the proof concerning the nature of Plaintiffs' speech and the harm from the Defendants' regulatory efforts will all stem from the same evidence Plaintiffs will supply, such as evidence on how their files work, the scientific, artistic, technical, and social value of those files, and the harms Plaintiffs are experiencing from Defendants' censorship.  The offsetting sources of proof from each side of the case render this last factor neutral.

---

[4] The district court's contrary holding turned once again on its erroneous assumption that the parties will expend substantial resources on a jurisdictional fight.  ROA.2470–71.

41

In sum, four of the five Rule 21 factors counsel against severance, and the last one is neutral. Under these circumstances, the district court abused its discretion in severing the claims against Grewal.

## II. The district court abused its discretion in transferring the case against Grewal to New Jersey.

Even if severance was proper, transfer was not. To obtain a transfer under Section 1404(a), the party seeking it "must show good cause" by "*clearly demonstrat[ing]* that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)) (emphasis added). This is a "heavy burden," *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007), meant to "reflect[] the appropriate deference to which the plaintiff's choice of venue is entitled," *Volkswagen*, 545 F.3d at 315.

In determining whether the moving party has demonstrated "good cause" for a transfer, the Court examines "the [eight] private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)." *Volkswagen*, 545 F.3d at 315 No single factor carries "dispositive weight," but if the balance between them shows that "the transferee venue is *not clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*; *see, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (burden satisfied where no factors weighed against transfer and three favored or strongly favored transfer).

42

Here, Grewal failed to demonstrate that New Jersey "is clearly more convenient" than Texas for resolving Plaintiffs' claims against him. *Volkswagen*, 545 F.3d at 315. Indeed, *none* of the private or public interest factors favor a transfer, and most of them cut the other way. As such, Plaintiffs' choice of venue "should be respected," and the district court's transfer order should be reversed. *Id.*

### A. The private interest factors favor Texas.

The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The district court held that the first and third of these factors were neutral while the second and fourth favored New Jersey. ROA.2474–76. The court was correct only with respect to the third factor. The rest favor Texas.

### 1. The key sources of proof are more easily accessible in Texas.

In assessing "the relative ease of access to sources of proof" across the two forums, "courts consider the location of documents and physical evidence" rather than witnesses. *Hammers v. Mayea-Chang*, 2019 WL 6728446, at *6 (E.D. Tex. Dec. 11, 2019) (citing *Volkswagen*, 545 F.3d at 316). Consistent with its overarching burden, the movant must "show that transfer will result in more convenient access to specifically-identified and material sources of proof" under this factor. *Id.* at *7.

A moving party cannot meet this subsidiary burden, however, "when it merely offers generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence." *Id.* Instead, it "must indicate with particularity the identity and format of the sources of proof," "explain the role of such proof at trial," and "show that the sources of proof are substantially noncumulative of other evidence which will be presented at trial." *Id.* at *8. If the movant fails to do so, it "will render this factor neutral." *Id.*[5]

On the other hand, if the *non-movant* demonstrates that sources of proof are more readily accessible in the initial forum of suit, this factor counsels against a transfer. *See, e.g.*, *Barton v. C. R. Bard, Inc.*, 2:19-CV-181-Z, 2020 WL 1809702, at *3 (N.D. Tex. Apr. 9, 2020); *Advanced Display Techs. of Tex., LLC v. AU Optronics Corp.*, 2012 WL 12839376, at *3 (E.D. Tex. Mar. 27, 2012); *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, CIV.A. 10-1682, 2011 WL 197897, at *4 (E.D. La. Jan. 20, 2011). And where a defendant moves to transfer venue, "some weight must still be given to [the] location of the plaintiff's documents." *Wsou Investments v. Microsoft*, 2021 WL 1298935, at *3 (W.D. Tex. Apr. 7, 2021).

Under these standards, the first private interest factor favors Texas. Although Plaintiffs, as non-movants, bore no burden to establish Texas as the more convenient

---

[5] Likewise, "where evidence is dispersed across venues, this private interest factor will be neutral." *Cooktek Induction Sys. v. I/O Controls Corp.*, 2016 WL 4095547, at *4 (E.D. Tex. Aug. 2, 2016).

forum, their complaint and preliminary injunction briefing demonstrate that the bulk of the documentary and electronic evidence relating to the information they published (and wish publish) is based in Texas. *See* ROA.1332–37, 1857, 1868.[6]

Grewal, by contrast, "did not specifically identify the type of documents or the format of their storage (e.g. electronic or physical)" as required to meet his burden under the first private interest factor. ROA.2475. The district court concluded from this that this factor was "neutral." *Id.* In doing so, however, it explicitly refused to afford any "weight" to the "location of [Plaintiffs'] documents" or evidence, *Wsou*, 2021 WL 1298935, at *3, on the ground that Plaintiffs' "decision to initiate a lawsuit in New Jersey against [Grewal] belies any assertion that they will suffer prejudice in presenting evidence there," ROA.2475. This was error.

The first private interest factor does not ask whether a transfer would "prejudice" the non-moving party but which forum provides easier access to sources of proof. *Volkswagen*, 545 F.3d at 315. On this record, the bulk of the specific proof identified below is located in Texas. Indeed, the district court merely assumed "that

---

[6] For example, "most of Defense Distributed's activities, including research, design, development, manufacturing, and publishing occurred in and around Austin," and "Defense Distributed also published the same computer files with digital firearms information at a brick-and-mortar public library in Austin, Texas by hosting the computer files in formats that patrons could access via computer workstations." ROA. 1857, 1868. The computer servers on which Defense Distributed hosts these files for publication to the internet are also located in Texas. ROA.139. Thus, even though it is not their responsibility to do so, Plaintiffs have well documented "the identity and format of the sources of proof," "explain[ed] the role of such proof at trial," "show[n] that the sources of proof are substantially noncumulative of other evidence which will be presented at trial." *Hammers*, 2019 WL 6728446, at *8; *see also* ROA.1333–37, 1862–71.

any documentation relevant to the preparation of the cease-and-desist letter and the enactment of § 2C:39-9(l)(2) are invariably located in New Jersey," with no evidence to support that assumption. ROA.2475.

In any case, the court's conclusion that a transfer will not prejudice Plaintiffs does not withstand scrutiny. On the contrary, if the case is transferred and Plaintiffs "are forced to litigate" nearly identical claims "in two courts, half the world apart from each other," they will "[m]anifestly" suffer prejudice, incurring double the cost on those claims and risking "inconsistent results." *Rolls Royce*, 75 F.3d at 680.

The flaw in the district court's reasoning is that it assumes Plaintiffs chose to sue in New Jersey for *convenience*, but this is not the case. Plaintiffs brought their New Jersey action only out of necessity after the district court held they *could not proceed* in the Western District of Texas. In the face of that ruling, Plaintiffs followed the very instructions the district court gave them, seeking relief in New Jersey while they appealed the personal jurisdiction decision in Texas. The New Jersey court quickly stayed the case, and Plaintiffs have been diligently pursuing all their claims in the more convenient forum ever since.

### 2. Compulsory process to secure the attendance of non-party witnesses is largely unnecessary.

The second private interest factor requires courts "to consider the availability of compulsory process to secure the attendance of witnesses, particularly *non-party witnesses* whose attendance may need to be secured by a court order." *Garrett v.*

*Hanson*, 429 F. Supp. 3d 311, 318 (E.D. Tex. 2019) (emphasis added).  In fact, "witnesses that are a party," "a party's officers," or in "an employment relationship with a party" are "not [even] considered" in the analysis of this factor because "party witnesses . . . can be presumed to willingly or voluntarily appear for the party."  . *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, 2011 WL 13224919, at *3 (E.D. Tex. Jan. 12, 2011).  In these circumstances, "it is unreasonable to need compulsory process because of the unwillingness of the witness to attend." *Id.*; *accord EEOC v. Faurecia Auto. Seating, LLC*, 2017 WL 4158624, at *4 (N.D. Miss. Sept. 19, 2017); *Transdata, Inc. v. Tri-County Elec. Coop., Inc.*, 2011 WL 13134895, at *3 (E.D. Tex. Aug. 18, 2011).

Thus, for this factor to favor a transfer, the moving party must first show a "need for compulsory process . . . to secure a witness" who is not party to the proceeding.  *Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*, 762 F. Supp. 2d 1023, 1030 (S.D. Tex. 2011); *see also Moore v. Unit Tex. Drilling, LLC*, 3:08-CV-2080-N, 2009 WL 10704741, at *3 (N.D. Tex. Nov. 17, 2009) ("[A] party seeking transfer must specifically identify unwilling witnesses.").

If it fails to do so, "the second factor weighs against transfer." *J2 Glob. Communications, Inc. v. Protus IP Sols.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008); *see also Levy v. City of Rio Grande City*, 2004 WL 2847273, at *4 (N.D.

Tex. Dec. 9, 2004) ("[A]vailability of process given less weight where party seeking transfer fail[s] to establish the need for unwilling witnesses to make its case.").

Below, Grewal did "not demonstrate[] any need for compulsory process in [New Jersey] to secure witnesses." *J2 Glob.*, 2008 WL 5378010, at *3. Instead, he conclusorily asserted that this factor favored a transfer simply because "Plaintiffs' claims against § 2C:39-9(l)(2) and their Commerce Clause claim turn on the meaning and intent of New Jersey state laws and on the intent of [Grewal's] cease-and-desist letter, and the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey." ROA.2013–14. This obscure reference to unidentified, *potential* non-party witnesses is not enough to tilt this factor in New Jersey's favor. At most, therefore, it is neutral.

### 3. Litigation in New Jersey would create significant practical problems that do not exist in Texas.

The final private interest factor serves as a catchall that accounts for "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. This factor largely turns on the same considerations of judicial economy that courts evaluate in the severance context. *See Transdata*, 2011 WL 13134895, at *2 (fourth factor addresses problems "that are rationally based on judicial economy"); *Gorgeous Gals, LLC v. Hey Gorgeous! Spay & Wellness LLC*, 2016 WL 6775445, at *3 (W.D. Tex. Nov. 15, 2016) ("Judicial economy is a paramount consideration when determining whether a transfer is in the

interest of justice" under this factor.) (quoting *In re Vistaprint Ltd*, 628 F.3d 1342, 1346 (Fed. Cir. 2010)).  And as in that context, the inefficiencies of a duplicative litigation in two separate forums "is a paramount consideration":

> The existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.  To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.

*Transdata*, 2011 WL 13134895, at *2 (quoting *In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)) (cleaned up).

Accordingly, this factor favors Texas for the same reason that interests in judicial economy counsel against severance.  Specifically, a transfer would create "multiple lawsuits involving the same issues," both legal and factual, regarding Plaintiffs' publication of information on 3D-printed firearms and the constitutionality of Defendants' respective efforts to censor those publications. *Transdata*, 2011 WL 13134895, at *2.  Litigation of these identical issues would lead "to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Id.*  And because Texas courts are far more familiar with the underlying facts and legal issues, Texas is the more efficient forum.

For its part, the district court repeated many of its prior errors in its analysis of the fourth private interest factor.  Specifically, the court found that this factor favored a transfer because (1) a "transfer to New Jersey would obviate the need to

adjudicate threshold jurisdictional issues," and (2) Plaintiffs chose "to file multiple lawsuits against [Grewal]" in different forums. ROA.2476. As explained, however, this Court has already resolved the "threshold jurisdictional issues" the district court cites, and Plaintiffs' initiation of a lawsuit in New Jersey eliminates neither the prejudice to Plaintiffs nor the waste of judicial resources that would result from a transfer. The district court was wrong, therefore, to conclude that "the fourth factor weighs in favor of transfer." ROA.2476.

## B. The public interest factors favor Texas.

The public interest factors include "(1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the governing law of the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Volkswagen*, 545 F.3d at 315. *Id.* The district court found that all but the first factor favored a transfer. ROA.2474. Not so. While the court was correct that the first factor is neutral, the latter three strongly favor Texas.

### 1. The local interest in having this litigation decided in Texas strongly weighs against transfer.

The second public interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue *and the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). Important considerations

50

include the location of the injury, witnesses, and the plaintiff's residence.  *See Volkswagen*, 545 F.3d at 317–18; *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 727 (W.D. Tex. 2013).  Indeed, "[t]he place of the alleged wrong is one of the most important factors in venue determinations."  *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016).

As this Court made clear in its personal jurisdiction ruling, the "place of the alleged wrong" here is primarily Texas.  Although Grewal initiated his tortious conduct from New Jersey, his "assertion of legal authority is much broader," deliberately extending beyond his home state into Texas:

> Grewal's letter had a chilling effect on the exercise of their First Amendment rights (among other constitutional and Texas law violations). That chilling effect, in turn, caused them to cease publication and reduced Texans' access to the materials the plaintiffs seek to publish. The statewide impact is not unlike that of the defamatory article at issue in *Calder*, which shaped Californians' view of the defamed actress.

*Grewal II*, 971 F.3d at 492, 495.  In short, Grewal's conduct has had "a potentially devastating impact on the plaintiffs—and, by extension, those who wished to benefit from the plaintiffs' activities, including Texas residents."  *Id.* at 495.  And Grewal "knew that the brunt of the injury would be felt by the plaintiffs in Texas."  *Id.* (brackets omitted).  This gives Austin a very "strong interest in this case." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005).

Beyond being the place of injury, Austin also has another important interest in this case.  Like in *Volkswagen*, one of the plaintiffs, Defense Distributed, resides in Austin, while "not one of the plaintiffs has ever lived in [New Jersey]." 545 F.3d at 317–18; *see also* ROA.1857.    Austin thus "has an interest in [Defense Distributed's] commercial success" as well, which Grewal is undermining via his censorship. *Healthpoint v. Derma Scis.*, 939 F. Supp. 2d 680, 693 (W.D. Tex. 2013).

The district court nevertheless held that this factor "weigh[ed] in favor of transfer" because New Jersey purportedly "has a strong interest in having Plaintiffs' claims relating to § 2C:39-9(l)(2), a New Jersey criminal statute, 'examined by local state or federal courts—courts that have expertise interpreting its laws.'" ROA.2472 (quoting *Grewal II*, 971 F.3d at 499 n.3 (Higginson, J., concurring)).  While this may be true when a state official seeks to enforce his state's laws *within its own territorial boundaries*, any interest he might have in "having [those] laws examined by local state or federal courts" is considerably diminished where, as here, he "has projected himself across state lines and asserted a pseudo-national executive authority" against the citizens of *other* states. *Grewal II*, 971 F.3d at 493.  At that point, the citizens of the target state have a much more pronounced interest in the interpretation and constitutionality of the aggressor state's laws, as the target's citizens have no legislative recourse to see the law repealed.  The courts are their only option.

For this reason, when an aggressor state like New Jersey reaches beyond its own boundaries, it forfeits any "benefit" to which it might otherwise be entitled from local "courts that have special expertise interpreting its laws." *Grewal II*, 971 F.3d at 499 n.3 (Higginson, J., concurring).  If Grewal wishes to limit interpretation of Section 3(*l*)(2) or its civil laws to New Jersey courts, he need only confine his enforcement efforts to New Jersey.

Lest there be any doubt that New Jersey's interest in this case pales in comparison to Texas's, the Court need look no further than Grewal's own conduct. After the Western District of Texas forced Plaintiffs to file suit in New Jersey, Grewal did not permit his local federal court to entertain the merits.  Instead, he immediately sought a stay "pending final resolution of the Texas action," *Def. Distributed et al. v. Grewal*, 3:19-cv-4753-AET-TBJ, Doc. 20 at 2 (D. N.J.), which the district court granted and the Third Circuit upheld.  *See Att'y Gen. of New Jersey*, 972 F.3d 193.  If New Jersey's interest in this case were truly as powerful Grewal contends, its chief law enforcement officer has a poor way of showing it.

### 2. Texas courts' familiarity with the case weighs strongly against transfer.

The third public interest factor "the familiarity of the forum with the law that will govern the case."  *Volkswagen*, 545 F.3d at 315.  Here, both potential venues have capable district courts with well-equipped benches.  But as discussed at length above, this Court and the district court—*unlike* the New Jersey courts—have already

examined the dense factual, procedural, and legal issues at hand, giving them a pronounced advantage on the "familiarity" front.

The district court held otherwise because "New Jersey courts have greater familiarity with [the state's] overall statutory framework regulating firearms and the public policies those laws promote and have been the primary fora for deciding legal challenges to New Jersey firearms laws." ROA.2472.

Here, however, New Jersey courts' familiarity with New Jersey law will not produce any meaningful efficiencies that would render New Jersey the better forum. Plaintiffs have not filed any New Jersey law claims, and the only statute they target—Section 3(*l*)(2)—unambiguously prohibits Plaintiffs' speech. As such, there is no need to interpret it under New Jersey law. Grewal's cease-and-desist letter, meanwhile, expressly directs Plaintiffs to "halt publication of the printable-gun computer files." ROA.57. The court need not be an expert in New Jersey law to see the unconstitutional ends Grewal has accomplished with it.[7]

The district court also discounted its own familiarity with the case because it has largely focused on jurisdiction, and Plaintiffs have filed more than just their First Amendment claims. ROA.2472. But the First Amendment claims constitute the heart of this case, and both this Court and the district court have analyzed the merits

---

[7] In any case, Texas courts familiarity with Plaintiffs' Texas-law claims would more than offset any efficiencies that might be gained from New Jersey courts' familiarity with New Jersey law. *See Healthpoint*, 939 F. Supp. 2d at 695; ROA.1932–34.

to some extent.  *See, e.g.*, *State Dep't II*, <u>838 F.3d at 468</u>–76 (Jones, J., dissenting); *State Dep't I*, <u>121 F. Supp. 3d at 695</u>; Appellants' Mot. for Prelim. Inj., Doc. No. 00515880396, at 9–17; <u>ROA.1341</u>–49.  Regardless, the number of First Amendment claims does not detract from Texas courts' intimate familiarity with the case's complex factual or procedural history.  It is this familiarity, *combined* with the courts' knowledge of the constitutional issues, that makes this factor favor Texas.

### 3.    The avoidance of conflict of laws weighs against transfer.

The last public interest factor seeks to avoid "unnecessary problems of conflict of laws [or in] the application of foreign law."  *Volkswagen*, <u>545 F.3d at 315</u>.  There are no risks of such a conflict here, however.  Plaintiffs have brought primarily federal law claims; state law will only be relevant to their contract-based claims, which Texas law will plainly govern.  As noted, moreover, the "application of [the] foreign law" of New Jersey will be unnecessary in this case because the statute is unambiguous, so the district court's fears that Texas and New Jersey courts will construe Section 3(*l*)(2) differently is misplaced.  <u>ROA.2473</u>.  And in the unlikely event that a conflict *does* arise, New Jersey courts' interpretation will obviously control in New Jersey.  Thus, as long as Grewal keeps his enforcement efforts to his own state, any conflict in New Jersey law will make no difference.

On the other hand, transferring the claims against New Jersey creates a risk of a federal circuit split.  As articulated above regarding severance, the core issues to

be litigated in this case are the same across Defendants. With two sets of federal courts in two different circuits addressing the same, unsettled federal law issues, the potential for a conflict in federal law increases dramatically. Should such a conflict emerge, Plaintiffs' constitutional rights would be left out in the cold, despite their success in one of the circuits. The risk of such a conflict pushes this factor in favor of Texas.

## Conclusion

The Court should reverse the district court's decision to sever the case against Grewal and transfer it to New Jersey, render a judgment denying the motion, and return the case to the Western District of Texas for the resumption of proceedings on the merits.

June 17, 2021

Clark Hill PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Respectfully submitted,

Beck Redden LLP
*/s/ Chad Flores*
Chad Flores
Daniel Nightingale
Hannah Roblyer
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

Attorneys for Plaintiffs – Appellants
Defense Distributed and Second Amendment Foundation, Inc.

## Certificate of Service

On , 2021, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system to the following:

Alexander Hardiman
alexander.hardiman@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
31 W. 52nd Street
New York, NY 10019

Ronald Casey Low
casey.low@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
401 Congress Avenue
Austin, TX 78701

Angela Cai
angela.cai@njoag.gov
New Jersey Attorney General's Office
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, NJ 08625

/s/ *Chad Flores*
Chad Flores

## CERTIFICATE OF COMPLIANCE

This filing complies with the type-volume limitation of <u>Federal Rule of Appellate Procedure 27</u> because it contains 12,828 not-exempted words.

This filing complies with the typeface and typestyle requirements of <u>Federal Rule of Appellate Procedure 32</u> and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

/s/ *Chad Flores*
Chad Flores

# EXHIBIT 4

No. 21-50327

==========================================

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————————

DEFENSE DISTRIBUTED; SECOND AMENDMENT
FOUNDATION, INCORPORATED,
*Plaintiffs-Appellants*,

v.

ANDREW J. BRUCK, ACTING ATTORNEY
GENERAL OF NEW JERSEY,
*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-cv-637

———————————————

## BRIEF OF APPELLEE

———————————————

ANDREW J. BRUCK
*Acting Attorney General of New Jersey*
JEREMY M. FEIGENBAUM
*State Solicitor*
ANGELA CAI
*Deputy State Solicitor*
MAYUR P. SAXENA
*Assistant Attorney General*
ERIN M. HODGE
JOHN T. PASSANTE
TIM SHEEHAN
*Deputy Attorneys General*
New Jersey Attorney General's Office
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
*Attorneys for Appellee*

# **TABLE OF CONTENTS**

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

JURISDICTIONAL STATEMENT ........................................................................ 1

QUESTIONS PRESENTED .................................................................................... 1

STATEMENT OF FACTS AND OF THE CASE ................................................. 2

SUMMARY OF ARGUMENT ............................................................................... 7

ARGUMENT ............................................................................................................ 9

I.      This Court Lacks Jurisdiction To Review The
District Court's Order ............................................................................. 9

        A.  This Court Lacks Appellate Jurisdiction ...................................... 9

        B.  This Court Lacks Authority To Issue Mandamus ....................... 12

              1.  *This Court Lacks Authority To Issue Orders Binding A Lawsuit
That Is Currently Before An Out-Of Circuit Court* ................ 12

              2.  *Appellants Cannot Obtain Mandamus Because They Have
Other Adequate Means Of Seeking Relief* .............................. 20

              3.  *Appellants Have Not Properly Petitioned For Mandamus* ..... 23

II.     The District Court's Severance-And-Transfer Order Was Not A Clear
Abuse Of Discretion ............................................................................... 25

        A.  The District Court Did Not Clearly Abuse Its
Discretion In Finding Judicial Efficiency Supported
Its Severance-And-Transfer Order .............................................. 26

1. *The Order Below Promotes Judicial Efficiency Because Further Litigation On Jurisdictional Issues Would Only Exist In Texas* .............................................................26

2. *The Order Below Promotes Judicial Efficiency In Resolving The Merits Of This Case* ..........................................................32

B.  The District Court Did Not Clearly Abuse Its Discretion In Finding The Remaining Factors Favored Severance ..................................36

C.  The District Court Did Not Clearly Abuse Its Discretion In Finding The Remaining Factors Favored Transfer To The District of New Jersey ................................................................41

1. *The Public Interest Factors Favor Transfer* ...........................41

2. *The Private Interest Factors Also Favor Transfer* .................46

D.  The Attorney General Is Not A Necessary Party .........................47

CONCLUSION .................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Agostini v. Piper Aircraft Corp.*,
    729 F.3d 350 (3d Cir. 2013) ................................................................14

*Alstom Caribe, Inc. v. George P. Reintjes Co.*,
    484 F.3d 106 (1st Cir. 2007).................................................................14

*Arnold v. Garlock*,
    278 F.3d 426 (5th Cir. 2001) ...............................................................14

*Avoyelles Sportsmen's League v. Marsh*,
    715 F.2d 897 (5th Cir. 1983) ...............................................................15

*Birmingham Fire Ins. Co. of Pa. v. Winegardner & Hammons, Inc.*,
    714 F.2d 548 (5th Cir. 1983) ...............................................................37

*Boone v. General Motors Acceptance Corp.*,
    682 F.2d 552 (5th Cir. 1982) ...............................................................51

*Brinar v. Williamson*,
    245 F.3d 515 (5th Cir. 2001) ...............................................................10

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*,
    1 F.4th 346 (5th Cir. 2021) ..................................................................30

*Butler v. Denka Performance Elastomer*,
    806 F. App'x 271 (5th Cir. 2020) .........................................................15

*Cain v. Graf*,
    161 F.3d 17, 1998 WL 654987 (10th Cir. 1998)..................................22

*Celanese Corp. v. Martin K. Eby Constr. Co.*,
    620 F.3d 529 (5th Cir. 2010) ........................................................ 44, 48

*Cheney v. U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004) ...................................................................................... 20, 25

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
   928 F.2d 1509 (10th Cir. 1991) ...........................................................................13

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999).............................................................................................19

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*,
   102 F.3d 677 (2d Cir. 1996) ...............................................................................49

*Davis Co. v. Emerald Casino, Inc.*,
   268 F.3d 477 (7th Cir. 2001) ..............................................................................49

*Defense Distributed v. Att'y Gen. of N.J.*,
   972 F.3d 193 (3d Cir. 2020) ...................................................................... 3, 35-36

*Defense Distributed v. Grewal*,
   971 F.3d 485 (5th Cir. 2020) ...................................................................... *passim*

*Drabik v. Murphy*,
   246 F.2d 408 (2d Cir. 1957) ..................................................................... 14, 15, 19

*EEOC v. Neches Butane Prod. Co.*,
   704 F.2d 144 (5th Cir. 1983) ..............................................................................24

*Ellis v. Barr*,
   837 F. App'x 313 (5th Cir. 2021) .................................................................... 9, 10

*Erly Industries v. M/V CHADA NAREE*,
   226 F.3d 641, 2000 WL 1029002 (5th Cir. 2000)...............................................19

*Fed. Ins. Co. v. Singing River Health Sys.*,
   850 F.3d 187 (5th Cir. 2017) ..............................................................................49

*FTC v. Dean Foods Co.*,
   384 U.S. 597 (1966).............................................................................................19

*Gaffney v. Riverboat Servs. of Ind., Inc.*,
    451 F.3d 424 (7th Cir. 2006) ................................................................18

*Garber v. Randell*,
    477 F.2d 711 (2d Cir. 1973) .................................................................11

*Gulf Research & Dev. v. Harrison*,
    185 F.2d 457 (9th Cir. 1950) ................................................................22

*Hileman v. City of Dallas, Tex.*,
    115 F.3d 352 (5th Cir. 1997) ................................................................48

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
    549 F.2d 1006 (5th Cir. 1977) ..............................................................16

*In re al-Nashiri*,
    791 F.3d 71 (D.C. Cir. 2015) ................................................................21

*In re Cty. of Orange*,
    262 F.3d 1014 (9th Cir. 2001) ..............................................................49

*In re Dalton*,
    733 F.2d 710 (10th Cir. 1984) ..............................................................22

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
    888 F.3d 753 (5th Cir. 2018) ................................................................30

*In re Gibson*,
    423 F. App'x 385 (5th Cir. 2011) .........................................................23

*In re Lieb*,
    915 F.2d 180 (5th Cir. 1990) ................................................................10

*In re Red Barn Motors, Inc.*,
    794 F.3d 481 (5th Cir. 2015) ........................................................ *passim*

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ........................................................ *passim*

*In re Sepulvado*,
    707 F.3d 550 (5th Cir. 2013) ............................................................11

*In re Southwest Mobile Homes, Inc.*,
    317 F.2d 65 (5th Cir. 1963) .............................................................13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................... *passim*

*In re Willy*,
    831 F.2d 545 (5th Cir. 1987) .............................................................20

*Krinsk v. SunTrust Banks, Inc.*,
    654 F.3d 1194 (11th Cir. 2011) ........................................................31

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979) ................................................................... 42-43

*Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*,
    178 F.2d 866 (2d Cir. 1950) .............................................................22

*Mobil Oil Exploration Co. v. FERC*,
    814 F.2d 998 (5th Cir. 1987) .............................................................16

*Mullins v. TestAmerica, Inc.*,
    564 F.3d 386 (5th Cir. 2009) ............................................................30

*Mut. Fire Ins. v. Booth*,
    24 F.3d 240 (5th Cir. 1994) .............................................................24

*Nascone v. Spudnuts, Inc.*,
    735 F.2d 763 (3d Cir. 1984) .............................................................22

*Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*,
    756 F.3d 825 (5th Cir. 2014) ............................................................36

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
    473 U.S. 1301 (1985) .................................................................. 19, 20

*Ormet Primary Aluminum Corp. v. Ballast Tech., Inc.*,
  436 F. App'x 297 (5th Cir. 2011) ...........................................................37

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)................................................................................33

*Persyn v. United States*,
  935 F.2d 69 (5th Cir. 1991) ................................................ 8, 9, 10, 22

*Pulitzer-Polster v. Pulitzer*,
  784 F.2d 1305 (5th Cir. 1986) .............................................................51

*Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*,
  755 F.2d 1453 (11th Cir. 1985) ...........................................................37

*Roche v. Evaporated Milk Ass'n*,
  319 U.S. 21 (1943)................................................................................21

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964)..............................................................................20

*Seiferth v. Helicopteros Atuneros*,
  472 F.3d 266 (5th Cir. 2006) ...............................................................27

*Shugart v. Hawk*,
  39 F.3d 320, 1994 WL 612547 (5th Cir. 1994)...................................22

*SongByrd, Inc. v. Estate of Grossman*,
  206 F.3d 172 (2d Cir. 2000) ................................................................21

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................19

*Stroman Realty v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ...................................................... *passim*

*United States v. Henderson*,
  915 F.3d 1127 (7th Cir. 2019) .............................................................24

*United States v. Hitchmon*,
  602 F.2d 689 (5th Cir. 1979) ...............................................................15

*United States v. O'Neil*,
  709 F.2d 361 (5th Cir. 1983) ...............................................................18

*Verzani v. Costco Wholesale Corp.*,
  387 F. App'x 50 (2d Cir. 2010) ............................................................11

*Washington v. U.S. Dep't of State*,
  318 F. Supp. 3d 1247 (W.D. Wash. 2018) ...........................................38

*West Gulf Mar. Ass'n v. ILA Deep Sea Local*,
  751 F.2d 721 (5th Cir. 1985) ...............................................................16

*Will v. United States*,
  389 U.S. 90 (1967) ...............................................................................25

*Williams v. Reeves*,
  981 F.3d 437 (5th Cir. 2020) ...............................................................33

## Statutes

28 U.S.C. § 1291 .....................................................................................9

28 U.S.C. § 1292 ............................................................................... 7, 10

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1404 ........................................................................... *passim*

28 U.S.C. § 2244 ...................................................................................11

N.J. Stat. Ann. § 2C:39-9(*l*)(2) ....................................................... *passim*

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 .......................................31

## Other Authorities

15 Charles A. Wright & Arthur R. Miller et. al., Fed. Prac. & Proc.: Jurisdiction and Related Matters §§ 3914.12, 3855 (4th ed. 2021) ............................ 11, 17, 21

## Regulations

22 C.F.R. § 120.10 ............................................................................................... 39

22 C.F.R. § 121.1 ................................................................................................. 39

## Rules

Fed. R. App. P. 21 ............................................................................................... 24

Fed. R. App. P. 43 ................................................................................................. 1

Fed. R. Civ. P. 19 .......................................................................................... 47, 48

N.J. Court Rule 2:12A-1 .................................................................................... 45

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not oppose oral argument in this case to the extent it aids the Court's decisional process.

## JURISDICTIONAL STATEMENT

Appellants seek to appeal from an interlocutory order of the Western District of Texas severing and transferring claims against the New Jersey Attorney General[1] to the District of New Jersey. The district court had jurisdiction pursuant to 28 U.S.C. § 1331. As set forth below, this Court lacks jurisdiction over this appeal and over Appellants' May 28, 2021 motion for injunction pending appeal.

## QUESTIONS PRESENTED

I.      Whether this Court has jurisdiction over a district court's interlocutory and effectuated order transferring claims to an out-of-circuit district court.

II.     Whether the district court clearly abused its discretion in severing the claims against the New Jersey Attorney General from Appellants' claims against the U.S. State Department and transferring them to New Jersey.

---

[1] On July 17, 2021, Andrew J. Bruck became Acting Attorney General of New Jersey. Consequently, his name was substituted for Gurbir S. Grewal in the caption. Fed. R. App. P. 43(c)(2).

## STATEMENT OF FACTS AND OF THE CASE

In 2018, Defense Distributed, a Texas-based company that operates a website available in all 50 States, announced plans to disseminate computer files online that would allow any individual with access to a 3D printer to produce their own firearms. ROA.140-41. Its plans would enable individuals to directly print weapons, even if they could not pass a background check. *See id.* And it would allow them to make firearms that could not be traced by law enforcement. *Id.* In response, on July 26, 2018, the New Jersey Attorney General sent Defense Distributed a cease-and-desist letter, warning that dissemination of these files for use by New Jersey residents would violate his State's "public nuisance and negligence law." ROA.189.

Days later, Appellants initiated this lawsuit challenging the cease-and-desist letter. ROA.129. Appellants later filed a First Amended Complaint, ROA.134, and a motion for a preliminary injunction, ROA.355. On January 30, 2019, the district court dismissed that complaint for lack of personal jurisdiction and dismissed the preliminary injunction request as moot. ROA.1748.

On February 5, 2019, Appellants—along with other plaintiffs—filed a new complaint against the Attorney General in the District of New Jersey. No. 3:19-cv-4753, Dkt. 1 (D.N.J.). In their operative Complaint, Appellants challenged both the cease-and-desist letter and a subsequent criminal statute enacted in November 2018, N.J. Stat. Ann. § 2C:39-9($l$)(2), which prohibits the distribution of certain code

capable of producing firearms using a three-dimensional printer "to a person in New Jersey" who is not a licensed firearms manufacturer. No. 3:19-cv-4753, Dkt. 17 (D.N.J. Feb. 20, 2019) ("NJ Complaint"). The NJ Complaint specifically stated that the District of New Jersey "constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claim occurred here." *Id.* ¶ 26. On the sole basis that Appellants first filed the claims in Texas and were still litigating there, the New Jersey court stayed this second case. No. 3:19-cv-4753, Dkt. 26 (D.N.J. Mar. 7, 2019), *appeal dismissed*, *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193 (3d Cir. 2020).

Meanwhile, this Court reviewed the dismissal of the Texas complaint and found Appellants had sufficiently alleged personal jurisdiction as to their claims involving the cease-and-desist letter. *See Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020). After issuance of the mandate, Appellants did not reinitiate any request for preliminary relief against the New Jersey Attorney General in district court. Instead, in November 2020, two months after the mandate issued, Appellants filed a Second Amended Complaint. ROA.1853 ("Texas SAC"). The Texas SAC pursues claims against Section 2C:39-9(*l*)(2) for the first time in Texas; this statute was not mentioned in either prior version of the Texas complaint or in this Court's prior opinion in this case. *See id.* ¶¶ 141-61. The claims alleged in the Texas SAC against the New Jersey Attorney General were largely identical to those alleged in

the NJ Complaint. The Texas SAC also added claims against U.S. State Department ("USDOS") officials for the first time, both alleging breach of a 2018 settlement agreement, *see id.* ¶¶ 95-126, and asserting APA violations and constitutional claims involving then-existing federal regulations, *see id.* ¶¶ 184-215, 225-54.

The New Jersey Attorney General moved to sever and transfer claims against him to New Jersey, where Appellants' parallel action against him was still pending. ROA.1999. USDOS opposed, and Appellants largely relied on that opposition. ROA.2073, 2095. On April 19, 2021, the district court granted the motion, severing all the claims against the Attorney General from the claims against USDOS and transferring them under 28 U.S.C. § 1404(a). ROA.2461. The court found that severance-and-transfer will "save substantial judicial resources" because the claims are not intertwined in a meaningful way and because no other threshold jurisdictional issues would need to be decided in the District of New Jersey—allowing Appellants to seek immediate injunctive relief in that court. ROA.2466-71.

The next day, April 20, 2021, the case was transferred and docketed as Case No. 3:21-cv-9867 (D.N.J.). Appellants filed a notice of appeal, but did not move to stay the transfer. ROA.2478. The District of New Jersey subsequently granted the applications of Appellants' attorneys to appear *pro hac vice* in the case. No. 3:21-cv-9867, Dkt. 155 (D.N.J. May 21, 2021). On June 11, 2021, the District of New Jersey granted the New Jersey Attorney General's unopposed motion to consolidate

the case with Appellants' already-pending New Jersey action. No. 3:21-cv-9867, Dkt. 159 (D.N.J.). Appellants did not oppose the motion to consolidate, did not move for a stay, and did not move for a retransfer in the District of New Jersey.

On May 28, 2021, Appellants moved for an injunction pending appeal in this Court, relief they never sought in the district courts. The Attorney General opposed, noting this Court lacks jurisdiction. *See* Br. In Opp. To Inj. Pending Appeal at 7-9. In response, Appellants filed a purported "Notice of Mandamus" in the district court on June 21, Dkt. 163, but never filed a mandamus petition under Rule 21. On June 23, this Court *sua sponte* issued an administrative order purporting to stay the district court's April 19 transfer order. Judge Higginson dissented.[2]

Since then, Appellants' lawsuit against USDOS has changed in material ways, because jurisdiction over the code related to 3D printable firearms was transferred from USDOS to the Commerce Department. Those rules, although issued in January 2020, became effective May 26, 2021. *See* 86 Fed. Reg. 29,189-90, 29,196 (June 1, 2021). Appellants have not amended their complaint to assert any claims against the Commerce regulations; instead, they withdrew the preliminary injunction motion "in light of materially changed circumstances." Dkt. 166. USDOS has filed a motion to

---

[2] In a July 1, 2021 order, the District of New Jersey denied the Attorney General's request for a status conference, stating a conference was "unnecessary" in light of this Court's June 23 order. No. 19-4753, Dkt. 46. But the district court did not stay the case, which remains consolidated with the prior New Jersey action.

dismiss Appellants' claims for prospective relief as moot, and to transfer Appellants' claims for money damages to the Court of Federal Claims or dismiss them. Dkt. 162. Appellants are litigating those issues, and have urged the district court to "require evidentiary development" of related "questions of fact." Dkt. 168, at 20.

# SUMMARY OF ARGUMENT

I.        This Court lacks jurisdiction to review the district court's interlocutory order severing and transferring claims to the District of New Jersey.

A.        This Court lacks appellate jurisdiction over the order severing and transferring Appellants' claims against the New Jersey Attorney General because that order is not a final, appealable decision, nor is it an appealable interlocutory order under either 28 U.S.C. § 1292(b) or the collateral order doctrine. *See, e.g.*, *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014). The only possible means of review would thus be via mandamus.

B.        Mandamus relief is unavailable, however, for three independent reasons. *First*, this Court lacks authority to issue mandamus in this case. The transfer to the District of New Jersey deprived this Court of jurisdiction, as this Court has no power to issue orders binding the transferee court. *See In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015). That is especially so where, as here, the transferee court has acted in this case. This Court's June 23, 2021 administrative stay does not change that fact, as the transfer had already been effectuated, immediately removing the case from this Court's jurisdiction. *Second*, Appellants cannot meet the threshold requirements for mandamus because they have other adequate means to attain the relief they seek; they can simply move the District of New Jersey to retransfer the case to the Western District of Texas. *See Persyn v. United States*, 935 F.2d 69, 72

(5th Cir. 1991). *Finally*, Appellants did not file the mandamus petition required by Rule 21 of the Federal Rules of Appellate Procedure.

II.     On the merits, the district court did not clearly abuse its discretion in severing and transferring the claims against the New Jersey Attorney General.

A.     The district court did not clearly abuse its discretion in finding that its severance-and-transfer order allows for more efficient judicial resolution of Appellants' claims. For one, severing and transferring the claims against the New Jersey Attorney General eliminates thorny threshold jurisdictional issues that exist only if this case were to remain in Texas, including whether there is jurisdiction for new claims against a New Jersey criminal statute. For another, the order allows for more efficient resolution of the merits by ensuring a single court can resolve both lawsuits Appellants filed to enjoin the same state statute.

B.     The remaining factors support severance. As the district court determined, Appellants' separate suits against the New Jersey Attorney General and USDOS do not arise out of the same transaction or occurrence; different witnesses and documentary proof are required; and the legal challenges to the federal and state laws differ. Moreover, the claims against USDOS are likely moot.

C.     The remaining factors likewise support transfer. New Jersey has a strong interest in having Appellants' claims relating to its criminal laws examined by local state or federal courts—courts that have expertise in interpreting them. That

is why no party has identified a single *Ex Parte Young* suit against a state defendant that was adjudicated outside of that official's state. Moreover, transfer eliminates the risk of any conflict between this Court and the Third Circuit.

        D.    Appellants' contrary claim that the New Jersey Attorney General is a necessary party to its litigation against USDOS is meritless. First, Appellants waived this claim by never raising it below. Second, Appellants are unable to assert the interests of an allegedly necessary third party. Finally, Appellants identify no interest that would actually be undermined by the Attorney General's absence.

## ARGUMENT

## I.    This Court Lacks Jurisdiction To Review The District Court's Order.

Appellants purport to identify two bases for this Court to grant relief: appellate jurisdiction and mandamus jurisdiction. Neither holds up.

    A.    <u>This Court Lacks Appellate Jurisdiction</u>.

The transfer order is not reviewable on direct appeal because it is not a final order and none of the narrow exceptions to the final-order doctrine apply.

*First*, as this Court has repeatedly held, a severance-and-transfer order is not a final decision under 28 U.S.C. § 1291. *See, e.g.*, *In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014); *Persyn v. United States*, 935 F.2d 69, 72 (5th Cir. 1991); *Ellis v. Barr*, 837 F. App'x 313, 314 (5th Cir. 2021) ("[W]e lack jurisdiction over Ellis's appeal of the district court's transfer and severance orders, as those orders are

neither final, appealable decisions nor qualifying interlocutory orders nor reviewable collateral orders."); *see also* 15 Charles A. Wright & Arthur R. Miller et. al., Fed. Prac. & Proc.: Jurisdiction and Related Matters §§ 3914.12, 3855 (4th ed. 2021).

*Second*, such orders are not appealable under 28 U.S.C. § 1292(b). Although that provision allows a narrow avenue for discretionary appeals if the district court certifies certain requirements, "interlocutory review of transfer orders under 28 U.S.C. § 1292(b) is unavailable." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc); *see also Rolls Royce*, 775 F.3d at 676 (confirming "circuit precedent forecloses reviews of transfer orders under that statute" due to "[t]he Congressional policy against piecemeal appeals"); *Ellis*, 837 F. App'x at 314.

*Third*, Appellants' bald assertion that severance-and-transfer orders could be reviewed under the collateral order doctrine, Appellants' Br. 1, is directly contrary to precedent. *See Rolls Royce*, 775 F.3d at 676 ("[T]ransfer orders do not fall within the scope of [the collateral order] doctrine"); *In re Lieb*, 915 F.2d 180, 185 (5th Cir. 1990). This Court has held that an order is appealable under this doctrine only "if it is conclusive, resolves important questions that are separate from the merits, and is effectively unreviewable on appeal from final judgment." *Brinar v. Williamson*, 245 F.3d 515, 517 (5th Cir. 2001). And this Court has ruled that Section 1404(a) transfer orders do not suffice, finding that they are not "effectively unreviewable" because they can be reviewed by the transferee court. *See Persyn*, 935 F.2d at 73; Wright &

10

Miller § 3855 (agreeing that the "transferee may order retransfer if it concludes that the transferor's decision was clearly erroneous").

Against all this, Appellants' brief discussion of appellate jurisdiction musters only two inapposite cases. *See* Appellants' Br. 1-2. First, *In re Sepulvado*, 707 F.3d 550 (5th Cir. 2013), involved an inapposite type of "transfer." In *Sepulvado*, the Western District of Louisiana "transferred" a habeas petition *to the court of appeals* under 28 U.S.C. § 2244, which bars successive petitions unless authorized by the court of appeals. Contrary to Appellants' assertion, that opinion never mentions the collateral-order doctrine; instead, this Court enjoys jurisdiction over that "transfer" because it *is* the transferee court. Second, Appellant briefly mentions an out-of-circuit decision from 1973, *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973), to argue that a severance order is immediately appealable. But *Garber* involved unique circumstances that denied "a party his due process right to prosecute his own separate and distinct claims or defenses," *id.* at 716, and beyond those confines, the Second Circuit agrees a "district court's severance order … is not an appealable final judgment." *Verzani v. Costco Wholesale Corp.*, 387 F. App'x 50, 52 (2d Cir. 2010). And more importantly, *this* Court has rejected appellate jurisdiction for such claims, reasoning that where a court resolves a "joint transfer and severance motion" (as it did here), a collateral appeal is not available and "there are no other means for review of the district court's order but through mandamus." *Rolls Royce*, 775 F.3d at 677.

11

B.    <u>This Court Lacks Authority To Issue Mandamus</u>.

This Court also cannot issue a writ of mandamus undoing the district court's order for three reasons. First, the transfer to the District of New Jersey removed the case from this Court's jurisdiction. Second, mandamus is inappropriate where (as here) other remedies exist. Finally, Appellants did not follow the requirements for seeking mandamus, which this Court has strictly applied in the past.

1.    *This Court Lacks Authority To Issue Orders Binding A Lawsuit That Is Currently Before An Out-Of-Circuit Court.*

The first problem is that this Court lacks jurisdiction. This Court has found a Section 1404(a) "transfer to another circuit removes the case from our jurisdiction, and numerous circuits have stated that rule plainly." *Red Barn*, 794 F.3d at 484 (collecting cases). In other words, since Appellants did not move to stay the transfer order and the case is now in the District of New Jersey, the transferor court (the Western District of Texas) and its circuit (this Court) no longer maintain jurisdiction, and this Court cannot order the District of New Jersey to send a case back. In two rounds of briefing, Appellants adduced no precedents to the contrary, and nothing in this Court's June 23, 2021 administrative stay order changes this analysis.

Begin with this Court's clear prohibition on exercising mandamus jurisdiction to undo an effectuated transfer to an out-of-circuit court. This Court confronted this exact question in *Red Barn*, in which a plaintiff sought mandamus after a Louisiana

district court transferred the case to a district court in the Seventh Circuit. *Red Barn* found that because a transferor district court "lost its jurisdiction" after the transfer was effectuated, that district court (here the Western District of Texas) "is no longer capable of making a final decision that would be appealed to [this] Court." 794 F.3d at 484. As such, "[t]his is not just a case in which no appeal to the Fifth Circuit has been perfected; instead, it is a proceeding in which no appeal to this court can be taken, short of the purely speculative possibility that the [New Jersey] court transfers it back." *Id.; see also id.* (noting power to issue "mandamus … does not itself confer jurisdiction. We can issue a writ of mandamus only if we have jurisdiction."). It follows that this Court "lack[s] jurisdiction to order the transferee district court to return the case." *Id.; see also id.* (describing this rule as "uncontroversial"); *In re Southwest Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963) (agreeing that when "transfer was complete," the transferor court "lost jurisdiction," and it is "extremely doubtful whether this Court now has the power to compel the District Judge to vacate his order transferring the action"). Not only that, but a rule allowing "mandamus to undo a completed inter-circuit transfer risks provok[ing] a possible conflict between the Circuits." *Red Barn*, 794 F.3d at 484.

Any contrary holding would directly split with the conclusion of other courts of appeals. *See id.* at 484 n.4 (collecting cases from majority of circuits); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516-17 (10th Cir. 1991)

13

("Once the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer."). Judge Learned Hand's decision in *Drabik v. Murphy*, 246 F.2d 408 (2d Cir. 1957), is instructive. There, a party filed for reconsideration in the Southern District of New York after that court had transferred a case to Louisiana. *Id.* at 409. But the Second Circuit found reconsideration unavailable: the transferor "already lost all jurisdiction over the action because the transfer was then complete." *Id.* That "service of the plaintiff's motion for reargument was [made] before the papers had been lodged with the clerk of the [Louisiana district court] did not stay the transfer, or preserve the jurisdiction" of the transferor district court. *Id.* Because any circuit's power is territorially limited to those districts within its borders, it likewise loses jurisdiction when a case is transferred beyond its domain.[3]

That proves fatal to claims of jurisdiction here. The April 20, 2021 transfer and docketing of this case in the District of New Jersey resulted in a loss of the

---

[3] The same principle applies in other commonplace scenarios, such as when Rule 67 settlement funds "have been physically transferred" to an out-of-circuit transferee court. In those circumstances, courts of appeals "have no authority to order a district court in another circuit to take a specific action (say, returning the funds)." *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 117 (1st Cir. 2007). The same is true for certain remand orders to state courts: "[a]t the moment of mailing—the jurisdictional event—the remand order became unreviewable" by the district court and the circuit. *Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 356 (3d Cir. 2013); *Arnold v. Garlock*, 278 F.3d 426, 438 (5th Cir. 2001) ("Once [a] remand order is certified and mailed … the matter remanded is removed from federal jurisdiction.").

14

transferor court's and this Court's jurisdiction. Although Appellants filed a notice of appeal—much like the speedy reconsideration motion in *Drabik*—Appellants never sought to stay the transfer. *See* Appellants' Reply Br. in Support of Mot. for Inj. Pending Appeal at 11 ("This Court is not being asked to enjoin anything about the interlocutory transfer or severance rulings below."). And filing a "notice of appeal from a nonappealable order does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal by either the district court or the appellate court." *United States v. Hitchmon*, 602 F.2d 689, 691 (5th Cir. 1979) (en banc); *see also Butler v. Denka Performance Elastomer*, 806 F. App'x 271, 275 n.5 (5th Cir. 2020) ("[G]enerally, filing a notice of appeal strips the district court of jurisdiction, but this rule is inoperative for nonappealable orders."); *Avoyelles Sportsmen's League v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983) (even where appeal is proper, finding that the district court still has residual jurisdiction to "enforce its judgment so long as the judgment has not been stayed"). The effectuation of the transfer order thus deprived this Court of jurisdiction immediately.

Indeed, this is an especially strong example of why mandamus jurisdiction is foreclosed in such circumstances: the District of New Jersey has already exercised jurisdiction over this case. After the transfer was effectuated, on June 11, 2021, the District of New Jersey consolidated the transferred case with Appellants' pending

substantially identical case. *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) (recognizing an order granting consolidation involves the exercise of jurisdiction). Thus, any mandamus effort by this Court to seek return of the case to Texas would require the New Jersey court to vacate its own consolidation order—a decision that lies solely within the domain of the Third Circuit, not this Court. That would create irreconcilable conflict with another court. *See Mobil Oil Exploration Co. v. FERC*, 814 F.2d 998, 1001 (5th Cir. 1987) (recognizing that if parties seek to file a matter in two courts of appeals, "[b]oth courts cannot have jurisdiction"); *West Gulf Mar. Ass'n v. ILA Deep Sea Local*, 751 F.2d 721, 728 (5th Cir. 1985) ("[C]omity requires federal district courts … to exercise care to avoid interference with each other's affairs.").[4]

Nothing in Appellants' sparse discussion of jurisdiction resolves this problem. While Appellants baldly assert that this Court can issue a writ of mandamus, neither of the two cases they cite says so. *See* Appellants' Br. 2. *Volkswagen* involved a

---

[4] This also bears directly on the dicta in *Red Barn* describing a "potential" for issuing a writ of mandamus to a transferor district court to make a non-binding request for retransfer. This Court cautioned that even such a request must be reserved for an "extreme case" since it can "provok[e] a possible conflict between the Circuits." 794 F.3d at 484-85 (citation omitted). But the State knows of no examples in which this Court actually took that step, let alone after a transferee court consolidated the action with another pending before that court. And in any event, Appellants never requested such relief, and a case cannot be "extreme" where one member of this panel already suggested that a transfer would be within the district court's discretion.

16

transfer between two Texas district courts within the Fifth Circuit, meaning that this Court retained jurisdiction no matter the outcome. Additionally, unlike in this case, transfer was *denied*, ensuring the "transferor court" (and thus this Court) retained jurisdiction. 545 F.3d at 307-08. *Rolls Royce* likewise featured a denial of transfer, which kept jurisdiction in the transferor court. 775 F.3d at 677. In other words, neither decision raised any of the jurisdictional problems implicated here, so citing them does not help Appellants overcome theirs.

Nor is Appellants' response strengthened by their selective reliance on Wright & Miller. Appellants recite a single sentence: "[i]f the transfer was made from a district in one circuit to a district in another, only the court of appeals in the circuit of the transferor can review the decision." Wright & Miller § 3855. But Appellants misread that line, which merely confirms the uncontroversial fact that circuits can only review the decisions of district courts within their borders. Indeed, that treatise *refutes* Appellants' position, explaining a transfer "is not immediately appealable," that the "circuit court of the transferee court" can eventually "review the transferee district's ruling on a motion to retransfer," and mandamus is not the proper remedy. *Id.* (observing "the risk of a party being injured either by the granting or refusal of a transfer order is, we think, much less than the certainty of harm through delay and additional expense if these orders are to be subjected to interlocutory review").

17

Appellants' suggestion that jurisdiction could be allowed because the district court "retain[ed] jurisdiction over the action's remaining claims against the State Department" is illogical. Reply Br. in Support of Mot. for Inj. Pending Appeal at 1. Indeed, this Court has already foreclosed such an argument, specifically instructing that a decision on an intertwined severance-and-transfer motion is not appealable on an interlocutory basis. *See Rolls Royce,* 775 F.3d at 676-77. And that makes sense: "[s]everance under Rule 21 creates two separate actions or suits … Where a single claim is severed out of a suit, it proceeds as a discrete, independent action." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441, n.17 (7th Cir. 2006) (collecting cases). The suits thus have distinct jurisdictional properties. *See O'Neil*, 709 F.2d at 368 (noting that, after severance, "a final, appealable judgment in either one of the resulting two actions" can exist "notwithstanding the continued existence of unresolved claims in the other"). Whatever happens in the suit against USDOS does not somehow provide the district court with jurisdiction over the severed and transferred action against the New Jersey defendant, and so this Court does not enjoy jurisdiction either.

Finally, this Court's June 23, 2021 administrative stay order does not change the jurisdictional analysis. Because Appellants never moved to stay the transfer, the transfer was fully effectuated on April 20, 2021, when the case was docketed in the District of New Jersey. This was the event that deprived this Court of jurisdiction.

*See Red Barn*, 794 F.3d at 484 (holding that court of appeals lost jurisdiction when the case was transferred to a district in the Seventh Circuit); *Drabik*, 246 F.2d at 409. Simply put, because the transfer is the jurisdictional event, that loss of jurisdiction cannot be reversed 64 days later by the transferor court or by its circuit. Indeed, this Court has said the same in a related context. In *Erly Industries v. M/V CHADA NAREE*, 226 F.3d 641, 2000 WL 1029002 (5th Cir. 2000), the district court entered an order staying the action pending arbitration one week after the parties had filed a notice of appeal. *Id.* at *1. This Court held that since the district court was "divested of jurisdiction upon the filing of notice of appeal," its stay was "unenforceable." *Id.* at *2. So too here: once the district court and therefore this Court were "divested of jurisdiction," an order purporting to stay that action has no effect.

In other words, without jurisdiction to review the transfer order, all this Court can do is "announce" that lack of jurisdiction and "dismiss[] the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). While the All Writs Act allows courts of appeals to act "in aid of their respective jurisdictions," *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966), it "does not enlarge that jurisdiction," *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999). As Chief Justice Burger explained, where a motions panel "was without jurisdiction over the appeal from the District Court's order," that "panel was necessarily without authority to grant [a] stay," too. *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1306 (1985)

19

(Burger, C.J.) (vacating motions panel's stay order). That limitation has all the more force where, as here, a stay would grant an appellant "more extensive relief than it had sought from the District Court," *id.*, and risks having derivative impacts on a transferee court's subsequent actions in the case. As such, the June 23, 2021 administrative stay order has no jurisdictional effect.

2.  *Appellants Cannot Obtain Mandamus Because They Have Other Adequate Means Of Seeking Relief.*

There is a second problem: even if this Court could exercise authority over a lawsuit presently in the District of New Jersey, it still cannot exercise mandamus authority where Appellants have another adequate way to seek relief. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004) (the first requirement of the three-part mandamus test is that petitioner must have "no other adequate means to attain the [desired] relief"). The requirement that a petitioner have no other adequate means to obtain the requested relief is a strict one, as it is designed to ensure that litigants cannot use the writ as "a substitute for the regular appeals process." *Id.* at 380-81; *see also, e.g.*, *In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987) ("Mandamus cannot be used as a substitute for appeal even when hardship may result.") (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964)).

Federal courts have made clear the extraordinarily stringent nature of this test. It is a "bedrock principle of mandamus jurisprudence that the burdens of litigation

are normally not a sufficient basis for issuing the writ" if an issue can be reviewed in another way later in the case. *In re al-Nashiri*, 791 F.3d 71, 80 (D.C. Cir. 2015) (denying mandamus where "adequate remedy exists" in the form of appellate review of Guantanamo detainee's capital charges after military commission trial). In fact, the Supreme Court has held that the burden of undergoing a criminal trial "of several months' duration" does not suffice given Congress's determination "that only final judgments should be reviewable." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 30 (1943). Ultimately, the burdens of litigating a case will not justify mandamus if another form of review exists at another stage.

That is dispositive because Appellants have another adequate means of relief: seek retransfer in the District of New Jersey. Appellants can "make a motion in the transferee court that the case be 'retransferred'—that is, sent back to the original court." Wright & Miller § 3855. While the transferee court will typically approach that question with deference, "the transferee may order retransfer if it concludes that the transferee's decision was clearly erroneous." *Id.* And "the circuit of the transferee court may … review the transferee district's ruling on a motion to retransfer the case to the original district." *Id.*; *see also SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 177, 178 n.7 (2d Cir. 2000) (holding that the transferee's circuit "may review a ruling by the transferee court denying retransfer" and that any "court of appeals reviewing the denial of a retransfer motion would not be limited by the law of the

21

case, as announced by the transferor district court," and collecting circuit cases); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772 n.9 (3d Cir. 1984) (adopting same rule with respect to Section 1406 transfers, and noting "the transferor court's disposition of the original motion to transfer would not necessarily be res judicata"). On this basis, other circuits have denied mandamus relief. *See, e.g.*, *Cain v. Graf*, 161 F.3d 17, 1998 WL 654987 (10th Cir. 1998) (denying mandamus for transfer order where opportunity to move for retransfer "afford[s] plaintiff an adequate means of relief other than mandamus"); *In re Dalton*, 733 F.2d 710, 717 (10th Cir. 1984); *Gulf Research & Dev. v. Harrison*, 185 F.2d 457, 460 (9th Cir. 1950); *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 869-70 (2d Cir. 1950).

In fact, this Court has already held that such relief is possible in determining that transfer orders did not meet the "effectively unreviewable" requirement of the collateral order doctrine. In *Persyn*, the Court held that a transfer of venue to the Court of Federal Claims "is not effectively unreviewable" because that transferee court could agree or decline to send the action back, a decision that could ultimately be appealed. 935 F.2d at 73; *Shugart v. Hawk*, 39 F.3d 320, 1994 WL 612547 (5th Cir. 1994) (dismissing appeal where ability to "obtain review of the transfer order" in the transferee court meant that it was not "effectively unreviewable"). That applies with equal force in the mandamus context. Simply put, Appellants want to be able to challenge a decision of a transferor court in the transferor's circuit *and* challenge

22

a decision of a transferee court not to retransfer in that circuit. But mandamus is not a windfall; it exists only where it is the sole path forward.

The only cases Appellants cite in arguing that mandamus review of transfer orders is "well-established" despite these adequate alternatives, Appellants' Br. 2, cannot help them. Again, *Volkswagen* and *Rolls Royce* held that mandamus relief was available to assess the *denial* of a motion to transfer, but that posture is considerably different: there is no option of asking the transferee court to consider the order anew because there is no transferee court at all. While the transferee court may well decide to defer to the transferor's decision (a decision that itself will be reviewable in the transferee circuit), the mere "possibility" of any "other adequate means" to obtain relief is "reason alone" to deny mandamus. *In re Gibson*, 423 F. App'x 385, 389 (5th Cir. 2011). Appellants' ability to seek retransfer in New Jersey is an "adequate means to obtain the requested relief" that forecloses mandamus.

### 3. *Appellants Have Not Properly Petitioned For Mandamus.*

There is one final problem: the Federal Rules prevent this Court from granting Appellants' passing "request that the Court treat this filing as a petition for a writ of mandamus." Appellants' Br. 2. Appellants have failed to meet the explicit

requirements of FRAP 21 for a mandamus petition, a fact they nowhere deny.[5] But that proves fatal. As this Court has put it, Rule 21's requirements are mandatory, and noncompliance requires denial. *See EEOC v. Neches Butane Prod. Co.*, 704 F.2d 144, 152 (5th Cir. 1983) (holding that absent "extraordinary" circumstances, "a mandamus petitioner may not fail to comply with [R]ule 21 without providing an adequate excuse"). Appellants have not attempted to provide any excuse; nor could they, as Appellants have capable counsel. Thus, Appellants "should not be able to petition for a writ of mandamus without writing any petition … and without paying any attention at all to the directly applicable federal rule of appellate procedure." *Id.*; *see also id.* at 152 (declining to treat appeal as mandamus petition); *Mut. Fire Ins. v. Booth*, 24 F.3d 240 (5th Cir. 1994) (declining to treat appeal as mandamus petition absent adequate excuse); *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019) ("Ordinarily we will not construe an appeal as a petition for mandamus if the appellant 'failed to apply for [the] writ in accordance with the requirements of [Rule] 21(a).'"). That is enough to resolve this appeal.

---

[5] For instance, Appellant's brief is styled as "Brief for Appellants," rather than a petition for writ of mandamus, and it does not name the district court. Further, the brief contains 12,828 words, far exceeding the 7,800-word limit for mandamus petitions. Fed. R. App. P. 21(d)(1). Finally, that Appellants belatedly sent a copy of their brief to the district court *after* the State raised these deficiencies in responsive briefing hardly qualifies as providing proper notice to that court, let alone an act sufficient to transform an appeal into a compliant mandamus petition.

## II. The District Court's Severance-And-Transfer Order Was Not A Clear Abuse Of Discretion.

The standard for obtaining a writ of mandamus relating to a joint severance-and-transfer order is extraordinarily high, and Appellants cannot satisfy it. A court cannot order mandamus "on the mere ground that [the district court] may be erroneous." *Volkswagen*, 545 F.3d at 309 (quoting *Will v. United States*, 389 U.S. 90, 98 n.6 (1967)). Instead, the petitioner must show a "clear and indisputable" right to issuance of the writ. *Cheney*, 542 U.S. at 381. Appellants must thus prove that the district court's decision to sever and transfer the claims against the Attorney General was a "clear abuse of discretion." *Rolls Royce*, 775 F.3d at 677 (citation omitted). It is not enough to show that there are clearly erroneous factual findings or conclusions of law; mandamus could only be justified "when such errors produce a patently erroneous result … that clearly exceeds the bounds of judicial discretion." *Volkswagen*, 545 F.3d at 310; *see also id.* ("[I]n no case will we replace a district court's exercise of discretion with our own.").

It is especially difficult to establish a clear abuse of discretion in this context because the district court has "wide discretion to sever a claim against a party into separate cases," *Rolls Royce*, 775 F.3d at 680, and "broad discretion in deciding whether to order a transfer" under Section 1404(a), *see Volkswagen*, 545 F.3d at 31. The court's severance inquiry is guided by whether (1) "the claims arise out of the

25

same transaction or occurrence," (2) "the claims present some common questions of law or fact," (3) "settlement of the claims or judicial economy would be facilitated" by severance; (4) "prejudice would be avoided if severance were granted," and (5) "different witnesses and documentary proof are required for the separate claims." *Rolls Royce*, 775 F.3d at 680 n.40. The Section 1404(a) inquiry is guided by a series of public and private interest factors. *Volkswagen*, 545 F.3d at 31.

Appellants fall far short of showing that the joint severance-and-transfer order is an "extreme" case or a clear abuse of discretion.

A.   <u>The District Court Did Not Clearly Abuse Its Discretion In Finding Judicial Efficiency Supported Its Severance-And-Transfer Order.</u>

First, a joint severance-and-transfer inquiry is primarily "focused on judicial efficiency." *Rolls Royce*, 775 F.3d at 680. Appellants agree the district court properly gave the greatest weight to judicial efficiency; they simply disagree with the court's conclusion. *See* Appellants' Br. 31-32. But the district court's order promoted efficiencies both regarding threshold jurisdictional questions and on the merits, and is consistent with the court's considerable discretion.

1.   *The Order Below Promotes Judicial Efficiency Because Further Litigation On Jurisdictional Issues Would Only Exist In Texas.*

The district court correctly recognized that litigating claims against this New Jersey official in Texas will lead to an unnecessary and substantial use of the Texas

court's resources to adjudicate issues relating to personal jurisdiction, which is not the case if the claims are heard in the District of New Jersey.

First, Appellants have not established personal jurisdiction for their newly-pled claims against Section 2C:39-9(*l*)(2), an issue that would have to be litigated were the case to remain in Texas, but not if transferred to New Jersey. Last year, this Court held that personal jurisdiction was sufficiently alleged as to claims arising out of the Attorney General's cease-and-desist letter, which warned Appellants not to violate New Jersey's common law of public nuisance. *See Grewal*, 971 F.3d at 489. But specific personal jurisdiction must be established on a claim-by-claim basis, *Seiferth v. Helicopteros Atuneros*, 472 F.3d 266, 275 (5th Cir. 2006), and it has never been established for Appellants' challenge to Section 2C:39-9(*l*)(2). As Appellants concede, "Plaintiffs had not formally pleaded their [Section 2C:39-9(*l*)(2)] claims" in the complaint this Court previously reviewed. Appellants' Br. 35. The district court rightly found no basis to read this Court's prior decision to "appl[y] to any un-pleaded claims regarding § 2C:39-9(*l*)(2)." ROA.2470.[6]

---

[6] It makes no difference that Appellants referenced Section 2C:39-9(*l*)(2) in a 2018 motion for preliminary injunction, *see* Br. 34-35, because this Court's prior ruling was based solely on the claims in the complaint, and never referenced that separate motion. *See Grewal*, 971 F.3d at 490. Appellants did not refer to it in briefing, and the court did not rule on the motion because it was moot. In fact, Appellants' briefing repeatedly emphasized the constitutional injury they alleged was "attribute[ed] … to the letter's threat itself." Reply Br., No. 19-50723, at 7 n.2.

27

That this Court's prior holding was cabined to the claims regarding the cease-and-desist letter alone is clear from the text and reasoning of this Court's opinion. This Court stressed that jurisdiction was properly alleged in the previous complaint because those claims were "based on Grewal's cease-and-desist letter." 971 F.3d at 492. In doing so, this Court distinguished the claims in *Stroman Realty v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), as "more a product of Arizona's regulatory scheme than it was the cease-and-desist letter itself. Not so for the plaintiffs' claims here, many of which are based on injuries stemming solely and directly from Grewal's cease-and-desist letter." *Id*. at 492. But a challenge to Section 2C:39-9(*l*)(2) is one against New Jersey's "regulatory scheme" regarding 3-D printable guns, and not one "based on" a cease-and-desist letter that predated the law's enactment and never mentioned it. Moreover, while the Court noted that the cease-and-desist letter "does not cabin [its] request by commanding the plaintiffs to stop publishing materials to New Jersey residents" only, *id*. at 492, Section 2C:39-9(*l*)(2) is explicit in its geographic scope, prohibiting distribution "to a person in New Jersey who is not registered or licensed as a manufacturer."

Appellants' heavy reliance on their own factual allegation that the Attorney General mentioned Defense Distributed's founder during the bill signing, 971 F.3d at 493, does not help them. Although Appellants brush by this, this Court's previous opinion flatly *rejected* the idea that minimum contacts could be established from the

bill-signing remarks, noting "the broadcast event the plaintiffs reference took place in New Jersey," and this action did not "represent direct contacts with Texas." *Id.* at 492. Instead, the Court repeatedly referenced only the "intentional mail[ing] of the cease-and-desist letter into Texas" as the nexus of minimum contacts, noting that it was "specifically the cease-and-desist letter delivered into Texas" that "gave rise to distinct tort causes of action." *Id.* at 494-95. The prior opinion thus refutes, rather than supports, claims of jurisdiction over the then-un-pleaded claims against a New Jersey statute that limits dissemination only to persons in New Jersey.

Litigating this issue will certainly require significant judicial resources, and is likely to result in a dismissal for lack of jurisdiction. Indeed, Appellants do not even attempt to demonstrate personal jurisdiction exists over the Section 2C:39-9(*l*)(2) claims, resting upon their assertion that this Court's prior ruling established personal jurisdiction over claims not yet pled at the time. But subsequent decisions of this Court only confirm that this challenge to a New Jersey state statute limiting dissemination exclusively to New Jersey residents does not belong in federal court in Texas. *See Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*, 1 F.4th 346 (5th Cir. 2021) (holding that California agency's instruction to Texas company to "remedy violations of California law" does not establish minimum contacts simply because the company would have to "chang[e] its policies in Texas"). Said another way, in enacting a law that limits dissemination "to a person in New Jersey," no New Jersey

officials "availed themselves of Texas law," since the statute only affects Appellants if they "unilaterally cho[o]se to transact with [New Jersey] residents." *Id.* The court acted within its discretion in finding this case is best handled in New Jersey.

Second, further litigation over personal jurisdiction will be necessary in Texas regardless, because the Court only previously evaluated jurisdiction at the motion-to-dismiss stage. A higher level of proof is needed after that, which the Texas court would have to evaluate. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009) (noting that an "adverse jurisdictional ruling at the pre-trial stage did not foreclose either defendant from holding [the plaintiff] to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence"); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (same). This Court acknowledged there was a fact dispute over whether the cease-and-desist letter sought to prevent Appellants' dissemination nationwide or to New Jersey residents alone, but found "at this stage of the litigation, we are required to resolve all factual disputes in favor of the plaintiff." 971 F.3d at 493 n.6. As Judge Higginson added, "[i]f, in fact, Grewal attempted to prevent the distribution of the files only within the state of New Jersey," there would be no jurisdiction, a dispute the panel left for the district court. *Id.* at 497 n.1 (Higginson, J., concurring). Not only that, but Defense Distributed has subsequently confirmed that it could simply restrict the distribution of its files to New Jersey internet service

provider addresses. *See* ROA.3740 (April 30, 2021 declaration admitting "Defense Distributed made the April 2021 Files unavailable to residents of and persons in the State of New Jersey who do not possess a federal firearms license"). The severance-and-transfer order eliminates the need to resolve this fact dispute entirely.

Third, if the case remained in Texas, that court would have to adjudicate the Attorney General's argument that Texas's long-arm statute does not allow personal jurisdiction with respect to *any* of Appellants' claims. That statute allows courts to exercise jurisdiction over a "nonresident" who "does business" in Texas if that nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042. This Court has questioned whether an out-of-state public official sued in his official capacity meets these definitions, especially because an official's "faithful enforcement of allegedly unconstitutional [state] statutes" is not "doing business." *Stroman*, 513 F.3d at 482-83. Although this Court found the issue waived in the prior appeal, 971 F.3d at 496, the question would require resolution after Appellants' amendment of their complaint to add a new challenge to a New Jersey criminal statute. *See, e.g.*, *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (a defendant may raise new defenses to an amended complaint, including defenses that were waived in response to the *initial* complaint, where the amendment "changes the theory or scope

of the case"). Here too, transfer eliminates the need to weigh in on this threshold statutory question.

The district court thus correctly concluded that severance-and-transfer to New Jersey (where all agree jurisdiction is proper) spares the litigants and the court the considerable time and expense needed to litigate whether jurisdiction is proper in Texas. ROA.2470. Moreover, the transfer means "Plaintiffs may more immediately seek relief against the NJAG in New Jersey rather than having to engage in further factual discovery and briefing regarding jurisdiction over the NJAG for Plaintiffs' § 2C:39-9(*l*)(2) claims in this Court." ROA.2476. The significant burden on judicial resources to resolve threshold jurisdictional issues, and Appellants' ability to more promptly seek relief in New Jersey, more than justifies the district court's decision— especially on clear-abuse-of-discretion review.

> ### 2. *The Order Below Promotes Judicial Efficiency In Resolving The Merits Of This Case.*

The district court also recognized that adjudicating the claims in New Jersey would promote judicial efficiency on the merits. The issue was whether efficiency is best served by hearing the case in conjunction with a disanalogous action against USDOS (pending in Texas) or in conjunction with a substantially-identical challenge against the same state law (pending in New Jersey). The district court did not clearly abuse its discretion in finding the latter overwhelmingly more efficient.

The district court rightly concluded that few efficiencies would be served by hearing claims against a New Jersey official and USDOS together. *See* ROA.2468. The Court need only glance at the Texas SAC's Table of Contents to see that claims against the federal defendants diverge from those against the New Jersey Attorney General. And while Appellants contend repeatedly that their tortious-interference claim against the New Jersey Attorney General shares much in common with their contract claims against USDOS, *see* Appellants' Br. 27-29, 39, that state law claim is barred by sovereign immunity, and thus is no reason to keep this suit in Texas. *See* ROA.2467; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (*Ex Parte Young* does not apply to any claims for relief against state officials under state law); *Williams v. Reeves*, 981 F.3d 437, 439 (5th Cir. 2020) (Jones, J., dissenting) ("Federal courts ... have no business interpreting and enforcing state law against state government."). Few efficiencies inure from keeping this case in Texas.

Moreover, although both cases partially sound in First Amendment law, any efficiency to be gained by that overlap has now been erased by a new development: the challenged USDOS regulations *are no longer in effect*, as a result of the transfer of jurisdiction over printable gun files from USDOS to the U.S. Commerce Department. *See* 86 Fed. Reg. 29,189-90 (June 1, 2021) (change effective May 26, 2021). Indeed, Appellants withdrew their preliminary injunction motion against USDOS, citing "changed circumstances." Dkt. 166. While Appellants are pursuing

damages for *breach of contract* and insist some residual regulations may apply, Appellants' Br. 21, 23 n.2, the heartland of their challenges to USDOS regulations will likely never be adjudicated in the district court, negating any efficiencies with their separate claims against the New Jersey Attorney General. To the contrary, Appellants are now embroiled in disputes with USDOS over whether those claims are moot and whether they belong in the Court of Federal Claims, issues Appellants insist require "evidentiary development." Dkt. 168, at 20. Those issues do not concern the New Jersey defendant whatsoever, and the severance-and-transfer order ensures that the parties to *this* case can immediately litigate these distinct claims without waiting for resolution of those separate procedural questions.

On the other hand, there are considerable efficiencies to be gained via transfer to New Jersey in light of the existing suit there. In the NJ Complaint, Appellants joined with other plaintiffs in asserting the same constitutional challenges to New Jersey law. Indeed, the other plaintiffs in the New Jersey action argued to the Third Circuit that they need to be able to proceed with the New Jersey suit because they were "completely absent" in the Texas case, and proceeding there alone would put them "out of court entirely," thus ensuring the validity of Section 2C:39-9(*l*)(2) will eventually be tested in the Third Circuit too. *See* Appellants' Supp. Br., Nos. 19-1729, 19-3182, 2020 WL 469953, at *8-9 (3d Cir. Jan. 27, 2020). Allowing Appellants as well as the New Jersey plaintiffs to pursue the very lawsuit they

34

voluntarily chose to file together in New Jersey is the correct result, as it *avoids* the expenditure of resources in having "the same issues to be litigated in two places," *Rolls Royce*, 775 F.3d at 680. Now, all the same constitutional claims by a number of the same parties against the same defendant over the same law will be litigated in a single forum. That is the paragon of judicial economy.[7]

In response, Appellants argue repeatedly that the severance-and-transfer order produces inefficiencies because of this Court's familiarity "with these dense factual issues." Appellants' Br. 34; 54-56. As the district court explained, there is no basis to argue "the District of New Jersey is not well equipped to evaluate 'complex First Amendment issues,' especially given that [it] has heard challenges to New Jersey firearms laws for over ten years." ROA.2472; *see id.* ("New Jersey courts have greater 'familiarity with New Jersey's overall statutory framework regulating firearms and the public policies those laws promote' and 'have been the primary fora for deciding legal challenges to New Jersey firearms laws.'"). Indeed, the District of New Jersey and Third Circuit are also familiar with this factual history as a result of Appellants' parallel New Jersey action. *See Defense Distributed v. Att'y Gen. of N.J.*,

---

[7] Appellants now claim they never wanted to file the New Jersey action, and only did so because they could not establish personal jurisdiction in the Texas court. Br. 47. But Appellants never dismissed their New Jersey action even after this Court reversed the personal jurisdiction decision, and that suit includes other plaintiffs who vociferously asserted their need to pursue these claims in the New Jersey court.

972 F.3d 193, 196-97 (3d Cir. 2020). And the "complex factual or procedural history" Appellants emphasize is "dominated by questions of personal jurisdiction, which will be eliminated if the claims against the NJAG are transferred to the District of New Jersey." ROA.2472. In short, the District of New Jersey is well-suited to handle both this case and the nearly-identical one already pending there.

B.   The District Court Did Not Clearly Abuse Its Discretion In Finding The Remaining Factors Favored Severance.

As to the first factor under Rule 21, Appellants' separate suits against the Attorney General and USDOS do not arise out of the same transaction or occurrence. *See Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014) (explaining the test for same "transaction or occurrence" is whether "the same operative facts serve[] as the basis for both claims"). As the district court noted, Appellants' action against USDOS is based on that federal agency's performance of a 2018 Settlement Agreement it reached with Defense Distributed—a settlement agreement that has nothing to do with New Jersey's laws or its Attorney General. ROA.2467-68. In the same vein, the claims against the New Jersey Attorney General have nothing to do with USDOS; they are based on the state official's cease-and-desist letter and the Legislature's subsequent enactment of Section 2C:39-9(*l*)(2), in which federal defendants played no role. ROA.2467.

36

Appellants' arguments to the contrary misunderstand the legal test. For one, their high-level description of the two actions as involving restrictions on publishing their files, Appellants' Br. 39, is entirely beside the point. While both claims involve Defense Distributed's products, that is hardly decisive—otherwise, *every* lawsuit involving regulation of a product could be conjoined. Instead, it is the specific laws enforced and actions taken by each defendant that give rise to the individual claims, so these are the relevant facts. *See, e.g.*, *Birmingham Fire Ins. Co. of Pa. v. Winegardner & Hammons, Inc.*, 714 F.2d 548, 551 (5th Cir. 1983) (suits against different insurance companies arose from different operative facts because, even though both resulted from the same hurricane strike, the companies "issued two different policies" which were not "interrelated nor mutually dependent"); *Ormet Primary Aluminum Corp. v. Ballast Tech., Inc.*, 436 F. App'x 297, 300 (5th Cir. 2011) (claims are from discrete operative facts where one "arose out of the botched docking and unloading of" a ship and the other "arose out of [defendant's] failure to pay for storage services provided by [plaintiff]" related to the same ship). The mere fact that Appellants wish to act in contravention of separate federal regulations and New Jersey statutes does not create a common nucleus of facts. *See Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) ("the fact that all of [plaintiff's] claims 'at bottom' related to [plaintiff's] efforts to build

a hospital does not constitute a sufficient logical relationship" under same logical-relationship test).

For another, Appellants' attempt to establish common facts across the breach-of-contract claim against USDOS and the tortious-interference claim against the New Jersey Attorney General, Appellants' Br. 39, runs into two problems. The most obvious is that this tortious-interference claim is barred by New Jersey's immunity, *see supra* at 33, meaning that the only even potentially overlapping claim is one no federal court can adjudicate anyway. And regardless, these claims do not arise from the same occurrence. The former is about whether USDOS failed to perform obligations under a settlement agreement. The latter concerns whether New Jersey's decision to join nineteen states to challenge USDOS rules under the APA in the Western District of Washington constitutes tortious interference. As the district court highlighted, "the Washington Suit challenged the State Department's violations of the APA, not the separate settlement agreement." ROA.2467; *see also* ROA.1882 ¶ 98 (Appellants agreeing that the Washington Action "never sought relief against the Settlement Agreement"). And as the district court in the Washington Action put it, the plaintiff-States' "claim had nothing to do with the facts or law at issue between the existing parties" to the litigation resolved by the Settlement Agreement. *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1256 (W.D. Wash. 2018). Especially given that identical and explicit finding by the Washington district court,

the court below appropriately held that these claims lack a common nucleus of operative facts—and it certainly did not clearly abuse its discretion in doing so.

As to the second factor, Appellants' claim that their constitutional challenges present "common questions of law" runs into a number of problems. *See* Appellants' Br. 41. As a threshold matter, it is likely the district court will never resolve any constitutional questions as to the federal defendants; the USDOS regulations Appellants challenge are no longer in effect. *See supra* at 33-34 (noting the parties are litigating questions of mootness). In any event, the purported legal overlap is overstated. As to the First Amendment, the claims require separate analyses. While Appellants are pursuing a prior-restraint challenge against USDOS based on then-existing federal regulations' requirement of a license to publish printable gun files, *see* ROA.1875 ¶ 82, the crux of their claim against the Attorney General is that Section 2C:39-9(*l*)(2) is a content-based limit on speech, *see* ROA.1893 ¶¶ 142-46. Moreover, USDOS and New Jersey statutes define differently which files come within their reach, with New Jersey's definition more limited to files that could automatically be converted to 3D guns. *Compare* 22 C.F.R. §§ 121.1, 120.10, *with* N.J. Stat. Ann. § 2C:39-9(*l*)(2). And the governmental interests differ as well. Given the distinctions in both Appellants' First Amendment theories and the laws, the

district court correctly found that trying the claims together "would hardly serve the interests of judicial economy." ROA.2468.[8]

Next, the fourth factor in the severance inquiry—whether "prejudice would be avoided if severance were granted"—favors severance. *Rolls Royce*, 775 F.3d at 680 n.40. As the district court explained, prejudice to Appellants would "be avoided by severing the claims against the NJAG and transferring them to a court that clearly has personal jurisdiction over all of Plaintiffs' claims against [him]." ROA.2470. Indeed, all the threshold issues outlined above will delay Appellants' ability to seek injunctive relief in this district, whereas they can seek immediate relief in the District of New Jersey. Appellants have no answer to this.

Finally, the fifth factor supports severance because proving these distinct sets of underlying operative facts requires "different witnesses and documentary proof." *Rolls Royce*, 775 F.3d at 680 n.40. As the district court found, while "claims against the NJAG will require discovery into 'the meaning of New Jersey laws and the intent of the NJAG's cease-and-desist letter,'" the claims against the federal defendants "'largely turn on internal agency communications and potentially testimony from

---

[8] There are likewise dissimilarities across their Due Process claims. Appellants' claims against the New Jersey Attorney General include allegations of void-for-vagueness and overbreadth, ROA.1927 ¶¶ 288-89, which have nothing to do with their grievances that USDOS failed to issue certain letters and promulgate certain federal regulations, ROA.1920 ¶¶ 250-54.

agency officials.'" ROA.2468-69. Appellants do not dispute this. *See* Appellants'

Br. 42. And while they assert the "evidence Plaintiffs will supply" will be similar

across claims, *id.*, they fail to show these materials are relevant to proving their

claims, as opposed to merely background information. This one-sentence argument

fails to undermine the finding that this factor weighs in favor of severance, let alone

demonstrate a clear abuse of discretion in the district court's ultimate conclusion.

C.    The District Court Did Not Clearly Abuse Its Discretion In Finding The
      Remaining Factors Favored Transfer To The District of New Jersey.

The district court granted a transfer under 28 U.S.C. § 1404(a), which allows

for a transfer "to any other district or division where it might have been brought or

to any district or division to which all parties have consented."[9] Here, the relevant

public and private factors overwhelmingly favor a transfer.

1.    *The Public Interest Factors Favor Transfer.*

To determine whether transfer is proper under Section 1404(a), courts weigh

a number of public factors, including: "(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at

home; (3) the familiarity of the forum with the law that will govern the case; and (4)

---

[9] Appellants do not dispute the district court's finding "that venue is proper" in the
District of New Jersey, where Appellants have already sued the Attorney General.
ROA.2464. Appellants acknowledged that New Jersey "constitutes a proper venue
for this action because a substantial part of the events or omissions giving rise to the
claim occurred here" in that suit. No. 3:19-cv-4753, Dkt. 17, ¶ 26.

the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 371 F.3d at 203. The district court sensibly found that the latter three factors weigh in favor of transfer (after finding the first factor neutral).

Starting with the second and third factors, the district court recognized that, as a general matter, States have an interest in not defending challenges to their laws in faraway forums. The district court relied on Judge Higginson's concurrence in the prior appeal, which pointed to these particular concerns as reason to grant a Section 1404(a) transfer in this case. ROA.2472. As the district court explained, "New Jersey has a strong interest in having Plaintiffs' claims relating to § 2C:39-9(*l*)(2), a New Jersey criminal statute, 'examined by local state or federal courts—courts that have expertise interpreting its laws.'" *Id.* (quoting *Grewal*, 971 F.3d at n.3 (Higginson, J., concurring)). In fact, in all "cases against government officials who attempt to enforce a state law, so for no personal or commercial profit, the litigation has taken place in the governmental official's state." *Id.* (quoting *Grewal*, 971 F.3d at 499 n.3 (Higginson, J., concurring)).

That decision makes sense: "New Jersey courts have greater 'familiarity with New Jersey's overall statutory framework regulating firearms and the public policies those laws promote' and 'have been the primary fora for deciding legal challenges to New Jersey firearms laws.'" *Id.* Indeed, the Supreme Court and this Court have made these same points in the past. *See, e.g.*, *Leroy v. Great W. United Corp.*, 443

42

U.S. 173, 186 (1979) ("[F]ederal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere."); *Stroman*, 513 F.3d at 487 (noting all States' "strong interest in not having an out-of-state court evaluate the validity of its laws," as out-of-state courts lack "special expertise interpreting [the state's] laws," and a contrary rule would "diminish the independence of the states"). A district court decision following guidance provided by Judge Higginson's concurrence and prior teachings of the Supreme Court and this Court is not a clear abuse of discretion—especially when the record reveals *no case* in which an *Ex Parte Young* challenge has occurred outside the defendant's state.

Appellants' assertion that New Jersey's interest in having this challenge to its state laws heard by local courts is somehow "diminished" misreads this Court's prior ruling. *See* Appellants' Br. 53. The prior opinion did not analyze the weight accorded to New Jersey's sovereign interests—and understandably so, because this was unnecessary for finding that Appellants' allegations sufficed for personal jurisdiction over their claims relating to the cease-and-desist letter. *See Grewal*, 971 F.3d at 495-96. Moreover, the panel's finding that the Attorney General "asserted a pseudo-national executive authority" was specific to the allegations surrounding the cease-and-desist letter, and does nothing to undermine New Jersey's compelling interests with respect to Section 2C:39-9(*l*)(2), which only limits dissemination of

43

covered files to persons in New Jersey. *See id.* at 493. The district court did not clearly abuse its discretion in faithfully adhering to the explicit scope of this Court's prior ruling.[10]

As to the fourth public factor, the district court rightly found a transfer "averts the potential for 'conflicting rules and a possible split' between circuits regarding the interpretation of a New Jersey criminal statute and on constitutional issues." ROA.2473. The district court previously acknowledged that Section 2C:39-9(*l*)(2) is susceptible to more than one reading, and that the most reasonable one eliminates or at least mitigates the constitutional issues Appellants assert. *See* ROA.437-41, 1371-73. Allowing Appellants to litigate claims against Section 2C:39-9(*l*)(2) in Texas—potentially in both Texas *and* New Jersey—risks the untenable scenario of federal circuits conflicting over the meaning and validity of the same state criminal law. That risk is not hypothetical: Appellants and certain additional plaintiffs filed a

---

[10] Appellants get no further with their argument that Texas, not New Jersey, has a stronger interest in the suit against the Attorney General. Br. 51-53. This argument was never presented to the district court and should be deemed waived. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010); ROA.2073, 2095. In any event, a Section 1404(a) transfer does not mean Texas does not have *any* interests as the place of the alleged wrong; it simply means New Jersey has greater sovereign interests in the interpretation and evaluation of its laws by its local courts, as courts have repeatedly found. Nor does the Attorney General's decision to seek a stay of Appellants' New Jersey action undermine New Jersey's interest in having such issues decided at home. *See* Br. 54. As the district court found, "the NJAG sought a stay because this action was filed first, not on the basis that this Court is the proper venue for the claims against him." ROA.2473.

complaint in the District of New Jersey with nearly identical legal challenges, which they said would need to be resolved *in addition to* the instant suit. Should the same constitutional claims against the same state law also be litigated in Texas, a split between the Third Circuit and this Court is highly possible.

Not only does transfer eliminate that risk, but the Third Circuit can "certify questions regarding § 2C:39-9(*l*)(2) to New Jersey state courts, and thus avoid any conflict in the interpretation of the state statute," a tool unavailable here. ROA.2473; *see* N.J. Court Rule 2:12A-1. While Appellants respond that this is an illegitimate concern because Section 2C:39-9(*l*)(2) "is unambiguous," and no need to interpret its meaning could arise, Appellants' Br. 56, Appellants previously argued just the opposite to this Court—that the text *is* ambiguous with respect to which of their files fall within the state law's coverage. *See* Mot. for Inj. Pending Appeal at 17; ROA.1927 ¶ 288. Appellants cannot have it both ways, and the district court acted within its discretion in finding that a transfer avoids conflicts over these questions.[11]

---

[11] Even if a judgment in the Texas court could have res judicata effect as to the additional plaintiffs to the New Jersey action who are not parties here, this "would not prevent an inter-circuit conflict on the meaning of § 2C:39-9(*l*)(2) that arises when New Jersey state courts in future actions adopt a meaning of § 2C:39-9(*l*)(2) in conflict with [the district court's] interpretation." ROA.2473. And Appellants' suggestion that a transfer itself risks a circuit split is meritless, Br. 56-57, because (as explained above) the analysis of the legality of USDOS regulations need not be the same as the analysis as to Section § 2C:39-9(*l*)(2).

## 2. *The Private Interest Factors Also Favor Transfer.*

The private interest factors point in the same direction. Here, courts consider "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 371 F.3d at 203. The district court found that the second and fourth factors favored transfer, while the first and third are neutral. ROA.2474-76. These determinations were correct, and at the very least do not reflect a clear abuse of discretion.

As to the first two factors, Appellants' complaint that the district court failed to consider the location of their evidence ignores that neither Appellants nor USDOS identified *any* sources of proof based in Texas in their district court briefs. *See* Appellants' Br. 44-46; ROA.2073, 2095. That court was not obligated to conduct an independent search for supposed Texas-based evidence elsewhere on the docket when no party's brief raised this as a basis to deny transfer. Similarly, Appellants erroneously assert that the New Jersey Attorney General did not identify non-party witnesses for whom process may be needed. Appellants' Br. 47-49. In fact, the district court found the "state officials" who enacted Section 2C:39-9(*l*)(2) are "based in New Jersey," and their testimony may be "necessary in resolving Plaintiffs' claims." ROA.2475.

46

Under the fourth factor, Appellants repeat the flawed arguments that a transfer will lead to a less efficient use of judicial resources because there will be multiple suits in different jurisdictions. Appellants' Br. 49-51. But as the district court noted, "Plaintiffs are the ones who chose to file multiple lawsuits against the NJAG and … their claims against the Federal Defendants are not so intertwined with those against the NJAG as to warrant the claims being tried together." ROA.2476. And as discussed above, transfer will save resources because the claims against the Attorney General can take place in a single forum, where "Plaintiffs may more immediately seek relief against the NJAG in New Jersey rather than having to engage in further factual discovery and briefing regarding jurisdiction." ROA.2476. Meanwhile, unrelated procedural disputes between Appellants and USDOS can go on in Texas, and need not delay resolution of claims against New Jersey. Therefore, the court did not clearly abuse its discretion in finding that this factor favors transfer, and that transfer was warranted.

D. The Attorney General Is Not A Necessary Party.

Against all this, Appellants feature an argument that the New Jersey Attorney General is a necessary party to the suit against USDOS under Federal Rule of Civil Procedure 19(a)(1)(B)(i) and that this precludes severance. But that runs into three problems: Appellants never raised this claim below and therefore waived it;

47

Appellants have no right to raise this on the allegedly necessary party's behalf; and Appellants are wrong.

First, Appellants waived the claim that the New Jersey Attorney General is a necessary party to the action against USDOS under Rule 19(a)(1)(B)(i). *See* Appellants' Br. 26-30; *Celanese*, 620 F.3d at 531 ("[A]rguments not raised before the district court are waived and will not be considered on appeal"). Appellants (through USDOS) only brought to the district court an argument under subsection (B)(*ii*), which concerns whether proceeding with a party's absence will create a "substantial risk of incurring … inconsistent obligations" for any "existing party." Fed. R. Civ. P. 19(a)(1)(B)(ii). The district court considered and rejected that argument, and Appellants abandoned it on appeal. *See* Appellants' Br. 30. That argument has nothing to do with whether the *absent* party's interests are impaired— the concern behind subsection (B)(i)—an argument that no one brought to the district court. In other words, arguments under subsections (B)(i) and (B)(ii) are materially different, such that raising one does not put a court on notice of the other. *See, e.g.*, *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 355 (5th Cir. 1997) (concluding argument regarding a specific subsection of a statute was waived, where arguments below concerned different subsections of the statute). The district court cannot clearly abuse its discretion by failing to address an issue Appellants never presented.

Second, even if the argument were not waived, Appellants cannot assert this specific provision of Rule 19—whose goal is "protecting the person whose joinder is in question," Fed. R. Civ. P. 19 committee note—against the New Jersey Attorney General. "It is the absent party," not Appellants, "that must 'claim an interest'" under Rule 19(a)(1)(B)(i). *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (alterations omitted); *see also id.* (explaining that where absent party "has clearly declined to claim an interest in the subject matter of this dispute," defendant's "self-serving attempts to assert interests on behalf of [the absent party] cannot be the basis for [defendant's] necessary party argument"). And this Court has held that when an absent party's choice to "forgo intervention indicates that it did not deem its own interests substantially threatened by the litigation," that party is not necessary under Rule 19. *Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017) (citation and alterations omitted); *see also In re Cty. of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001) (holding party advocating joinder "cannot claim that the [absent parties] have a legally protected interest in the action unless the [absent parties] themselves claim that they have such an interest"); *Davis Co. v. Emerald Casino, Inc.*, 268 F.3d 477, 483-84 (7th Cir. 2001) (holding Rule 19 did not require joinder because "it is the absent party that typically must claim such an interest").

Finally, this argument is meritless in substance, as it is based on the theory that because the New Jersey Attorney General claimed an interest in the USDOS regulations by challenging them in the Western District of Washington litigation, it is now a necessary party in Appellants' separate suit against USDOS. Appellants' Br. 28. But Appellants do not seriously believe this, because *every* attorney general who participated in the Washington action would have to be joined in the Texas action, something Appellants never attempted to do. And this approach would have radical ramifications, suggesting that if one party sues the United States for going too far in certain regulations in a federal district court, they become a Rule 19 necessary party any time another party sues the United States for not going far enough in another court. No precedent supports that view.

But there is an even narrower reason why Appellants' necessary party analysis fails. Appellants' theory is that they will obtain a ruling allowing them "to publish information on 3D-printed firearms free of State Department regulation," which would affect the New Jersey Attorney General. Appellants' Br. 29. Appellants, however, *are already* free of USDOS regulation as a result of the recent regulatory change. So to the extent the Attorney General has an interest in preventing that change, it already occurred, and no further impairment could result from his absence in the case. Nor could an adjudication of the merits of Appellants' challenge to USDOS regulations impair the New Jersey Attorney General's ability to defend New

Jersey laws, given the divergence in text, justification, and impact of federal regulations and the state statute. *See supra* at 39-40; ROA.2469 ("Plaintiffs claims against the NJAG largely revolve around the interpretation of New Jersey law, and this Court sees no reason to cabin its analysis to the parties present in the Washington Suit—a lawsuit regarding APA violations by the State Department, not enforcement actions by the NJAG."); *Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982) (finding risk of multiple suits does not *per se* jeopardize absent party's rights). There is thus simply no interest that Appellants can identify that would actually be impaired or impeded by the New Jersey Attorney General's absence. And they cannot otherwise prove that the district court clearly abused its considerable discretion. *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) ("Rule 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be.").

## CONCLUSION

This Court should dismiss the appeal for lack of jurisdiction. In the alternative, it should deny a writ of mandamus.

Respectfully submitted,

 /s/ Angela Cai
JEREMY M. FEIGENBAUM
State Solicitor
ANGELA CAI
Deputy State Solicitor
MAYUR P. SAXENA
Assistant Attorney General
ERIN M. HODGE
JOHN T. PASSANTE
TIM SHEEHAN
Deputy Attorneys General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market Street
Trenton, New Jersey 08625
(609) 414-5954
angela.cai@njoag.gov

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,707 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point regular font.

Dated:      July 19, 2021                              /s/ Angela Cai
                                                        Angela Cai

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021, I filed the foregoing Brief of Appellee with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Angela Cai
Angela Cai

# EXHIBIT 5

No. 21-50327

In the United States Court of Appeals
For the Fifth Circuit

DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION,
INCORPORATED,

Plaintiffs - Appellants

v.

ANDREW J. BRUCK, Acting Attorney General of New Jersey, in his official
and individual capacities,

Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division; No. 1:18-CV-637

**Reply Brief of Appellants**

Clark Hill PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman LLC
Josh Blackman
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Beck Redden LLP
Chad Flores
Daniel Nightingale
Hannah Roblyer
1221 McKinney Street
Suite 4500
Houston, Texas 77010
(713) 951-3700

# Table of Contents

**Page**

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Argument ............................................................................................................. 1

I.     Jurisdiction exists ........................................................................................ 3

     A.    The Court has appellate jurisdiction. ................................................. 3

     B.    The Court has mandamus jurisdiction ................................................ 5

           1.    This Court can control the relevant lower court. ...................... 6

           2.    Seeking retransfer will not suffice. .......................................... 8

     C.    There is no Rule 21 problem. ............................................................ 10

II.    The district court clearly erred in severing the case against the AG. ........... 11

     A.    The AG is a necessary party ............................................................. 11

     B.    Judicial economy disfavors severance (and transfer). ...................... 14

           1.    Litigation in Texas would be more efficient than New Jersey. ...................................................................................... 14

           2.    This Court has already resolved the jurisdictional issue. ......... 16

     C.    The remaining Rule 21 factors disfavor severance. ........................... 20

III.   The district court clearly erred in transferring the case against the AG. ....... 23

     A.    The private interest factors favor Texas. ........................................... 23

     B.    The public interest factors favor Texas. ........................................... 25

Conclusion ......................................................................................................... 29

Certificates ......................................................................................................... 30

# Table of Authorities

**Cases**                                                                 **Page(s)**

*Bobian v. Czech Airlines*,
    93 F. App'x 406 (3d Cir. 2004) ..........................................................................8

*In re Bradford*,
    660 F.3d 226 (5th Cir. 2011) ............................................................................4

*Brinar v. Williamson*,
    245 F.3d 515 (5th Cir. 2001) ............................................................................5

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988).........................................................................................9

*Def. Distributed v. Grewal*,
    971 F.3d 485 (5th Cir. 2020) ...................................................................*passim*

*In re Delta Services Indus., Etc.*,
    782 F.2d 1267 (5th Cir. 1986) ........................................................................10

*In re DePuy Orthopaedics, Inc.,*
    *Pinnacle Hip Implant Prod. Liab. Litig.*,
    888 F.3d 753 (5th Cir. 2018) ..........................................................................19

*In re Foster*,
    644 F. Appx. 328 (5th Cir. 2016) ....................................................................10

*Garber v. Randell*,
    477 F.2d 711 (2d Cir. 1973) .............................................................................5

*Hammers v. Mayea-Chang*,
    2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) .................................................23

*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3d Cir. 1982) .............................................................................9

*Jama v. Gonzales*,
    431 F.3d 230 (5th Cir. 2005). .........................................................................26

*J2 Glob. Communications, Inc. v. Protus IP Sols.*,
    2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ...........................................23, 24

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
    535 U.S. 613 (2002). ......................................................................................14

*Lawson v. Sun Microsystems, Inc.*,
    791 F.3d 754 (7th Cir. 2015) ........................................................................12

*In re McBryde*,
    117 F.3d 208 (5th Cir. 1997) ...........................................................................6

*N.Y. Life Ins. v. Deshotel*,
    142 F.3d 873 (5th Cir. 1998) .........................................................................20

*Persyn v. United States*,
    935 F.2d 69 (5th Cir.1991) ...........................................................................5, 9

*Reagan Nat'l Advert. v. Austin*,
    972 F.3d 696 (5th Cir. 2020) .........................................................................22

*In re Red Barn Motors, Inc.*,
    794 F.3d 481 (5th Cir. 2015) ...........................................................................7

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ...................................................................*passim*

*In re Sepulvado*,
    707 F.3d 550 (5th Cir. 2013) .......................................................................3, 4

*Shugart v. Hawk*,
    39 F.3d 320, 1994 WL 612547 (5th Cir. 1994)................................................9

*Studebaker Corp. v. Gittlin*,
    360 F.2d 692 (2d Cir. 1966) .........................................................................17

*Matter of Subpoena*,
    947 F.3d 148 (3d Cir. 2020) .........................................................................22

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ....................................................*passim*

*Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*,
    762 F. Supp. 2d 1023 (S.D. Tex. 2011)..........................................................23

## Statutes

28 U.S.C.
    § 1294.........................................................................................6
    § 1651(a) ....................................................................................6

N.J. Stat. § 2C:39-9(*l*)(2) ..........................................................18

## Rules

Fed. R. App. P. 21 (a)(2)(B) ....................................................11

Fed. R. Civ. P. 19(a)(2)............................................................12

## Other Authorities

Br. of Appellants, *Def. Distributed v. Grewal*, 2019 WL 6457013
    (C.A.5) ......................................................................................17

15 Charles Alan Wright and Arthur R. Miller,
    Federal Practice and Procedure Civil (4th ed. 2021)

    § 2949.......................................................................................17

    § 3846.........................................................................................7

    § 3849.................................................................................22, 25

    § 3855.......................................................................................8, 9

Lawrence B. Solum,
    *The Interpretation-Construction Distinction*,
    27 CONST. COMMENT. 95 (2010) .............................................27

## Argument

Plaintiffs Defense Distributed and the Second Amendment Foundation want their claims against the New Jersey Attorney General and State Department resolved in one fell swoop, harmoniously and efficiently in the court where they all belong. The AG's gamesmanship seeks chaotic segregation, hoping to gain delay and an unfounded home court advantage to prolong his censorship regime at any expense. The Court has jurisdiction to set this litigation back on track and should exercise it as soon as possible to minimize the constitutional harms that mount every day.

Transferring the case against the AG was a clear abuse of discretion because all of the § 1404(a) factors disfavor transfer. This was not a close discretionary call. The factors were so lopsided as to allow for only one conclusion. But the Court need not reach that part of the appeal because of the more obvious error about severance.

Everyone agrees that the district court's transfer decision could not have occurred without the predicate severance decision. And according to the AG, severance was proper only because "Plaintiffs' newly added claims against the State Department arise out of a completely distinct set of operative facts." ROA.2022. But once again, at "this stage of the litigation, we are required to resolve all factual disputes in favor of the plaintiff." *Def. Distributed v. Grewal*, 971 F.3d 485, 492-93 n.6. (5th Cir. 2020). For the case Plaintiffs actually pleaded—not the one the AG imagines—severance was clearly improper because he was a necessary party.

Both factually and legally, Plaintiffs' case against the AG is part and parcel of Plaintiffs' case against the State Department. In no uncertain terms, the complaint shows that the AG's censorship occurred in conjunction with and as part of the same transactions by which the State Department violated Plaintiffs' right to publish the computer files at issue—namely, the *Washington* litigation to which all were parties. ROA.1882-1890. If in that case the State Department had honored its Settlement Agreement (and constitutional) obligations, a federal regulatory regime and license would have protected Plaintiffs' right to publish the computer files at issue *from the assault that Grewal conducted*. *Id.* But instead of that happening, the AG violated Plaintiffs' rights by obtaining a nationwide injunction that took away important federal speech protections *and* the State Department violated Defense Distributed and SAF's rights by *letting the AG do it* instead of opposing all the way. *Id.*

This direct factual and legal relationship meets the Rule 19 necessary party standard, requiring that the AG and State Department be sued together. And because of the AG's necessary party status, the district court had no discretion to sever the AG's part of the case and transfer it to New Jersey. This manifest fault in the decision below constitutes both reversable error for appellate purposes and a clear abuse of discretion for mandamus purposes. One way or another, relief is warranted.

## I.      Jurisdiction exists.

The Court has jurisdiction to both correct the district court's errant severance/transfer decision and to issue a preliminary injunction or injunction pending appeal.  The question is not whether jurisdiction exists, but which— appellate jurisdiction via the collateral order doctrine or original mandamus jurisdiction.  Either way, the Court has all the power it needs.

### A.      The Court has appellate jurisdiction.

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), is quite correct in holding that severance/transfer decisions are *not* effectively reviewable on appeal from a final judgment.  *Id.* at 676-77.  That is completely consistent with Plaintiffs' invocation of appellate jurisdiction via the collateral order rule.  The conclusion *Rolls Royce* went on to reach—that the unavailability of meaningful review from final judgment gives rise to mandamus jurisdiction *but not a collateral order appeal*—is likely errant and would warrant reconsideration if it were controlling. But *Rolls Royce* is not controlling because the rule of orderliness gives precedence to other decisions that uphold the collateral order doctrine's application here.

*In re Sepulvado*, 707 F.3d 550 (5th Cir. 2013), is one of the controlling cases. It predates *Rolls Royce* and squarely holds that the collateral order doctrine covers transfer decisions.  *Id.* at 552.

The AG tries to avoid *Sepulvado* by saying that it "never mentions the collateral order doctrine." AG Br. 11. But the decision quite obviously employed the collateral order doctrine by using its elements expressly:

> As in *Bradford*, "the appeal of the transfer order: (1) will conclusively determine the correctness of the transfer; (2) is separate from the merits of the [habeas] motion; and (3) is effectively unreviewable if the appeal is dismissed." *Id.* We conclude, therefore, that we have jurisdiction over both the district court's order and the motions it transferred thereby.

*Sepulvado*, 707 F.3d at 552.

The AG also tries to avoid *Sepulvado* by saying that the Court upheld jurisdiction just "because it *is* the transferee court." AG Br. 11. But the Court's transferee status only justified jurisdiction over the motions; it did not justify jurisdiction over the order transferring the motions. Yet *Sepulvado* held that "we have jurisdiction over *both* the district court's order *and* the motions it transferred thereby." *Id.* (emphasis added). Judge Smith knew full well the holding his opinion renders: The collateral order doctrine gave jurisdiction over the transfer order. *Id.*

Lest there be any doubt, the *Bradford* decision that *Sepulvado* invokes above ("As in *Bradford*…") is expressly about the "collateral order" doctrine. *In re Bradford*, 660 F.3d 226 (5th Cir. 2011). It too predates *Rolls Royce* and it too holds that the collateral order doctrine covers transfer decisions. *Id.* at 229 ("[T]his is an appealable, collateral order, and we thus have jurisdiction").

4

The AG also has no effective answer for *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973), which illustrates why exceptional severance orders like this one qualify for the collateral order doctrine.  *Id.* at 714-17 (cited by Appellants' Br. ("Pls.' Br.") at 1).  "Due process" concerns are not a distinction, as the AG tries to say.  AG Br. 11.  They are a common thread.  For just as in *Garber*, the decision below denies the Plaintiffs the critical right of suing the AG and State Department in unison before the court where they both belong.  *See Garber*, 477 F.3d at 716.

Exceptions to the general rule of *Sepulvado* and *Bradford* exist.  But this is no such exceptional case.[1]  If ever the Plaintiffs' interests in the transfer/severance decision are to be effectively vindicated, now is the time.  An immediate appeal is warranted.

### B.    The Court has mandamus jurisdiction.

If appellate jurisdiction via the collateral order doctrine does not cover this proceeding, the Court's mandamus jurisdiction clearly does.  The AG offers three supposed barriers to its exercise here.  None are valid.

---

[1] The exceptions occur when an action's transfer/severance issues *are also* dispositive issues for a final judgment.  *See Persyn v. United States*, 935 F.2d 69 (5th Cir. 1991); *Brinar v. Williamson*, 245 F.3d 515 (5th Cir. 2001).  There is no such duplication of keystone issues here.  Though important, the instant transfer/severance issues are *not* also merits issues for the final judgment.

## 1. This Court can control the relevant lower court.

The AG says that "transfer to the District of New Jersey deprived this Court of jurisdiction, as this Court has no power to issue orders binding the transferee court." AG Br. 7. But this Court stayed the transfer order with the *per curiam* decision of June 23, 2021. By operation of law, the stay suspends the transfer order so as to preserve all of the authority this Court needs and avoid comity-based concerns about intra-circuit friction. And indeed, the District of New Jersey has opted to do nothing else until this Court resolves the appeal. *See* AG Br. at 5 n.2.

Even if the stay were ignored, the no-authority argument is wrong because this Court still has sufficient power over the district court below. This Court's statutory authority to issue all writs "necessary and appropriate in aid of [its] jurisdiction," 28 U.S.C. § 1651(a), includes the authority to issue writs of mandamus as to any case over which the Court would eventually have appellate jurisdiction, *In re McBryde*, 117 F.3d 208, 219 (5th Cir. 1997). That covers the instant order because it is both part of the transferred claims against the AG and—critically—also part of the not-transferred claims against the State Department that remain in Texas within this Court's appellate jurisdiction, *see* 28 U.S.C. § 1294.

To be clear, the continuation of the case against the State Department in Texas is not a necessary part of the authority argument. This Court would have the requisite authority even if all of the case had been sent to New Jersey. *See* Pls.' Br.

1-2 (citing 15 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure Civil § 3846 (4th ed. 2021) (hereinafter "Wright & Miller")). But because of the State Department case's continued jurisdictional anchoring effect, this Court's authority to issue the necessary relief is beyond question.

As an exercise of this jurisdiction, the Court can remedy the district court's error in either or both of two separate ways. It can issue a writ of mandamus that directs the Western District of Texas to request that the District of New Jersey return the case against the AG to Texas. *See In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 & n.6 (5th Cir. 2015) ("[S]everal circuits, where appropriate, have endorsed the method of directing the transferor district court to request that the transferee district court return the case"). And it can issue a writ of mandamus that directs the Western District of Texas to vacate its severance/transfer order. *See id.* ("[C]ourts have also held that a court of appeals has jurisdiction to vacate a completed inter-circuit transfer if the case was transferred to a court in which it could not have originally been brought").

This aspect of the Plaintiffs' position does not create unnecessary intra-circuit friction. The AG's does. No matter what, this Court will have jurisdiction over the severance/transfer decision on appeal from the final judgment in the State Department case. On Plaintiffs' view, this Court also has jurisdiction over that same decision vis-à-vis the AG—a harmonious result that avoids unnecessary conflict.

But on the AG's view, appellate jurisdiction over the same order lies both in this Court vis-à-vis the State Department and the Third Circuit vis-à-vis the AG—an absurd result that poses all of the friction concerns the AG says are important.

No wonder, then, that governing Third Circuit precedent recognizes this Court's authority to review the instant order by way of mandamus. The last time a Texas court transferred an entire case to the District of New Jersey, the Third Circuit held that "review is available only through mandamus or certification to the Fifth Circuit." *Bobian v. Czech Airlines*, 93 F. App'x 406, 408 (3d Cir. 2004). The AG's no-authority position has been rejected by every circuit at issue.

### 2. Seeking retransfer will not suffice.

The AG next says that mandamus in this Court is unavailable because Plaintiffs can get adequate relief by moving the District of New Jersey to retransfer the case and challenging any denial thereof in the Third Circuit. AG Br. 7-8. This is wrong for two independent reasons.

First, a retransfer effort is inadequate because it poses issues that are analytically distinct from and substantially harder to prevail upon than transfer in the first instance. *See* Wright & Miller § 3855 & n.4-6 ("[R]eview from final judgment is unlikely to result in reversal of a ruling concerning transfer"). If Plaintiffs had to seek retransfer from the District of New Jersey, they would be barred from relitigating the actual transfer issues and would instead be required to defeat

law-of-the-case principles that substantially elevate the necessary showing. *See id.*; *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("the decision of the transferor court that the suit could have been brought in the transferee court is the law of the case and should not be reconsidered except in unusual circumstance"); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law….").

*Persyn*, 935 F.2d 69, supports the Plaintiffs, not the AG. It says that retransfer is an adequate option if and only if the issue regarding retransfer was *subject-matter jurisdiction*. *Id.* That makes sense because all courts must continuously evaluate jurisdiction on a clean slate. But subject-matter jurisdiction is not embedded in this transfer decision. *Persyn* expressly says that retransfer is *not* an adequate alternative where, as here, both district courts have subject-matter jurisdiction. *Id.*[2]

Second, a retransfer effort is inadequate because it cannot account for the district court's predicate error regarding severance. The decision being reviewed rests as much on the step-one severance conclusion as it does on the step-two transfer conclusion. Yet a retransfer effort can, by definition, only reach half of the inquiry.

---

[2] The unpublished decision in *Shugart v. Hawk*, 39 F.3d 320 (5th Cir. 1994), turns on the conclusion that direct review of the transfer decision at issue could be had in another circuit. *Id.* at \*1. But as shown above, direct review of the transfer decision now at issue cannot even be had in the District of New Jersey, let alone the Third Circuit.

The AG never explains how a retransfer effort in the District of New Jersey could account for the severance issues, given that the case against the State Department is in Texas beyond the District of New Jersey's jurisdictional reach.

### C.    There is no Rule 21 problem.

The AG says that "Appellants did not file the mandamus petition required by Rule 21." AG Br. 7-8, 23-24. But even if meaningful deviations occurred (none did), they are harmless and not jurisdictional. The AG's quibbles lack impact because the AG has had a full and fair opportunity to join issue without handicap.

No meaningful Rule 21 deviation occurred here. There is no deadline for sending a copy to the district court, which happened over a month ago; if this Court wanted to seek the district court's views, it could do so now without any unfairness to any party and Plaintiffs would support it. Mandamus requests need not "name the district court" in any special fashion, as the AG says without citation. *Id.* Plaintiffs did so expressly anyhow. Pls.' Br. x, 22, 34. That the Plaintiffs' main filing is styled just "Brief of Appellants" does not matter because the Court asks that parties *either* file a distinct petition *or* "request[] that we treat their appeal as a petition for a writ," *In re Delta Services Indus., Etc.*, 782 F.2d 1267, 1272 (5th Cir. 1986), and regularly addresses the merits of alternative requests for mandamus relief that are included within principal appellants' briefs, *see, e.g.*, *In re Foster*, 644 F. App'x 328, 330 (5th Cir. 2016). The AG's word limit complaint is also empty, as neither side is adhering

to the word limits that apply to mandamus briefs and the AG could have asked for more words if necessary. But he was instead content to file a main submission that is hundreds of words under the cap for briefs.

The parts of Rule 21 that really matter are the substantive ones calling for a statement of the relief sought, issues presented, facts necessary to understand the issue, and the reasons why the writ should issue. Fed. R. App. P. 21(a)(2)(B). Plaintiffs did all of that in spades, including a prominent "Alternative petition for writ of mandamus" section, Pls.' Br. at 2, and arguments showing that the district court committed a "clear abuse of discretion," *id.* at 2, 24. No significant rule violations occurred and no prejudice whatsoever has been caused to the AG or court below.

Plaintiffs' method of simultaneously presenting both the appeal and mandamus request was a perfectly orthodox way of advancing the Court's interest in judicial efficiency and simplified submissions. If appellate jurisdiction is not exercised, mandamus jurisdiction should be.

## II. The district court clearly erred in severing the case against the AG.

### A. The AG is a necessary party.

The district court most clearly abused its discretion by severing the AG despite his status as a necessary party to the case against the State Department. *See* Pls.' Br. at 25-31. The AG's few answers are buried in the back of the brief and wrong.

11

The AG's main counterargument is that Plaintiffs waived their assertion that he is a necessary party under Rule 19(a)(1)(B)(i). AG Br. 48. Not so. The State Department made this very point below, ROA.2081-82, and Plaintiffs expressly adopted it by right, ROA.2096. "[N]o rule prohibits appellate amplification" of it now. *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015).

Next, the AG asserts that he alone can claim necessary party status. AG Br. 49. He is estopped from making this argument, however, having convinced the *Washington I* court that Defense Distributed was a necessary party over its objection. *See* 2:18-cv-1115-RSL, Dkt.119 at 7-8. More importantly, the text of Rule 19 flatly disproves the AG's assertion, allowing courts to join parties *against their will*:

> A person who refuses to join as a plaintiff may be made either a defendant or…an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(2). What triggers Rule 19 is the AG's claim of "an interest relating to the subject of the action," which he evidenced by litigating *Washington I*. Whether the AG now likes to own the resulting necessary party status is irrelevant.

The AG next says that, if he is a necessary party, every state that sued in *Washington I* is as well. AG Br. 50. If that is true, so be it; no precedent makes this consequence relevant to the severance analysis. But there is an obvious factual difference that could be explored on remand if the AG or State Department seek to add more states as necessary parties: The AG went much further than his counterparts in censoring the Plaintiffs and interfering with the Settlement

12

Agreement.  *See Def. Distributed v. Grewal*, 971 F.3d 485, 492-93 (5th Cir. 2020) ("*Grewal II*") (documenting these efforts).

The AG also says he no longer has an interest in the Settlement Agreement because the State Department no longer regulates Plaintiffs' publications.  He is toeing the same line the State Department made in its motion to dismiss below and is wrong for the same reasons that the State Department is.  *See* Dkt. 168 at 5-8 (Plaintiffs' Response to the State Department's Motion to Dismiss) ("Regulatory jurisdiction over much of the speech at issue…was not transferred to the Commerce Department's EAR regime. The scope of computer files still subject to the State Department's ITAR regime is very substantial and the State Department's continued prior restraint on Plaintiffs' constitutional right to publish these files is still very much in controversy.").  This point also ignores the case's request for retrospective damages, ROA.1937-38, that will exist no matter what changes in the future.

The AG's last argument on the necessary party issue is that the case against the State Department will not produce bad precedent for him because the claims differ.  AG Br. 50-51.  As outlined below, however, the key First Amendment holdings sought against both defendants are materially indistinguishable.

## B. Judicial economy disfavors severance (and transfer).

The district court also clearly abused its discretion by completely mishandling the Rule 21 analysis of judicial economy, in particular by misunderstanding the impact of *Grewal II*. Pls.' Br. 31-41. When that case is properly construed, this predominant factor clearly weighs against severance.

### 1. Litigation in Texas would be more efficient than New Jersey.

Litigating all of the Plaintiffs' claims in Texas is clearly the most efficient way forward. It avoids duplicative litigation and uses the courts that are best equipped to handle the issues. *See* Pls.' Br. 32-34.

The AG denies that severance and transfer entails any duplicative litigation, emphasizing that Plaintiffs have claims against the State Department that they do not have against the AG. AG Br. 33. But even if some of the claims' issues do not overlap, a great majority do. In particular, the core constitutional aspects of each claim clearly overlap and would be more efficiently litigated together, as would key matters like the continuing effect of the State Department's license. Pls.' Br. 37-38.[3]

Next, the AG claims litigation would be more efficient in New Jersey because other plaintiffs there are also challenging 3(*l*)(2). *Id.* at 34-35. But because of Third

---

[3] The AG's invocation of sovereign immunity, AG Br. 33, need not be considered because it goes to the substance of that defense, not the propriety of severance. In any event, it is wrong because New Jersey waived the AG's sovereign immunity by (1) statutorily waiving its employees' immunity for torts in state court, *see* N.J. Stat. § 59:3-1; and (2) making "voluntary appearance[s] in federal court" to invalidate the Settlement Agreement and otherwise censor the Plaintiffs, *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002).

14

Circuit rulings that the AG himself obtained, the courts in New Jersey will not do anything with their jurisdiction's pending litigation about 3(*l*)(2) so long as the Texas case about 3(*l*)(2) continues.  *See* ROA.2098-99.

The true efficiency inquiry should focus not on the issues particular to the AG's speech crime (important as they are), but on the more broadly influential issues about how the First Amendment and other federal speech doctrines apply to the computer files that are common to both the AG and State Department cases.  On Plaintiffs' view, those issues should be litigated only once, in the district court below and this Court.  But on the AG's view, those issues will have to be litigated repeatedly by both the courts here *and* the District of New Jersey and Third Circuit.

With respect to case familiarity, the AG argues that New Jersey courts are equally capable of handling the legal issues and equally familiar with the facts.  AG Br. 35-36.  But while that may have been true at the controversy's inception in 2015, six-plus years of extensive litigation in Texas give Texas courts unquestionably greater experience with both the facts and law.  *See* Pls.' Br. 34.  If the AG has his way, the New Jersey courts would be starting from scratch in addressing the case's predominant legal and technical issues.  The New Jersey courts' knowledge of their state's firearms law does not make up for this discrepancy because federal law is where the material controversies lie and the state laws at issue are clear.

## 2. This Court has already resolved the jurisdictional issue.

The main point of disagreement on the judicial economy factor is whether new disputes about personal jurisdiction will make Texas less efficient. But this Court has already settled the feared issue of personal jurisdiction. *Grewal II* made clear that Texas has personal jurisdiction over claims regarding the speech crime, affirmatively accounting for the AG's threat to enforce that statute in its analysis:

- The very first sentence of the opinion announces that it concerns "the *ongoing efforts* of New Jersey's Attorney…to hamstring the plaintiffs' distribution of materials related to the 3D printing of firearms," not just the cease-and-desist letter. 971 F.3d at 488 (emphasis added).

- The facts the Court labeled "[o]f relevance to th[e] appeal" included "threatening Defense Distributed with criminal sanctions." *Id.* at 489.

- The Court acknowledged that the AG's threat to enforce 3(*l*)(2) "affirm[ed] [his] intention to undermine Defense Distributed's operations and ha[d] significant effects on Texas." *Id.* at 492 n.5.

- In distinguishing *Stroman*, the Court concluded that the AG did "not cabin his request" to his own state like the official in that case, citing the fact that the AG "threatened Defense Distributed's founder, Cody Wilson, by name" at 3(*l*)(2)'s signing ceremony as proof of his "intent to crush Defense Distributed's operations and not simply limit the dissemination of digital files in New Jersey." *Id.* at 493.

- Most importantly, this Court indicated that its jurisdictional holding was not limited to the AG's cease-and-desist letter but was "derivative of the specific language used in [that] letter *coupled with other actions he took that, <u>together</u>*, demonstrate his intent to gut Defense Distributed's operations and restrict Texans' access to Defense Distributed's materials." *Id.* at 496 n.10 (emphasis added).

Despite all of this, the AG offers three arguments to insist on a festering jurisdictional dispute. None are persuasive.

16

First, the AG insists that *Grewal II* only addressed the claims based on the cease-and-desist letter because Plaintiffs had not yet pleaded their 3(*l*)(2) claim. AG Br. 27. But raising the 3(*l*)(2) issue in Plaintiffs' motion for a preliminary injunction was procedurally sufficient to inject the claim into the case and its appeal; in effect, the motion *served as* an amended complaint.[4]  *See* Wright & Miller § 2949 & nn. 5-6; *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 694 (2d Cir. 1966). Thus, when this Court ruled on personal jurisdiction, it ruled on the speech crime claim as well.

Second, the AG argues that the distinction this Court drew between *Stroman* and the cease-and-desist-letter claim does not hold for the 3(*l*)(2) claim because his 3(*l*)(2) threat is "a product of [the state's] regulatory scheme." AG Br. 28. Relatedly, the AG points out that *Grewal II* indicated his threat to enforce 3(*l*)(2) alone would not support jurisdiction. *Id.* at 28-29. Both arguments fail for the same reason: Texas has jurisdiction over the AG because of the *combination* of his actions, including *both* the cease-and-desist letter *and* the 3(*l*)(2) threat. The Court took care to clarify that the letter was not the sole basis for jurisdiction, finding that the "more important" distinction with *Stroman* was the AG's "much broader" "assertion of legal authority." *Grewal II*, 971 F.3d at 492-93, 496 n.10.

---

[4] The AG's contention that *Grewal II* does not mention this motion and Plaintiffs excluded it from their briefing is simply wrong. *Compare* AG Br. 27 n.6, *with Grewal II*, 971 F.3d at 488-89, 492 & n.5, 493; Br. of Appellants, *Grewal II*, 2019 WL 6457013 (C.A.5), 9-11, 34.

Third, the AG asserts that, while the cease-and-desist letter did "not cabin its request" to New Jersey, 3(*l*)(2) *is* limited to his home state. AG Br. 28. But the very next paragraph of the opinion makes clear that the AG's threat to enforce 3(*l*)(2) is one of the "actions [he took that] confirm [his] intent to force Defense Distributed to close shop" entirely. 971 F.3d at 493.

The geographic scope of 3(*l*)(2) is not limited to New Jersey, as the AG says. This unprecedented speech crime applies to all speech that reaches New Jersey *regardless of its origin*, defining "distribute" broadly to include any act of "mak[ing] available via the Internet or by any other means." N.J. Stat. § 2C:39-9(*l*)(2). No matter what state the speaker is in, their utterance of speech that reaches New Jersey makes them a 3(*l*)(2) criminal.

Suppose that, from its offices in Austin, Defense Distributed published information that violates Section 2C:39-9(*l*)(2) to the entire internet, including New Jersey. By its plain terms, the speech crime will have occurred and the issuance of warrants to arrest Defense Distributed's publishers could soon follow. That Defense Distributed did literally nothing in New Jersey would not matter to the statute or its enforcer the AG. *See* ROA.610 ("we will come after you"). This is the nature of the AG's nationwide exercise of authority, directed specifically at Defense Distributed in Austin, that *Grewal II* rightly held triggers jurisdiction in Texas.

The AG next says that *Grewal II* did not *permanently* settled the jurisdictional issues because jurisdiction has to be both pleaded *and later proven*.  AG Br. 30-31.  But Plaintiffs already supplied ample proof of the AG's purposeful availment at the motion to dismiss stage, and, at later stages, they need only establish jurisdictional facts by a preponderance of the evidence.  *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018).  The substantive analysis will thus remain the same later in this litigation, making short work of any future jurisdictional challenges the AG might raise.

Finally for this factor, the AG deems relevant a promised future argument based on Texas's long-arm statute.  AG Br. 30-31.  But *Grewal II* held that he waived that defense, and because the opinion covers *all* Plaintiffs' claims, the AG's failure to raise it initially waives it for all purposes.  *See* 971 F.3d at 496 ("[O]bjections to personal jurisdiction…must be raised in a timely fashion, *i.e.*, as a party's first pleading in the case, or they are waived.").  This matter-of-law argument will also be quickly resolved (against the AG [5]), causing no substantial litigation burden.

---

[5] The statute covers anyone that commits a tort in whole or part in Texas, which the AG did.

### C. The remaining Rule 21 factors disfavor severance.

The AG's arguments on the remaining Rule 21 factors also lack merit. *See* Pls.' Br. 38-42. None of them support severance, and many go the other way.

*First*, all of Plaintiffs' claims "arise out of the same transaction or occurrence," *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014), namely the simultaneous and intertwined AG and State Department efforts to halt Plaintiffs' publication of computer files with digital firearms information. *See* Pls.' Br. 38-40; *supra* at 1-2.

The AG cannot deny this, so he accuses Plaintiffs of analyzing the issue at too high a level of generality. AG Br. 37. But his cases do not apply because they are ones in which the *source* of the legal duty or breach differs. *See id.* By contrast, precedent says that where the *source* of the legal duty is the same (e.g., the First Amendment), and the defendants are engaging in the same torts (e.g., censoring the same speech by the same plaintiff via regulation), the claims "share an aggregate of operative facts," are "logically related," and thus arise from the same transaction. *N.Y. Life Ins. v. Deshotel*, 142 F.3d 873, 881 (5th Cir. 1998). That is the case here.

*Second*, "the claims present common questions of law and fact." *Rolls Royce*, 775 F.3d at 680 n.40. As noted, both cases' key facts center on Plaintiffs' efforts to publish computer files with digital firearms information, and both assert parallel claims about the violation of federal free speech protections. Pls.' Br. 41.

The common questions of fact run deep as well. See *supra* at 1-2. The Settlement Agreement obligated the State Department to issue a license to Defense Distributed and modify its regulations, thereby allowing Defense Distributed to publish its files shielded from the AG's censorship desires. But because the State Department failed supply those shields properly, the AG successfully interfered, obtaining injunctions in *Washington I* that invalidated the license and blocked the regulatory changes. With the preemptive federal license and regulations off the books, the AG then came after Defense Distributed with the newly minted speech crime. Then the State Department refused to appeal the adverse ruling obtained by the AG, making it complicit in the AG's censorship. This keystone course of factual events plays a central role in both the case against the AG and the case against the State Department.

The AG tries to defeat these commonalities by asserting differences in the legal theories being pleaded. He says that Plaintiffs have brought prior restraint claims against the State Department and content-based restriction claims against the AG. AG Br. 39. But the live complaint refutes this characterization. Plaintiffs have brought *both* types of First Amendment challenges against *both* defendants. *Compare* ROA.1913 *with* ROA.1923-24.

In any event, the AG's attempt to tease out miniscule legal distinctions is no matter.  The key legal analysis for prior restraints and content-based-restrictions overlaps substantially, each requiring, for example, the defendant to prove, at minimum, that its regulation satisfies strict scrutiny.  *Compare Matter of Subpoena*, 947 F.3d 148, 155 (3d Cir. 2020) (prior restraints), *with Reagan Nat'l Advert. v. Austin*, 972 F.3d 696, 702 (5th Cir. 2020) (content-based restrictions).

*Third*, severance does not avoid any "prejudice" to the parties.  *Rolls Royce*, 775 F.3d at 680 n.40.  To the contrary, severance causes prejudice by forcing Plaintiffs to incur the expense of litigating in two forums what they could far more efficiently litigate in one.  The only prejudice the AG identifies if the case is not severed is purported harm *to Plaintiffs*.  AG Br. 40.  "That the plaintiff may suffer some inconvenience in the district it chose," however, "is not an argument that a defendant can make successfully in support of its transfer motion."  Wright & Miller § 3849.  The same logic extends to severance.

*Finally*, the factor about differing sources of proof is neutral because the cases have both overlapping and differing sources of proof.  *See* Pls.' Br. 42.  The AG denies the tie by saying that overlapping evidence goes only to background matters.  AG Br. 40-41.  But as the complaint shows, ROA.1862-1866, overlapping proof goes to keystone merits issues like the nature of Plaintiffs' publications (to determine, for instance, whether it constitutes "speech" under the First Amendment).

All the evidence on these issues will be the same across Plaintiffs' claims, rendering this factor neutral.

## III. The district court clearly erred in transferring the case against the AG.

The district court's error with respect to the transfer order is even more apparent. Pls.' Br. at 42-56. Because the AG did not meet his high burden to "clearly demonstrate that a transfer is for the convenience of parties and witnesses," *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc), the court clearly abused its discretion in granting his motion. The AG's answers all fail.

### A. The private interest factors favor Texas.

Contrary to the AG's reasoning, the first, second, and fourth factors all favor Texas. Pls.' Br. 44-51. Under the first, the AG failed to "show that transfer will result in more convenient access to…sources of proof." *Hammers v. Mayea-Chang*, 2019 WL 6728446, at *6 (E.D. Tex. Dec. 11, 2019); Pls.' Br. 44-46. Likewise, he failed to show a "need for compulsory process . . . to secure a witness" under the second. *Williamson-Dickie Mfg. Co. v. M/V HEINRICH J*, 762 F. Supp. 2d 1023, 1030 (S.D. Tex. 2011); Pls.' Br. 47-49. Thus, both factors favor Texas, especially given the Texas-based sources of proof already in the record. *See J2 Glob. Communications, Inc. v. Protus IP Sols.*, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008).

The AG does not meaningfully deny that he failed to identify specific evidence or unwilling witnesses located in New Jersey, as required to meet his burden on the first two factors. AG Br. 46. Instead, he argues that *Plaintiffs* did not identify the Texas sources of proof "in their district court briefs" under the first factor, and that "the district court found that the 'state officials' who enacted [Section 3(*l*)(2)] are 'based in New Jersey'" under the second. AG Br. 46.

But it was not Plaintiffs' responsibility to introduce evidence *against* transfer, and the district court was unquestionably aware of the Texas-based evidence they had previously introduced even if Plaintiffs did not point it out directly. Furthermore, the court's finding that some unknown "state officials…based in New Jersey" may need to provide testimony lacks evidentiary support and, in any event, does not establish that *compulsory* process is necessary for these state-employee witnesses. *See* Pls.' Br. 47-48. As such, the AG's arguments on these two factors do not push them in New Jersey's favor. *See J2 Glob.*, 2008 WL 5378010, at *3.

The fourth private interest factor favors Texas for the same reasons that judicial economy considerations disfavor severance. *See* Pls.' Br. 49-51; *supra* § II.B.1. The AG argues otherwise because Plaintiffs filed suit in New Jersey and can "more immediately seek relief" there. AG Br. 47. But this argument fails

because Plaintiffs' chose to sue in New Jersey out of necessity, not convenience,[6] and Plaintiffs alone get to decide whether their chosen forum is worth the supposed costs the AG cites. *See* Wright & Miller § 3849.

## B. The public interest factors favor Texas.

The public interest factors also favor Texas. *See* Pls.' Br. 51-57. **First**, Texas's "local interest in having [the] localized interests" this case implicates "decided at home" cannot be overstated. *Volkswagen*, 545 F.3d at 315. The AG has "projected himself across state lines and asserted a pseudo-national executive authority" in Texas, seeking "to bar Defense Distributed from publishing its materials anywhere," chilling its speech, and reducing "Texans' access to [its] materials." *Grewal II*, 971 F.3d 492-93, 495. In this way, he has imposed a speech crime on all Texans despite no Texan ever assenting to it. The lack of legislative recourse, coupled with the severity of the injury to Plaintiffs and Texans, gives Texas a stronger interest in this case than New Jersey. Pls.' Br. 52-54.

The AG cannot deny Texas's significant interest in this case. So instead, he argues that New Jersey's is stronger because states usually have an interest in the interpretation and validity of their own statutes. AG Br. 42-44 & n.10.

---

[6] The fact that Plaintiffs' have not dismissed their claims in New Jersey does not imply that Plaintiffs view New Jersey as the better forum. That case has been stayed pending the outcome of this litigation, and Plaintiffs have discerned no benefit to dismissing it, especially considering the AG's procedural shell games.

The AG's authority says nothing, however, about the unique circumstances of this case where one state has tried to impose its law on another state.  Pls.' Br. 53-54.  In these circumstances, the aggressor state's interest *is* considerably diminished because the out-of-state courts' rulings will have no direct effect on the aggressor state's citizens.  If this Court, for example, were to declare 3(*l*)(2) unconstitutional, that ruling would simply preclude the AG from enforcing it *in the Fifth Circuit*.  It would not preclude enforcement in New Jersey if the Third Circuit deemed it constitutional.  Thus, the strength of New Jersey's interest in having *this* case decided at home is reduced.

The AG also claims that Plaintiffs waived the argument that Texas has a stronger interest in this case than New Jersey.  *Id.* at 44 n.10.  But Plaintiffs (through the State Department) *did* argue that Texas has a strong interest stemming from the AG's "efforts to enforce [Section 3(*l*)(2)] as part of a series of related steps targeting Plaintiffs."  ROA.2089.[7]

**Second**, the Texas federal courts have much greater "familiarity…with the law that will govern the case" under the third public interest factor, given their more extensive experience with the facts and legal issues.  *Volkswagen*, 545 F.3d at 315;

---

[7] The Court could also consider the argument for the first time on appeal because failing to do so would produce a "manifest injustice," inflicting severe prejudice on Plaintiffs in the form of "duplicative proceedings" that leave Texas jurists no say in the evaluation of a foreign law that has been forced upon the state.  *See Jama v. Gonzales*, 431 F.3d 230, 233 (5th Cir. 2005).

Pls.' Br. 54-56.  The AG responds that the New Jersey courts are better equipped to interpret New Jersey law, AG Br. 42-43, but there is little need for interpretation here because the statute is clear.  Pls.' Br. 55.

The AG claims that interpretation will be necessary because "[t]he district court previously acknowledged that Section [3(*l*)(2)] is susceptible to more than one reading."  AG Br. 44.  But the district court did not offer competing interpretations of 3(*l*)(2) that would require interpretation according to New Jersey law, but instead simply (and erroneously) held that Plaintiffs did not adequately allege the content of their speech to demonstrate coverage.  *See* ROA.437-41, 1371-73.

For his part, the AG misconstrues Plaintiffs' void-for-vagueness challenge as an argument "that the text *is* ambiguous."  AG Br. 45.  But Plaintiffs have never argued that 3(*l*)(2) is subject to more than one reasonable interpretation.  Rather, the problem is that, by criminalizing speech which "*may* be used to program a three-dimensional printer to manufacture or produce a firearm," the statute "fail[s] to…enable ordinary people to understand what conduct it prohibits."  Mot. for Inj. Pending Appeal at 17.  It is *vague*, not ambiguous.  *See* Lawrence B. Solum, *The Interpretation-Construction Distinction*, 27 CONST. COMMENT. 95, 97-98 (2010).  No amount of interpretation can change that.

27

***Finally***, the last public interest factor favors Texas because there is minimal risk of conflicting interpretations of 3(*l*)(2).  The transfer order creates a significant risk of a circuit split that would leave Plaintiffs unprotected.  *Volkswagen*, 545 F.3d at 315.  The AG's counterarguments regarding the district court's supposed finding of ambiguity and Plaintiffs' void-for-vagueness concerns fail for the reasons just discussed.  *See* AG Br. 45-46.  And its footnoted argument that there is no risk of a circuit split wrongly assumes the claims against the State Department and the claims against the AG do not overlap.  Accordingly, this factor favors Texas.

## Conclusion

The Court should reverse the decision to sever and transfer the case against the AG, render a judgment denying the motion, and return the case to the Western District of Texas for the resumption of proceedings on the merits.  Alternatively, the Court should issue a writ of mandamus directing the district court below to both vacate its severance/transfer order and request that the District of New Jersey return the case against the AG to Texas.

July 28, 2021                                          Respectfully submitted,

Clark Hill PLC                                       Beck Redden LLP
Matthew A Goldstein                          */s/ Chad Flores*
1001 Pennsylvania Avenue Northwest      Chad Flores
Suite 1300 South                               Daniel Nightingale
Washington, DC 20004                        Hannah Roblyer
(202) 550-0040                                  1221 McKinney Street
                                                        Suite 4500
Josh Blackman LLC                            Houston, Texas 77010
Josh Blackman                                  (713) 951-3700
1301 San Jacinto Street
Houston, Texas 77002
(202) 294-9003

Attorneys for Plaintiffs – Appellants
Defense Distributed and Second Amendment Foundation, Inc.

## Certificate of Service

On July 28, 2021, an electronic copy of this filing was submitted to the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and service will be accomplished by the appellate CM/ECF system to the following:

Alexander Hardiman
alexander.hardiman@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
31 W. 52nd Street
New York, NY 10019

Ronald Casey Low
casey.low@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman, L.L.P.
401 Congress Avenue
Austin, TX 78701

Angela Cai
angela.cai@njoag.gov
New Jersey Attorney General's Office
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, NJ 08625

/s/ *Chad Flores*
Chad Flores

## Certificate of Compliance

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27 because it contains 6,499 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it uses a 14-point proportionally spaced typeface from Microsoft Word 2016.

/s/ *Chad Flores*
Chad Flores

# EXHIBIT 6

# United States Court of Appeals
# for the Fifth Circuit

————————

No. 21-50327

————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2021

Lyle W. Cayce
Clerk

DEFENSE DISTRIBUTED;
SECOND AMENDMENT FOUNDATION, INCORPORATED,

*Plaintiffs—Appellants,*

*versus*

GURBIR S. GREWAL, ATTORNEY GENERAL OF NEW JERSEY, IN
HIS OFFICIAL AND INDIVIDUAL CAPACITIES,

*Defendant—Appellee.*

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-637

————————————————————

Before JONES, ELROD, and HIGGINSON, *Circuit Judges.*

PER CURIAM:

IT IS ORDERED that the transfer order of the district court is
STAYED pending further order of this court. This case, including questions
of appellate jurisdiction, the orders to sever and transfer, and the request for
preliminary injunction, will be set for oral argument in New Orleans during
the week of August 2, 2021.

By EDITH H. JONES, *Circuit Judge*:

The dissent portrays this temporary administrative stay and oral

argument order as some kind of unauthorized sua sponte "relief" to the appellant beyond what it requested in briefing. This is wrong. This court often grants temporary administrative stays of district court orders underlying an appeal so that the court may consider the issues more thoughtfully and with extra research. It is within our prerogative to do so. In this case, both parties will have fully briefed the case by the time oral argument is scheduled. The issues raised by the parties here, following nearly five years of simultaneous litigation in three states, are unusual and complex, as the dissent acknowledges. Further, the potential impact of this litigation on core First Amendment rights renders it even more important for this court thoughtfully to consider the issues before us.

No. 21-50327

Stephen A. Higginson, *Circuit Judge*, dissenting:

      I dissent.  No party has requested a stay of the district court's transfer order.  Rule 8 of the Federal Rules of Appellate Procedure is mandatory as to required steps and content when a stay is sought.  None has been taken or given.  Relatedly, Appellants have requested and received an extension of time; Appellee has yet to file its merits brief; and neither party has requested that we expedite the instant appeal.  Rule 27 sets forth mandatory steps and content when expediting is sought, as Fifth Circuit Rule 27.5 confirms.  Again, none has been taken or given.  We should sparingly intercede with orders no party requests and that our rules explicitly govern.  What further concerns me is that the instant sua sponte orders may have significant case-outcome and jurisdictional consequences, both as to the instant appeal and as to parallel litigation in a sister circuit.  Finally, most concerning, both parties may be prejudiced.  Appellants, in a filing two days ago, were unequivocal disclaiming the intercession ordered by the majority: "This Court is *not* being asked to enjoin anything about the interlocutory transfer or severance rulings below."

      In light of our intervention as to when and how issues are presented, I would also revisit the earlier order "that any future requests for appellate relief" in this case—so without time, subject matter, or party limitation— be directed to this panel instead of one randomly allotted by the clerk of court.

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 23, 2021

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

     No. 21-50327   Defense Distributed v. Grewal
                   USDC No. 1:18-CV-637

Enclosed is an order entered in this case.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Melissa B. Courseault, Deputy Clerk
                        504-310-7701

Ms. Angela Cai
Ms. Jeannette Clack
Mr. Chad Flores
Mr. Alexander Hardiman
Mr. Ronald Casey Low
Mr. Daniel Nolan Nightingale
Ms. Hannah Roblyer