In the United States District Court
for the Western District of Texas
Austin Division

Defense Distributed, §
        Plaintiff, §
§
v. § No. 1:25-cv-01095-ADA-ML
§
YouTube LLC, §
Google LLC, §
Alphabet, Inc., §
        Defendants. §

**Plaintiff's Response to
Defendants' Motion to Stay Pending Resolution of
Defendants' Mandamus of Order Denying Transfer**

## Table of Contents

Argument .................................................................................................................................. 3

I.     The requisite likelihood of success is missing. ............................................................... 3

     A.     The challenged ruling is correct. ......................................................................... 3

     B.     Sandbagging belies a stay. .................................................................................. 4

II.     The requisite irreparable harm is missing. ..................................................................... 5

     A.     Remanding does not deprive the Fifth Circuit of jurisdiction. ............................ 5

     B.     The asserted interest is not cognizable. ............................................................... 5

III.     Equities of this case alone oppose a stay. ...................................................................... 6

     A.     A stay would prejudice Defense Distributed by delaying merits review. ................ 6

     B.     A stay would prolong the challenged conduct. ....................................................... 7

     C.     A stay would reward delay and distort litigation leverage. ..................................... 7

IV.     Equities stemming from *NetChoice* oppose a stay. ............................................................ 7

V.     The public interest opposes a stay. ..................................................................................... 9

     A.     The public interest disfavors interlocutory paralysis. ............................................. 9

     B.     The public interest favors timely enforcement of Chapter 143A. ......................... 9

Conclusion ............................................................................................................................. 10

Certificate of Service ............................................................................................................. 11

**Argument**

Stays pending appeal are extraordinary and stays pending mandamus efforts even more so. *See generally* 16A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3954 (5th ed. West 2025). The standard is strenuous, requiring an analysis of the likelihood of success on the merits, irreparable harm, equities between the parties, and public interest. *See, e.g., id.*; *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). It is not met here.

**I.     The requisite likelihood of success is missing.**

A stay pending mandamus requires a "strong showing" of likely success at the Fifth Circuit. *E.g.*, *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021) ("We thus focus on that issue in assessing whether the Secretary has made a strong showing of likely success."). Defendants cannot make that showing, which is reason enough alone to deny the motion.

**A.     The challenged ruling is correct.**

Defendants cannot make the requisite success-likelihood showing because they are wrong on the merits. This Court's decision is correct for the reasons given and the additional reasons Defense Distributed advanced. There is no reason to disturb it.

But even if Defendants could identify error—which they cannot—that would not suffice. The question is not whether this Court erred, or even whether a different court might have weighed the factors differently. Defendants must show a clear abuse of discretion amounting to a judicial usurpation of power. They sought appellate review precisely to avoid that demanding standard; the Fifth Circuit dismissed their appeal. Now confined to mandamus, Defendants must satisfy the standard they tried to escape. They cannot do so, especially when much of the petition's argument would require overruling settled Fifth Circuit law (*Weber*, *Haynsworth*, and the framework rightly applied in *Davis* and *Wise Guys*)—relief a mandamus panel has no authority to grant.

3

### B. Sandbagging belies a stay.

Defendants' mandamus petition leads with an argument they sandbagged. Their lead authority in the Fifth Circuit is *Great Lakes Insurance SE v. Raiders Retreat Realty Co.*, 601 U.S. 65 (2024). But Defendants never cited *Great Lakes* to this Court. Not in their motion to transfer. Not in their reply. Not at the hearing. The decision was available throughout; it issued in February 2024, more than a year before this litigation began. Yet Defendants held it back, only to unveil it now in the Fifth Circuit as the linchpin of their mandamus theory.

*Great Lakes* most certainly does *not* help Defendants. As Defense Distributed will explain to the Fifth Circuit, it concerns maritime contracts that are gap-filled by federal law—not the normal contracts at issue here. But the relevant point now is procedural: likely success at the Fifth Circuit cannot be built on arguments a party never made to this Court when it mattered.

Sandbagging is incompatible with both the mandamus and stay Defendants now seek. The writ itself is rightly confined to cases of a district court's clear, indisputable error—not for arguments unveiled for the first time on extraordinary review at the circuit level. *See Wainwright v. Sykes*, 433 U.S. 72, 89 (1977) (rejecting habeas-by-"sandbagging"); *Lucio v. Lumpkin*, 987 F.3d 451, 474–76 (5th Cir.) (en banc) (plurality opinion) (same); *see also Quinn v. Sw. Wood Products, Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979) ("It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error."). Likewise for a stay attendant to the writ. What sandbagging bars at mandamus, it bars at the stay stage as well.

The other factors strongly oppose a stay too. But where, as here, the likelihood of success is so lacking, it is dispositive. *See, e.g.*, *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021).

## II.     The requisite irreparable harm is missing.

### A.     Remanding does not deprive the Fifth Circuit of jurisdiction.

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), establishes that the Fifth Circuit's mandamus jurisdiction survives even after a case has left the transferor court—and even after it has left the circuit altogether. There, the district court had already severed and transferred the case out of the Western District of Texas and into the District of New Jersey, beyond the Fifth Circuit's territorial jurisdiction. *Id.* at 421–27. Nevertheless, the Fifth Circuit held that it retained mandamus jurisdiction over the transfer order and granted relief, directing the Texas district court to seek retransfer from the transferee court. *Id.* By both opinion and judgment, *Bruck* makes clear that the physical departure of a case—even an out-of-circuit transfer—does not defeat the Fifth Circuit's authority to review a transfer decision via mandamus.

That rule forecloses Defendants' theory here. If the Fifth Circuit can grant mandamus after a case has already been transferred beyond its territorial jurisdiction, it necessarily follows that a remand to Texas state court does not impair its ability to adjudicate Defendants' mandamus petition. Denial of a stay would not moot or frustrate mandamus review; at most, it would place Defendants in the same posture as the petitioners in *Bruck*—seeking mandamus after the case has left the transferor court. Fifth Circuit precedent confirms that such relief remains fully available.

### B.     The asserted interest is not cognizable.

Even if remand had some effect on the timing or posture of mandamus review—which it does not—Defendants still fail to identify a cognizable irreparable harm. A stay pending appeal is "extraordinary relief" for which the movant bears a "heavy burden." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). And "simply showing some possibility of irreparable

injury fails to satisfy" that burden; the movant must make a "strong" showing. *Id.* at 376 (quoting *Nken v. Holder*, 556 U.S. 418 (2009)).

Defendants' stay request also attempts an impermissible end run around the settled rules governing remand. Defendants know that they cannot appeal a remand decision. *See id.*; 28 U.S.C. § 1447(d). So they instead seek to freeze the case now by coupling a mandamus challenge to transfer with a request to halt all proceedings—including the remand ruling. That maneuver would effectively grant Defendants the very relief Congress has withheld: interlocutory appellate review and suspension of a remand decision. Mandamus is not a vehicle for backdooring appellate review of remand or for converting a non-appealable ruling into a stayed one.

### III.   Equities of this case alone oppose a stay.

The requested stay would skew the equities sharply. It would delay Defense Distributed's right to a merits determination, prolong the unlawful conduct at issue, and reward Defendants' strategy of delay by granting them the benefit of inaction. Delay is not neutral in this posture; it operates as a substantive advantage. Equity rightly disfavors stays where, as here, they function not as protection against genuine irreparable harm, but as tactical devices to freeze litigation and preserve the very status quo being challenged. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

#### A.   A stay would prejudice Defense Distributed by delaying merits review.

First, a stay would prejudice Defense Distributed by postponing the merits adjudication it is entitled to pursue. Defense Distributed filed this action to obtain a judicial determination of its rights. Halting the case now would delay that determination indefinitely, even though Defendants have not shown a likelihood of success or any irreparable harm. Delay is not neutral. It denies the prevailing party the timely resolution that federal courts exist to provide.

### B. A stay would prolong the challenged conduct.

Second, a stay would prolong the very conduct this suit challenges. Defense Distributed alleges ongoing, unlawful restrictions that continue to operate day by day. Suspending proceedings would leave those alleged violations in place while Defendants pursue extraordinary relief that is unlikely to succeed. Equity does not favor freezing the status quo when the status quo itself is the source of the alleged injury. *See Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) ("preserving the status quo 'is an important' equitable consideration in the stay decision").

### C. A stay would reward delay and distort litigation leverage.

Third, a stay would improperly reallocate litigation leverage. Granting a stay does not merely pause the docket; it shifts power. It gives Defendants exactly what they seek—nothing happening—without requiring them to satisfy the demanding standards that govern extraordinary relief. That is not an incidental effect; it is the point of the request. Delay is a strategy, not a consequence.

Federal courts are properly wary of stays that function as tactical weapons rather than as necessary protections against genuine irreparable harm. If the ordinary burdens of litigation and the speculative prospect of extraordinary relief were enough to justify a stay, defendants could routinely slow-walk cases simply by filing mandamus petitions. Equity does not endorse that result.

## IV. Equities stemming from *NetChoice* oppose a stay.

The equities weigh decisively against a stay for an additional, independent reason. Defendants are estopped from denying the propriety of the forum they themselves chose, and that same estoppel forecloses any claim to equitable interim relief. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); *Gabarick*

7

*v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) ("Judicial estoppel is an equitable doctrine that defies 'inflexible prerequisites or an exhaustive formula.'"); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016) (preventing "assert[ion of] contradictory positions for tactical gain").

Estoppel applies here because Defendants through their trade association deliberately selected this Court as the forum for litigating the constitutionality of HB20. *See* First Amended Complaint, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 76 at 5 (W.D. Tex. Feb. 6, 2025) ("Plaintiffs bring this challenge on behalf of websites operated by Plaintiffs' members when they curate and disseminate compilations of third-party speech posted on their services, including, e.g., (1) Facebook (Meta); (2) Instagram (Meta); (3) Nextdoor; (4) Pinterest; (5) X; and (6) YouTube (Google)."). That choice was strategic, not incidental. They invoked the Western District of Texas as the preferred forum for what they repeatedly described as the definitive constitutional challenge to Chapter 143A, *see, e.g.*, Plaintiffs' Brief Regarding Texas House Bill 20 (2021) Sections 2 and 7's Scope, *NetChoice, LLC v. Paxton*, No. 1:21-cv-00840-RP, Doc. 84 (W.D. Tex. Aug. 11, 2025), and they litigated that case here through judgment and appeal without once suggesting that this forum was improper or disfavored for HB20 litigation.

Equity does not allow Defendants to reverse course now. They chose this Court when it served their interests and cannot demand that proceedings halt because the forum has become inconvenient. The same principles that bar Defendants from mandamus relief also bar a stay. A party that has embraced a forum cannot later claim equitable entitlement to freeze proceedings by declaring that forum improper. Because Defendants accepted this forum when it advantaged them and repudiate it only now that it does not, the equities cut sharply against a stay.

8

## V.     The public interest opposes a stay.

### A.     The public interest disfavors interlocutory paralysis.

The public interest opposes a stay. Federal courts have a duty to ensure the orderly progression of cases and to respect the authority of district courts to manage and resolve the matters before them. The public interest is not served by interlocutory paralysis—especially where, as here, extraordinary relief is unlikely and delay would serve only private strategic ends.

### B.     The public interest favors timely enforcement of Chapter 143A.

More specifically, the public interest implicated in this case is not abstract. It is concrete and codified. This case concerns the enforcement and application of Texas's Chapter 143A law. The public has an interest in seeing duly enacted state law enforced sooner rather than later, and enforced in the forum that has already been selected, litigated in, and recognized as proper for resolving disputes under that statute. To the extent there is any doubt in the stay analysis, the Court should err on the side of the public interest that has been affirmatively expressed through legislation, not the private preferences of regulated parties seeking delay. Just as the public interest favors protecting individual liberties that "frustrate government officials," *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor*, 17 F.4th 604, 619 (5th Cir. 2021), so too it favors protecting the individual liberties that frustrate the censorship of Google and YouTube.

In contrast, the Defendants' asserted interests deserve no great weight. For they are not public interests at all. They are private, litigation-management concerns—cost, burden, and forum preference. Those do not outweigh the public's interest in timely adjudication of state law and constitutional questions arising under it. Where the public interest favors action and the opposing interests are purely private, the balance necessarily cuts against a stay.

**Conclusion**

The motion should be denied.

Respectfully submitted,

/s/ Chad Flores

Chad Flores
Texas Bar No. 24059759
chad@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Colleen McKnight
Texas Bar No. 24078976
colleen.mcknight@mcknightlaw.us
McKnight Law PLLC
801 Travis Street Suite 2101
PMB 698
Houston, TX 77002
(713) 487-5645

Counsel for Plaintiff

**Certificate of Service**

  A true and correct copy of this submission was served on the day of its filing via the Court's CM/ECF system on all counsel registered therewith.

*/s/ Chad Flores*
Chad Flores
Texas Bar No. 24059759
chad@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640